```
                       UNITED STATES BANKRUPTCY COURT
                            DISTRICT OF DELAWARE

                                        .    Chapter 11
    IN RE:                              .
                                        .    Case No. 20-11177 (KBO)
    AKORN, INC., et al.,                .
                                        .    Courtroom No. 1
                                        .    824 North Market Street
                                        .    Wilmington, Delaware 19801
                                        .
                    Debtors.            .    September 4, 2020
    . . . . . . . . . . . . . . . . .        10:00 A.M.


                            TRANSCRIPT OF HEARING
                     BEFORE THE HONORABLE KAREN B. OWENS
                        UNITED STATES BANKRUPTCY JUDGE

    APPEARANCES:

    For the Debtors:          Pat Nash, Esquire
                              Christopher Hayes, Esquire
                              William Arnault, Esquire
                              KIRLAND & ELLIS LLP
                              300 North LaSalle Street
                              Chicago, Illinois 60654

    Audio Operator:           Al Lugano

    Transcription Company:    Reliable
                              1007 N. Orange Street
                              Wilmington, Delaware 19801
                              (302)654-8080
                              Email:  gmatthews@reliable-co.com


    Proceedings recorded by electronic sound recording;
    transcript produced by transcription service.
```

```
 1  APPEARANCES (Continued):

 2  For Ad Hoc Term           Scott Greenberg, Esquire
    Lender Group:             GIBSON DUNN CRUTCHER
 3                            200 Park Avenue
                              New York, New York 10166
 4
    For AFSCME District       Edmond George, Esquire
 5  Council 47:               OBERMAYER REBMANN MAXWELL & HIPPEL
                              1617 John F. Kennedy Blvd. #19
 6                            Philadelphia, Pennsylvania 19103

 7
    For Official Committee    Catherine Steege, Esquire
 8  Of Unsecured Creditors:   JENNER & BLOCK
                              353 North Clark Street
 9                            Chicago, Illinois 60654

10  For Fresenius Kabi:       Kelley Cornish, Esquire
                              PAUL WEISS RIFKIND WHARTON GARRISON
11                            1285 Avenue of the Americas
                              New York, New York 10019
12
13  For Provepharm:           William Bowden, Esquire
                              ASHBY & GEDDES
14                            500 Delaware Avenue
                              Wilmington, Delaware 19801
15
                              - and -
16
                              Michael Parker, Esquire
17                            NORTON ROSE FULBRIGHT
                              111 W. Houston Street
18                            San Antonio, Texas 78205

19

20

21

22

23

24

25
```

INDEX

#2) Modified Joint Chapter 11 Plan of Akorn, Inc. and Its Debtor Affiliates [Docket No. 547 – filed August 25, 2020].

#3) Motion of Fresenius Kabi AG to Reclassify Claims Pursuant to Bankruptcy Rule 3013 [Docket No. 379 – filed July 24, 2020].

#4) Motion of 1199SEIU Benefit Funds, DC47 Fund and SBA Fund for Leave to File Objection (DI #553) to the Debtors' Motion to Sell (DI #18) and Confirmation of the Debtors' Plan (DI#258) Under Seal [Docket No. 601 – filed August 28, 2020].

**RULING:    4**

1       (Proceedings commenced at 11:35 a.m.)
2               THE COURT:  Thank you very much, Dina.
3               Good morning, everyone.  This is Judge Owens.  I
4  hope everyone had a restful afternoon and evening, following
5  the conclusion of yesterday's Akorn proceeding.
6               We're gathered today on the phone so I can render
7  my ruling with respect to confirmation of the debtors'
8  proposed plan.  And at the outset, let me reiterate my thanks
9  to all counsel for their thorough presentations in support to
10 the opposition to the proposed plan and for their
11 professionalism during our hearing.  I acknowledge that
12 trying a matter remotely is difficult and you did a bang-up
13 job.
14              With respect to confirmation of the plan, I am
15 prepared to overrule the objection and confirm the plan.
16 Based on the record, I find that it's (indiscernible) all
17 applicable provisions of the Bankruptcy Code, including
18 Sections 1122, 1123 and 1129.
19              Although many arguments have been made in
20 opposition to the plan, the primary objections prosecuted can
21 be (indiscernible) to four premises.
22              One, that there is no non-insider impaired
23 acceptance class;
24              two, that value rightly belonging to general
25 unsecured creditors exists in the form of potential estate

1  causes of action against current former directors, officers
2  and employees, and that the plan inappropriately extinguishes
3  that value as a result of the debtors' releases, proposed to
4  be granted therein;
5           Three, that the debtors have not proposed the plan
6  in good faith and;
7           Four, that the CVR claims held by the settling
8  shareholders should not be classified as Class VII
9  subordinated claims.
10          I will briefly address each one in turn, and to
11 the extent other objections have been raised that are not
12 related to or addressed by one of these four claims, they are
13 overruled following consideration of the record and the legal
14 briefing, with the exception of the Fresenius
15 reclassification issues raised in the standalone motion which
16 will be reserved in the confirmation order as set forth on
17 the record yesterday and was agreed to by the parties.
18          So with respect to the four main issues.  First, I
19 find that the Class III term loan claims is an impaired non-
20 insider second class. The claims still exist as the sale has
21 not yet been consummated.  And the plan provides that on
22 account of such claims, the holders will receive the purchase
23 assets as and solely to the extent set forth in the sale
24 order, as treatment is an impairment.
25          Second, with respect to the debtor releases, the

1   debtors have determined in their business judgment to grant
2   the releases to the released parties.  A much constituency
3   has decided to support their judgment, including the
4   committee who is an estate fiduciary and who performed its
5   own investigation and analysis into the nature, extent,
6   viability and value of the released claims which was not
7   meaningfully challenged.
8            The judgment underlining the debtor releases was
9   based, in part, on the voice that meaningful estate causes of
10  action exist given the COVID settlement and the related
11  releases therein and the lack of avenues for recovery on
12  account of the claims, if they do, in fact, exist given the
13  terms of the debtors' applicable insurance policies and/or
14  the prepetition exhaustion of such policies.
15           On the other hand, the objectors who face no
16  recovering of new cases and understandably seek to identify
17  and pursue any possible avenue on account (indiscernible)
18  pursue any possible value on account of their claims is
19  ultimately liquidated and allowed, (indiscernible) the
20  theories as to why viable claims and causes of action do, in
21  fact, do exist, despite the settlements and releases and why
22  they could have obtained recovery on account of those claims
23  from the debtors' insurance policies.
24           However, a (indiscernible) and argument the
25  pathway to recovery on account of these potential claims and

1   causes of action is attenuated and speculative, fraught with
2   multiple stats, including denial of confirmation and the
3   conversion of these cases to Chapter 7, each of which comes
4   with great uncertainty and risk, significant litigation
5   involving complex issues and no committed funding.
6           To disrupt the business judgment of the debtors,
7   deny confirmation of the plan and reject an organized and
8   efficient pathway to finalizing these cases and satisfying an
9   outstanding Chapter 11 administrative and other priority
10  claims in order for the alternative pathway suggested by the
11  objecting parties to be pursued would not, in my opinion,
12  been in the best interest of these cases or parties in
13  interest.
14          Moreover, it would jeopardize -- it could
15  jeopardize the sale given the termination provisions of the
16  asset purchase agreement which would be triggered if the
17  court does not confirm the plan and ultimately convert the
18  cases or prove another version of the plan proposed by the
19  debtors.
20          Following confirmation, parties will still
21  maintain the direct claims against the released parties, to
22  the extent they do not opt into the plan third party release,
23  a plan administrative will be able to pursue any worthwhile
24  routine causes of action following this (indiscernible),
25  including those subject to the debtor release carve-out for

1 fraud, willful misconduct or gross negligence.

2 On the third point with respect to good faith, the
3 series of allegations made substantially by the MDL objectors
4 are not supported by the record for the legal and economic
5 realities that brought these debtors to bankruptcy that
6 underly the prepetition settlement to shareholders and
7 (indiscernible) support the plan process, the approved
8 transaction and the resulting proposed plan.

9 In determining whether a plan is proposed in good
10 faith, courts consider the totality of the circumstances,
11 more to the process of plan development, then the content of
12 the plan. Good faith is shown when the plan has been
13 proposed for the purpose of reorganizing the debtor,
14 preserving the value of the estate, and delivering that value
15 to creditors.

16 On the other hand, good faith has been found to be
17 lacking if the plan is proposed with ulterior motives. Here,
18 the record developed during both the sale and confirmation
19 proceedings, indicates that, among other things, the debtors
20 sought to and did, in fact, maximize value to stakeholders.
21 And that the plan is proposed simply reflects the outcome of
22 those efforts.

23 Its contents are not atypical for cases such as
24 these and, again, the plan serves to provide efficient and
25 structured finality. Nothing in the record suggests to me

1 that the lenders and the debtors have behaved improperly,
2 pre- or post-petition and the debtors even voluntarily
3 amended the plan which was originally proposed to address
4 certain items viewed as objectionable to parties.
5       They narrowed the exculpation provision, modified
6 the third-party releases to align them with my previous
7 opinions on the subject to ensure that they would be
8 considered consensual mainly providing for an opt-in third-
9 party release and they reclassified the CVR claim to a
10 subordinated Class VII claim from its original placement in
11 Class IV.
12       It is unfortunate that the objecting parties are
13 unlikely to receive anything on account of their claims and
14 interest under the plan.  But there are no sale proceeds
15 available for them under the waterfall.  And as highlighted
16 by the debtors in their confirmation brief, it is not the
17 court's place to force a purchase to assume liability in the
18 363 sale that do not benefit the purchase objector.
19       Fourth and finally, with respect to
20 classification, I find that the classification of the CVR
21 claim as subordinated is proper under Section 510(b).  The
22 claim arises from the settling shareholders equity ownership
23 of Akorn.  More specifically, the CVR's were intended to
24 compensate the settling shareholders for losses related to
25 their equity interest that were allegedly suffered as a

1   result of the shareholder's alleged secured claim.

2            While Gabelli argues that subordination of the CVR
3   claim is not appropriate because of settling shareholders
4   struck an intervening bargain which resulted in them giving
5   up their participatory exposure to the company in exchange
6   for a debt (indiscernible) that would be coupled from equity
7   performa, I'm not persuaded.  I find that the cases they
8   (indiscernible) in support to be distinguishable.

9            Among other things, I agree with the parties in
10  support of the subordination that (indiscernible) and the
11  other similar cases upon which Gabelli relies did not involve
12  an instrument given the settlement consideration for a claim
13  that would, otherwise, be subordinated.

14           Moreover, unlike the former interest holders in
15  Noble (indiscernible), Montgomery Ward and Cybersite, the
16  settling shareholders did not exchange their shares for CVRs
17  and did not divest themselves a potential investment risk and
18  benefit.  Rather, they were entitled to keep their shares
19  and, in fact, received even more.  The nexus or casual
20  connection required to employ Section 510(b), thus still
21  exists and the benefit and the failure to subordinate the
22  CVRs and allow them as unsecured claims would inappropriately
23  allow the shareholders to benefit as a (indiscernible) equity
24  holdings and that benefit would not be dependent on company's
25  success.  Accordingly, I will not modify the classification

1 of the CVR claim.

2 In light of the foregoing, I do find that the
3 debtors have carried their burden to demonstrate the plan is
4 sufficient for confirmation and I am prepared to enter the
5 proposed confirmation order.

6 I understand that there was a proposed form of
7 order that was filed on September 2nd and I believe it's
8 Docket Entry Number 661 and I had the opportunity to review
9 that. I have no questions or comments. But let me ask for
10 the record, are there further changes that have been made or
11 need to be made for the order and do you have a form of order
12 that you would like to walk the court through?

13 MS CORNISH: Your Honor, this is Kelley Cornish
14 from Paul Weiss on behalf of Fresenius.

15 I just want to be sure that we get a provision
16 into the confirmation order that addresses the, you know,
17 withdrawal without prejudice and preservation of the
18 subordination issues that we discussed yesterday and that
19 Your Honor made reference to at the beginning of this
20 hearing. So we'll work with the debtors on that.

21 THE COURT: Okay. Thank you, Ms. Cornish, that
22 was one of the items I thought, perhaps, needed to be
23 modified in the order.

24 I'll ask debtors' counsel is there any other
25 further changes that you need to make to reflect any

1  agreements that you reached with the objecting parties that
2  you reached a resolution with prior to the start of the
3  confirmation hearing?
4          MR. HAYES:  For the record, Christopher Hayes of
5  Kirkland Ellis.
6          Your Honor, we had no further changes from the
7  version you identified that was filed at Docket 661.  A Ms.
8  Cornish noted, we will work with her on language for the
9  related to the withdrawal of their objection and preservation
10 of their rights.  And I would propose once we finalize that
11 language submitting it under certification of counsel.
12         THE COURT:  Okay. That would be great, Mr. Hayes.
13 I appreciate that.  Please work with Ms. Cornish and once you
14 reached your resolution and finalize the form of order,
15 please go ahead and submit it under certification of counsel.
16         And if you could have someone just notify chambers
17 that it's been submitted, I would greatly appreciate it.  It
18 will aid the time -- shorten the time for us to get it
19 entered for you.
20         Well is there anything else that we should discuss
21 with respect to the confirmation?
22         MR. NASH:  Pat Nash, I don't think so.  Thanks,
23 Judge.
24         THE COURT:  Okay.  Thank you, Mr. Nash.  I
25 appreciate the confirmation.

1           Okay.  I hope everyone has a wonderful Labor Day
2 and that you're well and continue to be well.  I will
3 consider this hearing adjourned. Thank you, all, very much.
4 Take care.
5      (A Chorus of "Thank you, Your Honor")
6      (Proceedings conclude at 11:46 a.m.)
7
8
9                         CERTIFICATE
10
11     I certify that the foregoing is a correct transcript
12 from the electronic sound recording of the proceedings in the
13 above-entitled matter.
14
   /s/Mary Zajaczkowski                September 8, 2020
15 Mary Zajaczkowski, CET**D-531
16
17
18
19
20
21
22
23
24
25