# PJT Partners



# Project Wood
## DISCUSSION MATERIALS

DRAFT

March 21, 2019

Confidential
Prepared at Request of Counsel

Confidential
Prepared at Request of Counsel

# Lender Perspectives

> While the Ad Hoc Group lenders appreciate the cooperation and sharing of information among advisors, frustration is mounting due to the passage of time with no protections against the backdrop of continued deterioration in financial performance and cash burn, and a skeptical view on being refinanced.

**While the Company's advisors have been engaged since the end of January 2019, Ad Hoc Group lenders have been actively monitoring the Company's situation for longer and allege an event of default occurred in November 2018**

**Ad Hoc Group lenders have become increasingly concerned in light of recent developments**

> Decatur warning letter, which heightened FDA-related concerns
> Disappointing 4Q 2018 earnings results
> Continued cash burn
> 2019 budget, which did not instill confidence in a path to refinancing

**Ad Hoc Group lenders believe they have a strong case for an event of default and are confident they would win in litigation**

> If lenders call a default today, their belief is that they would receive a favorable ruling at the latest by September 2019

**Ad Hoc Group lenders feel emboldened to exert leverage today given their confidence in winning in litigation and to protect their position against what they see as continued collateral deterioration (i.e., cash burn)**

> Understand that, in all scenarios including a bankruptcy, lenders are entitled to receiving par plus accrued interest before any value flows to junior creditors or shareholders

DRAFT

Confidential
Prepared at Request of Counsel

# Lender Considerations

**Lenders will weigh the downside risks of calling an event of default against the perceived benefits.**

| Why Lenders <u>Would</u> Call an Event of Default | Why Lenders <u>Would Not</u> Call an Event of Default |
|---|---|
| > Regardless of the path taken, secured lenders are owed par plus accrued interest<br>　- Senior most position in capital structure with security<br>> Lenders are frustrated with passage of time and want to set a precedent for cases in the future<br>> Calling default now catalyzes the process in which lenders can take control, arguably at a trough point before market resets kick in and the business plan takes shape<br>> Belief in underlying value of the Company and that any disruption and value decline will be temporary<br>> Confidence in winning any litigation regarding an event of default, coupled with the belief that there is limited downside risk while in litigation<br>　- Secured creditors retain their rights during litigation and a potential bankruptcy filing<br>　- Litigation will likely force the Company to refinance lenders during the trial<br>　　o If the Company is not able to, lenders can show they are the fulcrum security<br>　- Lenders may be able to get the business plan in discovery<br>> Deal to "cure" an event of default once called will be much more expensive for the Company than the proposed standstill | > A default may cause an additional decrease in the trading price<br>> Lenders would not receive any cooperation from the Company during a trial<br>　- Company will not sign engagement letters or pay advisors<br>　- Will not receive information/business plan through normal course<br>> Default may cause business disruption and value destruction<br>　- Unknown collateral damage from other stakeholders<br>> Interim trading within the term loan may change the Ad Hoc Group composition and drop the Group below the 50% threshold<br>　- May result in new financial advisors or counsel being hired<br>> Fear third party purchasing 50% of TL and changing waterfall provisions and blocking event of default |

DRAFT

PJT Partners   3

Confidential
Prepared at Request of Counsel

# Company Perspectives

**The Company must weigh the risks of not reaching a standstill agreement against the benefits.**

| Risks of Not Reaching an Agreement | Benefits of Not Reaching an Agreement |
|---|---|
| > Chance of losing at trial if lenders call a default<br>　- Lenders will offer a more onerous deal to cure a default if they win at trial<br>　- Lenders may take aggressive posture against management<br>　- Will need to negotiate cash collateral, potential DIP financing and other key terms with lenders in a bankruptcy<br>> If lenders call a default, Company will need to quickly pivot to executing 4 options at a moment when it wants time:<br>　- Amendment/forbearance of default<br>　- Refinancing the debt<br>　- M&A activity<br>　- Chapter 11 restructuring<br>> TLB will go current in Q1 2020, which may force the Company back to the negotiating table in any event<br>　- Unclear if the debt is refinanceable without a business plan<br>> Unlikely to get ABL if default (or can call a cross-default)<br>> Additional litigation will be a distraction | > Do not have to pay any cash or increased economics to lenders at this time<br><br>> Company will not have to deal with diligence requests from Ad Hoc Group<br><br>> Chance of Company winning at trial if lenders call a default<br>　- Opportunity to litigate potential liability/damage claims against lenders<br><br>> Chance of lenders "blinking" and not calling a default (although this may be low) |

DRAFT

Confidential
Prepared at Request of Counsel

# Proposal Side-By-Side

| | 3/15 Company Counterproposal | 3/20 TLB Counterproposal | [3/22] Company Counterproposal |
|---|---|---|---|
| **Agreement Structure** | Standstill Agreement governed by the following terms:<br>> Under the Standstill Agreement, the Company is not permitted to utilize certain baskets (the "Specified Baskets") during the Standstill Period (see "Other Modifications / Amendments")<br>> During the Standstill Period, the Lenders shall not declare any Event of Default or otherwise seek to exercise any rights or remedies under the Loan Agreement or the other Loan Documents as a result of any alleged Event of Default arising from any alleged breach of any of the covenants contained in Sections 5.01, 5.02, 5.03 or 5.07 of the Loan Agreement (any such alleged Event of Default, a "Specified Matter"), to the extent the facts and circumstances giving rise to such breach:<br>   - are publicly available as of the date of the Agreement; or<br>   - are not publicly available but have been disclosed in writing<br>      o to private side Lenders via IntraLinks; or<br>      o to the advisors to the ad hoc group of Lenders<br>> Standstill Period: Date of the Standstill Agreement through the earlier of 06/30/19 and the occurrence of a Default or Event of Default under the Agreement, the Loan Agreement or the other Loan Documents, excluding any Specified Matter (as defined above) | Standstill Agreement governed by the following terms:<br>> Same as 3/15 Company Counterproposal<br><br>> Same as 3/15 Company Counterproposal<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>> Same as 3/15 Company Counterproposal, but extended Standstill Period to 09/30/19 | > Accept, except Standstill Period extended to [2/28/2020] |
| **Fee** | > No Fee | > 150bps PIK Fee | > [100bps] PIK Fee |
| **Rate Increase** | > No Rate Increase | > 150bps payable in cash | > Reject |
| **Call Protection** | > No Call Protection | > Hard Call 102 through maturity | > Reject |
| | Failure to meet any Milestone shall not constitute a Default or Event of Default but shall permit the Lenders to terminate the Standstill Period | Per the TLB Counterproposal (3/20), failure to comply with the Comprehensive Amendment milestone shall result in an Event of Default. The breach of any other Milestones and Affirmative Covenants of the Standstill Agreement shall result in 75bps of incremental cash interest and shall permit the Lenders to terminate the Standstill Period | Termination of the Standstill Agreement caused by breach of any Milestone or Affirmative Covenant shall result in [25bps] of PIK interest |

DRAFT

PJT Partners    5

Confidential
Prepared at Request of Counsel

# Proposal Side-By-Side

| | 3/15 Company Counterproposal | 3/20 TLB Counterproposal | [3/22] Company Counterproposal |
|---|---|---|---|
| **3-Statement Financials & KPIs** | > Monthly 3-statement financials no later than 30 days after the end of each month (no KPI reporting) | > Monthly 3-statement financials and KPI reporting no later than 30 days after the end of each month (KPI reporting to include volume and pricing for the top 30 products and plant KPIs TBD) | > Accept |
| **ANDA Pipeline Reporting** | > Monthly ANDA pipeline reporting following the delivery of the business plan | > Monthly ANDA pipeline reporting by 03/31/19. Pipeline report to include FDA submissions and approvals<br>> ANDA SWOT Analysis | > [Discuss with Company if SWOT analysis is useful or easily completed] |
| **Calls with Q&A** | > [Monthly Lender calls with Q&A] [note: JD to confirm whether lender calls are to be with public- or private-side lenders] | > Monthly lender calls with Q&A for public-side lenders<br>> Private-side calls to commence upon entry into NDA by holders | > Accept |
| **Correspondence documents, and reports** | > Company shall promptly provide the TLB Group Advisors with copies of any material (i) correspondence received from the FDA and (ii) cover letters to reports delivered to the FDA, in each case solely with regard to any FDA Form 483 or warning letter | > Same as 3/15 Company Counterproposal<br><br>> Company shall provide copies of warning letter(s), OAI status, or similar regulatory actions by Swissmedic or CDSCO on the Amityville, Swiss, India, Vernon Hills, or Cranbury facilities<br>> Company shall provide meeting minutes for any FDA meeting<br>> Company shall provide the TLB Group Advisors with Akorn's response to the FDA Warning Letter received in January 2019 | > Accept, but [discuss with Company if meeting minutes is feasible or worth giving] |
| **Third Party Consultant Reports** | > Company shall (i) provide the TLB Group Advisors with monthly QSCAP update reports and (ii) arrange for a monthly update meeting between the TLB Group advisors and the Company's regulatory counsel. | > Company shall (i) provide the TLB Group Advisors with monthly QSCAP update reports[(1)], (ii) arrange for a monthly update meeting between the TLB Group advisors and the Company's regulatory counsel, and (iii) monthly update meetings with the Company's third party consultants | > Accept |

Failure to meet any Milestone shall not constitute a Default or Event of Default but shall permit the Lenders to terminate the Standstill Period

Per the TLB Counterproposal (3/20), failure to comply with the Comprehensive Amendment milestone shall result in an Event of Default. The breach of any other Milestones and Affirmative Covenants of the Standstill Agreement shall result in 75bps of incremental cash interest and shall permit the Lenders to terminate the Standstill Period

Termination of the Standstill Agreement caused by breach of any Milestone or Affirmative Covenant shall result in [25bps] of PIK interest

DRAFT

(1) QSCAP under review.

Confidential

PJT Partners   6

Debtors_Prod_00053436

Confidential
Prepared at Request of Counsel

# Proposal Side-By-Side

| | 3/15 Company Counterproposal | 3/20 TLB Counterproposal | [3/22] Company Counterproposal |
|---|---|---|---|
| **ABL Status Updates** | > The Company shall provide weekly updates to the Ad Hoc Group Advisors regarding the ABL refinancing and / or extension process (no obligations to provide term sheets) | > Same as 3/15 Company Counterproposal, but including obligation to provide term sheets if lenders and/or refi parties consent | > Accept |
| **Continued Retention of Company Advisors** | > None | > The Company shall continue to retain PJT Partners and AlixPartners (or such other restructuring and financial advisors as are acceptable to the Required Lenders) | > Accept, but delete parenthetical |
| **Business Plan** | > Company to provide 5-year business plan by 05/03/19, to include a balance sheet, cash flow, and income statement (including material assumptions) on a monthly basis for the first year and on a quarterly basis thereafter | > Same as 3/15 Company Counterproposal | > Accept |
| **ABL Refi** | > None | > Same as 3/15 Company Counterproposal<br>> Pre-emptive Rights: TLB Lenders have pre-emptive rights to provide financing secured by the ABL collateral if the Company seeks non-traditional financing to replace the existing ABL | > Reject pre-emptive rights, TLB lenders will have right to participate in market process if neccessary |
| **Strategic Alternatives Report** | > None | > Report from PJT Partners on strategic alternatives detailing plans to reduce the TLB exposure by 05/31/19 | > Accept |
| **Comprehensive Amendment** | > None | > Enter into comprehensive amendment of the TLB Credit Agreement by no later than 09/30/19, which comprehensive amendment shall be in form and substance acceptable to the Required Lenders, and which, in any event, shall include a modification to require affected lender consent for modifications to the pro rata sharing and waterfall provisions (the "Comprehensive Amendment"); the failure to enter into the Comprehensive Amendment by 9/30/19 shall constitute an immediate Event of Default under the Credit Agreement and the other Loan Documents | > Reject |
| **13 Week Cash Flow** | > Company to provide a 13-week cash flow forecast on a monthly basis commencing on 04/12/19, and shall deliver monthly variance reporting thereafter concurrently with the delivery of the 13-week cash flow forecast. For the avoidance of doubt, under no circumstances shall any variance reported constitute a Default or Event of Default or permit termination of the Standstill Period | > Same as 3/15 Company Counterproposal | > Accept |

Failure to meet any Milestone shall not constitute a Default or Event of Default but shall permit the Lenders to terminate the Standstill Period

Per the TLB Counterproposal (3/20), failure to comply with the Comprehensive Amendment milestone shall result in an Event of Default. The breach of any other Milestones and Affirmative Covenants of the Standstill Agreement shall result in 75bps of incremental cash interest and shall permit the Lenders to terminate the Standstill Period

Termination of the Standstill Agreement caused by breach of any Milestone or Affirmative Covenant shall result in [25bps] of PIK interest

DRAFT

PJT Partners    7

Confidential    Debtors_Prod_00053437

Confidential
Prepared at Request of Counsel

# Proposal Side-By-Side

| | 3/15 Company Counterproposal | 3/20 TLB Counterproposal | [3/22] Company Counterproposal |
|---|---|---|---|
| **Permitted Indebtedness** | > Eliminate ratio debt and remaining incremental debt – Section 2.09; 6.01 | > Same as 3/15 Company Counterproposal | > Accept |
| **Permitted Liens** | > Eliminate general basket and liens on ratio debt and incremental debt, liens arising from Sale and Leaseback transactions and general liens in excess of $10mm on aggregate – Section 6.02(h), (k), (l) | > Same as 3/15 Company Counterproposal | > Accept |
| **Restricted Payments** | > Eliminate Available Amount RP capacity; eliminate Available Amount capacity – Section 6.08(a), (b) | > Same as 3/15 Company Counterproposal | > Accept |
| **Permitted Investments** | > Eliminate Available Amount capacity and Permitted Foreign Loans – Section 6.04(m), (n) | > Eliminate Available Amount capacity, non-loan party baskets, Permitted Foreign Loans Permitted Acquisitions, investments in connection with asset dispositions, guarantees to non-loan parties and loans to non-loan parties – Section 6.04(d), (e), (j), (l), (m), (n) | > [To Discuss With Company] |
| **Permitted Acquisitions** | > Eliminate Permitted Acquisitions (excluding Drug Acquisitions[1] in an amount not exceeding $7.5mm) pursuant to Section 6.04(l) of the Loan Agreement in excess of $7.5mm in the aggregate, or, with respect to Permitted Acquisitions (excluding Drug Acquisitions[1] in an amount not exceeding $7.5mm) by non-Loan Parties, in excess of $2.5mm in the aggregate | > Same as 3/15 Company Counterproposal | > Accept |
| **Mandatory Prepayments** | > Eliminate asset sale reinvestment rights and eliminate discounted prepayments, unless discounted prepayments are offered to all members of the TLB Group – Section 2.11(c), (g) | > Same as 3/15 Company Counterproposal, except discounted prepayments shall be offered to all TLB Lenders – Section 2.11(c), (g) | > [To Discuss With Company] |
| **Asset Dispositions** | > Eliminate baskets for ordinary course deposits and general basket other than with respect to assets owned by Akorn India Private Limited (or the equity interests therein), sell, transfer, lease, or otherwise dispose of assets with aggregate book value in excess of 5% CTA(2) — Section 6.05 (h) | > Same as 3/15 Company Counterproposal, except for the 5% CTA carve-out[2] | > [To Discuss With Company] |
| | Effecting any transaction permitted solely by one or more Specified Baskets during the Standstill Period shall constitute a Default or Event of Default (as applicable) under the Loan Agreement | Same as 3/15 Company Counterproposal (i.e., breach of Negative Covenants results in an Event of Default under the Loan Agreement) | Accept |

(1) "Drug Acquisition" means any acquisition (including any license or any acquisition of any license) solely or primarily of all or any portion of the rights in respect of one or more drugs or pharmaceutical products, whether in development or on market (including related intellectual property), but not of Equity Interests in any Person or any operating business unit.
(2) 5% of current Total Assets represents $75mm as of December 31, 2018.

DRAFT

PJT Partners    8

Confidential
Prepared at Request of Counsel

# Proposal Side-By-Side

| | 3/15 Company Counterproposal | 3/20 TLB Counterproposal | [3/22] Company Counterproposal |
|---|---|---|---|
| **Damage Claims** | > Not requested | > Any judgment, award or settlement, individually or in the aggregate, in excess of $20mm, including, without limitation, in connection with, related to or arising from, the Fresenius litigation and/or any shareholder litigation, shall constitute an Event of Default | > Reject |
| **Other** | > No change to pledge of unencumbered assets<br>> No change to Material Subsidiary definition<br>> No change to Minimum Tranche Amount provisions<br>> Eliminate Sale and Leaseback Transactions – Section 6.06<br>> Consent of Required Lenders to designate any Unrestricted Subsidiaries – Section 5.12<br>> Prohibition on transfer of any material assets to Unrestricted Subsidiaries, except as otherwise permitted under the Credit Agreement – Section 5.12<br>> Eliminate ability of any Loan Party to acquire TLB Loans, unless any offers to acquire TLB loans are made to all members of the TLB Group – Section 2.11(g); 9.04<br>> No change to consent requirement to assignments<br>> No change to consent to successor/replacement agent<br>> Make any Extension Offers or enter into any Extensions of the TLB, unless any Extension Offer is made to all TLB lenders – Section 2.23 | > Pledge of unencumbered assets, including 100% pledge of foreign subsidiaries<br>> Refresh Material Subsidiary definition – confirm whether assets were designated immaterial and today comprise >10% of assets/EBITDA<br>> Required Lender consent mandatory to waive Minimum Tranche Amount<br>> Same as 3/15 Company Counterproposal<br>> Same as 3/15 Company Counterproposal<br>> Prohibition on the transfer of any material assets to Unrestricted Subsidiaries, absent prior written consent of Required Lenders – Section 5.12<br>> Same as 3/15 Company Counterproposal, except any offers to acquire TLB loans shall be made to all TLB Lenders – Section 2.11(g); 9.04<br>> Eliminate Borrower consent requirement to assignments<br>> Eliminate Borrower consent to successor/replacement agent<br>> Same as 3/15 Company Counterproposal | > [Discuss with Cravath] |
| | Effecting any transaction permitted solely by one or more Specified Baskets during the Standstill Period shall constitute a Default or Event of Default (as applicable) under the Loan Agreement | Same as 3/15 Company Counterproposal (i.e., breach of Negative Covenants results in an Event of Default under the Loan Agreement) | Accept |

DRAFT

PJT Partners  9

Confidential
Prepared at Request of Counsel
Case 1:20-cv-01254-MN   Document 5-14   Filed 10/02/20   Page 10 of 11 PageID #: 1478

# Proposal Side-By-Side

| | 3/15 Company Counterproposal | 3/20 TLB Counterproposal | [3/22] Company Counterproposal |
|---|---|---|---|
| **Conditions Precedent** | > Usual and customary, including but not limited to:<br>> Definitive documentation in form and substance acceptable to Required Lenders and the Company, and approved and executed by Required Lenders and the Company [note: Given the nature of this standstill agreement, we are not sure of the need for a separate tolling agreement];<br>> No Tolling Agreement requirement<br><br>> Agreement by the Company to pay the fees of Greenhill on terms mutually agreeable to Greenhill and the Company<br>> Expense reimbursement of the Ad Hoc Group Advisors on the terms described herein | > Usual and customary, including but not limited to:<br>> Same as 3/15 Company Counterproposal, but require a Tolling Agreement<br><br>> Entry by Company and applicable subsidiaries into a tolling agreement with TLB Group or its applicable representative(s), which shall be in form and substance acceptable to Required Lenders (the "Tolling Agreement").<br><br>> Retention of Greenhill & Co. ("Greenhill")<br>> Same as 3/15 Company Counterproposal | > Reject |
| **Payment of Advisor Fees and Expenses** | > The Company shall continue to pay fees of counsel to the TLB Group during the Standstill Period in accordance with the fee letter related thereto, and shall pay the fees of Greenhill, as financial advisor to the TLB Group, on terms mutually agreeable to Greenhill and the Company, during the Standstill Period | > The Company shall continue to pay fees of counsel to the TLB Group during the Standstill Period in accordance with the fee letter related thereto, and shall pay the fees of Greenhill, as financial advisor to the TLB Group, on the terms proposed by Greenhill on 03/03/19, during the Standstill Period | > Accept, except fees for Greenhill to be mutually agreed between Greenhill and the Company |
| **Other Terms** | > No Tolling Agreement requirement<br><br><br><br><br><br><br><br>> The Standstill Agreement shall expressly provide that entry into the Standstill Agreement shall not constitute an admission by any party to the occurrence or non-occurrence of a Default or Event of Default | > Acceptance of this Term Sheet by the Company shall be conditioned upon its agreement that, during the period from the date of such acceptance until the closing of the Amendment, any potential claim against the Company that may be asserted by a Lender and/or the Agent shall be evaluated, determined, and adjudged as if such Lender and/or the Agent had asserted such potential claim on 02/24/19<br>> Same as 3/15 Company Counterproposal | > Reject Tolling Agreement<br><br><br><br><br><br><br><br>> Accept |

DRAFT

Confidential
Prepared at Request of Counsel

# Disclaimer

This document contains highly confidential information and is solely for informational purposes. You should not rely upon or use it to form the definitive basis for any decision or action whatsoever, with respect to any proposed transaction or otherwise. You and your affiliates and agents must hold this document and any oral information provided in connection with this document, as well as any information derived by you from the information contained herein, in strict confidence and may not communicate, reproduce or disclose it to any other person, or refer to it publicly, in whole or in part at any time except with our prior written consent. If you are not the intended recipient of this document, please delete and destroy all copies immediately.

This document is "as is" and is based, in part, on information obtained from other sources. Our use of such information does not imply that we have independently verified or necessarily agree with any of such information, and we have assumed and relied upon the accuracy and completeness of such information for purposes of this document. Neither we nor any of our affiliates or agents, make any representation or warranty, express or implied, in relation to the accuracy or completeness of the information contained in this document or any oral information provided in connection herewith, or any data it generates and expressly disclaim any and all liability (whether direct or indirect, in contract, tort or otherwise) in relation to any of such information or any errors or omissions therein. Any views or terms contained herein are preliminary, and are based on financial, economic, market and other conditions prevailing as of the date of this document and are subject to change. We undertake no obligations or responsibility to update any of the information contained in this document. Past performance does not guarantee or predict future performance.

This document does not constitute an offer to sell or the solicitation of an offer to buy any security, nor does it constitute an offer or commitment to lend, syndicate or arrange a financing, underwrite or purchase or act as an agent or advisor or in any other capacity with respect to any transaction, or commit capital, or to participate in any trading strategies, and does not constitute legal, regulatory, accounting or tax advice to the recipient. This document does not constitute and should not be considered as any form of financial opinion or recommendation by us or any of our affiliates. This document is not a research report nor should it be construed as such.

This document may include information from the S&P Capital IQ Platform Service. Such information is subject to the following: "Copyright © 2019, S&P Capital IQ (and its affiliates, as applicable). This may contain information obtained from third parties, including ratings from credit ratings agencies such as Standard & Poor's. Reproduction and distribution of third party content in any form is prohibited except with the prior written permission of the related third party. Third party content providers do not guarantee the accuracy, completeness, timeliness or availability of any information, including ratings, and are not responsible for any errors or omissions (negligent or otherwise), regardless of the cause, or for the results obtained from the use of such content. THIRD PARTY CONTENT PROVIDERS GIVE NO EXPRESS OR IMPLIED WARRANTIES, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR USE. THIRD PARTY CONTENT PROVIDERS SHALL NOT BE LIABLE FOR ANY DIRECT, INDIRECT, INCIDENTAL, EXEMPLARY, COMPENSATORY, PUNITIVE, SPECIAL OR CONSEQUENTIAL DAMAGES, COSTS, EXPENSES, LEGAL FEES, OR LOSSES (INCLUDING LOST INCOME OR PROFITS AND OPPORTUNITY COSTS OR LOSSES CAUSED BY NEGLIGENCE) IN CONNECTION WITH ANY USE OF THEIR CONTENT, INCLUDING RATINGS. Credit ratings are statements of opinions and are not statements of fact or recommendations to purchase, hold or sell securities. They do not address the suitability of securities or the suitability of securities for investment purposes, and should not be relied on as investment advice."

This document may include information from SNL Financial LC. Such information is subject to the following: "CONTAINS COPYRIGHTED AND TRADE SECRET MATERIAL DISTRIBUTED UNDER LICENSE FROM SNL. FOR RECIPIENT'S INTERNAL USE ONLY."

Copyright © 2019, PJT Partners LP (and its affiliates, as applicable).

DRAFT

PJT Partners

Confidential                                                                Debtors_Prod_00053441