# JONES DAY

250 VESEY STREET • NEW YORK, NEW YORK 10281-1047

TELEPHONE: +1.212.326.3939 • FACSIMILE: +1.212.755.7306

Direct Number: (212) 326-3830
SGREENBERG@JONESDAY.COM

November 27, 2018

<u>VIA OVERNIGHT AND ELECTRONIC MAIL</u>

Mr. Duane Portwood
Chief Financial Officer
Akorn, Inc.
1925 West Field Court, Suite 300
Lake Forest, Illinois  60045

      Re:    <u>Akorn Inc.</u>

Dear Mr. Portwood:

    We write on behalf of certain term lenders (the "<u>Term Lender Group</u>") under the Loan Agreement dated as of April 17, 2014 (as amended, restated, supplemented, or otherwise modified prior to the date hereof, the "<u>Loan Agreement</u>"), among Akorn Inc. ("<u>Akorn</u>" or the "<u>Company</u>") and the other loan parties thereto, JPMorgan Chase Bank, N.A., as administrative agent (the "<u>Agent</u>"), and each lender from time to time party thereto.

    Our clients have been following Akorn's litigation with Fresenius in the Delaware Court of Chancery and are concerned with the Court's recent findings. *See Akorn, Inc. v. Fresenius Kabi Ag*, 2018 WL 4719347 (Del. Ch. Oct. 1, 2018). Not only did the Court find that Akorn had suffered a Material Adverse Effect (as that term was defined in the merger agreement), but it also found that since signing the merger agreement with Fresenius, Akorn has failed to operate in the ordinary course of business. In addition, as part of its ruling in favor of Fresenius, the Court found that Akorn has disregarded its regulatory obligations in numerous respects. The Term Lender Group believes that the Court's rulings may have significant implications under the terms of the Loan Agreement and the other Loan Documents, including without limitation Sections 5.01, 5.02, 5.03 and 5.07, as well as Article VII, and all rights and remedies under the Loan Documents are expressly reserved in that respect.[1]

    In addition to the Court's findings in the litigation, our clients have also been surprised by the Company's deteriorating operating performance. In fact, the Company's recent operational

---

[1] In yet another concerning development, we also note that one of the Company's shareholders has now filed a derivative action in the Northern District of Illinois on behalf of Akorn against certain of the Company's officers and directors for multiple breaches of fiduciary duty arising out of the same facts that the Court focused on in allowing Fresenius to terminate the merger agreement. *See Trsar v. Kapoor et al.*, No. 18-cv-07374 (N.D. Ill.).

ALKHOBAR • AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS
DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • JEDDAH • LONDON • LOS ANGELES • MADRID
MEXICO CITY • MIAMI • MILAN • MOSCOW • MUNICH • NEW YORK • PARIS • PITTSBURGH • RIYADH • SAN DIEGO
SAN FRANCISCO • SÃO PAULO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

Mr. Duane Portwood
November 27, 2018
Page 2

performance suggests that its problems, taken as a whole, are a legitimate cause of concern for its lenders.

Exacerbating our clients' concerns, the information the Company has provided to the lenders has been extremely sparse. In the face of the Court of Chancery's findings and the Company's recent performance, our clients believe that an active, transparent dialogue will help all parties work together to address any issues resulting from operational challenges. We suggest that the Company start by entering into a customary form of advisor non-disclosure agreement with Jones Day in order to more easily facilitate information access and a constructive working relationship. Once an advisor non-disclosure agreement has been executed, we anticipate providing you with certain information requests, which will allow us the opportunity to better understand the impact of the merger-related litigation and the challenges facing the Company.

We understand that the argument on Akorn's appeal from the decision in the *Fresenius* litigation in Delaware is fast approaching, however, the Supreme Court's ruling (adverse or otherwise) will likely not be received for at least a couple of months. Given the news around the failed merger and the recent less than satisfactory earnings release, we think it behooves the Company, its management, and the board to start a constructive dialogue with its most senior lenders now.

We hope that the Company will welcome this opportunity to initiate and pursue constructive, cooperative, and transparent discussions with the Term Lender Group, who represent the Company's senior stakeholders. We request that you take the opportunity to reach out to us as soon as possible after receiving this letter to discuss our clients' requests.

*     *     *

Please note that all of the Term Lender Group's rights under the Loan Agreement, the other Loan Documents, and applicable law are hereby expressly reserved in all respects.

Sincerely

Scott J. Greenberg

cc (via e-mail):  Term Lender Group