| | |
|---|---|
| MERRY A. KOGUT, Individually and on Behalf of Defendant Akorn, Inc., | * DOCKET NO. 646,174, Div. "I" Sec. "24" |
| | * |
| | * |
| Plaintiff, | * 19th JUDICIAL DISTRICT COURT |
| | * |
| v. | * |
| | * PARISH OF EAST BATON ROUGE |
| AKORN, INC., et al., | * |
| | * |
| Defendants. | * STATE OF LOUISIANA |

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement, dated as of December 12, 2019 (the "Stipulation"), is made and entered into by and among the following Parties (as defined further in ¶ 1.7 hereof), each by and through their respective counsel: (i) Merry A. Kogut ("Plaintiff"), individually and on behalf of Nominal Defendant Akorn, Inc. ("Akorn" or the "Company"); (ii) Nominal Defendant Akorn; and (iii) John Kapoor ("Kapoor"), Kenneth S. Abramowitz ("Abramowitz"), Ronald M. Johnson ("Johnson"), Steven J. Meyer ("Meyer"), Adrienne Graves ("Graves"), Terry Rappuhn ("Rappuhn"), Brian Tambi ("Tambi"), Alan Weinstein ("Weinstein"), Rajat Rai ("Rai"), Timothy Dick ("Dick"), Joseph Bonaccorsi ("Bonaccorsi"), David Hebeda ("Hebeda"), Bruce Kutinsky ("Kutinsky"), Steven Lichter ("Lichter"), Duane A. Portwood ("Portwood"), and Mark Silverberg ("Silverberg") (the foregoing individuals, the "Individual Defendants," and together with Akorn, the "Defendants"). This Stipulation and the exhibits thereto embody the terms and conditions of the settlement and resolution of the above-captioned action (the "Action"), subject to the approval of the Court.[1]

---

[1] Certain capitalized terms are defined in ¶ 1 below.

**WHEREAS,**

<strong>The Restatement Claims</strong>

A.       By letter dated February 23, 2016, Plaintiff issued a demand on the Board of Directors of Akorn (the "Board") to take action against certain current and former directors and officers of the Company for alleged breaches of fiduciary duty and unjust enrichment (the "First Demand") in connection with a then-pending restatement of Akorn's financial statements (the "Restatement").  The First Demand alleged that each of these directors and officers breached their fiduciary duties of loyalty and good faith by knowingly: (i) disseminating and filing financial statements that were materially false and misleading; (ii) failing to implement necessary internal and financial controls; and (iii) misrepresenting that the Company maintained effective controls. The First Demand also alleged that certain directors and officers used their knowledge of material nonpublic information to enrich themselves unjustly via the improper disposition of Akorn common stock.

B.       On March 8, 2016, Plaintiff filed a Class Action Complaint for Equitable and Injunctive Relief (the "Original Petition") against Akorn and Kapoor, Abramowitz, Johnson, Meyer, Graves, Rappuhn, Tambi and Weinstein (collectively, the "Director Defendants") seeking to compel Akorn to provide Plaintiff and other Akorn shareholders with certain outstanding financial statements and to compel Akorn and the Board to schedule, provide notice of, and hold an annual meeting of shareholders.

C.      By letter dated March 29, 2016, Plaintiff was advised that a special committee of the Board (the "Special Committee") was conducting an inquiry into the allegations contained in the First Demand.

D.      Between May 10, 2016, and May 20, 2016, Akorn mooted the claims asserted in the Original Petition by publishing certain outstanding financial statements with the U.S. Securities and Exchange Commission (the "SEC") and scheduling an annual meeting of shareholders.

E.      On June 10, 2016, Plaintiff filed a Verified Amended Complaint (the "Amended Petition") removing the mooted claims that were asserted in the Original Petition, incorporating the allegations made in the First Demand, and asserting claims for breach of fiduciary duty in connection with the Restatement (the "Restatement Claims") against the Director Defendants and the following current and former officers of Akorn: Rai, Dick, Bonaccorsi, and Silverberg (together with the Director Defendants, the "Restatement Defendants").  The Amended Petition also asserted claims for breach of fiduciary duty against Kapoor, Johnson, Tambi, Graves, Weinstein, Rai, Dick, Bonaccorsi and Silverberg in connection with their dispositions of Akorn common stock while allegedly in possession of material non-public information about the Company (the "Insider Trading Claims").

F.      By letter dated August 29, 2016, the Special Committee advised Plaintiff that (1) the Special Committee had concluded its inquiry into the allegations contained in the First Demand and concluded that it would not be in the best interests of the Company to pursue litigation based on these allegations, and (2) the Board had adopted the Special Committee's recommendation.

G.      On September 23, 2016, Akorn filed a motion seeking to dismiss the Amended Petition pursuant to La. R.S. §12:1-744 based upon the Board's determination not to take action in response to the First Demand (the "Initial Motion to Dismiss").

H.      Shortly after the filing of the Initial Motion to Dismiss, Plaintiff commenced discovery into whether the Company complied with La. R.S. § 12:1-744.  On October 2, 2016, Plaintiff served Akorn with a First Request for Production of Documents (the "Initial Document Request").   On November 2, 2016, Akorn responded to the Initial Document Request and thereafter produced responsive documents.

I.      Upon reviewing the Company's document production, on December 14, 2016, Plaintiff served Akorn with a Second Request for Production of Documents (the "Second Document Request").  On January 13, 2017, Akorn responded to the Second Document Request and thereafter produced additional responsive documents.  Following Akorn's response to the Second Document Request, Plaintiff and Akorn met and conferred on certain outstanding discovery issues.

**The Data Integrity Claims**

J.      In the midst of discovery in connection with the Initial Motion to Dismiss, on April 24, 2017, Akorn announced that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") with Fresenius Kabi AG ("Fresenius") pursuant to which Fresenius would acquire the Company.

K.      On February 26, 2018, Akorn issued a public statement disclosing that it and Fresenius were investigating alleged breaches by Akorn of U.S. Food and Drug Administration ("FDA") data integrity requirements relating to product development at the Company.

L.      On April 22, 2018, Fresenius announced that it had decided to terminate the Merger Agreement based on, among other things, alleged breaches by Akorn of FDA data integrity requirements.

M.      On April 23, 2018, Akorn announced that it had filed a complaint in the Delaware Court of Chancery seeking to compel Fresenius to fulfill its obligations under the Merger Agreement (the "Merger Litigation").

N.      On May 22, 2018, Plaintiff submitted a demand to the Board to take action against certain directors and officers of the Company in connection with the Company's alleged breaches of FDA data integrity requirements (the "Second Demand").  The Second Demand alleged that these directors and officers breached their fiduciary duties of loyalty and good faith by, among other things, (i) knowingly abdicating their responsibility to make a good faith effort to oversee the Company's operations, internal controls, and FDA data integrity and compliance processes, and/or (ii) participating in or knowingly permitting the Company to engage in fraudulent and illegal conduct that damaged the Company.

O.      On September 21, 2018, Plaintiff filed a Verified Second Amended and Restated Complaint (the "Second Amended Petition") reasserting the Restatement and Insider Trading Claims asserted against the Restatement Defendants in the Amended Petition and asserting claims for breach of fiduciary duties and unjust enrichment relating to the Company's alleged non-

-5-

compliance with FDA data integrity requirements (the "Data Integrity Claims") against the Individual Defendants.

P.    On October 22, 2018, Plaintiff (1) served Akorn with a Third Request for Production of Documents seeking the documents and communications produced by Akorn in the Merger Litigation, and (2) issued a letter to counsel for the Restatement Defendants outlining certain outstanding discovery issues relating to the Initial Motion to Dismiss.

Q.    On November 21, 2018, Akorn and all Individual Defendants except Silverberg (together, the "Akorn Defendants") moved the Court for the entry of a protective order staying all discovery in the Action until the completion of preliminary motion practice (the "Akorn Defendants' Motion for Protective Order").

R.    From late November to early December 2018, Plaintiff issued subpoenas to Cerulean Associates LLC ("Cerulean") and Lachman Consultant Services, Inc. ("Lachman") seeking all documents and communications produced by Cerulean and Lachman in the Merger Litigation.  Cerulean produced responsive documents in early December 2018.

S.    On December 3, 2018, the Akorn Defendants filed a motion to dismiss the Second Amended Petition under La. R.S. §12:1-744, or in the alternative, a peremptory exception of no cause of action and dilatory exceptions of vagueness and ambiguity ("Akorn Defendants' Motion to Dismiss").

T.    On December 7, 2018, Plaintiff served Silverberg with a First Request for Production of Documents seeking all documents and communications produced by Silverberg in the Merger Litigation.

U.     On December 13, 2018, the Akorn Defendants filed a motion requesting that the Court hear the Akorn Defendants' Motion for Protective Order on an expedited basis, to which Plaintiff responded on December 17, 2018.

V.     On January 7, 2019, Silverberg moved the Court for the entry of a protective order staying discovery until the completion of preliminary motion practice (together with the Akorn Defendants' Motion for Protective Order, the "Motions for Protective Orders").

W.     On January 11, 2019, Silverberg filed a joint motion to dismiss the Second Amended Petition on the same bases as the Akorn Defendants' Motion to Dismiss ("Silverberg's Motion to Dismiss," and together with the Akorn Defendants' Motion to Dismiss, the "Motions to Dismiss").

X.     On January 28, 2019, Plaintiff filed oppositions to (1) the Motions to Dismiss, and (2) Motions for Protective Orders.

Y.     On February 4, 2019, the Court held a hearing on the Motions to Dismiss and Motions for Protective Order.

Z.     On February 14, 2019, the Court entered an order staying discovery in the Action until the Court's next scheduled hearing.

AA.    On March 6, 2019, the Court entered an Order appointing Lee C. Kantrow, Esq. as Special Master to review the pleadings and record in the Action and to recommend to the Court an appropriate disposition of the Motions to Dismiss.   The Order deferred consideration of the Motions for Protective Orders pending rulings on the Motions to Dismiss.

BB.     On May 13, 2019, the Special Master submitted to the Court a Written Report and Recommendation recommending that (1) the Akorn Defendants' Motion to Dismiss be granted with respect to all claims, and (2) Silverberg's Motion to Dismiss be granted in part with respect to the Restatement Claims and Insider Trading Claims and denied in part with respect to the Data Integrity Claims (the "Report and Recommendation").  No party objected to the Report and Recommendation.

CC.     On June 5, 2019, the Parties participated in a telephone conference with the Court to obtain guidance as to how the Court expected to rule on the Report and Recommendation. Thereafter, the Parties met and conferred on a form of Judgment and Reasons for Judgment for the Court to enter to implement the findings of the Special Master contained in the Report and Recommendation.  The Parties exchanged drafts of the Judgment and Reasons for Judgment, but were unable to come to an agreement.

DD.     On July 11, 2019, Plaintiff filed a Third Amended Petition asserting Data Integrity Claims against Rai, Kutinsky, Lichter and Silverberg.

EE.     On July 15, 2019, the Akorn Defendants filed a notice indicating their intent to oppose the filing of the Third Amended Petition.

FF.     On August 15, 2019, the Parties participated in a telephone conference with the Court to obtain guidance on further proceedings in this matter.  Thereafter, the Parties continued to exchange drafts of a Judgment and Reasons for Judgment for eventual submission to the Court.

GG.    On September 27, 2019, the Parties jointly submitted a Judgment and Proposed Reasons for Judgment for approval and execution by the Court.  On October 7, 2019, the Court entered the Judgment and Proposed Reasons for Judgment.

### The Parties' Settlement Negotiations

HH.    During negotiations regarding the terms of the Judgment and Reasons for Judgment, counsel for the Akorn Defendants and Plaintiff commenced extensive, arm's-length negotiations concerning a possible settlement of the Action.  On September 10, 2019, Plaintiff and Akorn executed a confidentiality agreement (the "Confidentiality Agreement").  Thereafter, the Company commenced production of confidential information to Plaintiff to facilitate these discussions.

II.    On September 16, 2019, Plaintiff submitted to counsel for the Akorn Defendants a settlement demand that was informed by, among other things, the confidential documents produced by Akorn pursuant to the Confidentiality Agreement.  Thereafter, counsel for Plaintiff and counsel for the Akorn Defendants engaged in extensive, arm's-length negotiations regarding a potential resolution of the Action, which included the production of additional confidential materials pursuant to the Confidentiality Agreement and the exchange of multiple drafts of a term sheet memorializing the terms of an agreement (the "Term Sheet").  On October 11, 2019, counsel for Plaintiff and counsel for the Akorn Defendants reached an agreement on the Term Sheet, which was presented to Akorn's Board for approval.  On October 18, 2019, the Board, in the exercise of its business judgment, approved the Term Sheet as in the best interests of Akorn and its shareholders, and the Term Sheet was fully executed later that day.

**Plaintiff's Claims and Benefits of the Settlement**

JJ.     Plaintiff and Plaintiff's Counsel believe the claims asserted in the Action have merit and that their investigation supports the claims asserted.  Without conceding the merit of any of Defendants' defenses or the lack of merit of any of their own allegations, and to avoid the potentially protracted time, expense, and uncertainty associated with continued litigation, including a potential trial and appeal, Plaintiff and Plaintiff's Counsel have concluded that it is desirable that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation.  Plaintiff and Plaintiff's Counsel recognize the significant risk, expense, and length of continued proceedings necessary to prosecute the Action through trial and through possible appeal.  Plaintiff and Plaintiff's Counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in a complex case such as the Action, as well as the difficulties and delays inherent in such litigation.  Based on their evaluation, Plaintiff and Plaintiff's Counsel have determined that the Settlement is in the best interests of Akorn and its shareholders, and have agreed to settle the Action upon the terms and subject to the conditions set forth herein.

KK.     Plaintiff and Plaintiff's Counsel base this conclusion upon, among other things, their extensive investigation relating to the claims and the underlying events alleged in the Action, including, but not limited to: (1) inspection, analysis, and review of (a) Akorn's public filings with the SEC, press releases, announcements, transcripts of investor conference calls, and news articles; (b) Form 483s and warning letters issued by the FDA to the Company; (c) verified pleadings, trial transcript and exhibits, and pre- and post-trial and appellate briefing filed in the Merger Litigation;

(d) discovery produced by Akorn in connection with the Initial Motion to Dismiss and discovery produced by Cerulean in connection with the subpoena issued to it; and (e) confidential documents produced by Akorn in connection with the extensive, arm's-length settlement negotiations with counsel for the Company; (2) legal and factual investigation in connection with drafting the Demands (as defined further in ¶ 1.2 hereof); (3) legal and factual investigation in connection with drafting four petitions in the Action; (4) research regarding the applicable law with respect to the claims asserted in the Action and the potential defenses thereto; (5) additional research in connection with opposing the Motions to Dismiss and Motions for Protective Orders; and (6) participation in extensive, arm's-length settlement discussions with counsel for the Akorn Defendants.

### Defendants' Denials of Wrongdoing and Liability

LL.     Defendants have vigorously denied, and continue to deny vigorously, any and all allegations of wrongdoing, fault, liability, or harm to Akorn or its stockholders alleged by Plaintiff in the Action, including, for the avoidance of doubt, the Demands (as defined further in ¶ 1.2 hereof), Original Petition, Amended Petition, Second Amended Petition, and Third Amended Petition.  Nonetheless, Defendants have also taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like the Action.  Defendants have therefore determined that it is desirable that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation in order to, among other things, (i) avoid the expense, inconvenience, and distraction of continued litigation, and (ii) avoid any possibility of a finding of liability, however remote.  Defendants believe that the Settlement set forth in this

Stipulation is in the best interests of, and confers substantial benefits upon, Akorn and its stockholders.

**NOW, THEREFORE IT IS HEREBY STIPULATED AND AGREED**, by and among Plaintiff (for herself and derivatively on behalf of Akorn), the Individual Defendants, and Akorn, by and through their respective counsel or attorneys of record, as follows:

**1.     Definitions**

As used in this Stipulation, the following terms have the meanings specified below.  In the event of any inconsistency between any definition set forth below and any definition set forth in any document related to the Settlement set forth in this Stipulation, the definitions set forth below shall control.

1.1     "Court" means the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana.

1.2     "Demands" means the First Demand and Second Demand.

1.3     "Effective Date" means the first date by which all of the events and conditions specified in ¶ 6.1 of this Stipulation have been met and have occurred.

1.4     "Final" means the time when the Final Order and Judgment, having been entered, has not been reversed, vacated, or modified in any way and is no longer subject to appellate review, either because of disposition on appeal and conclusion of the appellate process or because of passage, without action, of time for seeking appellate review.  More specifically, it is that situation when: (1) either no appeal has been filed and the time has passed for any notice of appeal to be timely filed in the Action; or (2) an appeal has been filed and the court of appeals has/have either

affirmed the judgment or dismissed that appeal and the time for any reconsideration or further appellate review has passed; or (3) a higher court has granted further appellate review and that court has either affirmed the underlying judgment or affirmed the court of appeals' decision affirming the judgment or dismissing the appeal.

1.5     "Final Order and Judgment" or "Judgment" means the Final Order and Judgment to be rendered by the Court, substantially in the form attached hereto as Exhibit C.

1.6     "KTMC" means the law firm of Kessler Topaz Meltzer & Check, LLP.

1.7     "Notice" means the Notice of Proposed Settlement to be provided by Akorn to its stockholders, substantially in the form attached hereto as Exhibit A.

1.8     "Parties" means, collectively, Plaintiff and Defendants.

1.9     "Person" means an individual, corporation, limited liability corporation, professional corporation, partnership, limited partnership, limited liability partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assignees.

1.10    "Plaintiff's Counsel" means KTMC and Tarcza & Associates, LLC.

1.11    "Preliminary Approval Order" means the order to be rendered by the Court preliminarily approving the Settlement, substantially in the form attached hereto as Exhibit B.

1.12    "Related Persons" means each of a Person's spouses, heirs, executors, estates, or administrators, each of a Person's present and former attorneys, legal representatives, and assigns in connection with the Action, and all of a Person's past and present directors, officers, agents,

advisors (including, for the avoidance of doubt, financial and legal advisors), employees, affiliates, predecessors, successors, and parents.

1.13    "Released Claims" means Released Plaintiff's Claims and Released Defendants' Claims.

1.14    "Related Derivative Actions" means the related shareholder derivative actions brought on behalf of Akorn by purported shareholders of the Company captioned *In re Akorn, Inc. Shareholder Derivative Litigation*, C.A. No. 18-cv-7374 (N.D. Ill.), *Pulchinski v. Abramowitz et al.*, No. 2019CH11186 (Cir. Ct. Cook Cty. Ill.), and *The Booth Family Trust v. Kapoor et al.*, No. 2019CH12793 (Cir. Ct. Cook Cty. Ill.).

1.15    "Released Defendants' Claims" means any and all actions, suits, claims, demands, rights, liabilities, causes of action, obligations, duties, losses, damages, costs, debts, expenses, interest, penalties, sanctions, fees (including, for the avoidance of doubt, attorneys' fees), agreements, judgments, decrees, matters, issues, and controversies of any kind, nature, or description whatsoever, whether known or unknown, disclosed or undisclosed, suspected or unsuspected, contingent or absolute, accrued or unaccrued, apparent or unapparent, foreseen or unforeseen, matured or not matured, liquidated or not liquidated, including both known claims and Unknown Claims (as defined in ¶ 1.18), that have been or that might have been asserted by the Released Persons against Plaintiff, Plaintiff's Counsel, or any Akorn stockholder or their counsel arising out of the institution, prosecution, settlement, or resolution of the Action or the Demands. Released Defendants' Claims shall not include any claims to enforce the Settlement.

1.16    "Released Persons" shall mean and include (i) each of the Individual Defendants; (ii) Akorn; and (iii) each and all of the foregoing Persons' Related Persons.  Notwithstanding the foregoing, however, Released Persons shall not include former Akorn employee Amir S. Takla or any of his spouses, heirs, executors, estates, or administrators.

1.17    "Released Plaintiff's Claims" means any and all actions, suits, claims, demands, rights, liabilities, causes of action, obligations, duties, losses, damages, costs, debts, expenses, interest, penalties, sanctions, fees (including, for the avoidance of doubt, attorneys' fees), agreements, judgments, decrees, matters, issues and controversies of any kind, nature or description whatsoever, whether known or unknown, disclosed or undisclosed, suspected or unsuspected, contingent or absolute, accrued or unaccrued, apparent or unapparent, foreseen or unforeseen, matured or not matured, liquidated or not liquidated, including both known claims and Unknown Claims (as defined in ¶ 1.18), that have been or that might have been asserted by Plaintiff and/or any Akorn stockholder against any Released Persons derivatively, or otherwise pursuant to the internal affairs doctrine under the law of the State of Louisiana, based upon the facts, transactions, events, occurrences, acts, disclosures, statements, omissions or failures to act which were alleged in the Action or the Demands.  Notwithstanding the foregoing, however, Released Plaintiff's Claims shall not include:  (i) any claims to enforce the Settlement or (ii) any claims against former Akorn employee Amir S. Takla, his spouses, heirs, executors, estates, administrators or anyone acting in concert with him based upon the facts, transactions, events, occurrences, acts, disclosures, statements, omissions or failures to act alleged in *Akorn, Inc. v. Amir S. Takla*, No. SOM-L-001620-19 (N.J. Super. Ct.).

1.18    "Settlement" means the settlement documented in this Stipulation.

1.19    "Unknown Claims" means any and all Released Plaintiff's Claims which Plaintiff, Akorn or any Akorn stockholder does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Persons, and any and all Released Defendants' Claims which any Released Person does not know or suspect to exist in his, her, or its favor at the time of the release of Plaintiff, Plaintiff's Counsel, Akorn, and any Akorn stockholder, which if known by him, her, or it, might have affected his, her, or its decision(s) with respect to the Settlement.  With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date, Plaintiff, Individual Defendants, and Akorn, shall expressly waive, and each of Akorn's stockholders by operation of the Judgment shall be deemed to have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, any foreign nation, or any principle of common or civilian law, which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

The Parties acknowledge that they may discover facts in addition to or different from those now known or believed to be true by them, with respect to the Released Claims, as the case may be, but it is the intention of the Parties to completely, fully, finally, and forever compromise, settle, release, discharge, and extinguish any and all of the Released Claims, whether known or unknown, disclosed or undisclosed, suspected or unsuspected, contingent or absolute, accrued or unaccrued,

apparent or unapparent, foreseen or unforeseen, matured or not matured, liquidated or not liquidated, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery of additional or different facts.

**2.    The Settlement Consideration**

2.1    In consideration of the settlement of the Released Plaintiff's Claims against the Released Persons and Plaintiff's obligations as described herein, Akorn, through its Board, shall adopt and implement the following corporate governance reforms:

1.    Quality Compliance Committee.  No later than thirty (30) days following the Settlement becoming Final, the Board shall have established the Quality Compliance Committee as a standing committee of the Board and the Committee shall have adopted a formal charter (the "Charter") in the form attached hereto as Exhibit D.  The Charter shall be maintained in the form set forth in Annex A for a period of not less than three (3) years; provided, however, that nothing shall preclude the good faith amendment, modification, or rescission of the Charter as required by applicable law, regulation, technological advancement, change in control, corporate reorganization, or for other good cause.  Following adoption, the Charter will be made available to shareholders on the Corporate Governance section of Akorn's website at www.akorn.com.

2.    Compensation.  In setting incentive plan performance metrics for calendar years 2020 and 2021, the Company will allocate no less than 10% of total weight to corporate performance metrics tied to quality and/or FDA compliance.

3.    Clawback Policy.  The Compensation Committee of the Board will formally amend its Clawback Policy to add the following to the list of "Covered Events":  severe or

intentional violations of FDA regulatory standards by a Covered Employee (as that term is defined by the Clawback Policy) that lead to an FDA warning letter or enforcement action (such severe or intentional violations, a "Regulatory Event"). For a period of three (3) years, the amended Clawback Policy shall not be rescinded, amended, or modified in any fashion that would restrict or curtail its application to Regulatory Events; provided, however, that nothing shall preclude the good faith amendment, modification, or rescission of the Clawback Policy as required by applicable law, regulation, technological advancement, change in control, corporate reorganization, or for other good cause. The amended Clawback Policy will be disclosed to shareholders and filed with the SEC in the Company's next annual proxy statement.

      2.2    Defendants acknowledge that the Board and Akorn management were fully informed of Plaintiff's Demands and of the issues in dispute in the Action, and understood that the following corporate governance and/or internal control reforms, policies, and changes enacted or implemented at Akorn would be responsive to the issues and concerns raised in the Demands and in the Action:

      1.    adopting an amended stock trading policy that is contained in the Company's Corporate Compliance Manual;

      2.    the following appointments to Akorn's executive team:

      (a)    Douglas Boothe as Chief Executive Officer to replace Rai;

      (b)    Erislandy Dorado-Boladeres as Executive Vice President, Global Quality;

      (c)    Christopher Young as Executive Vice President, Global Operations;

(d) Bill Ostrowski as Chief Information Officer; and

(e) Sarah Iles as Chief Compliance Officer.

3. increasing the size of the Board by two seats and appointing Mr. Boothe and Thomas G. Moore as directors;

4. the adoption and implementation of quality and information technology initiatives at the Company which include, but are not limited to:

(a) the creation of the company-wide Quality Systems Corrective Action Plan ("QSCAP") to address, among other things, core quality processes and overall compliance oversight; QSCAP will also oversee the Company's new Quality Management Corrective Action Plan, which is designed to review and revise systems, processes, and procedures that are part of Akorn's Quality Management System ("QMS") and takes into account industry best practices, findings from regulatory inspections, and other assessments, and historical data that touch on QMS performance.

(b) the initiation of a comprehensive global data integrity investigation for manufacturing and research and development ("R&D") sites to evaluate all known data integrity issues that have been identified through various input sources.

(c)     reorganizing the Company's quality function to provide direct reporting relationships between operational, compliance, and corporate surveillance quality functions through:

(i)     Quality Site Heads now reporting to Mr. Dorado-Boladeres, and Senior Vice President, Corporate Quality Kim Wasserkrug directly overseeing QSCAP efforts;

(ii)    establishing an R&D Quality Unit to support R&D facilities in Vernon Hills, Illinois, and Cranbury, New Jersey;

(iii)   establishing a data integrity team at each of the Company's R&D facilities;

(iv)    establishing a GXP Quality Head role that reports directly to Mr. Dorado-Boladeres and will focus directly on the regulatory and compliance aspects of Akorn's information technology ("IT") driven initiatives that will affect all operational aspects at the Company;

(v)     establishing a Technical Service Structure within the quality organization that will oversee Akorn's Analytical Technical Services and Validation Teams across the Company's manufacturing network; and

(vi)    establishing a new Quality Head of Compliance position that directly reports to Mr. Dorado-Boladeres that will be

responsible for all internal and external audit functions and vendor certifications, and tasked to implement a newly created role of Regulatory Intelligence that will identify industry and compliance trends to allow Akorn to evaluate and implement proactively to its organization.

(d)   various initiatives implemented in consultation with NSF International, such as:

(i)   the formulation of a Data Integrity Assessment Plan to review abbreviated new drug applications and certain other data from the Company's Somerset facility, as well as certain data generated by Cranbury and Vernon Hills;

(ii)   data integrity training development and implementation;

(iii)   development and implementation of a stability-indication test method assessment program and enhanced training/certification program for data reviewers;

(iv)   developing a "Fundamentals of Pharmaceuticals" training program;

(v)   reviewing trial injection lab chromatography systems;

(vi)   lab and investigation program reviews;

(vii)   contamination control strategy development;

(viii)   retrospective batch record review;

-21-

        (ix)     quality staff augmentation; and

        (x)     review of updated smoke studies.

(e)     Various initiatives implemented in consultation with PricewaterhouseCoopers, such as:

        (i)     aseptic core monitoring;

        (ii)     aseptic coaching and monitoring;

        (iii)     laboratory equipment remediation;

        (iv)     assessment and enhancement of media fill and smoke study programs; and

        (v)     quality staff augmentation.

2.3     In consideration of the release of the Released Defendants' Claims against Plaintiff, Plaintiff's Counsel, and all other Akorn stockholders, and Defendants' obligations as described herein, Plaintiff and Plaintiff's Counsel shall cooperate and use their reasonable best efforts to bring about the settlement or dismissal with prejudice of the Related Derivative Actions and any actions filed against any Defendant hereafter asserting claims derivatively or otherwise pursuant to the internal affairs doctrine under the law of the State of Louisiana on the basis of the same nucleus of operative facts as the Action and the Demands.

## 3.    Procedure for Implementing the Settlement

3.1     After executing the Stipulation, Plaintiff shall file a motion and apply for entry of the Preliminary Approval Order substantially in the form of Exhibit B attached hereto, requesting, *inter alia*, (i) a stay of further proceedings in this Action except as may be necessary to implement

the Settlement, (ii) preliminary approval of the Settlement set forth in the Stipulation and (iii) approval of the dissemination of the Notice to Akorn stockholders in the form attached as Exhibit A hereto, which Defendants shall not oppose and Plaintiff may file as an unopposed motion.  Akorn and/or its insurers shall be solely responsible for the costs of disseminating the Notice set forth herein and/or any other notice as may be required by the Court.

3.2     Plaintiff will request that, after the Notice is disseminated, the Court hold a hearing to consider and determine whether to (i) approve the terms of the Settlement as fair, reasonable, and adequate, (ii) approve the payment of attorneys' fees and reimbursement of expenses in the amount separately negotiated by the Parties as set forth in ¶ 5.1 herein, and (iii) enter the Final Order and Judgment substantially in the form of Exhibit C hereto.

**4.     Releases**

4.1     Upon the Effective Date, Plaintiff (acting on her own behalf and derivatively on behalf of Akorn), Akorn, and each and every other Akorn stockholder claiming by, through, in the right of, derivatively, or on behalf of Akorn, or otherwise pursuant to the internal affairs doctrine under the law of the State of Louisiana, on behalf of themselves and their Related Persons, shall and hereby do fully, finally, and forever release, relinquish, discharge, and dismiss, with prejudice, the Released Persons from any and all Released Plaintiff's Claims, and shall forever be barred and enjoined from commencing, instituting, or prosecuting any of the Released Plaintiffs' Claims against any of the Released Persons.  In addition, Plaintiff agrees on behalf of herself and her Related Persons not to initiate, prosecute, assist in, or facilitate the prosecution of any other claims arising out of the same nucleus of operative facts giving rise to the Action or the Demands.

4.2     Upon the Effective Date, each of the Released Persons shall fully, finally, and forever release, relinquish, and discharge Plaintiff, Plaintiff's Counsel, and all other Akorn stockholders and their counsel from any and all Released Defendants' Claims, and shall forever be barred and enjoined from commencing, instituting, or prosecuting any of the Released Defendants' Claims against any of Plaintiff, Plaintiff's Counsel, and all other Akorn stockholders and their counsel.

**5.      Plaintiff's Counsel's Attorneys' Fees and Reimbursement of Expenses**

5.1     After negotiation of the principal terms of the Settlement, Plaintiff's Counsel and the Akorn Defendants separately negotiated at arm's-length the amount of attorneys' fees and reimbursement of expenses to be paid to Plaintiff's Counsel.  As a result of these negotiations, the Company and/or its insurers agreed to pay an award of attorneys' fees and expenses to Plaintiff's Counsel in the total amount of $2 million (the "Fee and Expense Award"), subject to approval of the Court.  The Parties mutually agree that the Fee and Expense Award is fair and reasonable in light of the substantial benefits conferred upon Akorn and its stockholders by the Settlement.  The Fee and Expense Award shall be paid to KTMC within five (5) business days after entry of the Final Order and Judgment, notwithstanding the existence of any timely filed objections to the Settlement, or potential appeal.

5.2     Except as expressly provided herein, (i) Plaintiff and Plaintiff's Counsel shall bear their own fees, costs, and expenses, and Defendants shall not be liable for or obligated to pay any fees, costs, expenses or disbursements, or incur any expenses on behalf of any Person (including, without limitation, Plaintiff or Plaintiffs' Counsel) directly or indirectly, in connection with the

Action or this Stipulation; and (ii) no Released Person shall assert any claim for fees, costs, expenses or disbursements against Plaintiff or Plaintiff's Counsel.

5.3     In the event that the Fee and Expense Award is reduced, reversed, modified, or not approved in the full amount requested, if the Settlement is terminated or is not approved by the Court, or if there is an appeal and any order approving the Settlement does not become Final, Plaintiff's Counsel shall refund the advanced amount consistent with such reversal or modification within ten (10) business days after entry of such order.  Notwithstanding the foregoing, any reduction, reversal, modification, or non-approval of the Fee and Expense Award shall not in any way delay or preclude (i) the Final Order and Judgment from becoming Final or (ii) the Effective Date from occurring.  It is not a condition of this Stipulation or the Settlement that any Fee and Expense Award be awarded by the Court to Plaintiff's Counsel.  In the event that attorneys' fees and/or expenses are not awarded by the Court or are awarded in an amount that is unsatisfactory to Plaintiff's Counsel, or in the event that an attorneys' fee and expense award is vacated or reduced on appeal, this Stipulation and the Settlement, including the effectiveness of the releases set forth in ¶¶ 4.1-4.2 and other obligations of the Parties under the Settlement, nevertheless shall remain in full force and effect.

5.4     The Defendants shall not have any responsibility or liability whatsoever with respect to the allocation of the Fee and Expense Award among Plaintiff's Counsel, or any other counsel representing Plaintiff or any other Akorn stockholder, or any other counsel asserting a right to recover any portion of the Fee and Expense Award.  Any dispute regarding any allocation of fees or expenses among counsel shall have no effect on the Settlement.

**6.      Conditions of Settlement, Effect of Disapproval, Cancellation or Termination**

6.1      The Effective Date of the Stipulation shall be conditioned on the occurrence of all of the following events:

1.      the entry by the Court of the Final Order and Judgment substantially in the form of Exhibit C hereto; and

2.      the Final Order and Judgment becoming Final.

6.2      Unless the Parties mutually agree in writing, by and through their respective counsel, to proceed with the Stipulation, this Stipulation shall be canceled and terminated effective fifteen (15) calendar days following:  (i) the Court's final refusal to enter the Final Order and Judgment substantially in the form of Exhibit C hereto, or (ii) the date upon which an order vacating, modifying, revising, or reversing the Final Order and Judgment becomes final.

6.3      In the event that the Stipulation or Settlement is not approved by the Court, or the Settlement is terminated for any reason, the Parties shall be restored to their respective positions in the Action as of the last date before this Stipulation, and all negotiations, proceedings, documents prepared and statements made in connection herewith shall be without prejudice to the Parties, shall not be deemed or construed to be an admission by any Party of any act, matter, or proposition, and shall not be used in any manner for any purpose in any subsequent proceeding in the Action or in any other action or proceeding.  In such event, the terms and provisions of the Stipulation, with the exception of ¶¶ 1.1-1.18, 5.3, 6.2-6.3, 7.3-7.4, 7.6-7.9, 7.11, 7.13 and 7.14 herein, shall have no further force and effect with respect to the Parties and shall not be used in the

Action or in any other proceeding for any purpose, and any judgment or orders entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*.

**7.      Miscellaneous Provisions**

7.1      The Parties (a) acknowledge that it is their intent to consummate this Stipulation; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of this Stipulation, including, but not limited to, resolving any objections raised with respect to the Settlement.

7.2      The Parties intend this Settlement to be a final and complete resolution of all disputes among Plaintiff, the Individual Defendants, and Akorn with respect to the Action.  The Settlement comprises contested claims and shall not be deemed an admission by any Party as to the merits of any claim, allegation, or defense.  The Parties further agree that the claims are being settled voluntarily after consultation with competent legal counsel.  The Final Order and Judgment shall contain a finding that during the course of the litigation, the Parties and their respective counsel at all times complied with the requirements of La. Code Civ. Proc. art. 863 and all other similar laws.

7.3      The provisions contained in this Stipulation (including any exhibits attached hereto) shall not be deemed a presumption, concession, or admission by any Party of any fault, liability, or wrongdoing, or lack of merit as to any facts or claims alleged or asserted in the Action or in any other action or proceeding, and shall not be interpreted, construed, deemed, invoked, offered, or received into evidence or otherwise used by any person in the Action or in any other action or

proceeding, whether civil, criminal, or administrative, except in connection with any proceeding to enforce the terms of the Settlement.  Notwithstanding the foregoing, the Released Persons may file the Stipulation and/or the Final Order and Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, full faith and credit, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

7.4    The exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

7.5    The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

7.6    This Stipulation and the exhibits attached hereto constitute the entire agreement among the Parties and no representations, warranties, or inducements have been made to any Party concerning the Stipulation or any of its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.  Except as otherwise provided herein, each Party shall bear its own costs.

7.7    Each counsel or other Person executing this Stipulation or its exhibits on behalf of any Party hereby warrants that such Person has the full authority to do so.

7.8    This Stipulation may be executed in one or more counterparts.  A faxed or pdf signature shall be deemed an original signature for the purposes of this Stipulation.  All executed counterparts, and each of them, shall be deemed to be one and the same instrument.  A complete set of counterparts, either originally executed or copies thereof, shall be filed with the Court.

7.9     This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties and the Released Persons.

7.10    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation and Final Order and Judgment, including but not limited to, payment of any Fee and Expense Award ordered by the Court, and the Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation.

7.11    This Stipulation and the exhibits attached hereto shall be considered to have been negotiated, executed, delivered, and wholly performed in the State of Louisiana, and the rights and obligations of the parties to this Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Louisiana without giving effect to that state's choice-of-law principles.

7.12    Plaintiff and Plaintiff's Counsel represent and warrant that: (i) Plaintiff is a stockholder of Akorn and was a stockholder of Akorn at all relevant times for purposes of maintaining standing in the Action; and (ii) Plaintiff has not assigned, encumbered, or in any manner transferred, and will not assign, encumber, or in any manner transfer, in whole or in part any of the Released Plaintiff's Claims.

7.13    All agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Stipulation.

7.14    Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of this Stipulation.

IN WITNESS WHEREOF, the Parties have caused this Stipulation to be executed by their

duly authorized attorneys and to become effective as of the date set forth below.

Dated:  December 12, 2019

_____
Robert H. Baron
**CRAVATH, SWAINE & MOORE LLP**
Worldwide Plaza
825 Eighth Avenue
New York, New York  10019
Telephone: (212) 474-1422
Fax: (212) 474-3700

**JONES WALKER LLP**
Robert B. Bieck, Jr. (LA Bar #3066)
201 St. Charles Avenue – 49th Floor
New Orleans, Louisiana 70170
Telephone: (504) 582-8202
Fax: (504) 589-8202

*Counsel for Nominal Defendant Akorn and*
*Individual Defendants John Kapoor,*
*Kenneth S. Abramowitz, Ronald M.*
*Johnson, Steven J. Meyer, Adrienne Graves,*
*Terry Rappuhn, Brian Tambi, Alan*
*Weinstein, Rajat Rai, Timothy Dick, Joseph*
*Bonaccorsi, David Hebeda, Bruce Kutinsky,*
*Steven Lichter and Duane A. Portwood*

_____
Steven W. Usdin (LA Bar #12986)
**BARASSO USDIN KUPPERMAN**
**FREEMAN & SARVER, L.L.C.**
909 Poydras Street, 24th Floor
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
Fax: (504) 589-9701

*Counsel for Defendant Silverberg*

_____
Eric L. Zagar
**KESSLER TOPAZ**
 **MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, Pennsylvania  19087
Telephone:  (610) 667-7706
Fax:  (267) 948-2512

**TARCZA & ASSOCIATES, LLC**
Robert E. Tarcza (LA Bar #12655)
330 Carondelet Street, Suite 300
New Orleans, Louisiana 70130
Telephone: (504) 525-6696
Fax: (504) 525-6701

*Counsel for Plaintiff*

-30-

duly authorized attorneys and to become effective as of the date set forth below.

Dated: December 12, 2019

_____
Robert H. Baron
**CRAVATH, SWAINE & MOORE LLP**
Worldwide Plaza
825 Eighth Avenue
New York, New York  10019
Telephone: (212) 474-1422
Fax: (212) 474-3700

**JONES WALKER LLP**
Robert B. Bieck, Jr. (LA Bar #3066)
201 St. Charles Avenue – 49th Floor
New Orleans, Louisiana 70170
Telephone: (504) 582-8202
Fax: (504) 589-8202

*Counsel for Nominal Defendant Akorn and
Individual Defendants John Kapoor,
Kenneth S. Abramowitz, Ronald M.
Johnson, Steven J. Meyer, Adrienne Graves,
Terry Rappuhn, Brian Tambi, Alan
Weinstein, Rajat Rai, Timothy Dick, Joseph
Bonaccorsi, David Hebeda, Bruce Kutinsky,
Steven Lichter and Duane A. Portwood*

_____
Steven W. Usdin (LA Bar #12986)
**BARASSO USDIN KUPPERMAN
FREEMAN & SARVER, L.L.C.**
909 Poydras Street, 24th Floor
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
Fax: (504) 589-9701

*Counsel for Defendant Silverberg*

_____
Eric L. Zagar
**KESSLER TOPAZ
 MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, Pennsylvania  19087
Telephone:  (610) 667-7706
Fax:  (267) 948-2512

**TARCZA & ASSOCIATES, LLC**
Robert E. Tarcza (LA Bar #12655)
330 Carondelet Street, Suite 300
New Orleans, Louisiana 70130
Telephone: (504) 525-6696
Fax: (504) 525-6701

*Counsel for Plaintiff*

-30-

| | |
|---|---|
| MERRY A. KOGUT, Individually and on Behalf of Defendant Akorn, Inc., | * DOCKET NO. 646,174, Div. "I" Sec. "24" |
| | * |
| | * |
| Plaintiff, | * 19th JUDICIAL DISTRICT COURT |
| | * |
| v. | * |
| | * PARISH OF EAST BATON ROUGE |
| AKORN, INC., et al., | * |
| | * |
| Defendants. | * STATE OF LOUISIANA |

## <u>NOTICE OF PROPOSED SETTLEMENT</u>

**TO:   ALL RECORD HOLDERS AND BENEFICIAL OWNERS OF STOCK OF AKORN, INC. ("AKORN" OR THE "COMPANY") AS OF _____ \_\_\_, 2019.**

**PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY. THIS NOTICE RELATES TO A PROPOSED SETTLEMENT AND DISMISSAL OF STOCKHOLDER DERIVATIVE LITIGATION AND CONTAINS IMPORTANT INFORMATION REGARDING YOUR RIGHTS.  YOUR RIGHTS MAY BE AFFECTED BY THESE LEGAL PROCEEDINGS.  IF THE COURT APPROVES THE SETTLEMENT, YOU WILL BE FOREVER BARRED FROM CONTESTING THE APPROVAL OF THE PROPOSED SETTLEMENT AND FROM PURSUING THE RELEASED CLAIMS.**

**IF YOU HOLD AKORN STOCK FOR THE BENEFIT OF ANOTHER, PLEASE PROMPTLY TRANSMIT THIS DOCUMENT TO SUCH BENEFICIAL OWNER.**

**THE COURT HAS MADE NO FINDINGS OR DETERMINATIONS CONCERNING THE MERITS OF THE ACTION.  THE RECITATION OF THE BACKGROUND AND CIRCUMSTANCES OF THE SETTLEMENT CONTAINED HEREIN DOES NOT CONSTITUTE THE FINDINGS OF THE COURT.  IT IS BASED ON REPRESENTATIONS MADE TO THE COURT BY COUNSEL FOR THE PARTIES.**

**YOU ARE HEREBY NOTIFIED**, pursuant to an Order of the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana (the "Court"), that a proposed settlement has been reached between the parties to the following derivative action brought on behalf of Akorn, captioned *Kogut v. Akorn, Inc., et al.,* Case No. 646, 174 Div. "I" Sec. "24" (the "Action"), pursuant to a Stipulation and Agreement of Settlement filed with the Court (the "Settlement" or the "Stipulation").

As explained below, on _____, 2020, at \_\_\_ \_\_.m., the Court will hold a hearing (the "Settlement Hearing"): (i) to determine whether to enter an order approving the terms of the Settlement as fair, reasonable and adequate; (ii) to determine whether the Court should award the

requested attorneys' fees and reimbursement of expenses for Plaintiff's Counsel (as those terms are defined below); (iii) to determine whether a final judgment should be entered (the "Judgment"); (iv) to hear and consider any objections to the Settlement and/or request for attorneys' fees and reimbursement of expenses; and (v) to consider such other matters as may be necessary or proper under the circumstances.

The terms of the Settlement are set forth in the Stipulation dated December 12, 2019. The Settlement provides for corporate governance reforms that are designed to strengthen the Company's compliance with U.S. Food and Drug Administration ("FDA") and related regulations and requirements, and compensation practices. If approved by the Court, the Settlement will fully resolve the Action on the terms set forth in the Stipulation and summarized in this Notice, including the dismissal of the Action **WITH PREJUDICE**. For a more detailed statement of the matters involved in the Action, the Settlement, and the terms discussed in this Notice, the Stipulation may be inspected at the Clerk of Court's office at the 19th JDC Courthouse, 300 North Boulevard, Baton Rouge, LA 70801.

This Notice is not intended to be an expression of any opinion by the Court with respect to the merits of the claims made in the Action, but is merely to advise you of the pendency and settlement of the Action.

**There is No Claims Procedure.** This case was brought to protect the interests of Akorn and its stockholders. The Settlement will result in changes to the Company's corporate governance, not in payment to individuals, and, accordingly, there will be no claims procedure.

## I.      THE ACTION

The Action is brought by Plaintiff solely on behalf of and for the benefit of Akorn and against the individual defendants named in the Action (the "Individual Defendants"), who are current and former directors and officers of Akorn.  (The Individual Defendants and Akorn are together referred to as the "Defendants.")  Plaintiff generally alleges, among other things, that the Individual Defendants breached their fiduciary duties in connection with the Company's alleged non-compliance with FDA regulations and requirements. Plaintiff also alleges that certain Individual Defendants were unjustly enriched in connection with compensation received related to the alleged misconduct.

### A.      The Restatement Claims

By letter dated February 23, 2016, Plaintiff issued a demand on the Board of Directors of Akorn (the "Board") to take action against certain current and former directors and officers of the Company for alleged breaches of fiduciary duty and unjust enrichment (the "First Demand") in connection with a then-pending restatement of Akorn's financial statements (the "Restatement"). The First Demand alleged that each of these directors and officers breached their fiduciary duties of loyalty and good faith by knowingly: (i) disseminating and filing financial statements that were materially false and misleading; (ii) failing to implement necessary internal and financial controls; and (iii) misrepresenting that the Company maintained effective controls.  The First Demand also alleged that certain directors and officers used their knowledge of material nonpublic information to enrich themselves unjustly via the improper disposition of Akorn common stock.

On March 8, 2016, Plaintiff filed a Class Action Complaint for Equitable and Injunctive Relief (the "Original Petition") against Akorn and Kapoor, Abramowitz, Johnson, Meyer, Graves, Rappuhn, Tambi and Weinstein (collectively, the "Director Defendants") seeking to compel Akorn to provide Plaintiff and other Akorn shareholders with certain outstanding financial statements and to compel Akorn and the Board to schedule, provide notice of, and hold an annual meeting of shareholders.

By letter dated March 29, 2016, Plaintiff was advised that a special committee of the Board (the "Special Committee") was conducting an inquiry into the allegations contained in the First Demand.

Between May 10, 2016, and May 20, 2016, Akorn mooted the claims asserted in the Original Petition by publishing certain outstanding financial statements with the U.S. Securities and Exchange Commission (the "SEC") and scheduling an annual meeting of shareholders.

On June 10, 2016, Plaintiff filed a Verified Amended Complaint (the "Amended Petition") removing the mooted claims that were asserted in the Original Petition, incorporating the allegations made in the First Demand, and asserting claims for breach of fiduciary duty in connection with the Restatement (the "Restatement Claims") against the Director Defendants and the following current and former officers of Akorn: Rai, Dick, Bonaccorsi, and Silverberg (together with the Director Defendants, the "Restatement Defendants"). The Amended Petition also asserted claims for breach of fiduciary duty against Kapoor, Johnson, Tambi, Graves, Weinstein, Rai, Dick, Bonaccorsi and Silverberg in connection with their dispositions of Akorn

common stock while allegedly in possession of material non-public information about the Company (the "Insider Trading Claims").

By letter dated August 29, 2016, the Special Committee advised Plaintiff that (1) the Special Committee had concluded its inquiry into the allegations contained in the First Demand and concluded that it would not be in the best interests of the Company to pursue litigation based on these allegations, and (2) the Board had adopted the Special Committee's recommendation.

On September 23, 2016, Akorn filed a motion seeking to dismiss the Amended Petition pursuant to La. R.S. §12:1-744 based upon the Board's determination not to take action in response to the First Demand (the "Initial Motion to Dismiss").

Shortly after the filing of the Initial Motion to Dismiss, Plaintiff commenced discovery into whether the Company complied with La. R.S. § 12:1-744.  On October 2, 2016, Plaintiff served Akorn with a First Request for Production of Documents (the "Initial Document Request").  On November 2, 2016, Akorn responded to the Initial Document Request and thereafter produced responsive documents.

Upon reviewing the Company's document production, on December 14, 2016, Plaintiff served Akorn with a Second Request for Production of Documents (the "Second Document Request").  On January 13, 2017, Akorn responded to the Second Document Request and thereafter produced additional responsive documents.  Following Akorn's response to the Second Document Request, Plaintiff and Akorn met and conferred on certain outstanding discovery issues.

### B.    The Data Integrity Claims

In the midst of discovery in connection with the Initial Motion to Dismiss, on April 24, 2017, Akorn announced that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") with Fresenius Kabi AG ("Fresenius") pursuant to which Fresenius would acquire the Company.

On February 26, 2018, Akorn issued a public statement disclosing that it and Fresenius were investigating alleged breaches by Akorn of U.S. Food and Drug Administration ("FDA") data integrity requirements relating to product development at the Company.

On April 22, 2018, Fresenius announced that it had decided to terminate the Merger Agreement based on, among other things, alleged breaches by Akorn of FDA data integrity requirements.

On April 23, 2018, Akorn announced that it had filed a complaint in the Delaware Court of Chancery seeking to compel Fresenius to fulfill its obligations under the Merger Agreement (the "Merger Litigation").

On May 22, 2018, Plaintiff submitted a demand to the Board to take action against certain directors and officers of the Company in connection with the Company's alleged breaches of FDA data integrity requirements (the "Second Demand").  The Second Demand alleged that these directors and officers breached their fiduciary duties of loyalty and good faith by, among other things, (i) knowingly abdicating their responsibility to make a good faith effort to oversee the Company's operations, internal controls, and FDA data integrity and compliance processes, and/or

(ii) participating in or knowingly permitting the Company to engage in fraudulent and illegal conduct that damaged the Company.

On September 21, 2018, Plaintiff filed a Verified Second Amended and Restated Complaint (the "Second Amended Petition") reasserting the Restatement and Insider Trading Claims asserted against the Restatement Defendants in the Amended Petition and asserting claims for breach of fiduciary duties and unjust enrichment relating to the Company's alleged non-compliance with FDA data integrity requirements (the "Data Integrity Claims") against the Individual Defendants.

On October 22, 2018, Plaintiff (1) served Akorn with a Third Request for Production of Documents seeking the documents and communications produced by Akorn in the Merger Litigation, and (2) issued a letter to counsel for the Restatement Defendants outlining certain outstanding discovery issues relating to the Initial Motion to Dismiss.

On November 21, 2018, Akorn and all Individual Defendants except Silverberg (together, the "Akorn Defendants") moved the Court for the entry of a protective order staying all discovery in the Action until the completion of preliminary motion practice (the "Akorn Defendants' Motion for Protective Order").

From late November to early December 2018, Plaintiff issued subpoenas to Cerulean Associates LLC ("Cerulean") and Lachman Consultant Services, Inc. ("Lachman") seeking all documents and communications produced by Cerulean and Lachman in the Merger Litigation. Cerulean produced responsive documents in early December 2018.

On December 3, 2018, the Akorn Defendants filed a motion to dismiss the Second Amended Petition under La. R.S. §12:1-744, or in the alternative, a peremptory exception of no cause of action and dilatory exceptions of vagueness and ambiguity ("Akorn Defendants' Motion to Dismiss").

On December 7, 2018, Plaintiff served Silverberg with a First Request for Production of Documents seeking all documents and communications produced by Silverberg in the Merger Litigation.

On December 13, 2018, the Akorn Defendants filed a motion requesting that the Court hear the Akorn Defendants' Motion for Protective Order on an expedited basis, to which Plaintiff responded on December 17, 2018.

On January 7, 2019, Silverberg moved the Court for the entry of a protective order staying discovery until the completion of preliminary motion practice (together with the Akorn Defendants' Motion for Protective Order, the "Motions for Protective Orders").

On January 11, 2019, Silverberg filed a joint motion to dismiss the Second Amended Petition on the same bases as the Akorn Defendants' Motion to Dismiss ("Silverberg's Motion to Dismiss," and together with the Akorn Defendants' Motion to Dismiss, the "Motions to Dismiss").

On January 28, 2019, Plaintiff filed oppositions to (1) the Motions to Dismiss, and (2) Motions for Protective Orders.

On February 4, 2019, the Court held a hearing on the Motions to Dismiss and Motions for Protective Order.

On February 14, 2019, the Court entered an order staying discovery in the Action until the Court's next scheduled hearing.

On March 6, 2019, the Court entered an Order appointing Lee C. Kantrow, Esq. as Special Master to review the pleadings and record in the Action and to recommend to the Court an appropriate disposition of the Motions to Dismiss.  The Order deferred consideration of the Motions for Protective Orders pending rulings on the Motions to Dismiss.

On May 13, 2019, the Special Master submitted to the Court a Written Report and Recommendation recommending that (1) the Akorn Defendants' Motion to Dismiss be granted with respect to all claims, and (2) Silverberg's Motion to Dismiss be granted in part with respect to the Restatement Claims and Insider Trading Claims and denied in part with respect to the Data Integrity Claims (the "Report and Recommendation").  No party objected to the Report and Recommendation.

On June 5, 2019, the Parties participated in a telephone conference with the Court to obtain guidance as to how the Court expected to rule on the Report and Recommendation.  Thereafter, the Parties met and conferred on a form of Judgment and Reasons for Judgment for the Court to enter to implement the findings of the Special Master contained in the Report and Recommendation.  The Parties exchanged drafts of the Judgment and Reasons for Judgment, but were unable to come to an agreement.

On July 11, 2019, Plaintiff filed a Third Amended Petition asserting Data Integrity Claims against Rai, Kutinsky, Lichter and Silverberg.

On July 15, 2019, the Akorn Defendants filed a notice indicating their intent to oppose the filing of the Third Amended Petition.

On August 15, 2019, the Parties participated in a telephone conference with the Court to obtain guidance on further proceedings in this matter.  Thereafter, the Parties continued to exchange drafts of a Judgment and Reasons for Judgment for eventual submission to the Court.

On September 27, 2019, the Parties jointly submitted a Judgment and Proposed Reasons for Judgment for approval and execution by the Court.  On October 7, 2019, the Court entered the Judgment and Proposed Reasons for Judgment.

### C.    The Parties' Settlement Negotiations

During negotiations regarding the terms of the Judgment and Reasons for Judgment, counsel for the Akorn Defendants and Plaintiff commenced extensive, arm's-length negotiations concerning a possible settlement of the Action.  On September 10, 2019, Plaintiff and Akorn executed a confidentiality agreement (the "Confidentiality Agreement").  Thereafter, the Company commenced production of confidential information to Plaintiff to facilitate these discussions.

On September 16, 2019, Plaintiff submitted to counsel for the Akorn Defendants a settlement demand that was informed by, among other things, the confidential documents produced by Akorn pursuant to the Confidentiality Agreement.  Thereafter, counsel for Plaintiff and counsel for the Akorn Defendants engaged in extensive, arm's-length negotiations regarding a potential resolution of the Action, which included the production of additional confidential materials pursuant to the Confidentiality Agreement and the exchange of multiple drafts of a term sheet memorializing the terms of an agreement (the "Term Sheet").  On October 11, 2019, counsel

for Plaintiff and counsel for the Akorn Defendants reached an agreement on the Term Sheet, which was presented to Akorn's Board for approval.  On October 18, 2019, the Board, in the exercise of its business judgment, approved the Term Sheet as in the best interests of Akorn and its shareholders, and the Term Sheet was fully executed later that day.

## II.   TERMS OF THE PROPOSED DERIVATIVE SETTLEMENT

The principal terms, conditions, and other matters that are part of the Settlement, which is subject to approval by the Court, are summarized below.  This summary should be read in conjunction with, and is qualified in its entirety by reference to, the text of the Stipulation.

### A.   Akorn Agrees to Adopt the Following Corporate Governance Reforms

In consideration of the settlement of the Released Plaintiff's Claims against the Released Persons and Plaintiff's obligations as described herein, Akorn, through its Board, shall adopt and implement the following corporate governance reforms:

1. Quality Compliance Committee.   No later than thirty (30) days following the Settlement becoming Final, the Board shall have established the Quality Compliance Committee as a standing committee of the Board and the Committee shall have adopted a formal charter (the "Charter") in the form attached hereto as Exhibit D.  The Charter shall be maintained in the form set forth in Annex A for a period of not less than three (3) years; provided, however, that nothing shall preclude the good faith amendment, modification, or rescission of the Charter as required by applicable law, regulation, technological advancement, change in control, corporate reorganization, or for other

good cause.  Following adoption, the Charter will be made available to shareholders on the Corporate Governance section of Akorn's website at www.akorn.com.

2. <u>Compensation.</u>  In setting incentive plan performance metrics for calendar years 2020 and 2021, the Company will allocate no less than 10% of total weight to corporate performance metrics tied to quality and/or FDA compliance.

3. <u>Clawback Policy.</u>  The Compensation Committee of the Board will formally amend its Clawback Policy to add the following to the list of "Covered Events":  severe or intentional violations of FDA regulatory standards by a Covered Employee (as that term is defined by the Clawback Policy) that lead to an FDA warning letter or enforcement action (such severe or intentional violations, a "Regulatory Event").  For a period of three (3) years, the amended Clawback Policy shall not be rescinded, amended, or modified in any fashion that would restrict or curtail its application to Regulatory Events; provided, however, that nothing shall preclude the good faith amendment, modification, or rescission of the Clawback Policy as required by applicable law, regulation, technological advancement, change in control, corporate reorganization, or for other good cause.  The amended Clawback Policy will be disclosed to shareholders and filed with the SEC in the Company's next annual proxy statement.

**B.    Corporate Governance Reforms Adopted After the Demands**

In addition to the Company's agreement to adopt the above-referenced reforms, Defendants acknowledge that the Board and Akorn management were fully informed of Plaintiff's

Demands and of the issues in dispute in the Action, and understood that the following corporate governance and/or internal control reforms, policies, and changes enacted or implemented at Akorn would be responsive to the issues and concerns raised in the Demands and in the Action:

      1.    adopting an amended stock trading policy that is contained in the Company's Corporate Compliance Manual;

      2.    the following appointments to Akorn's executive team:

          (a)    Douglas Boothe as Chief Executive Officer to replace Rai;

          (b)    Erislandy Dorado-Boladeres as Executive Vice President, Global Quality;

          (c)    Christopher Young as Executive Vice President, Global Operations;

          (d)    Bill Ostrowski as Chief Information Officer; and

          (e)    Sarah Iles as Chief Compliance Officer.

      3.    increasing the size of the Board by two seats and appointing Mr. Boothe and Thomas G. Moore as directors;

      4.    the adoption and implementation of quality and information technology initiatives at the Company which include, but are not limited to:

          (a)    the creation of the company-wide Quality Systems Corrective Action Plan ("QSCAP") to address, among other things, core quality processes and overall compliance oversight; QSCAP will also oversee the Company's new Quality Management Corrective Action Plan, which is designed to review and revise systems,

processes, and procedures that are part of Akorn's Quality Management System ("QMS") and takes into account industry best practices, findings from regulatory inspections, and other assessments, and historical data that touch on QMS performance.

(b) the initiation of a comprehensive global data integrity investigation for manufacturing and research and development ("R&D") sites to evaluate all known data integrity issues that have been identified through various input sources.

(c) reorganizing the Company's quality function to provide direct reporting relationships between operational, compliance, and corporate surveillance quality functions through:

(i) Quality Site Heads now reporting to Mr. Dorado-Boladeres, and Senior Vice President, Corporate Quality Kim Wasserkrug directly overseeing QSCAP efforts;

(ii) establishing an R&D Quality Unit to support R&D facilities in Vernon Hills, Illinois, and Cranbury, New Jersey;

(iii) establishing a data integrity team at each of the Company's R&D facilities;

(iv) establishing a GXP Quality Head role that reports directly to Mr. Dorado-Boladeres and will focus directly on the regulatory and compliance aspects of Akorn's information

technology ("IT") driven initiatives that will affect all operational aspects at the Company;

(v)     establishing a Technical Service Structure within the quality organization that will oversee Akorn's Analytical Technical Services and Validation Teams across the Company's manufacturing network; and

(vi)    establishing a new Quality Head of Compliance position that directly reports to Mr. Dorado-Boladeres that will be responsible for all internal and external audit functions and vendor certifications, and tasked to implement a newly created role of Regulatory Intelligence that will identify industry and compliance trends to allow Akorn to evaluate and implement proactively to its organization.

(d)    various initiatives implemented in consultation with NSF International, such as:

(i)     the formulation of a Data Integrity Assessment Plan to review abbreviated new drug applications and certain other data from the Company's Somerset facility, as well as certain data generated by Cranbury and Vernon Hills;

(ii)    data integrity training development and implementation;

       (iii)     development and implementation of a stability-indication test method assessment program and enhanced training/certification program for data reviewers;

       (iv)     developing a "Fundamentals of Pharmaceuticals" training program;

       (v)     reviewing trial injection lab chromatography systems;

       (vi)     lab and investigation program reviews;

       (vii)     contamination control strategy development;

       (viii)     retrospective batch record review;

       (ix)     quality staff augmentation; and

       (x)     review of updated smoke studies.

    (e)     Various initiatives implemented in consultation with PricewaterhouseCoopers, such as:

       (i)     aseptic core monitoring;

       (ii)     aseptic coaching and monitoring;

       (iii)     laboratory equipment remediation;

       (iv)     assessment and enhancement of media fill and smoke study programs; and

       (v)     quality staff augmentation.

This Notice provides a summary of the corporate governance reforms that Akorn has agreed to adopt, or has otherwise already adopted, as consideration for the Settlement or in

recognition of the Demands and the Action.  For a complete description of all of the corporate governance reforms, please see the Stipulation.

## III.    DISMISSAL AND RELEASES

The Settlement is conditioned, among other things, upon entry of an order by the Court approving the Settlement and dismissing the Action **WITH PREJUDICE**.  The Settlement will not become effective until such dismissals have been entered and have become final and non-appealable (the "Effective Date").

Upon the Effective Date, Plaintiff (acting on her own behalf and derivatively on behalf of Akorn), Akorn, and each and every other Akorn stockholder claiming by, through, in the right of, derivatively, or on behalf of Akorn, or otherwise pursuant to the internal affairs doctrine under the law of the State of Louisiana, on behalf of themselves and their Related Persons, shall and hereby do fully, finally, and forever release, relinquish, discharge, and dismiss, with prejudice, the Released Persons from any and all Released Plaintiff's Claims (as defined below), and shall forever be barred and enjoined from commencing, instituting, or prosecuting any of the Released Plaintiff's Claims against any of the Released Persons (as defined below).  "Released Plaintiff's Claims" means any and all actions, suits, claims, demands, rights, liabilities, causes of action, obligations, duties, losses, damages, costs, debts, expenses, interest, penalties, sanctions, fees (including, for the avoidance of doubt, attorneys' fees), agreements, judgments, decrees, matters, issues and controversies of any kind, nature or description whatsoever, whether known or unknown, disclosed or undisclosed, suspected or unsuspected, contingent or absolute, accrued or unaccrued, apparent or unapparent, foreseen or unforeseen, matured or not matured, liquidated or

not liquidated, including both known claims and Unknown Claims, that have been or that might have been asserted by Plaintiff and/or any Akorn stockholder against any Released Persons derivatively, or otherwise pursuant to the internal affairs doctrine under the law of the State of Louisiana, based upon or related to the facts, transactions, events, occurrences, acts, disclosures, statements, omissions or failures to act which were alleged in the Action or the Demands.  Released Plaintiff's Claims does not include any claims against former Akorn employee Amir S. Takla, his spouses, heirs, executors, estates, administrators or anyone acting in concert with him based upon the facts, transactions, events, occurrences, acts, disclosures, statements, omissions or failures to act alleged in *Akorn, Inc. v. Amir S. Takla*, No. SOM-L-001620-19 (N.J. Super. Ct.).  "Released Persons" means (i) each of the Individual Defendants; (ii) Akorn; and (iii) each and all of the foregoing Persons' Related Persons (as defined below).  Released Persons does not include former Akorn employee Amir S. Takla or any of his spouses, heirs, executors, estates, or administrators.  "Related Persons" means each of a Person's spouses, heirs, executors, estates, or administrators, each of a Person's present and former attorneys, legal representatives, and assigns in connection with the Action, and all of a Person's past and present directors, officers, agents, advisors (including, for the avoidance of doubt, financial and legal advisors), employees, affiliates, predecessors, successors, and parents.

Upon the Effective Date, each of the Released Persons shall fully, finally, and forever release, relinquish, and discharge Plaintiff, Plaintiff's Counsel, and all other Akorn stockholders and their counsel from any and all Released Defendants' Claims, and shall forever be barred and

enjoined from commencing, instituting, or prosecuting any of the Released Defendants' Claims against any of Plaintiff, Plaintiff's Counsel, and all other Akorn stockholders and their counsel.

Plaintiff and Plaintiff's Counsel shall cooperate and use their reasonable best efforts to bring about the settlement or dismissal with prejudice of the related shareholder derivative actions brought on behalf of Akorn by purported shareholders of the Company captioned *In re Akorn, Inc. Shareholder Derivative Litigation*, C.A. No. 18-cv-7374 (N.D. Ill.), *Pulchinski v. Abramowitz et al.*, No. 2019CH11186 (Cir. Ct. Cook Cnty. Ill.) and *The Booth Family Trust v. Kapoor et al.*, No. 2019CH12793 (Cir. Ct. Cook Cnty. Ill.), and any actions filed against any Defendant hereafter asserting claims derivatively or otherwise pursuant to the internal affairs doctrine under the law of the State of Louisiana on the basis of the same nucleus of operative facts as the Action and the Demands.

These releases, however, shall not in any way impair or restrict the rights of any Party to enforce the terms of the Stipulation or the Final Order and Judgment. In addition, nothing in the Stipulation constitutes or reflects a waiver or release of any rights or claims of Defendants against their insurers, or their insurers' subsidiaries, predecessors, successors, assigns, affiliates, or representatives, including, but not limited to, any rights or claims of Defendants under any directors' and officers' liability insurance policy or other applicable insurance coverage maintained by the Company. Likewise, nothing in the Stipulation constitutes or reflects a waiver or release of any rights or claims of the Individual Defendants relating in any way to indemnification, whether under any written indemnification or advancement agreement, or under the Company's charter, by-laws, or under applicable law.

IV.     **ATTORNEYS' FEES AND EXPENSES**

After completing negotiation of the principal terms of the Settlement, Plaintiff's Counsel and the Akorn Defendants separately negotiated at arm's-length the amount of attorneys' fees and reimbursement of expenses to be paid to Plaintiff's Counsel.  As a result of these negotiations, the Company and/or its insurers agreed to pay an award of attorneys' fees and expenses to Plaintiff's Counsel in the total amount of $2 million (the "Fee and Expense Award"), subject to approval of the Court.  The Parties mutually agree that the Fee and Expense Award is fair and reasonable in light of the substantial benefits conferred upon Akorn and its stockholders by the Settlement.  The Fee and Expense Award shall be paid to Plaintiff's Counsel within five (5) business days after entry of the Final Order and Judgment, notwithstanding the existence of any timely filed objections to the Settlement, or potential appeal.

V.      **REASONS FOR THE SETTLEMENT**

Counsel for Plaintiff and Akorn believe that the Settlement is in the best interests of the Plaintiff, Akorn, and the Company's stockholders.

A.      **Why Did The Plaintiff Agree to Settle?**

Plaintiff and Plaintiff's Counsel believe the claims asserted in the Action have merit and that their investigation supports the claims asserted.  Without conceding the merit of any of Defendants' defenses or the lack of merit of any of their own allegations, and to avoid the potentially protracted time, expense, and uncertainty associated with continued litigation, including a potential trial and appeal, Plaintiff and Plaintiff's Counsel have concluded that it is desirable that the Action be fully and finally settled in the manner and upon the terms and

conditions set forth in this Stipulation. Plaintiff and Plaintiff's Counsel recognize the significant risk, expense, and length of continued proceedings necessary to prosecute the Action through trial and through possible appeal. Plaintiff and Plaintiff's Counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in a complex case such as the Action, as well as the difficulties and delays inherent in such litigation. Based on their evaluation, Plaintiff and Plaintiff's Counsel have determined that the Settlement is in the best interests of Akorn and its shareholders, and have agreed to settle the Action upon the terms and subject to the conditions set forth herein.

Plaintiff and Plaintiff's Counsel base this conclusion upon, among other things, their extensive investigation relating to the claims and the underlying events alleged in the Action, including, but not limited to: (1) inspection, analysis, and review of (a) Akorn's public filings with the SEC, press releases, announcements, transcripts of investor conference calls, and news articles, (b) Forms 483 and warning letters issued by the FDA to the Company; (c) verified pleadings, trial transcript and exhibits, and pre- and post-trial and appellate briefing filed in the Merger Litigation, (d) discovery produced by Akorn in connection with the Initial Motion to Dismiss and discovery produced by Cerulean in connection with the subpoena issued to it, and (e) confidential documents produced by Akorn in connection with the extensive, arm's-length settlement negotiations with counsel for the Company; (2) legal and factual investigation in connection with drafting the Demands; (3) legal and factual investigation in connection with drafting four petitions in the Action; (4) research regarding the applicable law with respect to the claims asserted in the Action and the potential defenses thereto; (5) additional research in connection with opposing the Motions

to Dismiss and Motions for Protective Orders; and (6) participation in extensive, arm's-length settlement discussions with counsel for the Akorn Defendants.

### B.    Why Did the Defendants Agree to Settle?

Defendants have vigorously denied, and continue to deny vigorously, any and all allegations of wrongdoing, fault, liability, or harm to Akorn or its stockholders alleged by Plaintiff in the Action, including, for the avoidance of doubt, the Demands, Original Petition, Amended Petition, Second Amended Petition, and Third Amended Petition.  Nonetheless, Defendants have also taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like the Action.  Defendants have therefore determined that it is desirable that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation in order to, among other things, (i) avoid the expense, inconvenience, and distraction of continued litigation, and (ii) avoid any possibility of a finding of liability, however remote.  Defendants believe that the Settlement set forth in this Stipulation is in the best interests of, and confers substantial benefits upon, Akorn and its stockholders.

## VI.   THE SETTLEMENT HEARING AND YOUR RIGHT TO OBJECT, BE HEARD, AND ATTEND

On _____, 2020, at _____ ___.m., the Court will hold the Settlement Hearing before the Hon. _____ in Courtroom ___, 19th JDC Courthouse, 300 North Boulevard, Baton Rouge, LA 70801.  The Settlement Hearing may be continued by the Court without further notice.

At the Settlement Hearing, the Court will consider (i) whether to enter an Order approving the terms of the Settlement (including the dismissal of the Action and the release of claims against Akorn and the Individual Defendants) as fair, reasonable and adequate; (ii) whether the Court should award the requested attorneys' fees and reimbursement of expenses for Plaintiff's Counsel; (iii) whether a final judgment should be entered dismissing the Action **WITH PREJUDICE**; (iv) any objections to the Settlement and/or request for attorneys' fees and reimbursement of expenses; and (iv) such other matters as may be necessary or proper under the circumstances.

You have the right to object to the proposed Settlement and you may, but are not required, to appear in person or through counsel at the Settlement Hearing to present such objections to the Settlement or Plaintiff's Counsel's application for an award of attorneys' fees and expenses. However, no current Akorn shareholder shall be permitted to object or be heard to present such objection to the approval of the proposed Settlement and award of attorneys' fees and expenses, unless that Akorn shareholder has, *at least fourteen (14) calendar days prior to the Settlement Hearing*, filed with the Clerk of the Court (1) a written objection to the Settlement setting forth: (a) the stockholder's name, address, and telephone number; (b) the nature of the objection; (c) proof of current ownership of Akorn stock, including the number of shares of Akorn stock and the date of purchase; and (d) any documentation in support of such objection; and (2) if an Akorn shareholder intends to appear in person, or through counsel, and requests to be heard at the Settlement Hearing, such stockholder must have, in addition to the requirements of (1) above, (a) a written notice of such stockholder's intention to appear; and (b) the identities of any witnesses the

stockholder intends to call at the Settlement Hearing and a statement as to the subjects of their testimony, signed as authorized by the objecting stockholder.

YOUR WRITTEN OBJECTIONS MUST BE ON FILE WITH THE CLERK OF THE COURT NO LATER THAN _____ ___, 2020.  The Court Clerk's address is:

> Clerk of the Court
> 19th JDC Courthouse
> 300 North Boulevard
> Baton Rouge, LA 70801

YOU ALSO MUST DELIVER COPIES OF THE MATERIALS TO PLAINTIFF'S COUNSEL AND COUNSEL FOR AKORN (BY HAND, OVERNIGHT COURIER, OR FIRST CLASS MAIL) SO THEY ARE RECEIVED NO LATER THAN _____ __, 2020.  Counsel's addresses are:

> ***Counsel for Plaintiff***
>
> Eric L. Zagar
> KESSLER TOPAZ MELTZER & CHECK, LLP
> 280 King of Prussia Road
> Radnor, PA 19087
>
> ***Counsel for Nominal Defendant Akorn and Individual Defendants John Kapoor, Kenneth S. Abramowitz, Ronald M. Johnson, Steven J. Meyer, Adrienne Graves, Terry Rappuhn, Brian Tambi, Alan Weinstein, Rajat Rai, Timothy Dick, Joseph Bonaccorsi, David Hebeda, Bruce Kutinsky, Steven Lichter and Duane A. Portwood***
>
> Robert H. Baron
> CRAVATH, SWAINE & MOORE LLP
> Worldwide Plaza
> 825 Eighth Avenue
> New York, NY 10019

***Counsel for Defendant Mark Silverberg***

Steven W. Usdin
BARRASSO USDIN KUPPERMAN FREEMAN
 & SARVER, LLC
909 Poydras St., 24th Fl.
New Orleans, LA 70112

Unless the Court orders otherwise, your objection will not be considered unless it is timely filed with the Court and delivered to Plaintiff's counsel and counsel for Akorn.

Any Person or entity who fails to object or otherwise request to be heard in the manner prescribed above will be deemed to have waived the right to object to any aspect of the Settlement or otherwise request to be heard (including the right to appeal) and will be forever barred from raising such objection or request to be heard in this or any other action or proceeding.

## VII.    HOW TO OBTAIN ADDITIONAL INFORMATION

This Notice summarizes the Stipulation.  It is not a complete statement of the events of the Action or the Stipulation.  There is additional information concerning the Settlement available in the Stipulation.  You may also inspect the Stipulation during business hours at the office of the Clerk of the Court, 19th JDC Courthouse, 300 North Boulevard, Baton Rouge, LA 70801. However, you must appear in person to inspect these documents.  The Clerk's office will not mail copies to you.

For more information concerning the Action and Settlement, you may also call or write to: Eric L. Zagar, Kessler Topaz Meltzer & Check, LLP, 280 King of Prussia Road, Radnor, PA 19087, Telephone: (610) 822-2209.

**PLEASE DO NOT CALL, WRITE, OR OTHERWISE DIRECT QUESTIONS TO EITHER THE COURT OR THE CLERK'S OFFICE.**

DATED __ __, 2020                    BY ORDER OF THE COURT
                                     19th Judicial District Court
                                     Parish of East Baton Rouge, Louisiana

| | |
|---|---|
| MERRY A. KOGUT, Individually and on Behalf of Defendant Akorn, Inc., | * DOCKET NO. 646,174, Div. "I" Sec. "24" <br> * <br> * |
| Plaintiff, | * 19th JUDICIAL DISTRICT COURT <br> * |
| v. | * <br> * PARISH OF EAST BATON ROUGE |
| AKORN, INC., et al., | * <br> * |
| Defendants. | * STATE OF LOUISIANA |

## [PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENT

WHEREAS, plaintiff Merry A. Kogut ("Plaintiff"), Nominal Defendant Akorn, Inc. ("Akorn"), and Defendants John Kapoor, Kenneth S. Abramowitz, Ronald M. Johnson, Steven J. Meyer, Adrienne Graves, Terry Rappuhn, Brian Tambi, Alan Weinstein, Rajat Rai, Timothy Dick, Joseph Bonaccorsi, David Hebeda, Bruce Kutinsky, Steven Lichter, Duane A. Portwood, and Mark Silverberg have made a joint motion, pursuant to La. R.S. §12:1-745(A) and Local District Court Rule 9.8(f), for an order: (i) preliminarily approving the proposed settlement (the "Settlement") of the above-captioned stockholder derivative action (the "Action") in accordance with the Stipulation and Agreement of Settlement dated December 12, 2019 (the "Stipulation"), which, together with the exhibits annexed thereto, sets forth the terms and conditions of the proposed Settlement and for dismissal of the Action with prejudice upon the terms and conditions set forth therein; (ii) approving distribution of the Notice of Proposed Settlement (the "Notice"), attached to the Stipulation as Exhibit A; and (iii) staying further proceedings in this Action except as may be necessary to implement the Settlement;

WHEREAS, all capitalized terms contained herein shall have the same meanings as set forth in the Stipulation (in addition to those capitalized terms defined herein); and

WHEREAS, this Court, having considered the Stipulation and the exhibits annexed thereto and having heard the arguments of the parties;

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.     The Court GRANTS Plaintiff's unopposed motion for preliminary approval of the Settlement.

2.     This Court does hereby preliminarily approve, subject to further consideration at the Settlement Hearing described below, the Stipulation and the Settlement set forth therein,

including the terms and conditions for: (i) a proposed Settlement and dismissal of the Action with prejudice as to the Released Persons; and (ii) an award of attorneys' fees and reimbursement of expenses to the Plaintiff's Counsel (the "Fee and Expense Award").

3.      A hearing (the "Settlement Hearing") shall be held before this Court on _____, 2019, at _____ .m. at the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana, 300 North Boulevard, Baton Rouge, Louisiana 70801: (i) to determine whether the proposed Settlement of the Action on the terms and conditions provided for in the Stipulation is fair, reasonable, and adequate, in the best interests of Akorn and its stockholders, and should be approved by the Court; (ii) to determine whether to approve the Fee and Expense Award; and (iii) to determine whether the Final Order and Judgment should be entered herein substantially in the form set forth in Exhibit C to the Stipulation; (iv) to hear and consider any objections to the Settlement and/or Fee and Expense Award; and (v) to consider any other matters that may properly be brought before the Court in connection with the Settlement.

4.      The Court approves, as to form and content, the Notice (attached to the Stipulation as Exhibit A) and finds that the distribution of the Notice and Summary Notice substantially in the manner and form set forth in ¶ 3.1 of the Stipulation and ¶¶ 5 & 6 of this Order meets the requirements of La. R.S. §12:1-745(a) and due process, is the best notice practicable under the circumstances, and shall constitute due and sufficient notice of the matters set forth therein for all purposes to all Persons entitled to such notice.

5.      Not later than ten (10) business days following entry of this Order, Akorn shall cause a copy of the Notice to be filed with the SEC on a Current Report on Form 8-K, post the Notice on its website, and publish the Notice one time in *Investor's Business Daily* or similar publication.  Akorn and/or its insurers shall be solely responsible for the costs of disseminating the Notice and Summary Notice.

6.      At least fourteen (14) calendar days prior to the Settlement Hearing, Akorn's counsel shall serve on Plaintiff's Counsel and file with the Court proof, by affidavit or declaration, of such publication of the Notice.

7.      All Akorn stockholders as of the date of this Order or who shall acquire such Akorn stock hereafter (in each case "Akorn Stockholders") shall be bound by all orders, determinations,

and judgments in the Action concerning the Settlement, whether favorable or unfavorable to said stockholders.

8.     Pending final determination of whether the Settlement should be approved, no Akorn Stockholder or their respective Related Persons shall, either directly, representatively, derivatively, or in any other capacity, commence or prosecute, or participate in the commencement or prosecution, against any of the Released Persons any action or proceeding in any court or tribunal asserting any of the Released Claims.

9.     All papers in support of the Settlement and the Fee and Expense Award shall be filed with the Court and served at least twenty-eight (28) calendar days prior to the Settlement Hearing.  Any objection to the Settlement or Plaintiff's Counsel's application for attorneys' fees and expenses shall be filed and served no later than fourteen (14) calendar days before the Settlement Hearing.  Any replies to any objections shall be filed with the Court and served at least seven (7) calendar days prior to the Settlement Hearing.

10.     Any Akorn Stockholder may appear and show cause if he, she, or it has any reason to believe that the terms and conditions of the proposed Settlement should not be approved as fair, reasonable, and adequate; that the Final Order and Judgment should not be entered thereon; or that the Fee and Expense Award should not be approved; provided, however, that unless otherwise ordered by the Court, no Akorn Stockholder shall be heard or entitled to contest the approval of all or any of the terms and conditions of the proposed Settlement, the Fee and Expense Award to be awarded to the Plaintiff's Counsel, or, if approved, the Final Order and Judgment to be entered thereon, unless that Akorn Stockholder has, at least fourteen (14) calendar days prior to the Settlement Hearing, filed with the Clerk of the Court and delivered to the following counsel (by hand or overnight courier or sent by first class mail): (1) a written objection to the Settlement setting forth: (a) the stockholder's name, address, and telephone number; (b) the nature of the objection; (c) proof of current ownership of Akorn stock, including the number of shares of Akorn stock and the date of purchase; (d) any documentation in support of such objection; and (2) if an Akorn Stockholder intends to appear in person, or through counsel, and requests to be heard at the Settlement Hearing, such stockholder must have provided, in addition to the requirements of (1) above: (a) a written notice of such stockholder's intention to appear; (b) the identities of any

witnesses the Akorn Stockholder intends to call at the Settlement Hearing and a statement as to the subjects of their testimony, signed as authorized by the objecting stockholder; and (c) served copies of any papers and briefs in support thereof to:

Eric L. Zagar
**KESSLER TOPAZ MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087

*Counsel for Plaintiff*

Robert H. Baron
**CRAVATH, SWAINE & MOORE LLP**
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

*Counsel for Nominal Defendant Akorn and Individual
Defendants John Kapoor, Kenneth S. Abramowitz,
Ronald M. Johnson, Steven J. Meyer, Adrienne
Graves, Terry Rappuhn, Brian Tambi, Alan
Weinstein, Rajat Rai, Timothy Dick, Joseph
Bonaccorsi, David Hebeda, Bruce Kutinsky, Steven
Lichter and Duane A. Portwood*

Steven W. Usdin
**BARRASSO USDIN KUPPERMAN FREEMAN
  & SARVER, LLC**
909 Poydras St., 24th Fl.
New Orleans, LA 70112

*Counsel for Defendant Mark Silverberg*

The written objections and copies of any papers and briefs in support thereof to be filed in Court shall be delivered by hand, overnight courier, or sent by first class mail to:

CLERK OF THE COURT
19th Judicial District Court
Parish of East Baton Rouge
300 North Boulevard
Baton Rouge, Louisiana 70801

Any Akorn Stockholder who does not make his, her, or its objection substantially in the manner provided herein shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the Settlement as incorporated in the Stipulation and to the Fee and Expense Award, unless otherwise

ordered by the Court, but shall otherwise be bound by the Final Order and Judgment to be entered and the releases to be given.

11.     The Stipulation and provisions contained therein (including any exhibits attached thereto) shall not be deemed a presumption, concession, or admission by any Party of any fault, liability, or wrongdoing, or lack of merit as to any facts or claims alleged, or asserted in the Action or in any other action or proceeding, and shall not be interpreted, construed, deemed, invoked, offered, or received into evidence or otherwise used by any person in the Action or in any other action or proceeding, whether civil, criminal, or administrative, except in connection with any proceeding to enforce the terms of the Settlement.  Notwithstanding the foregoing, the Released Persons may file the Stipulation and/or the Final Order and Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, full faith and credit, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

12.     All proceedings in the Action, other than as may be necessary to carry out the terms and conditions of the Settlement, are hereby stayed and suspended pending final determination of whether the Settlement provided for in the Stipulation shall be approved.

13.     Pending the Effective Date of the Stipulation or the termination of the Stipulation according to its terms, Plaintiff and her Related Persons are barred and enjoined from initiating, instituting, commencing, maintaining, prosecuting, or in any way participating in any action or proceeding asserting any of the Released Plaintiff's Claims against any of the Released Persons.

14.     The Court reserves the right to adjourn the date of the Settlement Hearing or modify any other dates set forth herein without further notice to current Akorn stockholders, and retains jurisdiction to consider all further applications arising out of or connected with the Settlement.

15.     The Court may approve the Settlement, with such modifications as may be agreed to by the Parties, if appropriate, without further notice to current Akorn stockholders.

IT IS SO ORDERED.


DATED: _____        _____
                                   The Honorable Donald Johnson
                                   19th Judicial District Court
                                   Parish of East Baton Rouge
                                   State of Louisiana

| | |
|---|---|
| MERRY A. KOGUT, Individually and on Behalf of Defendant Akorn, Inc., | * DOCKET NO. 646,174, Div. "I" Sec. "24" |
| | * |
| | * |
| Plaintiff, | * 19th JUDICIAL DISTRICT COURT |
| | * |
| v. | * |
| | * PARISH OF EAST BATON ROUGE |
| AKORN, INC., et al., | * |
| | * |
| Defendants. | * STATE OF LOUISIANA |

## [PROPOSED] FINAL ORDER AND JUDGMENT

This Court having considered the Stipulation and Agreement of Settlement, fully executed on December 12, 2019, including all exhibits thereto (the "Stipulation"), among: (i) Merry A. Kogut ("Plaintiff"), individually and on behalf of Nominal Defendant Akorn, Inc. ("Akorn" or the "Company"); (ii) Nominal Defendant Akorn; and (iii) John Kapoor, Kenneth S. Abramowitz, Ronald M. Johnson, Steven J. Meyer, Adrienne Graves, Terry Rappuhn, Brian Tambi, Alan Weinstein, Rajat Rai, Timothy Dick, Joseph Bonaccorsi, David Hebeda, Bruce Kutinsky, Steven Lichter, Duane A. Portwood, and Mark Silverberg (the foregoing individuals, the "Individual Defendants," and together with Akorn, the "Defendants"), and having held a hearing on _____; and having considered all of the submissions and arguments with respect thereto, and for the reasons stated on the record:

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1. As used in this Final Order and Judgment ("Judgment"), the following terms have the meanings specified below.

(a) "Demands" means Plaintiff's demands on the Board of Directors of Akorn dated February 23, 2016, and May 22, 2018.

(b)     "Effective Date" means the first date by which this Judgment, having been entered, shall have become Final.

(c)     "Fee and Expense Award" means the agreement set forth in ¶ 5.1 of the Stipulation.

(d)     "Final" means the time when this Judgment, having been entered, has not been reversed, vacated, or modified in any way and is no longer subject to appellate review, either because of disposition on appeal and conclusion of the appellate process or because of passage, without action, of time for seeking appellate review.  More specifically, it is that situation when: (1) either no appeal has been filed and the time has passed for any notice of appeal to be timely filed in the above-captioned action (the "Action"); or (2) an appeal has been filed and the court of appeals has/have either affirmed the judgment or dismissed that appeal and the time for any reconsideration or further appellate review has passed; or (3) a higher court has granted further appellate review and that court has either affirmed the underlying judgment or affirmed the court of appeals' decision affirming the judgment or dismissing the appeal.

(e)     "Notice" means the notice of proposed settlement provided by Akorn to its stockholders.

(f)     "Person" means an individual, corporation, limited liability corporation, professional corporation, partnership, limited partnership, limited liability partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business

or legal entity and their spouses, heirs, predecessors, successors, representatives, or assignees.

(g)    "Plaintiff's Counsel" means Kessler Topaz Meltzer & Check, LLP and Tarcza & Associates, LLC.

(h)    "Related Persons" means each of a Person's spouses, heirs, executors, estates, or administrators, each of a Person's present and former attorneys, legal representatives, and assigns in connection with the Action, and all of a Person's past and present directors, officers, agents, advisors (including, for the avoidance of doubt, financial and legal advisors), employees, affiliates, predecessors, successors, and parents.

(i)    "Released Claims" means Released Plaintiff's Claims and Released Defendants' Claims.

(j)    "Released Defendants' Claims" means any and all actions, suits, claims, demands, rights, liabilities, causes of action, obligations, duties, losses, damages, costs, debts, expenses, interest, penalties, sanctions, fees (including, for the avoidance of doubt, attorneys' fees), agreements, judgments, decrees, matters, issues, and controversies of any kind, nature, or description whatsoever, whether known or unknown, disclosed or undisclosed, suspected or unsuspected, contingent or absolute, accrued or unaccrued, apparent or unapparent, foreseen or unforeseen, matured or not matured, liquidated or not liquidated, including both known claims and Unknown Claims, that have been or that might have been asserted by the Released Persons against Plaintiff, Plaintiff's Counsel, or any Akorn stockholder or their counsel arising out of the institution, prosecution, settlement,

or resolution of the Action or the Demands.  Released Defendants' Claims shall not include any claims to enforce the Settlement.

(k)     "Released Persons" shall mean and include (i) each of the Individual Defendants; (ii) Akorn; and (iii) each and all of the foregoing Persons' Related Persons. Notwithstanding the foregoing, however, Released Persons shall not include former Akorn employee Amir S. Takla or any of his spouses, heirs, executors, estates, or administrators.

(l)     "Released Plaintiff's Claims" means any and all actions, suits, claims, demands, rights, liabilities, causes of action, obligations, duties, losses, damages, costs, debts, expenses, interest, penalties, sanctions, fees (including, for the avoidance of doubt, attorneys' fees), agreements, judgments, decrees, matters, issues and controversies of any kind, nature or description whatsoever, whether known or unknown, disclosed or undisclosed, suspected or unsuspected, contingent or absolute, accrued or unaccrued, apparent or unapparent, foreseen or unforeseen, matured or not matured, liquidated or not liquidated, including both known claims and Unknown Claims, that have been or that might have been asserted by Plaintiff and/or any Akorn stockholder against any Released Persons derivatively, or otherwise pursuant to the internal affairs doctrine under the law of the State of Louisiana, based upon or related to the facts, transactions, events, occurrences, acts, disclosures, statements, omissions or failures to act which were alleged in the Action or the Demands.  Notwithstanding the foregoing, however, Released Plaintiff's Claims shall not include:  (i) any claims to enforce the Settlement or (ii) any claims against former Akorn employee Amir S. Takla, his spouses, heirs, executors, estates, administrators or anyone

acting in concert with him based upon the facts, transactions, events, occurrences, acts, disclosures, statements, omissions or failures to act alleged in *Akorn, Inc. v. Amir S. Takla*, No. SOM-L-001620-19 (N.J. Super. Ct.).

(m)   "Settlement" means the settlement documented in the Parties' Stipulation of December 12, 2019.

(n)   "Unknown Claims" means any and all Released Plaintiff's Claims which Plaintiff, Akorn or any Akorn stockholder does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Persons, and any and all Released Defendants' Claims which any Released Person does not know or suspect to exist in his, her, or its favor at the time of the release of Plaintiff, Plaintiff's Counsel, Akorn, and any Akorn stockholder, which if known by him, her, or it, might have affected his, her, or its decision(s) with respect to the Settlement.  With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date, Plaintiff, Individual Defendants, and Akorn, shall expressly waive, and each of Akorn's stockholders by operation of the Judgment shall be deemed to have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, any foreign nation, or any principle of common or civilian law, which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST**

**HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

The Parties acknowledge that they may discover facts in addition to or different from those now known or believed to be true by them, with respect to the Released Claims, as the case may be, but it is the intention of the Parties to completely, fully, finally, and forever compromise, settle, release, discharge, and extinguish any and all of the Released Claims, whether known or unknown, disclosed or undisclosed, suspected or unsuspected, contingent or absolute, accrued or unaccrued, apparent or unapparent, foreseen or unforeseen, matured or not matured, liquidated or not liquidated, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery of additional or different facts.

2.      This Court has jurisdiction over the subject matter of the Action, including all matters necessary to effectuate the Settlement.

3.      The record shows that Notice has been given to current Akorn stockholders in the manner approved by the Court in its Preliminary Approval Order dated _____, 2019.  The Court finds that such Notice: (i) meets the requirements of La. R.S. §12:1-745(a); (ii) constitutes the best notice practicable under the circumstances; (iii) constitutes notice that was reasonably calculated, under the circumstances, to apprise all current Akorn shareholders of the pendency of the Action, the terms of the Settlement, and current Akorn shareholders' right to object to and to appear at the settlement fairness hearing held on _____; (iv) constitutes due, adequate, and

sufficient notice to all persons or entities entitled to receive notice in accordance with Louisiana law; and (v) meets the requirements of due process.

4.     The Court hereby fully and finally approves the Settlement as set forth in the Stipulation and finds that the Settlement is, in all respects, fair, reasonable, adequate, and in the best interests of Akorn and current Akorn shareholders.  This Court further finds the Settlement set forth in the Stipulation is the result of arm's-length negotiations between experienced counsel representing the interests of Akorn, current Akorn shareholders, and the Individual Defendants. The Court has considered any submitted objections to the Settlement and hereby overrules them.

5.     The Parties are hereby directed to implement and consummate the Settlement according to the terms and provisions of the Stipulation.

6.     The Action is hereby dismissed in its entirety as to the Defendants, with prejudice, and without costs to any party to the Action, except as otherwise provided herein.  The parties to the Action are to bear their own costs, except as otherwise provided herein.

7.     Upon the Effective Date, Plaintiff (acting on her own behalf and derivatively on behalf of Akorn), Akorn, and each and every other Akorn stockholder claiming, now or in future, by, through, in the right of, derivatively, or on behalf of Akorn, or otherwise pursuant to the internal affairs doctrine under the law of the State of Louisiana, on behalf of themselves and their Related Persons, shall fully, finally, and forever release, relinquish, discharge, and dismiss, with prejudice, the Released Persons from any and all Released Plaintiff's Claims, and shall forever be barred and enjoined from commencing, instituting, or prosecuting any of the Released Plaintiffs' Claims against any of the Released Persons.  In addition, Plaintiff agrees on behalf of herself and her

Related Persons not to initiate, prosecute, assist in, or facilitate the prosecution of any other claims arising out of the same nucleus of operative facts giving rise to the Action or the Demands.

8.     Upon the Effective Date, each of the Released Persons shall fully, finally, and forever release, relinquish, and discharge Plaintiff, Plaintiff's Counsel, and all other Akorn stockholders and their counsel from any and all Released Defendants' Claims, and shall forever be barred and enjoined from commencing, instituting, or prosecuting any of the Released Defendants' Claims against any of Plaintiff, Plaintiff's Counsel, and all other Akorn stockholders and their counsel.

9.     Neither the Stipulation (including any exhibits attached thereto) nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement shall be deemed a presumption, concession, or admission by any Party of any fault, liability, or wrongdoing, or lack of merit as to any facts or claims alleged or asserted in the Action or in any other action or proceeding, and shall not be interpreted, construed, deemed, invoked, offered, or received into evidence or otherwise used by any person in the Action or in any other action or proceeding, whether civil, criminal, or administrative, except in connection with any proceeding to enforce the terms of the Settlement.  Notwithstanding the foregoing, the Released Persons may file the Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, full faith and credit, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

10.     The Fee and Expense Award, which the Court finds to be fair, reasonable, and adequate, is hereby granted.  No proceedings or court order with respect to the Fee and Expense Award shall in any way disturb or affect this Judgment (including precluding this Judgment from being Final or otherwise being entitled to preclusive effect), and any such proceedings or court order shall be considered separate from this Judgment.

11.     Without affecting the finality of this Judgment, the Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation and Judgment, including but not limited to, payment of any Fee and Expense Award ordered by the Court, and the Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation.

12.     Without further approval from the Court, the Parties are hereby authorized to agree to and adopt such amendments or modifications of the Stipulation or any exhibits attached thereto to effectuate the Settlement that: (a) are not materially inconsistent with this judgment; and (b) do not materially limit the rights of the Parties, Akorn, or Akorn stockholders in connection with the Settlement.  Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any provisions of the Settlement.

13.     In the event that the Settlement does not become effective in accordance with the terms of the Stipulation, this Judgment shall be vacated; all Orders entered and releases delivered in connection with the Stipulation and this Judgment shall be null and void, with the exception of ¶¶ 1.1-1.18, 5.3, 6.2-6.3, 7.3-7.4, 7.6-7.9, 7.11, 7.13 and 7.14 of the Stipulation; and the Parties

shall be restored to their respective positions in the Action immediately prior to the execution of the Stipulation.

14.     Pursuant to La. Code Civ. Proc. art. 1911, this Judgment is a final, appealable judgment and should be entered forthwith by the Clerk.

IT IS SO ORDERED.


DATED: _____        _____
                                                        The Honorable Donald Johnson
                                                        19th Judicial District Court
                                                        Parish of East Baton Rouge
                                                        State of Louisiana

AKORN, INC.

**QUALITY COMPLIANCE COMMITTEE CHARTER**

**A.      Status**

The Quality Compliance Committee (the "Committee") is a committee of the Board of Directors (the "Board") of Akorn, Inc. ("Akorn" or the "Company").

**B.      Purpose**

The purpose of the Committee is to assist the Board with oversight of Akorn's compliance with the U.S. federal Food, Drug and Cosmetics Act, as amended, including requirements issued by the U.S. Food and Drug Administration ("FDA") and comparable applicable laws and regulations related to product safety and quality, as well as Akorn's quality compliance practices. The Committee will fulfill this responsibility by carrying out the activities enumerated in Section D of this Charter.

**C.      Membership**

The Committee shall consist of three or more directors as determined by the Board. Each member of the Committee shall be a non-employee director of Akorn and shall be free of any relationship that, in the opinion of the Board, would interfere with the member's individual exercise of his or her judgment. All members of the Committee shall have a general understanding of current good manufacturing practices and applicable compliance and quality standards in the pharmaceutical industry. Such understanding may be obtained through formal education and training or prior relevant work experience within the pharmaceutical industry. Committee members may enhance their understanding and knowledge of the areas the Committee oversees by attending relevant educational programs.

Unless the Board elects a Chair of the Committee, the Committee shall elect a Chair by majority vote. The Chair (or in his or her absence, a member designated by the Chair) shall preside at all meetings of the Committee and set the agenda for each Committee meeting.

Members of the Committee shall be appointed annually by the Board, upon the recommendation of the Nominating and Corporate Governance Committee.

**D.      Duties and Responsibilities**

To fulfill its duties and responsibilities, the Committee shall:

     1.      Review and oversee Akorn's quality compliance program, including, but not limited to, receiving updates about the activities of Global Quality Compliance ("GQC") and implementation of Akorn's Quality System Corrective Action Plan ("QSCAP"), comparing program components to industry best practices and evaluating to assess whether Akorn's program components raise any significant quality concerns.

     2.      Oversee and monitor Akorn's quality compliance practices by reviewing and evaluating (based on criteria determined by the Committee) reports and presentations from Akorn's regulatory compliance executives, including the

1

following:

a.   while Akorn is remediating OAI status of its manufacturing facilities, receive and review quarterly written or oral presentations from Akorn senior management that summarize topics such as status of QSCAP remediation and quality initiatives, including management's analysis of the effectiveness checks conducted by GQC and Akorn's general remediation process and evaluate the consistency of these initiatives and with industry best practices;

b.   while Akorn is remediating OAI status of its manufacturing facilities, receive and review quarterly written or oral presentations from Akorn senior management that summarize any such interactions with the FDA and other health authorities, including any progress reports or updates;

c.   receive and review quarterly written or oral presentations from Akorn senior management regarding Akorn's internal controls, policies, procedures and training programs for ensuring compliance with legal and regulatory requirements related to product safety and quality, including any significant findings with respect to Akorn's compliance and management's response to any such findings, and evaluate their consistency with industry best practices;

d.   receive and review written or oral presentations from Akorn senior management summarizing all FDA Form 483s and warning letters, Akorn's responses to such letters and the steps taken to implement the responses;

e.   receive and review written or oral presentations from the Company's senior management regarding the status and/or outcome of any complaints or confidential submissions regarding potential instances of non-compliance with product quality and safety requirements that have been submitted to the Committee or reported within Akorn through other means;

f.   receive and review written or oral presentations from the Company's senior management regarding any significant disciplinary action being considered or undertaken against any Akorn executive for failing to properly exercise his or her duties and responsibilities with respect to regulatory compliance, including the nature of the conduct that led to the disciplinary action, the disciplinary action and the reason for it, and analyze whether the underlying conduct reflects any regulatory compliance issues; and

g.   receive and review written or oral presentations from the Company's senior management and review the status and/or outcome of any relevant government investigations and external or internal audits relating to product quality and safety, and management's analysis of the conduct that led to the investigation or audit, and analyze whether the underlying conduct reflects any regulatory compliance issues.

3.   At least quarterly, orally report to the Board on any material or critical items related to matters presented by Akorn management related to Akorn product safety and quality or quality compliance practices.

4.   At least annually, review Akorn's organizational structure and qualifications of

Director level and above personnel in the quality compliance organization.

5.    At least annually, prepare an overview for inclusion in Akorn's Annual Report on Form 10-K or Proxy Statement on Form DEFI4A regarding Akorn's Quality Compliance Committee and its initiatives.

6.    At least annually, review this Charter and recommend any proposed changes to the Board for approval. Any member of the Committee may submit proposed Charter amendments to the Board. By a majority vote, the Board may approve amendments to this Charter.

## E.    Meetings

The Committee shall meet as often as it determines is necessary to carry out its responsibilities, but not less frequently than quarterly. Additional meetings may be scheduled as needed and may be called by the Chair of the Committee or, if there is no such chair, by two members of the Committee. The Committee shall have the authority to establish its own rules and procedures for notice and conduct of its meetings so long as they are not inconsistent with the provisions of Akorn's Bylaws that are applicable to a committee of the Board.

Except as otherwise provided by statute, a majority of the members shall represent a quorum of the Committee for the transaction of business at any meeting. Formal action to be taken by the Committee shall be by unanimous written consent or by the affirmative vote of at least a majority of the members present (in person or by telephone conference call) at a meeting at which a quorum is present.

The Committee shall maintain written minutes of its meetings. The Committee may, in its discretion, invite other directors of Akorn, members of Akorn's management or any other person, including, without limitation, outside counsel, whose presence the Committee believes to be desirable and appropriate to attend and observe meetings of the Committee. The Committee may exclude from its meetings any person it deems appropriate.

## F.    Authority

The Committee shall have the authority to conduct or authorize the conduct of further inquiry into matters under its oversight or otherwise reported to it for the purpose of discharging its duties and responsibilities and ensuring the adequacy of Akorn's policies, procedures and programs for fulfilling its obligations under the laws and regulations pertaining to product safety and quality.

The Committee shall have the resources and authority necessary to discharge its duties and responsibilities, including the authority to retain outside counsel or other experts or consultants, as it deems appropriate. Akorn shall provide appropriate funding, as determined by the Committee, for payment of compensation to any advisors engaged by the Committee, including fees of outside legal counsel.

*Adopted: [insert date]*