

XᴸInsurance

| | |
|---|---|
| **Policy Number:** **US00075683DO19A** | ☐ **Greenwich Insurance Company** |
| **Renewal of Number:** US00075683DO18A | ☒ **XL Specialty Insurance Company** |

**Members of the XL America Companies**

| | |
|---|---|
| **MANAGEMENT LIABILITY AND COMPANY REIMBURSEMENT INSURANCE POLICY DECLARATIONS** | Executive Offices<br>70 Seaview Avenue<br>Stamford, CT 06902-6040<br>Telephone 877-953-2636 |

**THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY APPLIES TO CLAIMS FIRST MADE DURING THE POLICY PERIOD OR, IF APPLICABLE, THE OPTIONAL EXTENSION PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE INSURER TO DEFEND ANY INSURED. PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

---

**Item 1.**   **Name and Mailing Address of Parent Company:**

Akorn, Inc.
1925 West Field Court, Suite 300
Lake Forest, IL  60045

---

**Item 2.**   **Policy Period:**   **From:**   September 01, 2019   **To:**   Septemnber 01, 2021

**At 12:01 A.M. Standard Time at your Mailing Address Shown Above**

---

**Item 3.**   **Limit of Liability:**

$5,000,000.  Aggregate, each **Policy Period** (including Defense **Expenses**)

---

**Item 4.**   **Retentions:**

| | |
|---|---|
| $0 | each **Insured Person** under INSURING AGREEMENT I (A) |
| $3,500,000 | each **Claim** under INSURING AGREEMENT I (B) |
| $3,500,000 | each **Claim** under INSURING AGREEMENT I (C) |

---

**Item 5.**   **Optional Extension Period:**

Length of Optional Extension Period:

(Either one year or two years after the end of the **Policy Period**, at the election of the **Parent Company**)

Premium for Optional Extension Period:   One Year:   $2,187,500.00

Two Years:   N/A

Three Years:   N/A

---

**Item 6.**   **Pending and Prior Litigation Date:**   April 24, 2002

---

**Item 7.**   **Notices required to be given to the Insurer must be addressed to:**

XL Professional Insurance
100 Constitution Plaza, 17th Floor
Hartford, CT 06103
Toll Free Telephone: 877-953-2636

---

### MANAGEMENT LIABILITY AND COMPANY REIMBURSEMENT POLICY DECLARATIONS

| | |
|---|---|
| **Item 8.** | **Premium:** |

| | |
|---|---|
| Taxes, Surcharges or Fees: | $0.00 |
| Total Policy Premium: | $2,325,000.00 |

| | |
|---|---|
| **Item 9.** | **Policy Forms and Endorsements Attached at Issuance:** |

DO 71 00 09 99   XL 82 01 07 07   XL 80 24 03 03   DO 72 06 02 00   DO 83 27 07 01   DO 83 125 08 06
DO 83 126 08 06   DO 83 133 12 06   DO 80 395 01 07   DO 80 213 02 03   XL 83 07 01 00
DO 80 562 06 10   DO 83 130 08 06   DO 80 17 05 00   DO 83 09 06 00   DO 80 284 08 04   DO 80 02 02 10
DO 80 342 10 05   DO 80 376 11 06   XL 80 02 03 00   DO 80 436 08 07   DO 83 12 08 00
DO 80 503 11 08   DO 80 142 10 01   DO 80 123 06 01   DO 80 46 07 00   DO 80 129 07 01
DO 80 357 05 06   DO 80 504 12 08   DO 80 286 08 04   DO 80 559 06 10   Manuscript 194 07 01
Manuscript 7260 07 07   DO 80 289 09 04   DO 80 717 10 15   DO 80 627 05 12   DO 80 241 11 03
DO 80 05 03 00   DO 80 567 07 10   DO 80 578 11 10   DO 80 480 06 08   XL 80 72 06 13   XL 80 74 07 13
DO 80 12 04 00

Countersigned: _____   By: _____
                         Date                                         Authorized Representative

THESE **DECLARATIONS** AND THE POLICY, WITH THE ENDORSEMENTS, ATTACHMENTS, AND THE **APPLICATION** SHALL CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE INSURER AND THE **INSURED** RELATING TO THIS INSURANCE.

**In Witness Whereof, the Insurer has caused this Policy to be executed by its authorized officers, but this Policy will not be valid unless countersigned on the Declarations page, if required by law, by a duly authorized representative of the Insurer.**

Nicholas M. Brown, Jr.            Theresa M. Morgan
President                              Secretary

**Greenwich Insurance Company**

Nicholas M. Brown, Jr.            Theresa M. Morgan
President                              Secretary

**XL Specialty Insurance Company**

# IN WITNESS

## XL SPECIALTY INSURANCE COMPANY

REGULATORY OFFICE
505 EAGLEVIEW BOULEVARD, SUITE 100
DEPARTMENT:  REGULATORY
EXTON, PA  19341-1120
PHONE:  800-688-1840

It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy.

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Insurer has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Insurer.

_____
Joseph Tocco
President

_____
Toni Ann Perkins
Secretary

LAD 400 0915 XLS

© 2015 X.L. America, Inc.  All Rights Reserved.  May not be copied without permission.

## POLICYHOLDER DISCLOSURE

## NOTICE OF TERRORISM
## INSURANCE COVERAGE

**Coverage for acts of terrorism is already included in your current policy. You are hereby notified that under the Terrorism Risk Insurance Program Reauthorization Extension Act of 2007, the definition of "act of terrorism" has changed.  As defined in Section 102(1) of the Act:  The term "act of terrorism" means any act that is certified by the Secretary of the Treasury in concurrence with the Secretary of the State, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.  Under your existing coverage, any losses caused by certified acts of terrorism may be partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States generally reimburses 85% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.  However, your policy may contain other exclusions that may affect your coverage.  The Terrorism Risk Insurance Program Reauthorization Extension Act contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.**

**The portion of your annual premium that is attributable to coverage for acts of terrorism is: $ waived.  Any premium waiver is only valid for the current Policy Period.**

I ACKNOWLEDGE THAT I HAVE BEEN NOTIFIED THAT UNDER THE TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION EXTENSION ACT OF 2007, ANY LOSSES CAUSED BY CERTIFIED ACTS OF TERRORISM UNDER MY POLICY COVERAGE WILL BE PARTIALLY REIMBURSED BY THE UNITED STATES AND I HAVE BEEN NOTIFIED OF THE AMOUNT OF MY PREMIUM ATTRIBUTABLE TO SUCH COVERAGE.

Name of Insurer: **XL Specialty Insurance Company**

Policy Number: **US00075683DO17A**

_____
Signature of Insured

_____
Print Name and Title

_____
Date

## NOTICE TO POLICYHOLDERS

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy.  You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Policyholder Notice provides information concerning possible impact on your insurance coverage due to the impact of U.S. Trade Sanctions[1].  Please read this Policyholder Notice carefully.

In accordance with the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") regulations, or any other U.S. Trade Sanctions embargoes or export controls applied by any regulatory body, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions, embargoes or export controls law, is a Specially Designated National and Blocked Person ("SDN"), or is owned or controlled by an SDN, this insurance will be considered a blocked or frozen contract. When an insurance policy is considered to be such a blocked or frozen contract, neither payments nor premium refunds may be made without authorization from OFAC or the applicable regulator.  Other limitations on the premiums and payments also apply.

---

[1] "U.S Trade Sanctions" may be promulgated by Executive Order, act of Congress, regulations from the U.S. Departments of State, Treasury, or Commerce, regulations from the State Insurance Departments, etc.

PN CW 05 0519

©2019 X.L. America, Inc.  All rights reserved.  May not be copied without permission.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

NOTICE TO POLICYHOLDERS

**PRIVACY POLICY**

The AXA XL insurance group (the "Companies"), believes personal information that we collect about our customers, potential customers, and proposed insureds (referred to collectively in this Privacy Policy as "customers") must be treated with the highest degree of confidentiality.  For this reason and in compliance with the Title V of the Gramm-Leach-Bliley Act ("GLBA"), we have developed a Privacy Policy that applies to all of our companies.  For purposes of our Privacy Policy, the term "personal information" includes all information we obtain about a customer and maintain in a personally identifiable way.  In order to assure the confidentiality of the personal information we collect and in order to comply with applicable laws, all individuals with access to personal information about our customers are required to follow this policy.

**Our Privacy Promise**

Your privacy and the confidentiality of your business records are important to us.  Information and the analysis of information is essential to the business of insurance and critical to our ability to provide to you excellent, cost-effective service and products.  We understand that gaining and keeping your trust depends upon the security and integrity of our records concerning you.  Accordingly, we promise that:

1. We will follow strict standards of security and confidentiality to protect any information you share with us or information that we receive about you;
2. We will verify and exchange information regarding your credit and financial status only for the purposes of underwriting, policy administration, or risk management and only with reputable references and clearinghouse services;
3. We will not collect and use information about you and your business other than the minimum amount of information necessary to advise you about and deliver to you excellent service and products and to administer our business;
4. We will train our employees to handle information about you or your business in a secure and confidential manner and only permit employees authorized to use such information to have access to such information;
5. We will not disclose information about you or your business to any organization outside the AXA XL insurance group of Companies or to third party service providers unless we disclose to you our intent to do so or we are required to do so by law;
6. We will not disclose medical information about you, your employees, or any claimants under any policy of insurance, unless you provide us with written authorization to do so, or unless the disclosure is for any specific business exception provided in the law;
7. We will attempt, with your help, to keep our records regarding you and your business complete and accurate, and will advise you how and where to access your account information (unless prohibited by law), and will advise you how to correct errors or make changes to that information; and
8. We will audit and assess our operations, personnel and third party service providers to assure that your privacy is respected.

**Collection and Sources of Information**

We collect from a customer or potential customer only the personal information that is necessary for (a) determining eligibility for the product or service sought by the customer, (b) administering the product or service obtained, and (c) advising the customer about our products and services.  The information we collect generally comes from the following sources:

- Submission – During the submission process, you provide us with information about you and your business, such as your name, address, phone number, e-mail address, and other types of personal identification information;
- Quotes – We collect information to enable us to determine your eligibility for the particular insurance product and to determine the cost of such insurance to you.  The information we collect will vary with the type of insurance you seek;
- Transactions – We will maintain records of all transactions with us, our affiliates, and our third party service providers, including your insurance coverage selections, premiums, billing and payment information, claims history, and other information related to your account;

PN CW 02 0119

© 2019 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

- Claims – If you obtain insurance from us, we will maintain records related to any claims that may be made under your policies.  The investigation of a claim necessarily involves collection of a broad range of information about many issues, some of which does not directly involve you.  We will share with you any facts that we collect about your claim unless we are prohibited by law from doing so.  The process of claim investigation, evaluation, and settlement also involves, however, the collection of advice, opinions, and comments from many people, including attorneys and experts, to aid the claim specialist in determining how best to handle your claim.  In order to protect the legal and transactional confidentiality and privileges associated with such opinions, comments and advice, we will not disclose this information to you; and
- Credit and Financial Reports – We may receive information about you and your business regarding your credit.  We use this information to verify information you provide during the submission and quote processes and to help underwrite and provide to you the most accurate and cost-effective insurance quote we can provide.

Retention and Correction of Personal Information

We retain personal information only as long as required by our business practices and applicable law.  If we become aware that an item of personal information may be materially inaccurate, we will make reasonable effort to re-verify its accuracy and correct any error as appropriate.

Storage of Personal Information

We have in place safeguards to protect data and paper files containing personal information.

Sharing/Disclosing of Personal Information

We maintain procedures to assure that we do not share personal information with an unaffiliated third party for marketing purposes unless such sharing is permitted by law.  Personal information may be disclosed to an unaffiliated third party for necessary servicing of the product or service or for other normal business transactions as permitted by law.

We do not disclose personal information to an unaffiliated third party for servicing purposes or joint marketing purposes unless a contract containing a confidentiality/non-disclosure provision has been signed by us and the third party.  Unless a consumer consents, we do not disclose "consumer credit report" type information obtained from an application or a credit report regarding a customer who applies for a financial product to any unaffiliated third party for the purpose of serving as a factor in establishing a consumer's eligibility for credit, insurance or employment.  "Consumer credit report type information" means such things as net worth, credit worthiness, lifestyle information (piloting, skydiving, etc.) solvency, etc.  We also do not disclose to any unaffiliated third party a policy or account number for use in marketing.  We may share with our affiliated companies information that relates to our experience and transactions with the customer.

Policy for Personal Information Relating to Nonpublic Personal Health Information

We do not disclose nonpublic personal health information about a customer unless an authorization is obtained from the customer whose nonpublic personal information is sought to be disclosed.  However, an authorization shall not be prohibited, restricted or required for the disclosure of certain insurance functions, including, but not limited to, claims administration, claims adjustment and management, detection, investigation or reporting of actual or potential fraud, misrepresentation or criminal activity, underwriting, policy placement or issuance, loss control and/or auditing.

Access to Your Information

Our employees, employees of our affiliated companies, and third party service providers will have access to information we collect about you and your business as is necessary to effect transactions with you.  We may also disclose information about you to the following categories of person or entities:

- Your independent insurance agent or broker;
- An independent claim adjuster or investigator, or an attorney or expert involved in the claim;

PN CW 02 0119

© 2019 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

- Persons or organizations that conduct scientific studies, including actuaries and accountants;
- An insurance support organization;
- Another insurer if to prevent fraud or to properly underwrite a risk;
- A state insurance department or other governmental agency, if required by federal, state or local laws; or
- Any persons entitled to receive information as ordered by a summons, court order, search warrant, or subpoena.

Violation of the Privacy Policy

Any person violating the Privacy Policy will be subject to discipline, up to and including termination.

For more information or to address questions regarding this privacy statement, please contact your broker.

PN CW 02 0119

© 2019 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

**FRAUD NOTICE**

| Alabama | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof. |
|---|---|
| Arkansas | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| Colorado | **It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.** |
| District of Columbia | **WARNING:** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant. |
| Florida | Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree. |
| Kansas | A "fraudulent insurance act" means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto. |
| Kentucky | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime. |
| Louisiana | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| Maine | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or denial of insurance benefits. |
| Maryland | Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| New Jersey | Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties. |

PN CW 01 0719

© 2019 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

| | |
|---|---|
| **New Mexico** | ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES. |
| **New York** | **General: All applications for commercial insurance, other than automobile insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**All applications for automobile insurance and all claim forms:** Any person who knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation.

**Fire:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.

The proposed insured affirms that the foregoing information is true and agrees that these applications shall constitute a part of any policy issued whether attached or not and that any willful concealment or misrepresentation of a material fact or circumstances shall be grounds to rescind the insurance policy. |
| **Ohio** | Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud. |
| **Oklahoma** | **WARNING**: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**WARNING**: **All Workers Compensation Insurance**:
Any person or entity who makes any material false statement or representation, who willfully and knowingly omits or conceals any material information, or who employs any device, scheme, or artifice, or who aids and abets any person for the purpose of:
1.  obtaining any benefit or payment,
2.  increasing any claim for benefit or payment, or
3.  obtaining workers' compensation coverage under this act, shall be guilty of a felony punishable pursuant to Section 1663 of Title 21 of the Oklahoma Statutes. |
| **Pennsylvania** | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Automobile Insurance:** Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and the payment of a fine of up to $15,000. |

PN CW 01 0719

© 2019 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

| | |
|---|---|
| **Puerto Rico** | **Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances [be] present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.** |
| **Rhode Island** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Tennessee** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.<br><br>**Workers' Compensation:**  It is a crime to knowingly provide false, incomplete or misleading information to any party to a workers' compensation transaction for the purpose of committing fraud. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Utah** | **Workers' Compensation:**  Any person who knowingly presents false or fraudulent underwriting information, files or causes to be filed a false or fraudulent claim for disability compensation or medical benefits, or submits a false or fraudulent report or billing for health care fees or other professional services is guilty of a crime and may be subject to fines and confinement in state prison. |
| **Virginia** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Washington** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **West Virginia** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **All Other States** | Any person who knowingly and willfully presents false information in an application for insurance may be guilty of insurance fraud and subject to fines and confinement in prison.  (In Oregon, the aforementioned actions may constitute a fraudulent insurance act which may be a crime and may subject the person to penalties). |

PN CW 01 0719

© 2019 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

**ILLINOIS**

This notice is to advise you if you are having problems with your insurance company or agent, do not hesitate to contact the insurance company or agent to resolve your problem.

FOR INFORMATION, OR TO MAKE A COMPLAINT, CALL:

1-800-622-7311
AXA XL
SEAVIEW HOUSE
70 SEAVIEW AVENUE
STAMFORD, CT  06902-6040

You may also contact the Public Service Division of the Department of Insurance at the following address:

Illinois Department of Insurance
Consumer Division or Public Services Section
320 W. Washington Street
Springfield, IL 62767

Toll-free: 1-866-445-5364
TDD 217/524-4872 / Fax: 217/558-2083

http://mc.insurance.illinois.gov/messagecenter.nsf

© 2019 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

XL 82 01 07 07

**Endorsement No.: 1**                          **Effective: September 01, 2019**
**Named Insured: Akorn, Inc.**                  **12:01 A.M. Standard Time**
**Policy No.: US00075683DO19A**                 **Insurer: XL Specialty Insurance Company**

# CHANGE OF PREAMBLE ENDORSEMENT

The preamble to this Policy is amended to read in its entirety as follows:

**In consideration of the payment of the premium, and in reliance on all statements made and information furnished to the Insurer identified in the Declarations (hereinafter the Insurer) including the Application and subject to all of the terms, conditions and limitations of all of the provisions of this Policy, the Insurer, the Insured Persons and the Company agree as follows:**

All other terms, conditions and limitations of this Policy shall remain unchanged.

**XL 80 24 03 03**

**Endorsement No.: 2**  
**Named Insured: Akorn, Inc.**  
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**  
**12:01 A.M. Standard Time**  
**Insurer: XL Specialty Insurance Company**

# TERRORISM PREMIUM ENDORSEMENT

Please note: The portion of your annual premium set forth in Item 8. of the Declarations that is attributable to coverage for acts of terrorism is: $ waived.

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 72 06 02 00

**Endorsement No.: 3**            **Effective: September 01, 2019**
**Named Insured: Akorn, Inc.**      **12:01 A.M. Standard Time**
**Policy No.: US00075683DO19A**    **Insurer: XL Specialty Insurance Company**

# ILLINOIS AMENDATORY ENDORSEMENT

1.      Section VI. GENERAL CONDITIONS (C) OTHER INSURANCE AND SERVICE IN CONNECTION WITH NON-PROFIT ENTITIES AND JOINT VENTURES (1) is deleted and replaced by the following:

   (1)      Except as provided in Section (C)(2) below, if the Insureds have insurance provided by other companies against a Loss covered by this Policy, the Insurer shall not be liable under this Policy for a greater proportion of such Loss than the Limit of Liability stated in the Declarations bears to the total applicable Limit of Liability for all valid and collectible insurance against such Loss.

2.      Section VI.  GENERAL CONDITIONS (E) CANCELLATION AND RENEWAL OF COVERAGE (2) is amended by the addition of the following:

   The Insurer will also mail a copy of notice of cancellation to the Parent Company's broker and any mortgagee or lienholder, if known.

3.      Section VI.  GENERAL CONDITIONS (E) CANCELLATION AND RENEWAL OF COVERAGE (3) is amended by the addition of the following:

   The notice of non-renewal will state the reason for such non-renewal.  The Insurer will also mail a copy of the notice to the Parent Company's agent of record or broker and any mortgagee or lienholder, if known.

All other terms, conditions and limitations of this Policy remain unchanged.

DO 83 27 07 01

**Endorsement No.: 4**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND INSURED vs. INSURED EXCLUSION

In consideration of the premium charged, Section III Exclusions (G) of the Policy is amended to read in its entirety as follows:

"(G)    by, on behalf of, or in the name or right of, the Company or any Insured Person, except and to the extent such Claim:

(1)    is brought derivatively by a security holder of the Company who, when such Claim is made and maintained is acting independently of, and without the active solicitation, assistance, participation or intervention of an Insured Person or the Company;

(2)    is brought by the Bankruptcy Trustee or Examiner of the Company or any assignee of such Trustee or Examiner, or any Receiver, Conservator, Rehabilitator, or Liquidator or comparable authority of the Company;

(3)    any Claim in the form of a crossclaim, third party claim or other claim for contribution or indemnity by an Insured Person which is part of or results directly from a Claim which is not otherwise excluded by the terms of this Policy; or

(4)    is an Employment Practices Claim;"

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 83 125 08 06

**Endorsement No.: 5**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# EXCLUSION (G) ENDORSEMENT

In consideration of the premium charged, Section III Exclusion (G) of the Policy shall not apply to the extent a Claim is brought and maintained by an Insured Person:

    (a)    who has not served as a director, officer, member of the Board of Managers, or employee of the Company for at least two (2) years prior to the date such Claim is first made; and

    (b)    who is acting independently of, and without the solicitation, assistance, participation or intervention of an Insured Person or the Company.

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 83 126 08 06

**Endorsement No.: 6**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# EXCLUSION (G) ENDORSEMENT

In consideration of the premium charged, Section III Exclusion (G) of the Policy shall not apply to the extent a Claim is brought and maintained in a non-common law jurisdiction outside the United States of America, including its territories and possessions.

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 83 133 12 06

**Endorsement No.: 7**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# EXCLUSION (G) ENDORSEMENT

In consideration of the premium charged, Section III Exclusion (G) of the Policy shall not apply to the extent a Claim is brought by a creditors committee of the Company in the event such Company files for relief under Title 11 of the United States Code.

All other terms, conditions and limitations of this Policy shall remain unchanged.

**DO 80 395 01 07**

| | |
|---|---|
| **Endorsement No.: 8** | **Effective: September 01, 2019** |
| **Named Insured: Akorn, Inc.** | **12:01 A.M. Standard Time** |
| **Policy No.: US00075683DO19A** | **Insurer: XL Specialty Insurance Company** |

# AMEND DEFINITION OF LOSS ENDORSEMENT

In consideration of the premium charged, Section II Definitions (M) of the Policy is amended to read in its entirety as follows:

"(M)    'Loss' means damages, judgments, settlements or other amounts (including punitive, exemplary or multiplied damages, where insurable by law) and Defense Expenses in excess of the Retention that the Insured is legally obligated to pay. Loss will not include

    (1)    fines, penalties or taxes imposed by law;

    (2)    taxes or wages; or

    (3)    matters which are uninsurable under the law pursuant to which this Policy is construed.

NOTE:  With respect to judgments in which punitive, exemplary or multiplied damage are awarded, the coverage provided by this Policy shall apply to the broadest extent permitted by law.  If, based on the written opinion of counsel for the Insured, punitive damages are insurable under applicable law, the Insurer will not dispute the written opinion of the counsel for the Insured."

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 213 02 03

**Endorsement No.: 9**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND DEFINITION OF SECURITIES CLAIM ENDORSEMENT

In consideration of the premium charged, Section II Definitions (Q) of the Policy is amended to read in its entirety as follows:

"(Q)     'Securities Claim' means a Claim, other than an administrative or regulatory proceeding against or investigation of a Company, made against any Insured:

(1)     for a violation of any federal, state, local regulation, statute or rule (whether statutory or common law) regulating securities, including but not limited to the purchase or sale of, or offer to purchase or sell, securities which is:

(a)     brought by any person or entity based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the purchase or sale of, or offer to purchase or sell, securities of the Company; or

(b)     brought by a security holder of a Company with respect to such security holder's interest in securities of such Company; or

(2)     brought derivatively on behalf of the Company by a security holder of such Company.

Notwithstanding the foregoing, the term 'Securities Claim' shall include an administrative or regulatory proceeding against a Company, but only if and only during the time that such proceeding is also commenced and continuously maintained against an Insured Person."

All other terms, conditions and limitations of this Policy shall remain unchanged.

XL 83 07 01 00

**Endorsement No.: 10**                          **Effective: September 01, 2019**
**Named Insured: Akorn, Inc.**                   **12:01 A.M. Standard Time**
**Policy No.: US00075683DO19A**                  **Insurer: XL Specialty Insurance Company**

# SPECIFIED CLAIMS EXCLUSION

In consideration of the premium charged, no coverage will be available under this Policy for Loss, including Defense Expenses, in connection with any proceeding set forth below, or in connection with any Claim based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any such proceeding or any fact, circumstance or situation underlying or alleged therein:

Those legal proceedings described in Item 3. Of the Form 10K annual report pursuant to Section 13r 15(d) of e Securities Exchange Act of 1934 for year ended December 31, 2001.

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 562 06 10

| | |
|---|---|
| **Endorsement No.: 11** | **Effective: September 01, 2019** |
| **Named Insured: Akorn, Inc.** | **12:01 A.M. Standard Time** |
| **Policy No.: US00075683DO19A** | **Insurer: XL Specialty Insurance Company** |

# SECTION 11, 12 & 15 ENDORSEMENT

In consideration of the premium charged:

(1)     Notwithstanding Endorsement No. 8. to this Policy, Section II Definition (M)(3) of the Policy is amended to read in its entirety as follows:

"(3)     matters which are uninsurable under the law pursuant to which this Policy is construed; provided that the Insurer will not assert that the portion of any settlement in a Claim arising from an initial or subsequent public offering of the Company's securities constitutes uninsurable loss due to the alleged violations of Section 11 and/or 12 of the Securities Act of 1933 as amended (including alleged violations of Section 11 and/or 12 of the Securities Act of 1933 by a Controlling Person pursuant to Section 15 of the Securities Act of 1933)."

(2)     Section III Exclusion (F)(2) of the Policy will not apply to allegations in a Claim asserted against an Insured under Section 11 and/or 12 of the Securities Act of 1933 as amended arising out of an initial or subsequent public offering of the Company's securities (including alleged violations of Section 11 and/or 12 of the Securities Act of 1933 by a Controlling Person pursuant to Section 15 of the Securities Act of 1933).

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2010 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

**DO 83 130 08 06**

**Endorsement No.: 12**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# EXCLUSION (G) ENDORSEMENT

In consideration of the premium charged, Section III Exclusion (G) of the Policy shall not apply to the extent a Claim is brought by an employee or an Insured Person of the Company pursuant to any federal or state whistleblower protection statute or any rule or regulation promulgated thereunder.

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 17 05 00

| | |
|---|---|
| Endorsement No.: 13 | Effective: September 01, 2019 |
| Named Insured: Akorn, Inc. | 12:01 A.M. Standard Time |
| Policy No.: US00075683DO19A | Insurer: XL Specialty Insurance Company |

# ADD COVERAGE FOR COSTS INCURRED IN INVESTIGATING AND EVALUATING SHAREHOLDER DERIVATIVE DEMANDS

(1)   In addition to the coverage otherwise provided under this Policy, but still subject to the Insurer's maximum aggregate Limit of Liability as set forth in ITEM 3 of the Declarations, the Insurer shall pay on behalf of the Company all Investigation Costs resulting solely from any Shareholder Derivative Demand first made during the Policy Period or, if applicable, the Optional Extension Period, for a Wrongful Act committed or attempted, or allegedly committed or attempted, by any Insured Person.

(2)   "Investigation Costs" mean reasonable fees and expenses of attorneys and experts retained by the Company, or by its board of directors or any committee thereof, that are incurred by the Company in the Company's investigation or evaluation of a Shareholder Derivative Demand.  Investigation Costs will not include the Company's overhead expenses or any salaries, wages, fees or benefits of its directors, officers or employees.

(3)   "Shareholder Derivative Demand" means a written demand, made by one or more of the shareholders of the Company upon the Company's board of directors, for the Company to bring a civil proceeding in a court of law against an Insured Person.

(4)   The Insurer's maximum aggregate limit of liability under this Policy for Investigation Costs shall be $250,000, which amount shall be part of, and not in addition to, the Insurer's maximum aggregate Limit of Liability under this Policy as set forth in ITEM 3 of the Declarations.  Payment by the Insurer of Investigation Costs shall reduce the Limit of Liability.

(5)   The coverage provided under paragraph (1) above will be subject to the exclusions set forth in Section III of this Policy and to any exclusions that may be set forth in other endorsements to this Policy, and any references in those exclusions to Loss and Claims shall be deemed to refer instead to Investigative Costs and Shareholder Derivative Demands, respectively.

(6)   No retention will apply to Investigation Costs payable under paragraph (1) above.

(7)   It shall be the duty of the Company to investigate and evaluate any Shareholder Derivative Demand.

(8)   For purposes of the coverage provided under paragraph (1) above, all references in Sections V.C and VI to Loss and Defense Expenses shall be deemed to refer instead to Investigative Costs, and all references in Sections V.C and VI to Claims shall be deemed to refer instead to Shareholder Derivative Demands.

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 83 09 06 00

**Endorsement No.: 14**                          **Effective: September 01, 2019**
**Named Insured: Akorn, Inc.**                   **12:01 A.M. Standard Time**
**Policy No.: US00075683DO19A**                  **Insurer: XL Specialty Insurance Company**

# ERISA EXCLUSION

In consideration of the premium charged, Section III Exclusions (C) is deleted and replaced by the following:

(C)       for any actual or alleged violation of the Employee Retirement Income Security Act of 1974 (ERISA) as amended or any regulation promulgated thereunder or any similar, federal, state or local law or regulation;

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 284 08 04

| | |
|---|---|
| **Endorsement No.: 15** | **Effective: September 01, 2019** |
| **Named Insured: Akorn, Inc.** | **12:01 A.M. Standard Time** |
| **Policy No.: US00075683DO19A** | **Insurer: XL Specialty Insurance Company** |

# AMEND GENERAL CONDITIONS (C)(1) ENDORSEMENT

In consideration of the premium charged, Section VI General Conditions (C)(1) of the Policy is amended to read in its entirety as follows:

"(1)     All Loss payable under this Policy will be specifically excess of and will not contribute with any other valid and collectible insurance, including but not limited to any insurance under which there is a duty to defend, unless such other insurance is specifically excess of this Policy.  This Policy will not be subject to the terms of any other insurance policy."

All other terms, conditions and limitations of this Policy shall remain unchanged.

**DO 80 02 02 10**

**Endorsement No.: 16**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND DEFINITION OF INSURED PERSON

In consideration of the premium charged, the term "Insured Person," as defined in Section II Definition (J)(1) of the Policy, shall include those individuals holding the following positions for the Company:

General Counsel

All other terms, conditions and limitations of this policy shall remain unchanged.

**DO 80 342 10 05**

**Endorsement No.: 17**  **Effective: September 01, 2019**
**Named Insured: Akorn, Inc.**  **12:01 A.M. Standard Time**
**Policy No.: US00075683DO19A**  **Insurer: XL Specialty Insurance Company**

# AMEND DEFINITION OF APPLICATION ENDORSEMENT

In consideration of the premium charged, the term "Application" shall include all reports, statements, prospectuses and other materials filed by the Company with the Securities and Exchange Commission on or after that date which is one (1) year before the date of the Application but before the Inception Date set forth in ITEM 2 of the Declarations, and Section II DEFINITIONS (A) of the Policy will be deemed to have been amended accordingly.

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 376 11 06

| | |
|---|---|
| Endorsement No.: 18 | Effective: September 01, 2019 |
| Named Insured: Akorn, Inc. | 12:01 A.M. Standard Time |
| Policy No.: US00075683DO19A | Insurer: XL Specialty Insurance Company |

# PRIORITY OF PAYMENTS

In consideration of the premium charged:

(1)    It is understood and agreed that if Loss, including Defense Expenses, shall be payable under more than one of the INSURING AGREEMENTS, then the Insurer shall, to the maximum extent practicable and subject at all times to the Insurer's maximum aggregate Limit of Liability as set forth in ITEM 3 of the Declarations, pay such Loss as follows:

    (a)    first, the Insurer shall pay that Loss, if any, which the Insurer may be liable to pay on behalf of the Insured Persons under INSURING AGREEMENT (A);

    (b)    second, the Insurer shall pay that Loss, if any, which the Insurer may be liable to pay on behalf of the Company under INSURING AGREEMENT (B); and

    (c)    third, the Insurer shall make such other payments which the Insurer may be liable to make under INSURING AGREEMENT (C) or otherwise.

(2)    The bankruptcy or insolvency of any entity or organization entitled to coverage under this Policy or of any Insured Person will not relieve the Insurer of any of its obligations hereunder.  It is understood and agreed that the coverage provided under this Policy is intended to protect and benefit the Insured Persons.  Further, if a liquidation or reorganization proceeding is commenced (whether voluntarily or involuntarily) under Title 11 of the United States Code, as amended, or any similar state, local or foreign law ("Bankruptcy Law") by or against the Parent Company and/or any other entity or organization entitled to coverage under this Policy, then with respect to any covered Claim, the Insureds hereby:

    (a)    waive and release any automatic stay or injunction to the extent it may apply in such proceeding to the proceeds of this Policy under such Bankruptcy Law; and

    (b)    agree not to oppose or object to any efforts by the Insurer or any Insured to obtain relief from any stay or injunction applicable to the proceeds of this Policy as a result of the commencement of such liquidation or reorganization proceeding.

(3)    Nothing in this endorsement is intended, nor shall it be construed, to increase the Insurer's maximum aggregate Limit or Limits of Liability under this Policy as set forth in ITEM 3 of the Declarations.

All other terms, conditions and limitations of this Policy shall remain unchanged.

XL 80 02 03 00

**Endorsement No.: 19**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# WORLDWIDE ENDORSEMENT

In consideration of the premium charged:

(1)   Notwithstanding differences in the substantive and procedural laws of any foreign jurisdiction as compared to the United States federal and state laws, the Insurer agrees to provide coverage in foreign jurisdictions worldwide and agrees that it shall interpret the coverage provided by this Policy at least as broadly, and with the same intent of coverage, as if Loss had been sustained in the United States.

(2)   In the event that a jurisdiction in which any Insured(s) is doing business requires by law or regulation that the Insurer uses approved, filed or otherwise accepted local policy forms, the Insurer shall take such steps as are necessary to ensure that the coverage provided under this Policy is effective in such jurisdiction on the same or better terms and for the same term as hereunder.

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 436 08 07

**Endorsement No.: 20**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND NOTICE OF CLAIM ENDORSEMENT

In consideration of the premium charged, Section VI General Conditions (A)(1) of the Policy is amended to read in its entirety as follows:

"(1)    As a condition precedent to any right to payment under this Policy with respect to any Claim, the Insured shall give written notice to the Insurer of any Claim as soon as practicable after it is first made and the Chief Executive Officer, Chief Financial Officer and/or General Counsel of the Parent Company first becomes aware of such Claim, but in no event later than sixty (60) days after the expiration of the Policy Period."

All other terms, conditions and limitations of this Policy shall remain unchanged.

**DO 83 12 08 00**

**Endorsement No.: 21**                          **Effective: September 01, 2019**
**Named Insured: Akorn, Inc.**                   **12:01 A.M. Standard Time**
**Policy No.: US00075683DO19A**                  **Insurer: XL Specialty Insurance Company**

# AMEND DISHONESTY EXCLUSION

In consideration of the premium charged, Section III Exclusion (F) is deleted and replaced by the following:

(F)      brought about or contributed to in fact by any:

   (1)      intentionally dishonest, fraudulent or criminal act or omission or any willful violation of any statute, rule or law; or

   (2)      profit or remuneration gained by any Insured to which such Insured is not legally entitled;

   as determined by a final adjudication in the underlying action;

All other terms, conditions and limitations of this Policy shall remain unchanged.

**DO 80 503 11 08**

**Endorsement No.: 22**                    **Effective: September 01, 2019**
**Named Insured: Akorn, Inc.**            **12:01 A.M. Standard Time**
**Policy No.: US00075683DO19A**          **Insurer: XL Specialty Insurance Company**

# AMEND DEFINITION OF CLAIM ENDORSEMENT

In consideration of the premium charged:

(1)     The term "Claim," as defined in Section II Definitions of the Policy, will include any official written request for Extradition of any Insured Person or the execution of a warrant for the arrest of any Insured Person where such execution is an element of Extradition.

(2)     Solely for the purposes of this Endorsement, the term "Extradition" means any formal process by which an Insured Person located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2008 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

DO 80 142 10 01

**Endorsement No.: 23**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND SECTION IV ENDORSEMENT

In consideration of the premium charged, Section IV Limit of Liability, Indemnification and Retentions (F) of the Policy is deleted in its entirety.

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 123 06 01

**Endorsement No.: 24**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND DEFINITION OF INSURED PERSON ENDORSEMENT

In consideration of the premium charged, Section II Definitions (J)(3) and (J)(4) are amended to read in their entirety as follows:

    (3)    an individual identified in (J)(1) above who, at the request of the Company, is serving as a director, officer, trustee, regent or governor of a Non-Profit Entity;

    (4)    any individual identified in (J)(1) above who, at the request of the Company is serving in an elected or appointed position having fiduciary, supervisory or managerial duties and responsibilities comparable to those of an Insured Person of the Company, regardless of the name or title by which such position is designated, of a Joint Venture; or

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 46 07 00

**Endorsement No.: 25**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND DEFINITION OF INSURED PERSON

In consideration of the premium charged, the term "Insured Person" shall include any employee of the Company, but only if and to the extent that such employee is included as a co-defendant in a Claim contemporaneously with or subsequent to the naming of one or more directors or officers of the Company as a defendant or defendants in such Claim for one or more Wrongful Acts; provided that:

(1)   subject to of the terms, conditions, limitations and endorsements of this Policy, the Insurer shall be liable in respect of Claims against such Insured Persons only to pay Loss under Section I. Insuring Agreement (B), which Loss the Company shall pay to or on behalf of such Insured Persons as indemnification, and

(2)   the Insurer shall not be liable to pay Loss under Section I. Insuring Agreement (A) in respect of Claims against such Insured Persons.

All other terms, conditions and limitations of this policy shall remain unchanged.

DO 80 129 07 01

| | |
|---|---|
| Endorsement No.: 26 | Effective: September 01, 2019 |
| Named Insured: Akorn, Inc. | 12:01 A.M. Standard Time |
| Policy No.: US00075683DO19A | Insurer: XL Specialty Insurance Company |

# EMERGENCY LOSS ENDORSEMENT

In consideration of the premium charged:

(1) In addition to the coverage afforded pursuant to Insuring Agreements (A), (B) and (C), but subject to the maximum aggregate Limit of Liability set forth in Item 3 of the Declarations and the provisions below, the Insurer shall pay on behalf of the Company Emergency Loss resulting from an Emergency occurring during the Policy Period, or, if applicable, the Optional Extension Period and reported to the Insurer pursuant to paragraph (7) below.

(2) It is understood and agreed that the payment of any Emergency Loss pursuant to this Policy shall not waive any rights of the Insurer available under this Policy or at law.

(3) Solely with respect to this endorsement, the following terms shall have the meanings set forth below:

(a) "Effect of the Common Stock Price" means that the price per share of the Company's common stock shall decrease by the greater of $5 per share or 10% net of the change in the Standard & Poor's Composite Index within a 24 hour period.

(b) "Emergency" means the public announcement of any of the following events which, in the good faith opinion of the chief financial officer of the Company, is reasonably likely to cause or did cause an Effect on the Common Stock Price:

(i) the Company's past or future earnings or sales, which is substantially less favorable than any of the following: (A) the Company's prior years earning or sales for the same period; (B) the Company's prior public statements or projections regarding earnings or sales for such period; or (C) an outside securities analyst's published estimate of the Company's earnings or sales;

(ii) an unforeseen loss of: (A) the Company's intellectual property rights for a patent, trademark or copyright, other than by expiration; (B) a major customer or client of the Company; or (C) a major contract with the Company;

(iii) the recall of a major product of the Company or the unforeseen delay in the production of a major product of the Company;

(iv) the Company has caused the bodily injury, sickness, mental anguish, emotional distress, disease or death of a group of persons, or damage or destruction of any tangible property including loss of use thereof;

(v) layoffs by the Company of its employees, or the death or resignation of one or more key directors or officers of the Parent Company;

(vi) a restatement of the previously filed financial statements of the Company;

(vii) the elimination or suspension of regularly scheduled dividends previously paid by the Company;

(viii) the Company intends to write-off a material amount of its assets;

(ix)    the Company has defaulted or intends to default on its debt or intends to engage in a debt restructuring;

(x)    the Company intends to file for bankruptcy protection, a third party is seeking to file for involuntary bankruptcy on behalf of the Company, or bankruptcy proceedings are imminent, whether voluntary or involuntary;

(xi)    the commencement or threat of commencement of litigation or governmental or regulatory proceedings against the Company; or

(xii)    an unsolicited written offer or bid, whether publicly announced or privately made, by any person or entity, other than an Insured or any affiliate of an Insured, to a director or officer of the Company to effect a Change in Control;

provided that Emergency shall not include any event relating to:

(1)    any fact, circumstance, situation, transaction, event, or wrongful act which was the subject of any notice given under any other policy;

(2)    any fact, circumstance, situation, transaction, event or wrongful act underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding or arbitration which was brought prior to April 24, 2001; or

(3)    any actual, alleged or threatened discharge, dispersal, release, escape, seepage, transportation, emission, treatment, removal or disposal of pollutants, contaminants, or waste of any kind including but not limited to nuclear material or nuclear waste or any actual or alleged direction, request or voluntary decision to test for, abate, monitor, clean up, recycle, remove, recondition, reclaim, contain, treat, detoxify or neutralize pollutants, contaminants or waste of any kind including but not limited to nuclear material or nuclear waste.

An Emergency shall first occur when any Company or any of its directors or officers first becomes aware of such Emergency.  An Emergency shall conclude immediately when the Emergency Firm advises the Company that such Emergency no longer exists or when the applicable limit of liability has been exhausted.

(c)    "Emergency Firm" means any public relations firm, crisis management firm or law firm hired by the Company, with the prior written approval of the Insurer, to perform Emergency Services.

(d)    "Emergency Loss" means:

(i)    reasonable and necessary fees and expenses incurred by an Emergency Firm in the performance of Emergency Services for the Company;

(ii)    reasonable and necessary fees and expenses incurred in the printing, advertising, mailing of materials; and

(iii)    travel costs incurred by any director, officer, member of the Board of Managers, employee or agent of the Company or the Emergency Firm,

in connection with an Emergency and incurred during the pendency of, of within 90 days immediately prior to and in anticipation of, an Emergency for which the Company is legally liable.

(e)    "Emergency Services" means those services performed by an Emergency Firm in advising the Company or a director, officer or employee of the Company on minimizing potential harm to the Company from an Emergency, including but not limited to maintaining and restoring investor confidence in the Company.

(4)      The term "Loss," as defined in Section II Definitions (M) of the Policy, shall include Emergency Loss.

(5)      The maximum aggregate limit of liability for all Emergency Loss resulting from all Emergencies occurring during the Policy Period shall be $100,000 ("Emergency Sublimit"), which amount is part of and not in addition to the maximum aggregate Limit of Liability of the Insurer under this Policy as set forth in Item 3 of the Declarations.

(6)      As a condition precedent to any right to payment under this Policy with respect to any Emergency, the Insured shall give written notice to the Insurer of an Emergency as soon as practicable after the Emergency commences but in no event later than thirty (30) days after the Company first incurs Emergency Loss.  All notices must be sent by certified mail or the equivalent to the address set forth in Item 7 of the Declarations; Attention: Claim Department.

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 357 05 06

| | |
|---|---|
| **Endorsement No.: 27** | **Effective: September 01, 2019** |
| **Named Insured: Akorn, Inc.** | **12:01 A.M. Standard Time** |
| **Policy No.: US00075683DO19A** | **Insurer: XL Specialty Insurance Company** |

# EMPLOYED LAWYERS ENDORSEMENT (WITH SUBLIMIT)

In consideration of the premium charged:

(1)    The coverage afforded under this Policy will, subject to all of its terms, conditions, limitations and exclusions, be extended to apply to Loss resulting from a Claim made against any Employed Lawyer of the Company (an "Employed Lawyer Claim").

(2)    The term "Employed Lawyer" means any employee of the Company if and to the extent such employee is or, during the course of such person's employment was,"

    (a)    admitted to the practice of law; and

    (b)    employed within the Company's office of general counsel or its functional equivalent for the purpose of providing legal services to or for the benefit of the Company.

(3)    The term "Insured Person" also includes any Employed Lawyer.

(4)    The term "Wrongful Act" also includes any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty by an Employed Lawyer, but only in connection with an Employed Lawyer's performance of, or actual or alleged failure to perform, legal services to or for the benefit of the Company within the scope of his or her employment.

(5)    No coverage will be available under this endorsement for Loss, including Defense Expenses, from any Claim against an Employed Lawyer based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

    (a)    the service by any such person in any capacity, whether or not with the Company, other than those explicitly set forth in this endorsement; or

    (b)    an Employed Lawyer's performance of, or actual or alleged failure to perform, any legal services other than legal services to or for the benefit of the Company within the scope of the Employed Lawyer's employment.

(6)    The Insurer's maximum aggregate limit of liability for all Loss from all Employed Lawyer Claims shall be $5,000,000, which amount shall be part of, and not in addition to, the maximum aggregate Limit of Liability for this Policy as set forth in Item 3 of the Declarations, which is applicable to all Loss from all Claims for which this Policy provides coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

**DO 80 504 12 08**

| | |
|---|---|
| **Endorsement No.: 28** | **Effective: September 01, 2019** |
| **Named Insured: Akorn, Inc.** | **12:01 A.M. Standard Time** |
| **Policy No.: US00075683DO19A** | **Insurer: XL Specialty Insurance Company** |

# AMEND CANCELLATION ENDORSEMENT

In consideration of the premium charged, Section VI General Conditions (E)(1) of the Policy is amended to read in its entirety as follows:

"(1)    Except for the nonpayment of premium, as set forth in (E)(2) below, the Parent Company has the exclusive right to cancel this Policy. Cancellation may be effected by mailing to the Insurer written notice when such cancellation shall be effective, provided the date of cancellation is not later than the Expiration Date set forth in ITEM 2 of the Declarations. In such event, the Insurer shall return to the Parent Company the gross pro rata unearned premium (minus brokerage commission).  Return or tender of the unearned premium is not a condition of cancellation."

© 2008 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

DO 80 286 08 04

**Endorsement No.: 29**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# DOMESTIC PARTNER ENDORSEMENT

In consideration of the premium charged, Section II Definition (J)(5) of the Policy shall include the domestic partner of any person set forth in Section II Definition (J)(1) – (J)(4), but only to the extent the domestic partner is a party to any Claim solely in their capacity as a domestic partner to such persons and only for the purposes of any Claim seeking damages recoverable from community property, property jointly held by any such person and domestic partner, or property transferred from any such person to the domestic partner.

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 559 06 10

| | |
|---|---|
| **Endorsement No.: 30** | **Effective: September 01, 2019** |
| **Named Insured: Akorn, Inc.** | **12:01 A.M. Standard Time** |
| **Policy No.: US00075683DO19A** | **Insurer: XL Specialty Insurance Company** |

# AMEND INSURER'S RIGHTS OF SUBROGATION ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that, in the event of payment under the Policy, the Insurer will not be subrogated to any Insured's potential or actual rights of recovery in connection therewith against any Insured Person unless it shall have been determined by final adjudication in the underlying Claim that such Insured Person committed any act or omission or gained any profit or remuneration so that Section III. EXCLUSION (F) of this Policy, as amended, would be applicable to such Insured Person, and Section VI. GENERAL CONDITIONS (G)(2) of this Policy will be deemed to have been amended accordingly.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2010 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

Manuscript 194 07 01

**Endorsement No.: 31**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# BANKRUPTCY ENDORSEMENT

In consideration of the premium charged:

(1)     Section II Definitions (B)(3) of the Policy is deleted in its entirety.

(2)     The term "Company," as defined in Section II Definitions (D) of the Policy, shall include the Parent Company and any covered Subsidiary as a debtor in possession, as such term is used in Chapter 11 of the United States Bankruptcy Code.

(3)     The bankruptcy or insolvency of any Insured shall not relieve the Insurer of any of its obligations under this Policy.  It is understood and agreed that the coverage provided under this Policy is intended to protect and benefit the Insured Persons.  If a liquidation or reorganization proceeding is commenced by the Company, whether voluntary or involuntary, under Title 11 of the United States Code, or any similar state, local or foreign law (collectively, "Bankruptcy Law"), then, with respect to a Claim under this Policy, the Insureds hereby:

    (a)     waive and release any automatic stay or injunction to the extent it may apply in such proceeding to the proceeds of this Policy under such Bankruptcy Law; and

    (b)     agree not to oppose or object to any efforts by the Insurer or any Insured Person to obtain relief from any stay or injunction applicable to the proceeds of this Policy as a result of the commencement of such liquidation or reorganization proceeding.

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Manuscript 7260 07 07**

**Endorsement No.: 32**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND REPRESENTATION CLAUSE ENDORSEMENT

In consideration of the premium charged, Section VI General Conditions (I) of the Policy is amended to read in its entirety as follows:

"(I)     REPRESENTATION CLAUSE

The Insured represents that the statements and particulars contained in the Application as well as any prior application submitted to the Insurer are true, accurate and complete, and agree that this Policy is issued in reliance on the truth of that representation, and that such particulars and statements, which are deemed to be incorporated into and constitute a part of this Policy, are material to the risk assumed and form the basis of this Policy.  No knowledge or information possessed by any Insured will be imputed to any other Insured. The Insurer may not void and/or rescind this Policy, other than for non-payment of premium."

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 289 09 04

**Endorsement No.: 33**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# OUTSIDE DIRECTORSHIP ENDORSEMENT

In consideration of the premium charged:

(1)     The term "Non Profit Entity", as defined in Section II Definitions of the Policy, is amended to include the following entity (the "For-Profit Entity"):

Aciex Therapeutics

(2)     The term "Insured Person", as defined in Section II Definitions of the Policy, is amended to include service by the following Insured Person(s) as a director or officer of the For-Profit Entity, but only during such time that such service is at the specific written request of the Company:

Rajat Rai

With respect to the For-Profit Entity, the term "Insured Person" shall not include service as a director or officer by any Insured Person other than the Insured Person(s) specifically identified in paragraph (2).

All other terms, conditions and limitations of this Policy shall remain unchanged.

**DO 80 717 10 15**

**Endorsement No.: 34**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# DELETE EXCLUSION (B) ENDORSEMENT

In consideration of the premium charged, Section III Exclusion (B) of the Policy is deleted in its entirety.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2015 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

**DO 80 627 05 12**

| | |
|---|---|
| **Endorsement No.: 35** | **Effective: September 01, 2019** |
| **Named Insured: Akorn, Inc.** | **12:01 A.M. Standard Time** |
| **Policy No.: US00075683DO19A** | **Insurer: XL Specialty Insurance Company** |

# AMEND NOTICE OF CLAIM

In consideration of the premium charged: it is understood and agreed that the Insureds' failure to provide written notice of any Claim to the Insurer within the time prescribed in Section VI. GENERAL CONDITIONS (A)(1) will not invalidate coverage under this Policy unless the failure to provide such timely notice has actually prejudiced the Insurer; provided, however, that there will be an irrebuttable presumption of prejudice to the Insurer if, before written notice of a Claim is given to the Insurer, an Insured's liability in connection with such Claim is determined by a court of competent jurisdiction or by binding arbitration or an Insured enters into any settlement or other compromise of such Claim.

All other terms, conditions and limitations of this Policy shall remain unchanged.

*© 2012 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.*

**DO 80 241 11 03**

| | |
|---|---|
| **Endorsement No.: 36** | **Effective: September 01, 2019** |
| **Named Insured: Akorn, Inc.** | **12:01 A.M. Standard Time** |
| **Policy No.: US00075683DO19A** | **Insurer: XL Specialty Insurance Company** |

# AMEND DEFINITION OF INSURED PERSON

In consideration of the premium charged:

(1)  Solely for the purposes of this endorsement, the following terms shall have the meanings set forth below:

    (a)  "Co-Defendant Insured Person" means any natural person employee of the Company, but solely in connection with services performed for the Company; and

    (b)  "Original Insured Person" means any Insured Person, other than a Co-Defendant Insured Person.

(2)  The term "Insured Person," as defined in Section II Definitions (J) of the Policy, is amended to include any Co-Defendant Insured Person, but only with respect to, to the extent that, and during such time that a Claim:

    (a)  made against a Co-Defendant Insured Person is also made and continuously maintained against an Original Insured Person; and

    (b)  is for any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty by such Co-Defendant Insured Person committed or allegedly committed in connection with services performed for the Company.

(3)  No coverage will be available under this Policy for any Claim made: (a) solely against a Co-Defendant Insured Person, or (b) against a Co-Defendant Insured Person and person or entity, other than an Original Insured Person.

(4)  No coverage will be available under this Policy for any Claim made against a Co-Defendant Insured Person based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving a Co-Defendant Insured Person in connection with any services performed for any entity other than the Company, or acting in their capacity as a consultant to any entity other than the Company.

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 05 03 00

**Endorsement No.: 37**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND DEFINITION OF "CLAIM"

In consideration of the premium charged, the term "Claim" will be deemed to include any proceeding or investigation which is comparable to a proceeding or investigation described in Section II.(C)(2), (3) or (4) of the Policy, and which is brought or commenced in a jurisdiction other than the United States, its territories and possessions before any court, tribunal, agency, organization or other official body having  the authority under the laws of such jurisdiction to enter judgment or otherwise make a binding determination of liability or responsibility.

All other terms, conditions and limitations of this Policy shall remain unchanged.

**DO 80 567 07 10**

| | |
|---|---|
| **Endorsement No.: 38** | **Effective: September 01, 2019** |
| **Named Insured: Akorn, Inc.** | **12:01 A.M. Standard Time** |
| **Policy No.: US00075683DO19A** | **Insurer: XL Specialty Insurance Company** |

# ADDITIONAL INSURED ENDORSEMENT

In consideration of the premium charged:

(1)     The term "Company," as defined in Section II Definitions (D) of the Policy, is amended to include the following entities scheduled below, (each an "Additional Company"):

| Additional Company | Pending and Prior Litigation Date |
|---|---|
| Hi-Tech Pharmacal Co., Inc. | April 17, 2014 |

(2)     No coverage will be available under this Policy for Claims made against any Additional Company, or any Insured Person thereof, based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or Wrongful Act, Company Wrongful Act or Employment Practices Wrongful Act underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding or arbitration which was brought prior to the Pending and Prior Litigation Date set forth opposite such Additional Company in paragraph (1) above of this endorsement.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2010 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

DO 80 578 11 10

| | |
|---|---|
| **Endorsement No.: 39** | **Effective: September 01, 2019** |
| **Named Insured: Akorn, Inc.** | **12:01 A.M. Standard Time** |
| **Policy No.: US00075683DO19A** | **Insurer: XL Specialty Insurance Company** |

# AMEND GENERAL CONDITIONS (G)(1) ENDORSEMENT

In consideration of the premium charged, Section VI General Conditions (G)(1) of the Policy is amended to read in its entirety as follows:

"(1)     The Insured agrees to provide the Insurer with all information, assistance and cooperation that the Insurer may reasonably request, and further agree that they will do nothing which in any way increases the Insurer's exposure under this Policy or in any way prejudices the Insurer's potential or actual rights of recovery.  The failure of any Insured Person to give the Insurer cooperation and information as required in this paragraph shall not impair the rights of any other Insured Person under this Policy."

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2010 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

**DO 80 480 06 08**

**Endorsement No.: 40**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# EMAIL NOTICES ENDORSEMENT

In consideration of the premium charged, Section VI General Condition (A)(3) of the Policy is amended to read in its entirety as follows:

"(3)  All notices under GENERAL CONDITIONS (A)(1) and (2) must be sent by:

(a)     certified mail or the equivalent to the address set forth in ITEM 7 of the Declarations:  Attention Claim Department; or

(b)     electronic mail (email) to:  proclaimnewnotices@xlcatlin.com."

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 480 06 08

Page 1 of 1

© 2008 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

XL 80 72 06 13

**Endorsement No.: 41**                          **Effective: September 01, 2019**
**Named Insured: Akorn, Inc.**                   **12:01 A.M. Standard Time**
**Policy No.: US00075683DO19A**                  **Insurer: XL Specialty Insurance Company**

# LINKED LIMIT ENDORSEMENT

In consideration of the premium charged, the Insured agrees with the Insurer that the total of all limits of liability under this Policy and any and all other insurance policies issued or reinsured by the Insurer or its affiliates scheduled hereunder to the Insured or any of the Insured's worldwide affiliates, officers, directors, or employees, (this Policy together with all such other policies being referred to herein as "Program Policies") shall not exceed the amount of the Program Aggregate Limit indicated below:

**Program Aggregate Limit**:  $5,000,000

**Schedule of Program Policies:** (list all policies below):

|          | Named Insured | Issuing XL Group Insurer | Policy Number   | Policy Period                              |
|----------|---------------|--------------------------|-----------------|--------------------------------------------|
| Policy 1 | Akorn, Inc.   | XL Insurance Company SE  | CH00009864DO19A | September 01, 2019 – September 01, 2020     |

In the event that any payment is made under this Policy or any other Program Policy with the effect that the Program Aggregate Limit is exceeded, the Insured under this Policy shall immediately upon the request of the Insurer pay to the Insurer the sum of such excess.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2013 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

**XL 80 74 07 13**

**Endorsement No.: 42**  **Effective: September 01, 2019**
**Named Insured: Akorn, Inc.**  **12:01 A.M. Standard Time**
**Policy No.: US00075683DO19A**  **Insurer: XL Specialty Insurance Company**

# SIMULTANEOUS TERMINATION ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that if this Policy is canceled pursuant to Section VI General Conditions (E)(1) or (E)(2) of the Policy, any and all other insurance policies issued or reinsured by the Insurer or its affiliates scheduled below to the Insured or any of the Insured's worldwide affiliates, officers, directors, or employees, (this Policy together with all such other policies being referred to herein as "Program Policies"), shall be deemed terminated and cancelled automatically and simultaneously with this Policy.

**Schedule of Program Policies:**

|  | Named Insured | Issuing XL Group Insurer | Policy Number | Policy Period |
|---|---|---|---|---|
| Policy 1 | Akorn, Inc. | XL Insurance Company SE | CH00009864DO19A | September 01, 2019 – September 01, 2020 |

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2013 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

DO 80 12 04 00

**Endorsement No.: 43**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# FULLY-EARNED PREMIUM ENDORSEMENT

In consideration of the premium charged, the entire premium for this Policy, as set forth in ITEM 8 of the Declarations, shall be deemed to be fully earned as of the Policy Inception Date set forth in ITEM 2 of the Declarations.

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Management Liability**
**DO 71 00 09 99**

## MANAGEMENT LIABILITY AND COMPANY REIMBURSEMENT INSURANCE COVERAGE FORM

**THIS IS A CLAIMS MADE POLICY WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY.**
**PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

**In consideration of the payment of the premium, and in reliance on all statements made and information furnished to Executive Liability Underwriters, the Underwriting Manager for the Insurer identified in the Declarations (hereinafter the Insurer) including the Application and subject to all of the terms, conditions and limitations of all of the provisions of this Policy, the Insurer, the Insured Persons and the Company agree as follows:**

## I.   INSURING AGREEMENTS

(A)   The Insurer shall pay on behalf of the **Insured Persons Loss** resulting from a **Claim** first made against the **Insured Persons** during the **Policy Period** or, if applicable, the Optional Extension Period, for a **Wrongful Act** or **Employment Practices Wrongful Act,** except for **Loss** which the **Company** is permitted or required to pay on behalf of the **Insured Persons** as indemnification.

(B)   The Insurer shall pay on behalf of the **Company Loss** which the **Company** is required or permitted to pay as indemnification to any of the **Insured Persons** resulting from a **Claim** first made against the **Insured Persons** during the **Policy Period** or, if applicable, the Optional Extension Period, for a **Wrongful Act** or **Employment Practices Wrongful Act.**

(C)   The Insurer shall pay on behalf of the **Company Loss** resulting solely from any **Securities Claim** first made against the **Company** during the **Policy Period** or, if applicable, the Optional Extension Period, for a **Company Wrongful Act.**

## II.   DEFINITIONS

(A)   "**Application**" means:

    (1)   the application attached to and forming part of this Policy; and

    (2)   any materials submitted therewith, which shall be retained on file by the Insurer and shall be deemed to be physically attached to this Policy.

(B)   "**Change In Control**" means:

    (1)   the merger or acquisition of the **Parent Company**, or of all or substantially all of its assets by another entity such that the **Parent Company** is not the surviving entity;

    (2)   the acquisition by any person, entity or affiliated group of persons or entities of the right to vote, select or appoint more than fifty percent (50%) of the directors of the **Parent Company**; or

    (3)   the appointment of a Receiver, Conservator, Liquidator, Trustee, Rehabilitator, or any comparable authority, with respect to the **Parent Company**.

(C)   "**Claim**" means:

    (1)   a written demand for monetary or non-monetary relief;

    (2)   any civil proceeding in a court of law or equity, or arbitration;

    (3)   any criminal proceeding which is commenced by the return of an indictment; and

    (4)   a formal civil, criminal, administrative regulatory proceeding or formal investigation of an **Insured Person** or the **Company** (but with respect to the **Company** only for a **Company Wrongful Act**) which is commenced by the filing or issuance of a notice of charges, formal investigative order or similar document identifying in writing such **Insured Person** or the **Company** as a person or entity against whom a proceeding as described in (C)(2) or (3) above may be commenced, including any

proceeding before the Equal Employment Opportunity Commission or any similar federal, state or local governmental body having jurisdiction over any **Employment Practices Wrongful Act**.

(D)   "**Company**" means the **Parent Company** and any **Subsidiary** created or acquired on or before the Inception Date set forth in ITEM 2 of the Declarations or during the Policy Period, subject to GENERAL CONDITIONS VI (D).

(E)   "**Company Wrongful Act**" means any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty by the Company in connection with a **Securities Claim**.

(F)   "**Defense Expenses**" means reasonable legal fees and expenses incurred in the defense of any **Claim** including the premium for an appeal bond, attachment bond or similar bond but will not include applying for or furnishing such bond. **Defense Expenses** will not include the **Company's** overhead expenses or any salaries, wages, fees, or benefits of its directors, officers or employees.

(G)   "**Employment Practices Wrongful Act**" means any actual or alleged:

   (1)   wrongful termination of employment whether actual or constructive;

   (2)   employment discrimination of any kind including violation of any federal, state or local law involving employment or discrimination in employment which would deprive or potentially deprive any person of employment opportunities or otherwise adversely affect his or her status as an employee, because of such person's race, color, religion, age, sex, national origin, disability, pregnancy, or other protected status;

   (3)   sexual or other harassment in the workplace; or

   (4)   wrongful deprivation of career opportunity, employment related misrepresentations, retaliatory treatment against an employee of the **Company**, failure to promote, demotion, wrongful discipline or evaluation, or refusal to hire.

(H)   "**Employment Practices Claim**" means a **Claim** alleging an **Employment Practices Wrongful Ac**t.

(I)   "**Insured**" means the **Insured Persons** and the **Company**.

(J)   "**Insured Person**" means:

   (1)   any past, present or future director or officer, or member of the Board of Managers, of the **Company** and those persons serving in a functionally equivalent role for the **Parent Company** or any **Subsidiary** operating or incorporated outside the United States;

   (2)   any past, present or future employee of the **Company** to the extent any **Claim** is a **Securities Claim**;

   (3)   an individual identified in (J)(1) above who, at the specific written request of the **Company**, is serving as a director, officer, trustee, regent or governor of a **Non-Profit Entity**;

   (4)   any individual identified in (J)(1) above who, at the specific written request of the **Company** is serving in an elected or appointed position having fiduciary, supervisory or managerial duties and responsibilities comparable to those of an **Insured Person** of the **Company**, regardless of the name or title by which such position is designated, of a **Joint Venture**; or

   (5)   the lawful spouse of any person set forth in the above provisions of this definition, but only to the extent the spouse is a party to any Claim solely in their capacity as a spouse of such persons and only for the purposes of any Claim seeking damages recoverable from marital community property, property jointly held by any such person and spouse, or property transferred from any such person to the spouse.

In the event of the death, incapacity or bankruptcy of an individual identified in (J)(1), (2), (3), (4) or (5) above, any **Claim** against the estate, heirs, legal representatives or assigns of such individual for a **Wrongful Act** or **Employment Practices Wrongful Act** of such individual will be deemed to be a **Claim** against such individual.

(K)   "**Interrelated Wrongful Acts**" means any **Wrongful Act**, **Company Wrongful Act**, or **Employment Practices Wrongful Act** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any of the same or related facts, series of related facts, circumstances, situations, transactions or events.

(L)   "**Joint Venture**" means any corporation, partnership, joint venture, association or other entity, other than a **Subsidiary**, during any time in which the Parent Company, either directly or through one or more **Subsidiary(s)**;

    (1)   owns or controls at least thirty three percent (33%), but not more than fifty percent (50%), in the aggregate of the outstanding securities or other interests representing the right to vote for the election or appointment of those persons of such an entity occupying elected or appointed positions having fiduciary, supervisory or managerial duties and responsibilities comparable to those of an **Insured Person** of the **Company**, regardless of the name or title by which such position is designated, of a **Joint Venture**; or

    (2)   has the right, by contract, ownership of securities or otherwise, to elect, appoint or designate at least thirty three percent (33%) of those persons described in (L)(1) above.

(M)   "**Loss**" means damages, judgments, settlements or other amounts (including punitive or exemplary damages, where insurable by law) and **Defense Expenses** in excess of the Retention that the **Insured** is legally obligated to pay. **Loss** will not include:

    (1)   the multiplied portion of any damage award;

    (2)   fines, penalties or taxes imposed by law; or

    (3)   matters which are uninsurable under the law pursuant to which this Policy is construed.

    **NOTE**: With respect to judgments in which punitive damages are awarded, the coverage provided by this Policy shall apply to the broadest extent permitted by law. If, based on the written opinion of counsel for the **Insured**, punitive damages are insurable under applicable law the Insurer will not dispute the written opinion of counsel for the Insured.

(N)   "**Non-Profit Entity**" means a corporation or organization other than the **Company**, which is exempt from taxation under Section 501 (c)(3), (4) and (10) of the Internal Revenue Code as amended or any rule or regulation promulgated thereunder.

(O)   "**Parent Company**" means the entity named in ITEM 1 of the Declarations.

(P)   "**Policy Period**" means the period from the Inception Date to the Expiration Date set forth in ITEM 2 of the Declarations or to any earlier cancellation date.

(Q)   "**Securities Claim**" means a **Claim** made against an Insured for:

    (1)   any actual or alleged violation of the Securities Act of 1933 as amended, the Securities Exchange Act of 1934 as amended, any similar federal or state statute or any rules or regulations promulgated thereunder; or

    (2)   any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty arising from or in connection with the purchase or sale of, or offer to purchase or sell any securities issued by the Company, whether such purchase, sale or offer involves a transaction with the **Company** or occurs in the open market.

(R)   "**Subsidiary**" means any entity during any time in which the **Parent Company** owns, directly or through one or more **Subsidiary(s)**, more than fifty percent (50%) of the outstanding securities representing the right to vote for the election of such entity's directors.

(S)   "**Wrongful Act**" means any actual or alleged act, error, omission, misstatement, misleading statement, neglect, or breach of duty by any **Insured Person** while acting in his or her capacity as an:

    (1)   **Insured Person** of the **Company** or a person serving in a functionally equivalent role for the **Parent Company** or any **Subsidiary**;

(2)    **Insured Person** of the **Company** who at the specific written request of the **Company** is serving as a director, officer, trustee, regent or governor of a **Non-Profit Entity**; or

(3)    **Insured Person** of the **Company**, who at the specific written request of the **Company** is serving in an elected or appointed position having fiduciary, supervisory or managerial duties and responsibilities comparable to those of an **Insured Person** of the **Company**, regardless of the name or title by which such position is designated, of a **Joint Venture**.

## III.   EXCLUSIONS

The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured Person**, or with respect to INSURING AGREEMENT (C), the **Company**:

(A)    for any actual or alleged bodily injury, sickness, mental anguish, emotional distress, libel, slander, oral or written publication of defamatory or disparaging material, disease or death of any person, or damage or destruction of any tangible property including loss of use thereof; however, this EXCLUSION (A) will not apply to any allegations of libel, slander, defamation, mental anguish or emotional distress if and only to the extent that such allegations are made as part of an **Employment Practices Claim** for an **Employment Practices Wrongful Act**;

(B)    for any actual, alleged or threatened discharge, dispersal, release, escape, seepage, transportation, emission, treatment, removal or disposal of pollutants, contaminants, or waste of any kind including but not limited to nuclear material or nuclear waste or any actual or alleged direction, request or voluntary decision to test for, abate, monitor, clean up, recycle, remove, recondition, reclaim, contain, treat, detoxify or neutralize pollutants, contaminants or waste of any kind including but not limited to nuclear material or nuclear waste. With respect to a **Claim** made under INSURING AGREEMENT (A) only, this EXCLUSION (B) will not apply to a **Claim** unless a court of competent jurisdiction specifically determines the **Company** is not permitted to indemnify the **Insured Person**;

**NOTE**: EXCLUSIONS (A) and (B) above will not apply with respect to a **Securities Claim** brought by a security holder of the **Company**, or a derivative action brought by or on behalf of, or in the name or right of, the **Company,** and brought and maintained independently of, and without the solicitation, assistance, participation or intervention of, an **Insured**.

(C)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged violation of the Employee Retirement Income Security Act of 1974 (ERISA) as amended or any regulations promulgated thereunder or any similar law, federal, state or local law or regulation;

(D)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or **Wrongful Act, Company Wrongful Act** or **Employment Practices Wrongful Act** underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding or arbitration which was brought prior to the Pending and Prior Litigation Date set forth in ITEM 6 of the Declarations;

(E)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or **Wrongful Act, Company Wrongful Act** or **Employment Practices Wrongful Act** which, before the Inception Date of this Policy, was the subject of any notice given under any other Management Liability policy, Directors and Officers liability policy or similar policy;

(F)    brought about or contributed to in fact by any:

    (1)    intentionally dishonest, fraudulent or criminal act or omission or any willful violation of any statute, rule or law; or

    (2)    profit or remuneration gained by any Insured to which such Insured is not legally entitled;

    as determined by a final adjudication in the underlying action or in a separate action or proceeding;

(G)    by, on behalf of, or at the direction of the **Company**, except and to the extent such **Claim**:

    (1)    is brought derivatively by a security holder of the **Company** who, when such **Claim** is made and maintained, is acting independently of, and without the solicitation, assistance, participation or

**Management Liability**
**DO 71 00 09 99**

intervention of an **Insured Person** or the **Company**; or

(2)    is brought by the Bankruptcy Trustee or Examiner of the **Company** or any assignee of such Trustee or Examiner, or any Receiver, Conservator, Rehabilitator, or Liquidator or comparable authority of the **Company**;

(H)    by, on behalf of, at the direction of or in the name or right of any Non-Profit Entity or Joint Venture against an Insured Person for a Wrongful Act or Employment Practices Wrongful Act while acting in his or her capacity as a director, officer, trustee, regent or governor of such, or persons occupying elected or appointed positions having fiduciary, supervisory or managerial duties and responsibilities comparable to those of an Insured Person of the Company, regardless of the name or title by which such position is designated; or

(I)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving an **Insured Person** acting in their capacity as a **Insured Person** of any entity other than the **Company**, **Non-Profit Entity** or **Joint Venture**.

No conduct of any **Insured Person** will be imputed to any other Insured to determine the application of any of the above EXCLUSIONS.

## IV.    LIMIT OF LIABILITY, INDEMNIFICATION AND RETENTIONS

(A)    The Insurer shall pay the amount of **Loss** in excess of the applicable Retention(s) set forth in ITEM 4 of the Declarations up to the Limit of Liability set forth in ITEM 3 of the Declarations.

(B)    The amount set forth in ITEM 3 of the Declarations shall be the maximum aggregate Limit of Liability of the Insurer under this Policy. Payment of **Loss**, including **Defense Expenses**, by the Insurer shall reduce the Limit of Liability.

(C)    With respect to the Company's indemnification of its **Insured Persons**, the certificate of incorporation, charter, by-laws, articles of association, or other organizational documents of the **Parent Company**, each **Subsidiary** and each **Non-Profit Entity** or **Joint Venture**, will be deemed to provide indemnification to the **Insured Persons** to the fullest extent permitted by law.

(D)    The Retention applicable to INSURING AGREEMENT (B) shall apply to any **Loss** as to which indemnification by the **Company**, **Non-Profit Entity** or **Joint Venture** is legally permissible, whether or not actual indemnification is made unless such indemnification is not made by the **Company**, **Non-Profit Entity** or **Joint Venture** solely by reason of its financial insolvency. In the event of financial insolvency, the Retention(s) applicable to INSURING AGREEMENT (A) shall apply.

(E)    If different retentions are applicable to different parts of any **Loss**, the applicable Retention(s) will be applied separately to each part of such Loss, and the sum of such Retention(s) will not exceed the largest applicable Retention set forth in ITEM 4 of the Declarations.

(F)    Notwithstanding the foregoing, solely with respect to a **Securities Claim**, no **Retention** shall apply to such **Claim** and the **Insurer** will reimburse those **Defense Expenses** incurred by the **Insured** if:

(1)    the **Securities Claim** is dismissed, or there is a stipulation to dismiss the **Securities Claim**, with or without prejudice and without the payment of any monetary consideration by the **Insured**;

(2)    there is a final judgment of no liability obtained prior to or during trial, in favor of the **Insured**, by reason of a motion to dismiss or a motion for summary judgment, after the exhaustion of all appeals; or

(3)    there is a final judgment of no liability obtained after trial, in favor of the Insured, after the exhaustion of all appeals.

Any reimbursement in the case of (F)(1), (2), or (3) above will only occur if ninety (90) days after the date of dismissal, stipulation, final judgment of no liability is obtained and only if:

(a)    the same **Securities Claim** (or a **Securities Claim** containing **Interrelated Wrongful Acts**) is not brought again within that time; and

(b)    the **Insured** provides the Insurer with an Undertaking in a form acceptable to the Insurer that

such reimbursement of the applicable Retention(s) will be paid back to the Insurer in the event the **Securities Claim** (or a **Securities Claim** containing **Interrelated Wrongful Acts**) is brought after the ninety (90) day period.

## V.   DEFENSE, SETTLEMENT AND ALLOCATION OF LOSS

(A)   It shall be the duty of the **Insured** and not the duty of the Insurer to defend any **Claim** under this Policy.

(B)   No **Insured** may incur any **Defense Expenses** or admit liability for, make any settlement offer with respect to, or settle any **Claim** without the Insurer's consent, such consent not to be unreasonably withheld.

(C)   Upon the written request of an **Insured**, the Insurer will advance **Defense Expenses** on a current basis in excess of the applicable Retention, if any, before the disposition of the **Claim** for which this policy provides coverage. As a condition of the advancement of **Defense Expenses**, the Insurer may require a written undertaking, in a form satisfactory to the Insurer, which will guarantee the repayment of any **Loss** including **Defense Expenses** paid to or on behalf of the Insured if it is finally determined that the **Loss** incurred is not covered under this Policy.

(D)   If both **Loss** covered by this Policy and Loss not covered by this Policy are incurred, either because a **Claim** made against the Insured contains both covered and uncovered matters, or because a **Claim** is made against both the Insured and others (including the **Company** for **Claims** other than **Securities Claims**) not insured under this Policy, the **Insured** and the Insurer will use their best efforts to determine a fair and appropriate allocation of **Loss** between that portion of Loss that is covered under this Policy and that portion of Loss that is not covered under this Policy. Additionally, the **Insured** and the Insurer agree that in determining a fair and appropriate allocation of **Loss**, the parties will take into account the relative legal and financial exposures of, and relative benefits obtained in connection with the defense and/or settlement of the **Claim** by, the Insured and others.

(E)   In the event that an agreement cannot be reached between the Insurer and the **Insured** as to an allocation of **Loss**, as described in (D) above, then the Insurer shall advance that portion of **Loss** which the **Insured** and the Insurer agree is not in dispute until a final amount is agreed upon or determined pursuant to the provisions of this Policy and applicable law.

## VI.   GENERAL CONDITIONS

(A)   **NOTICE**

(1)   As a condition precedent to any right to payment under this Policy with respect to any **Claim**, the **Insured** shall give written notice to the Insurer of any Claim as soon as practicable after it is first made.

(2)   If, during the **Policy Period**, the **Insured** first becomes aware of a specific **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act** and if, during the **Policy Period**, the Insured:

(a)   provides the Insurer with written notice of the specific **Wrongful Act, Company Wrongful Act** or **Employment Practices Wrongful Act**, the consequences which have resulted or may result therefrom (including but not limited to actual or potential damages), the identities of the potential claimants, the circumstances by which the Insured first became aware of such **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act**; and

(b)   requests coverage under this Policy for any subsequently resulting **Claim** for such **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act**;

then any **Claim** subsequently made arising out of such **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act** will be treated as if it had been first made during the **Policy Period.**

(3)   All notices under GENERAL CONDITIONS (A)(1) and (2) must be sent by certified mail or the equivalent to the address set forth in ITEM 7 of the Declarations; Attention: Claim Department.

**Management Liability
DO 71 00 09 99**

**(B)     INTERRELATED CLAIMS**

All **Claims** arising from the same **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim** and shall be deemed to have been made at the earliest of the time at which the earliest such **Claim** is made or deemed to have been made pursuant to GENERAL CONDITIONS (A)(1) above or GENERAL CONDITIONS (A)(2), if applicable.

**(C)     OTHER INSURANCE AND SERVICE IN CONNECTION WITH NON-PROFIT ENTITIES AND JOINT VENTURES**

(1)     All **Loss** payable under this Policy will be specifically excess of and will not contribute with any other insurance, including but not limited to any insurance under which there is a duty to defend, unless such other insurance is specifically excess of this Policy. This Policy will not be subject to the terms of any other insurance policy.

(2)     All coverage under this Policy for **Loss** from **Claims** made against the **Insured Persons** while acting in their capacity as a director, officer, trustee, regent or governor of a **Non-Profit Entity** or persons occupying elected or appointed positions having fiduciary, supervisory or managerial duties and responsibilities comparable to those of the **Insured Persons** of the **Company**, regardless of the name or title by which such position is designated, of a **Joint Venture** will be specifically excess of and will not contribute with, any other insurance or indemnification available to such **Insured Person** from such **Non-Profit Entity** or **Joint Venture** by reason of their service as such.

**(D)     MERGERS AND ACQUISITIONS (CHANGES IN EXPOSURE OR CONTROL)**

(1)     If during the **Policy Period**, the **Company** acquires any assets, acquires a **Subsidiary**, or acquires any entity by merger, consolidation or otherwise, or assumes any liability of another entity, coverage shall be provided for any **Loss** involving a **Claim** for a **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act** occurring after the consummation of the transaction.

(2)     If, however, by reason of the transaction (or series of transactions) described in (D)(1) above, the entity, assets, **Subsidiary** or liabilities so acquired or so assumed, exceed thirty five percent (35%) of the total assets or liabilities of the **Company**, as represented in the **Company's** most recent audited consolidated financial statements, coverage under this Policy shall be provided for a period of ninety (90) days for any **Loss** involving a **Claim** for a **Wrongful Act**, **Company Wrongful Act**, or **Employment Practices Wrongful Act** that occurred after the transaction has been consummated. Coverage beyond the ninety (90) day period will be provided only if:

(a)     the Insurer receives written notice containing full details of the transaction(s); and

(b)     the Insurer at its sole discretion, agrees to provide such additional coverage upon such terms, conditions, limitations, and additional premium that it deems appropriate.

(3)     With respect to the acquisition, assumption, merger, consolidation or otherwise of any entity, asset, **Subsidiary** or liability as described in (D)(1) and (2) above, there will be no coverage available under this Policy for **Claims** made against the acquired, assumed, merged, or consolidated entity, asset, **Subsidiary**, liability, or **Insured Person** for a **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act** committed any time during which such entity, asset, liability or **Subsidiary** is not an **Insured**.

(4)     If during the **Policy Period** any entity ceases to be a **Subsidiary**, the coverage provided under this Policy shall continue to apply to the **Insured Persons** who, because of their service with such **Subsidiary**, were covered under this Policy but only with respect to a **Claim** for a **Wrongful Act, Company Wrongful Act** or **Employment Practices Wrongful Act** that occurred or allegedly occurred prior to the time such **Subsidiary** ceased to be a **Subsidiary** of the **Company**.

(5)     If, during the **Policy Period**, there is a **Change In Control**, the coverage provided under this Policy shall continue to apply but only with respect to a **Claim** against an **Insured** for a **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act** committed or allegedly committed up to the time of the **Change In Control**; and

(a)     coverage will cease with respect to any **Claim** for a **Wrongful Act, Company Wrongful Act** or **Employment Practices Wrongful Act** committed subsequent to the **Change In Control**; and

**Management Liability**
**DO 71 00 09 99**

(b)    the entire premium for the Policy will be deemed to be fully earned immediately upon the consummation of a **Change In Control.**

**(E)    CANCELLATION AND RENEWAL OF COVERAGE**

(1)    Except for the nonpayment of premium, as set forth in (E)(2) below, the Parent Company has the exclusive right to cancel this Policy. Cancellation may be effected by mailing to the Insurer written notice when such cancellation shall be effective, provided the date of cancellation is not later than the Expiration Date set forth in ITEM 2 of the Declarations. In such event, the Insurer shall retain the customary short rate portion of the earned premium. Return or tender of the unearned premium is not a condition of cancellation.

(2)    The Insurer may only cancel this Policy for nonpayment of premium. The Insurer will provide not less than twenty (20) days written notice stating the reason for cancellation and when the Policy will be canceled. Notice of cancellation will be sent to the **Parent Company** and the agent of record for the **Insured,** if applicable.

(3)    The Insurer is under no obligation to renew this Policy upon its expiration. Once the Insurer chooses to non-renew this Policy, the Insurer will deliver or mail to the **Parent Company** written notice stating such at least sixty (60) days before the Expiration Date set forth in ITEM 2 of the Declarations.

**(F)    OPTIONAL EXTENSION PERIOD**

(1)    If either the **Parent Company** or the Insurer does not renew this Policy, the **Parent Company** shall have the right, upon payment of an additional premium set forth in ITEM 5 of the Declarations, to an extension of the coverage provided by this Policy with respect only to any **Claim** first made during the period of time set forth in ITEM 5 of the Declarations after the Policy Expiration Date, but only with respect to a **Wrongful Ac**t, **Company Wrongful Act**, or **Employment Practices Wrongful Act**, occurring prior to the Policy Expiration Date.

(2)    As a condition precedent to the right to purchase the Optional Extension Period the total premium for this Policy must have been paid in full. The right of the **Parent Company** to purchase the Optional Extension Period will be immediately terminated if the Insurer does not receive written notice by the **Parent Company** advising it wishes to purchase the Optional Extension Period together with full payment of the premium for the Optional Extension Period within thirty (30) days after the Policy Expiration Date.

(3)    If the **Parent Company** elects to purchase the Optional Extension Period as set forth in (F)(1) and (2) above, the entire premium for the Optional Extension Period will be deemed to be fully earned at the Inception Date for the Optional Extension Period.

(4)    The purchase of the Optional Extension Period will not in any way increase the Limit Of Liability set forth in ITEM 3 of the Declarations, and the Limit of Liability with respect to **Claims** made during the Optional Extension Period shall be part of and not in addition to the Limit of Liability for all **Claims** made during the **Policy Period.**

**(G)    ASSISTANCE, COOPERATION AND SUBROGATION**

(1)    The **Insured** agrees to provide the Insurer with all information, assistance and cooperation that the Insurer may reasonably request, and further agree that they will do nothing which in any way increases the Insurer's exposure under this Policy or in any way prejudices the Insurer's potential or actual rights of recovery.

(2)    In the event of any payment under this Policy, the Insurer shall be subrogated to all of the potential or actual rights of recovery of the **Insured**. The I**nsured** shall execute all papers required and will do everything necessary to secure such rights including but not limited to the execution of such documents as are necessary to enable the Insurer to effectively bring suit in their name, and will provide all other assistance and cooperation which the Insurer may reasonably require.

**(H) EXHAUSTION**

If the Insurer's Limit of Liability as set forth in ITEM 3 of the Declarations is exhausted by the payment of **Loss,** the premium as set forth in ITEM 8 of the Declarations will be fully earned, all obligations of the Insurer under this Policy will be completely fulfilled and exhausted, and the Insurer will have no further obligations of any kind

**Management Liability**
**DO 71 00 09 99**

whatsoever under this Policy.

**(I)     REPRESENTATION CLAUSE**

The **Insured** represents that the statements and particulars contained in the **Application** as well as any prior application submitted to the Insurer are true, accurate and complete, and agree that this Policy is issued in reliance on the truth of that representation, and that such particulars and statements, which are deemed to be incorporated into and constitute a part of this Policy, are material to the risk assumed and form the basis of this Policy. No knowledge or information possessed by any Insured will be imputed to any other Insured except for material facts or information known to the person(s) who signed the Application. In the event that any of the particulars or statements in the **Application** are untrue, this Policy will be void with respect to any **Insured** who knew of such untruth or to whom such knowledge is imputed.

**(J)     ACTION AGAINST THE INSURER, ASSIGNMENT, AND CHANGES TO THE POLICY**

(1)     No action may be taken against the Insurer unless, as a condition precedent thereto:

(a)     there has been full compliance with all of the terms and conditions of this Policy; and

(b)     the amount of the obligation of the **Insured** has been finally determined either by judgment against the Insured after actual trial, or by written agreement of the **Insured**, the claimant and the Insurer.

(2)     Nothing contained herein shall give any person or entity any right to join the Insurer as a party to any **Claim** against the Insurer to determine their liability, nor may the **Insured** implead the Insurer in any **Claim**.

(3)     Assignment of interest under this Policy shall not bind the Insurer unless its consent is endorsed hereon.

(4)     Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Insurer will not cause a waiver or change in any part of this Policy or prevent the Insurer from asserting any right under the terms, conditions and limitations of this Policy. The terms, conditions and limitations may only be waived or changed by written endorsement.

**(K)     AUTHORIZATION AND NOTICES**

It is understood and agreed that the **Parent Company** will act on behalf of the **Company** and the **Insured Persons** with respect to:

(1)     the payment of the premiums;

(2)     the receiving of any return premiums that may become due under this Policy;

(3)     the giving of all notices to the Insurer as provided herein; and

(4)     the receiving of all notices from the Insurer.

**(L) ENTIRE AGREEMENT**

The **Insured** agrees that the Declarations, Policy, including the endorsements, attachments and the **Application** shall constitute the entire agreement between the Insurer or any of its agents and the **Insured** relating to this insurance.