**SOMPO INTERNATIONAL**

**Endurance American Insurance Company**
*Wilmington, Delaware*

## FOLLOW FORM EXCESS MANAGEMENT LIABILITY INSURANCE DECLARATIONS

NOTICE:  PLEASE READ CAREFULLY.  This Policy shall follow all the terms and conditions of the Followed Form except as stated herein. Terms defined in the Followed Form are used herein with the meaning assigned to them in the Followed Form unless otherwise indicated.

POLICY NUMBER:                     DOX10007587103
PRIOR POLICY NUMBER:         DOX10007587102

Item 1.    Named Insured:          Akorn, Inc.
              Address:                    1925 West Field Court
                                                Suite 300
                                                Lake Forest, IL 60045

Item 2.    Policy Period:            From: September 01, 2019        To: September 01, 2021
                                                (12:01 AM Standard Time at the address of the  Named Insured.)

Item 3.    Limit of Liability:       $5,000,000 excess of $10,000,000
              (including defense costs)

Item 4.    Pending & Prior Litigation
              Date:                        June 1, 2018
              This policy follows the pending & prior litigation exclusion in the Followed Form, except that the applicable date in such exclusion shall be the date indicated in this Item 4.

Item 5.    Premium:                  $1,800,000

Item 6.    Producer:                  Arthur J. Gallagher Risk Management Services, Inc.
              Address:                    300  South Riverside Plaza
                                                Suite 1500
                                                Chicago, IL 60606

Item 7.    A.  Underlying Policy(ies):

| Insurer | Policy Number | Limit of Liability | Attachment |
|---|---|---|---|
| XL Specialty Insurance Company | US00075683DO19A | $5,000,000 | Primary |
| Berkshire Hathaway Specialty Insurance Company | 47-EPC-308703-01 | $5,000,000 | $5,000,000 |

              B.  Followed Form:

| Insurer | Policy Number | Limit of Liability | Attachment |
|---|---|---|---|
| XL Specialty Insurance Company | US00075683DO19A | $5,000,000 | Primary |

Item 8.    Forms and Endorsements Effective at Inception:
               See attached Forms and Endorsements Schedule, IL 0101.

Item 9.    Notice:
           A.   Claims or Potential Claims:      Commercial Management Liability
                                              Attn:  Claims Department
                                              1221 Avenue of The Americas
                                            New York,NY 10020
                                            Insuranceclaims@sompo-intl.com
                                            1-877-676-7575

           B. All Other:                    Commercial Management Liability
                                              Attn: Professional Lines Underwriting Department
                                          1221 Avenue of The Americas
                                          New York,NY 10020

This Policy shall constitute the contract between the Insureds and the Insurer.

The Insurer hereby causes this Policy to be signed on the Declarations page by a duly authorized representative of the Insurer.

_Joe Kelly III_

| | |
|---|---|
| _____ | October 14, 2019 |
| Authorized Representative | _____ |
| | Date |

Policy Issuance Date:    October 14, 2019                             Endurance American Insurance Company
Policy Issuance Office:    Chicago, IL                                    EML 0001 0712
Page 2 of 2

## FOLLOW FORM EXCESS MANAGEMENT LIABILITY INSURANCE POLICY

THIS POLICY CONTAINS CLAIMS MADE COVERAGES. READ THE ENTIRE POLICY CAREFULLY TO DETERMINE YOUR RIGHTS, DUTIES AND WHAT IS AND WHAT IS NOT COVERED.

In consideration of premium paid or payable and in reliance on all statements made and information furnished by the Insureds in the Application or the underwriting of this Policy, and subject to the terms, conditions and limitations of this Policy, Endurance American Insurance Company (herein referred to as the "Insurer") agrees as follows:

I.   INSURING CLAUSE

Subject to the terms and conditions of this Policy, the Insurer shall provide to the Insureds insurance coverage for Claims first made during the Policy Period, including the Discovery Period if exercised. Liability for any covered Loss resulting from covered Claims shall attach to the Insurer only after (i) the insurers of the Underlying Policy(ies), the Insureds, and/or any other party shall have paid in legal currency the full amount of the Underlying Limit pursuant to Section II.B.1 below, and (ii) the Insureds shall have paid the retention or deductible, if any, applicable under the Primary Policy. The Insurer shall then be liable to pay only covered Loss in excess of such Underlying Limit up to its Limit of Liability as set forth in Item 3 of the Declarations, which shall be the maximum aggregate liability of the Insurer under this Policy with respect to all Claims first made in each Policy Period, including the Discovery Period if exercised, against all Insureds irrespective of the time of payment by the Insurer.

II.  TERMS AND CONDITIONS

A.   FOLLOWING FORM

This Policy, except as stated herein, is subject to all terms, conditions, representations and limitations as contained in the Followed Form as of inception of this Policy, and to the extent coverage is further limited or restricted thereby, in any other Underlying Policy(ies).  In no event shall this Policy grant broader coverage than would be provided by any of the Underlying Policy(ies). In the event of any conflict between the terms, conditions, and limitations of this Policy and any Underlying Policy, the terms, conditions and limitations of this Policy shall control.

B.   UNDERLYING POLICIES

1.   In the event and only in the event of the erosion or exhaustion of the Underlying Limit by reason of:

a.   the insurer(s) of the Underlying Policy(ies), the Insureds, and/or any other party paying in legal currency Loss covered under the respective Underlying Policy(ies); and/or

b.   the insurer(s) of the Underlying Policy(ies) paying loss under another policy(ies) issued by such underlying insurer to the Named Insured or any of its affiliates;  but only to the extent such Underlying Policy(ies)  explicitly requires that such loss payment erodes the limit of liability of such Underlying Policy(ies).

This Policy shall:  (i) in the event of erosion, pay excess of the eroded Underlying Limit, and (ii) in the event of exhaustion, continue in force as primary insurance; provided always that in the latter event this Policy shall only pay excess of the retention or deductible, if any, applicable under the Primary Policy, which retention or deductible shall be applied to any subsequent Loss in the same manner as specified in the Primary Policy.

2. Notwithstanding any of the terms of this Policy which might be construed otherwise, this Policy shall drop down only in the event of erosion or exhaustion of the Underlying Limit as described above, and shall not drop down for any other reason including, but not limited to, uncollectability (in whole or in part) of any Underlying Policy(ies). The risk of uncollectability of the Underlying Policy(ies) (in whole or in part) whether because of financial impairment or insolvency of an underlying insurer or for any other reason, is expressly retained by the Insureds and is not in any way or under any circumstances insured or assumed by the Insurer.

3. If any Underlying Policy(ies) contains a specific grant of coverage that is subject to a sublimit of liability, then coverage under this Policy shall not apply to any Claim which is otherwise subject to such grant of coverage. However, any Loss paid under the Underlying Policies on account of such Claim shall erode or exhaust the Underlying Limit, as provided in Section II.B.1 above, for purposes of this Policy.

4. If any Underlying Policy(ies) is canceled or terminated during the Policy Period including the Discovery Period if exercised, the Insurer shall not be liable under this Policy to a greater extent than it would have been had such Underlying Policy(ies) been so maintained. To the extent the terms, conditions or limitations of any of the Underlying Policy(ies) are changed to limit or restrict coverage, this Policy shall become subject to such changes upon the effective date of the change in the Underlying Policy(ies). To the extent the terms, conditions or limitations of any of the Underlying Policy(ies) are changed to expand or broaden coverage, this Policy shall become subject to such changes only if and to the extent the Insurer agrees to such changes in writing and the Insureds pay any additional premium reasonably required by the Insurer for such changes.

C. NOTICE

All notices under this Policy shall be in writing and properly addressed to the appropriate party. Notice to the Insureds may be given to the Named Insured at the address as shown in Item 1. of the Declarations. Notice to the Insurer of any Claim or potential Claim under this Policy shall be given to the Insurer at the address as shown in Item 9.A. of the Declarations. All other notices to the Insurer under this Policy shall be given to the Insurer at the address as shown in Item 9.B. of the Declarations.

Any notice to the insurer of an Underlying Policy(ies) shall not constitute notice to the Insurer unless also given to the Insurer as provided in this Section II.C.

D. CLAIMS PROVISIONS

1. The Insurer may, at its sole discretion, participate in the investigation, defense or settlement of any Claim or potential Claim reported to the Insurer under this Policy even if the Underlying Limit has not been exhausted.

2. No action by any other insurer shall bind the Insurer under this Policy. The Insurer shall not be liable under this Policy for any settlements, stipulated judgments or defense costs to which the Insurer has not consented, which consent shall not be unreasonably withheld.

E. DISCOVERY PERIOD

The Insureds shall have the right to elect a Discovery Period under this Policy as described in, and subject to the terms of, the Followed Form. The additional premium for the Discovery Period shall be the same percentage of this Policy's annual premium as the percentage stated in the Followed Form for calculating the Discovery Period premium thereunder. The Discovery

Period shall not be available unless the Insured has elected the Discovery Period in all unexhausted Underlying Policies and has provided proof thereof to the Insurer.

F.  DEFINITIONS

1.  Terms defined in the Followed Form are used herein with the meaning assigned to them in the Followed Form unless otherwise stated herein. Other words and phrases that appear in bold have special meaning and can be found below or in any endorsement or the specific Policy provision where they appear.

2.  Followed Form, Underlying Policy(ies) and Limit of Liability have the meanings attributed to them in the Declarations.

3.  Insured(s) means all natural persons and entities insured by the Followed Form.

4.  Named Insured means the entity named in Item 1 of the Declarations.

5.  Primary Policy means the first listed policy in Item 7.A of the Declarations.

6.  Policy Period means the period of time specified in Item 2. of the Declarations, subject to prior termination in accordance with the Followed Form.

7.  Underlying Limit means an amount equal to the aggregate of all limits of liability, as set forth in Item 7. of the Declarations, for all Underlying Policies, plus the retention or deductible, if any, applicable under the Primary Policy.

# FORMS AND ENDORSEMENT SCHEDULE

## FOLLOW FORM EXCESS MANAGEMENT LIABILITY

| End. No. | Title | Number |
|----------|-------|--------|
| | Follow Form Excess Management Liability Insurance Declarations | EML 0001 0712 |
| | Follow Form Excess Management Liability Insurance Policy | EML 0201 0712 |
| | Forms and Endorsement Schedule | IL 0101 0712 |
| 1 | Specific Event Exclusion | IL 1002 0712 |
| 2 | Premium Fully Earned Endorsement | IL 1002 0712 |
| 3 | Deletion of Most Restrictive Underlying Terms (ABC Coverage) | EML 0902 0712 |
| 4 | DIC Erosion of Underlying Limit | EML 0903 0712 |
| 5 | Illinois Changes - Cancellation and Nonrenewal | EML 1000 1112 IL |
| 6 | Illinois Changes | EML 1113 1112 IL |
| 7 | Amendatory Inconsistency | EML 1324 0513 |
| 8 | Cap on Losses from Certified Acts of Terrorism | IL 1204 0115 |
| 9 | Disclosure Pursuant to Terrorism Risk Insurance Act | IL 1214 0115 |
| | U.S. Treasury Department's Office of Foreign Assets Control (OFAC) | PN 0001 0712 |
| | Signature Page | IL 1007 0114 |

*The titles of the endorsements listed above are solely for convenience and form no part of the terms and conditions of coverage.*

## E N D O R S E M E N T

| | | | |
|---|---|---|---|
| **Named Insured:** | Akorn, Inc. | Policy Number: | DOX10007587103 |
| Endorsement Effective Date: | September 01, 2019 | Endorsement Number: | 1 |
| | 12:01 AM Standard Time at the address of the **Named Insured** as shown in the Declarations. | | |

### GENERAL CHANGE
### (SPECIFIC EVENT EXCLUSION)

It is agreed that:
In consideration of the premium charged, it is hereby understood and agreed that, without limiting the effectiveness of any other EXLCUSIONS within this policy, the Insurer shall not be liable to make any payment for **Loss** in connection with: (i) any of the **Claim(s)**, notices, events, investigations or actions listed under EVENTS below (hereinafter "**Events**"); (ii) the prosecution, adjudication, settlement, disposition, resolution or defense of: (a) any **Event(s)**; or (b) any **Claim(s)** arising from any **Event(s)**; or (iii) any **Wrongful Act**, underlying facts, circumstances, acts or omissions in any way relating to any **Event(s)**.

EVENTS

1. *Solomon Yeung, etc. v. Akorn, Inc. et al.*, docket no. 1:15-cv-01944 filed in the Norther District of Illinois on or about March 4, 2015;

2. *Mikolaj Sarzynski, Individually and on Behalf of All Others Similarly Situated, v. Akorn, Inc., Rajat Rai, and Timothy A. Dick*, docket no. 1:15-cv-03921 filed in the Northern District of Illinois on or about May 4, 2015;

3. the Company's intent to restate its consolidated financial statements for the fiscal year ended December 31, 2014, and the fiscal quarters ended June 30, 2014, and September 30, 2014 (collectively, the "Restated Financial Statements").

For the purposes of this endorsement an "**Interrelated Wrongful Act**" means: (i) any fact, circumstance,
act or omission alleged in any **Event(s)** and/or (ii) any **Wrongful Act** which is the same as, similar or related to or a repetition of any **Wrongful Act** alleged in any **Event(s)**.

*Joe Kelly III*
_____
Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

# E N D O R S E M E N T

| | | | |
|---|---|---|---|
| **Named Insured:** | Akorn, Inc. | Policy Number: | DOX10007587103 |
| Endorsement Effective Date: | September 01, 2019 | Endorsement Number: | 2 |

12:01 AM Standard Time at the address of the **Named Insured** as shown in the Declarations.

## GENERAL CHANGE
## (PREMIUM FULLY EARNED ENDORSEMENT)

It is agreed that:

Subsection G. CANCELLATION is added to the policy:

G.   CANCELLATION

1.   This **Policy** may be canceled only by the Insurer and only for non-payment of the premium. In such event, the Insurer shall mail written notice of cancellation to the **Named Insured**.  Such notice shall state the effective date of cancellation, which shall be not less than fifteen (15) days after mailing such notice.  In the event of cancellation by the Insurer, the Insurer shall refund the unearned premium, if any, pro rata.

2.   No other party may cancel this **Policy** for any reason.

_Joe Kelly III_

Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

# E N D O R S E M E N T

| | | | |
|---|---|---|---|
| Named Insured: | Akorn, Inc. | Policy Number: | DOX10007587103 |

| | | |
|---|---|---|
| Endorsement Effective Date: | September 01, 2019 | Endorsement Number:  3 |

12:01 AM Standard Time at the address of the Named Insured as shown in the Declarations.

## DELETION OF MOST RESTRICTIVE UNDERLYING TERMS
## (ABC COVERAGE)

It is agreed that:

1.  Section II.A. is deleted in its entirety and is replaced with the following:

    This Policy, except as stated herein, is subject to all terms, conditions, representations and limitations as contained in the Followed Form. In no event shall this Policy grant broader coverage than would be provided by the Followed Form. In the event of any conflict between the terms, conditions, and limitations of this Policy and the Followed Form, the terms, conditions and limitations of this Policy shall control.

    If Loss covered under the Followed Form is not covered under another Underlying Policy because coverage under such Underlying Policy is narrower than the coverage under the Followed Form, then for purposes of liability attaching to this Policy the Underlying Limit for such Underlying Policy shall be eroded or exhausted with respect to such Loss paid by the Insureds, an insurer of any DIC policy excess of this Policy and/or any other party paying such Loss.

2.  Section II.B.4. is deleted in its entirety and is replaced with the following:

    If any Underlying Policy(ies) is canceled or terminated during the Policy Period including the Discovery Period if exercised, the Insurer shall not be liable under this Policy to a greater extent than it would have been had such Underlying Policy(ies) been so maintained. To the extent the terms, conditions or limitations of the Followed Form are changed to limit or restrict coverage, this Policy shall become subject to such changes upon the effective date of the change in the Followed Form. To the extent the terms, conditions or limitations of the Followed Form are changed to expand or broaden coverage, this Policy shall become subject to such changes only if and to the extent the Insurer agrees to such changes in writing and the Insureds pay any additional premium reasonably required by the Insurer for such changes.

# E N D O R S E M E N T



_____
Authorized Representative


This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

# ENDORSEMENT

| | | | |
|---|---|---|---|
| Named Insured: | Akorn, Inc. | Policy Number: | DOX10007587103 |
| Endorsement Effective Date: | September 01, 2019 | Endorsement Number: | 4 |
| | (12:01 AM Standard Time at the address of the Named Insured as shown in the Declarations) | | |

## DIC EROSION OF UNDERLYING LIMIT

It is agreed that:

Section I, Insuring Clause, is deleted in its entirety and is replaced with the following:

Subject to the terms and conditions of this Policy, the Insurer shall provide to the Insureds insurance coverage for Claims first made during the Policy Period, including the Discovery Period if exercised. Liability for any covered Loss resulting from covered Claims shall attach to the Insurer only after the insurers of the Underlying Policy(ies), the Insureds, the insurer of any DIC policy, and/or any other party shall have paid in legal currency the full amount of the Underlying Limit (including the applicable retention or deductible under the Primary Policy) pursuant to Section II.B.1 below.  The Insurer shall then be liable to pay only covered Loss in excess of such Underlying Limit up to its Limit of Liability as set forth in Item 3 of the Declarations, which shall be the maximum aggregate liability of the Insurer under this Policy with respect to all Claims first made in each Policy Period, including the Discovery Period if exercised, against all Insureds irrespective of the time of payment by the Insurer.

_Joe Kelly III_
_____
Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

# ENDORSEMENT

| | |
|---|---|
| Named Insured:  Akorn, Inc. | Policy Number:  DOX10007587103 |

Endorsement
Effective Date:   September 01, 2019

Endorsement
Number:   5

12:01 AM Standard Time at the address of the Named
Insured as shown in the Declarations.

## ILLINOIS CHANGES - CANCELLATION AND NONRENEWAL

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

It is agreed that:

A.   A Cancellation Condition is added as follows:

CANCELLATION

1.   The Named Insured shown in the Declarations may cancel this Policy by mailing advance written notice of cancellation to the Insurer.

2.   The Insurer may cancel this Policy by mailing to the Named Insured written notice stating the reason for cancellation. If the Insurer cancels for nonpayment of premium, the Insurer will mail the notice at least 10 days prior to the effective date of cancellation.

3.   If this Policy has been in effect for more than 60 days or is a renewal or continuation Policy, the Insurer may cancel only for one or more of the following reasons:

   a.   Nonpayment of premium;

   b.   Certification of the Director of Insurance of the loss of reinsurance by the Insurer that provided coverage to the Insurer for all or a substantial part of the underlying risk insured; or

   c.   A determination by the Director of Insurance that the continuation of the Policy could place the Insurer in violation of the insurance laws of this State.

4.   Notice of cancellation will state the effective date of cancellation. The Policy Period will end on that date.

5.   If this Policy is cancelled, the Insurer will send the Named Insured any premium refund due. If the Insurer cancels, the refund will be pro rata. If the Named Insured cancels, then the return premium will be computed at .90 of the pro rata unearned premium. The cancellation will be effective even if the Insurer has not offered a refund.

B.   When The Insurer Does Not Renew Condition is added as follows:

If the Insurer decides not to renew or continue this Policy, the Insurer will mail the Named Insured and the Named Insured's agent or broker written notice, stating the reason for nonrenewal, at least 60 days before the end of the Policy Period. If the Insurer offers to renew or continue and the Named Insured does not accept, this Policy will terminate at the end of the current Policy Period. Failure to pay the required renewal or continuation premium when due shall mean that the Named Insured has not accepted the Insurer's offer.

If the Insurer fails to mail proper written notice of nonrenewal and the Named Insured obtains other insurance, this Policy will end on the effective date of that insurance.

# E N D O R S E M E N T

C.   Mailing Of Notices is added as follows:

The Insurer will mail cancellation and nonrenewal notices to the Named Insured, and the agent or broker, at the last addresses known to the Insurer. The Insurer shall maintain proof of mailing of a cancellation or nonrenewal notice on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service.

*Joe Kelly III*

_____
Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# ENDORSEMENT

| | |
|---|---|
| Named Insured:  Akorn, Inc. | Policy Number:  DOX10007587103 |

| | |
|---|---|
| Endorsement<br>Effective Date:  September 01, 2019<br>12:01 AM Standard Time at the address of the Named<br>Insured as shown in the Declarations. | Endorsement<br>Number:  6 |

## ILLINOIS CHANGES

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

It is agreed that:

A.  Paragraph 4. of Item B., Underlying Policies, of Section II, Terms and Conditions, is replaced by the following:

4.  If any Underlying Policy(ies) is canceled or terminated during the Policy Period including the Discovery Period if exercised, the Insurer shall not be liable under this Policy to a greater extent than it would have been had such Underlying Policy(ies) been so maintained. To the extent the terms, conditions or limitations of any of the Underlying Policy(ies) are changed, this Policy shall become subject to such changes only if and to the extent the Insurer agrees to such changes  in writing and the Insureds pay any additional premium reasonably required by the Insurer for such changes.

B.  Paragraph E., Discovery Period, of Section II, Terms and Conditions, is replaced by the following:

The Insureds shall have the right to elect a Discovery Period under this Policy as described in, and subject to the terms of, the Followed Form including when this Policy is terminated for any reason. This right to purchase an optional discovery period shall lapse unless payment of the additional premium due is given by the Insureds to the Insurer within thirty (30) days following the effective date of termination or nonrenewal.

Premium for the Discovery Period will be priced as a factor of one of the following:

1)  the last twelve (12) months' premium;
2)  the premium in effect at Policy issuance; or
3)  the expiring annual premium.

The Insurer will inform the Named Insured:

a)  of the Discovery Period premium at the time the last Policy is purchased; and
b)  of factor(s) that may be used to figure the Discovery Period premium, as well as any credits or discounts, that will be added or removed when determining the final Discovery Period premium.

# ENDORSEMENT

_____

**Authorized Representative**

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

# ENDORSEMENT

| | | | |
|---|---|---|---|
| Named Insured: | Akorn, Inc. | Policy Number: | DOX10007587103 |
| Endorsement Effective Date: | September 01, 2019 | Endorsement Number: | 7 |
| | (12:01 AM Standard Time at the address of the Named Insured as shown in the Declarations) | | |

## AMENDATORY INCONSISTENCY

It is agreed that:

To the extent there is an inconsistency between an endorsement to this Policy which is labeled as a state amendatory endorsement and any other term or condition of this Policy, then to the extent permitted by law, regulation or State Insurance Department Bulletin or Directive, the Insurer shall apply such terms and conditions of either the state amendatory endorsement or the Policy which are more favorable to the Insured.

*Joe Kelly III*

_____

Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

E N D O R S E M E N T

| | | | |
|---|---|---|---|
| Named Insured: | Akorn, Inc. | Policy Number: | DOX10007587103 |

| | | | |
|---|---|---|---|
| Endorsement Effective Date: | September 01, 2019 | Endorsement Number: | 8 |
| | 12:01 AM Standard Time at the address of the Named Insured as shown in the Declarations. | | |

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

It is agreed that:

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and the Insurer has met its deductible under the Terrorism Risk Insurance Act, the Insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

_Joe Kelly III_

_____
Authorized Representative

This endorsement does not change any other provision of the Policy.  The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

Notice includes copyrighted material of Insurance Services Office, Inc. with its permission.

# E N D O R S E M E N T

| | | | |
|---|---|---|---|
| Named Insured: | Akorn, Inc. | Policy Number: | DOX10007587103 |

Endorsement
Effective Date:  September 01, 2019

Endorsement
Number:  9

12:01 AM Standard Time at the address of the
Named Insured as shown in the Declarations.

## DISCLOSURE PURSUANT TO THE TERRORISM RISK INSURANCE ACT

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

It is agreed that:

SCHEDULE:   Terrorism Premium (Certified Acts): $ 0

A.   Disclosure of Premium
In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium (shown in the Schedule above), if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act as amended and reauthorized. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement.

B.   Disclosure of Federal Participation in Payment of Terrorism Losses
The United States government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% in 2015 and decreases its share 1% each calendar year to a total of 80% in 2020 of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

C.   Cap On Insurer Participation In Payment Of Terrorism Losses
If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

# ENDORSEMENT

_Joe Kelly III_

_____
Authorized Representative

This endorsement does not change any other provision of the Policy.  The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

Notice includes copyrighted material of Insurance Services Office, Inc. with its permission.

# U. S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy.  You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC.  **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency".  OFAC has identified and listed numerous:

- Foreign agents;

- Front organizations;

- Terrorists;

- Terrorist organizations; and

- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons".  This list can be located on the United States Treasury's website - http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC.  When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC.  Other limitations on the premiums and payments also apply.



# Endurance American Insurance Company
## 1221 Avenue Of the Americas
## New York, NY  10020

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its President and Senior Vice President and countersigned where required by law on the Declarations page by its duly authorized representative.

_____
Senior Vice President

_____
President