

September 6, 2019

Derek Van der Voort
ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES INC.
300 S. RIVERSIDE #1900
CHICAGO, IL 60606-0000


RE:   AKORN INC

Insuring Company: Federal Insurance Company

Dear Derek:

Enclosed is our Executive Protection Portfolio Policy for the above referenced Insured.

I want to thank you for the opportunity to underwrite this account.

Please let me know if I can be of further assistance.

Sincerely,

*Melea Hargis*

Melea J Hargis

CHUBB


r b

Chubb Group of Insurance Companies        525 W Monroe Street        312.775.3100
                                          Suite 700                  Fax 312.454.4401
                                          Chicago, IL 60661

**Executive Protection Portfolio**

PREMIUM BILL

Insured:   AKORN INC                                             Date:   09/06/2019

Producer:   ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES
            INC.
            300 S. RIVERSIDE #1900
            CHICAGO, IL 60606-0000

Company:   Federal Insurance Company

THIS BILLING IS TO BE ATTACHED TO AND FORM A PART OF THE POLICY REFERENCED BELOW.

Product:        Executive Protection Portfolio

Policy Number: 8153-1429

Policy Period:   September 1, 2019 to September 1, 2020

NOTE: - PLEASE RETURN THIS BILL WITH REMITTANCE AND NOTE HEREON ANY CHANGES. BILL
WILL BE RECEIPTED AND RETURNED TO YOU PROMPTLY UPON REQUEST.

PLEASE REMIT TO PRODUCER INDICATED ABOVE.

| Product | Effective Date | Commission Rate | Premium |
|---|---|---|---|
| FIDUCIARY LIABILITY | 09/01/19 | 0.00 % | $10,901.00 |
| CRIME | 09/01/19 | 0.00 % | $54,567.00 |
| | | | |
| | | | |

* For Kentucky policies, amount displayed includes tax and collection fees.

| | |
|---|---|
| **TOTAL POLICY PREMIUM** | $65,468.00 |
| **TOTAL INSTALLMENT PREMIUM DUE** | $65,468.00 |

WHEN REMITTING PLEASE INDICATE POLICY OR CERTIFICATE NUMBER

# POLICYHOLDER
# DISCLOSURE NOTICE OF
# TERRORISM INSURANCE COVERAGE
### (for policies with no terrorism exclusion or sublimit)
### Insuring Company: Federal Insurance Company

You are hereby notified that, under the Terrorism Risk Insurance Act (the "Act"), this policy makes available to you insurance for losses arising out of certain acts of terrorism. Terrorism is defined as any act certified by the Secretary of the Treasury of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States Mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that the insurance provided by your policy for losses caused by acts of terrorism is partially reimbursed by the United States under the formula set forth in the Act.  Under this formula, the United States pays 85% of covered terrorism losses that exceed the statutorily established deductible to be paid by the insurance company providing the coverage. Beginning in 2016, the Federal share will be reduced by 1% per year until it reaches 80%, where it will remain.

However, if aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

10-02-1281 (Ed. 03/2015)

If aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

The portion of your policy's annual premium that is attributable to insurance for such acts of terrorism is: $ **-0-.**

If you have any questions about this notice, please contact your agent or broker.

10-02-1281 (Ed. 03/2015)

# IMPORTANT NOTICE TO POLICYHOLDERS

Insuring Company: Federal Insurance Company

All of the members of the Chubb Group of Insurance companies doing business in the United States (hereinafter "Chubb") distribute their products through licensed insurance brokers and agents ("producers").  Detailed information regarding the types of compensation paid by Chubb to producers on US insurance transactions is available under the Producer Compensation link located at the bottom of the page at www.chubb.com, or by calling 1-866-588-9478.  Additional information may be available from your producer.

Thank you for choosing Chubb.

10-02-1295 (ed. 6/2007)

**IMPORTANT POLICYHOLDER NOTICE**

This is to provide notice that, pursuant to Illinois Department of Insurance Company Bulletin 2011-06 (CB 2011-06), this policy is in compliance with the Illinois Religious Freedom Protection and Civil Union Act ("the Act", 750 ILL. COMP. STAT. 75/1). The Act, which became effective on June 1, 2011, creates a legal relationship between two persons of either the same or opposite sex who establish a civil union.

The Act provides that parties to a civil union are entitled to the same legal obligations, responsibilities, protections and benefits that are afforded or recognized by the law of Illinois to spouses, whether they are derived from statute, administrative rule, policy, common law or any source of civil or criminal law. In addition, this law requires recognition of a same-sex civil union, marriage, or other substantially similar legal relationship, except for common law marriage, legally entered into in other jurisdictions. The Act further provides that "party to a civil union" shall be included in any definition or use of the terms "spouse", "family", "immediate family", "dependent", "next of kin" and other terms descriptive of spousal relationships as those terms are used throughout the law. According to CB 2011-06, this includes the terms "marriage" or "married" or any variations thereof. CB 2011-06 also states that if policies of insurance provide coverage for children, the children of civil unions must also be
provided coverage.

**Notice to Purchasers of Employment Practices Liability Coverage or Fiduciary Liability Coverage**

Insuring Company: Federal Insurance Company

As a purchaser of an Employment Practices Liability Coverage Section and/or a Fiduciary Liability Coverage Section, please note that the Company has the right and duty to defend any Claim (as such term is defined in the Definitions section of each applicable Coverage Section) covered by each applicable Coverage Section, unless such Coverage Section has been amended by written endorsement. Defense counsel for any such Claim shall be selected by the Company from the Company's list of approved defense firms.   Please also note that, as a condition precedent to any right to coverage under each applicable Coverage Section, all Claims must be reported to the Company in writing in the manner and within the time provided in the Reporting and Notice provisions of such Coverage Section.

For a list of approved defense firms, please contact your insurance agent or broker, or access such list by using the following internet address:

http://csi.chubb.com/panel_counsel.asp

Please note that the Company reserves the right to modify such list at any time without notice.

99-10-0769 (Ed. 9/2004)

# Notice of Loss Control Services

Insuring Company: Federal Insurance Company

As a Chubb policyholder, you have loss prevention information and/or services available to you, as listed in this Notice. You may order any brochure by email to formsordering@chubb.com and to view our full suite of loss prevention brochures/services go to www.chubb.com/us/fl-lossprevention

## Directors and Officers (D&O) Liability Loss Prevention Services

- ***Directors and Officers Liability Loss Prevention* Manuals:**
  Directors and Officers Liability Loss Preventions – #14-01-0035
  Directors and Officers Securities Litigation Loss Preventions – #14-01-0448
  Director Liability Loss Prevention in Mergers and Acquisitions – #14-01-1099
  Directors and Officers Liability Loss Prevention for Not-for-Profit- -#14-01-0036
  Cyber Loss Mitigation for Directors -#14-01-1199

## Employment Practices Liability (EPL) Loss Prevention Services

- **Toll-free Hot Line**

  Have a question on how to handle an employment situation? Simply call **1.888.249.8425** to access the nationally known employment law firm of Jackson Lewis P.C. We offer customers an unlimited number of calls to the hot line at no additional charge.

- **ChubbWorks.com**
  ChubbWorks.com is a web-based platform that offers multiple services including overviews of employment laws, sample employment policies and procedures, and on-line training. To gain immediate access to ChubbWorks go to **www.chubbworks.com** and register using your policy number.

- ***Employment Practices Loss Prevention Guidelines* Manual**

  *Employment Practices Loss Prevention Guidelines - #14-01-0061*

- **Loss Prevention Consultant Services**

  Chubb has developed a network of more than 120 law firms, human resources consulting firms, and labor economist/statistical firms that offer specialized services for employment issues.

- **Public Company EPL Customers**

  Employment Practices Loss Prevention Guidelines – Written by Seyfarth Shaw exclusively for Chubb this manual provides an overview of key employment issues faced by for-profit companies and offers proactive idea for avoiding employment lawsuits.

- **Private Company EPL Customers**
  Employment Practices Loss Prevention Guidelines – Written by Seyfarth Shaw exclusively for Chubb this manual provides an overview of key employment issues for –profit companies and offers proactive idea for avoiding employment lawsuits.

## Fiduciary Liability Loss Prevention Services

- **Fiduciary Liability Loss Prevention Manual**
  Who May Sue You and Why: How to Reduce Your ERISA Risks and the Role of Fiduciary
  Liability Insurance #14-01-1019

## Crime Loss Prevention Services

- **Crime/Kidnap, Ransom & Extortion Loss Prevention Manual**

  Preventing Fraud: How Anonymous Hotlines Can Help #14-01-1090

## Cyber Security Loss Prevention Services

Visit: https://www2.chubb.com/us-en/business-insurance/cyber-security.aspx to learn more
about Chubb's Cyber Services for our policyholders.

## Health Care Directors and Officers (D&O) Liability Loss Prevention Services

- **Readings in Health Care Governance Manual**
  Readings in Health Care Governance -#14-01-0788

- **ChubbWorks.com**
  ChubbWorks.com for Health Care Organizations – The Health Care Zone is a free online
  resource containing health care specific loss prevention information for employment practices
  liability, directors and officers (D&O) liability, and fiduciary liability exposures. To gain
  immediate access to ChubbWorks go to **www.chubbworks.com** and register using your policy
  number.

- **Health Care D&O Loss Prevention Consultant Services**
  Health Care D& O Loss Prevention Consultant Services- #14-01-1164

---------------------

The services provided are advisory in nature. While this program is offered as a resource in
developing or maintaining a loss prevention program, you should consult competent legal counsel
to design and implement your own program. No liability is assumed by reason of the services,
access or information provided. All services are subject to change without notice.

**CHUBB**

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*Executive Protection Portfolio* SM
*General Terms and Conditions Section*

**DECLARATIONS**

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated
under the laws of Indiana, herein called the
Company

Policy Number: 8153-1429

**THE EXECUTIVE LIABILITY AND ENTITY SECURITIES LIABILITY, FIDUCIARY LIABILITY, OUTSIDE DIRECTORSHIP LIABILITY AND EMPLOYMENT PRACTICES LIABILITY COVERAGE SECTIONS (WHICHEVER ARE PURCHASED) PROVIDE CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY EXTENDED REPORTING PERIOD. THE APPLICABLE LIMIT(S) OF LIABILITY TO PAY "LOSS" WILL BE REDUCED, AND MAY BE EXHAUSTED, BY THE PAYMENT OF "DEFENSE COSTS" UNLESS OTHERWISE SPECIFIED HEREIN. "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION. READ THE ENTIRE POLICY CAREFULLY.**

Item 1.  **Parent Organization:**  AKORN INC

Principal Address:  1925 W FIELD CT SUITE 300
LAKE FOREST, IL 60045

Item 2.  **Policy Period:**  From  12:01 A.M. on  September 1, 2019
To  12:01 A.M. on  September 1, 2020
Local time at the address shown in Item 1.

Item 3.  Coverage Summary
Description:
GENERAL TERMS AND CONDITIONS
FIDUCIARY LIABILITY
CRIME

Item 4.  Termination of
Prior Bonds or Policies: 8153-1429  (Jun 1, 2018 to Sept 1, 2019)

14-02-7302DFED (Ed. 11/2002)  Page 1 of 6

**CHUBB®**

**Chubb Group of Insurance Companies**
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*Executive Protection Portfolio* <sup>SM</sup>
*General Terms and Conditions Section*

---

In witness whereof, the Company issuing this policy has caused this policy to be signed by its authorized officers, but it shall not be valid unless also signed by a duly authorized representative of the Company.

### FEDERAL INSURANCE COMPANY

_____
Secretary

_____
President

_____
09/06/19
Date

_____
Authorized Representative

CHUBB

*Executive Protection Portfolio*[SM]
*General Terms and Conditions Section*

In consideration of payment of the premium and subject to the Declarations and the limitations, conditions, provisions and other terms of this policy, the Company and the Insureds agree as follows:

### Territory

1.  Coverage shall extend anywhere in the world.

### Terms and Conditions

2.  Except for these General Terms and Conditions or unless stated to the contrary in any coverage section of this policy, the terms and conditions of each coverage section shall apply only to that coverage section. If any provision in these General Terms and Conditions is inconsistent or in conflict with the terms and conditions of any coverage section, the terms and conditions of such coverage section shall control for purposes of that coverage section. Any defined term referenced in these General Terms and Conditions but defined in a coverage section shall, for purposes of coverage under that coverage section, have the meaning set forth in that coverage section.

### Definitions

3.  When used in this policy:

    **Claim** shall have the meaning set forth in the applicable coverage section.

    **Insured** shall have the meaning set forth in the applicable coverage section.

    **Parent Organization** means the organization designated in Item 1 of the Declarations of these General Terms and Conditions.

    **Policy Period** means the period of time specified in Item 2 of the Declarations of these General Terms and Conditions, subject to prior termination in accordance with Subsection 11 below. If this period is less than or greater than one year, then the limits of liability specified in the Declarations for each coverage section shall be the Company's maximum limit of liability under such coverage section for the entire period.

### Limits of Liability and Retentions

4.  Unless stated to the contrary in any coverage section, the limits of liability and retentions shown for each coverage section are separate limits of liability and separate retentions pertaining to the coverage section for which they are shown. Unless stated to the contrary in any coverage section of this policy, the payment of a retention under one coverage section shall not constitute payment of, and shall not reduce, the applicable retention under any other coverage section.

### Notice

**CHUBB**

*Executive Protection Portfolio*<sup>SM</sup>
*General Terms and Conditions Section*

5.  Any notice to the Company with respect to any coverage section shall designate the coverage section under which notice is being given and shall be treated as notice only under the coverage section(s) so designated.

    Notice to the Company of a **Claim**, or of circumstances which could give rise to a **Claim**, shall be given in writing addressed to:

> Attn: Claims Department
> Chubb Group of Insurance Companies
> 82 Hopmeadow Street
> Simsbury, Connecticut 06070-7683

    All other notices to the Company shall be given in writing addressed to:

> Attn: Underwriting
> Chubb Group of Insurance Companies
> 82 Hopmeadow Street
> Simsbury, Connecticut 06070-7683

    Any such notice shall be effective on the date of receipt by the Company at such address.

### Valuation and Foreign Currency

6.  All premiums, limits, retentions, loss and other amounts under this policy are expressed and payable in the currency of the United States of America. Except as otherwise provided in any coverage section, if a judgment is rendered, a settlement is denominated or any element of loss under this policy is stated in a currency other than United States of America dollars, payment under this policy shall be made in United States of America dollars at the rate of exchange published in The Wall Street Journal on the date the judgment becomes final, the amount of the settlement is agreed upon or the element of loss is due, respectively.

### Subrogation

7.  In the event of any payment under this policy, the Company shall be subrogated to the extent of such payment to all the **Insured**'s rights of recovery, and such **Insured** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Company effectively to bring suit or otherwise pursue subrogation rights in the name of the **Insured**.

### Action Against the Company

CHUBB®

**Executive Protection Portfolio**<sup>SM</sup>
*General Terms and Conditions Section*

8.  No action may be taken against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy. No person or entity shall have any right under this policy to join the Company as a party to any action against any **Insured** to determine such **Insured**'s liability nor shall the Company be impleaded by such **Insured** or legal representatives of such **Insured**.

## Parent Organization Rights and Obligations

9.  By acceptance of this policy, the **Parent Organization** agrees that it shall be considered the sole agent of, and shall act on behalf of, each **Insured** with respect to: the payment of premiums and the receiving of any return premiums that may become due under this policy; the negotiation, agreement to and acceptance of endorsements; the giving or receiving of any notice provided for in this policy (except the giving of notice to apply for an Extended Reporting Period); the adjustment of loss amounts; and the receipt or enforcement of payment of loss (and the **Parent Organization** further agrees that it shall be responsible for application of any such payment as provided in this policy). Each **Insured** agrees that the **Parent Organization** shall act on its behalf with respect to all such matters.

## Alteration and Assignment

10. No change in, modification of, or assignment of interest under this policy shall be effective except when made by written endorsement to this policy which is signed by an authorized employee of Chubb, a division of Federal Insurance Company.

## Termination of Policy or Coverage Section

11. This policy or any coverage section shall terminate at the earliest of the following times:

    (a) sixty days after receipt by the **Parent Organization** of written notice of termination from the Company for any reason other than non-payment of premium;

    (b) twenty days after receipt by the **Parent Organization** of written notice of termination from the Company for non-payment of premium;

    (c) upon receipt by the Company of written notice of termination from the **Parent Organization**; provided that this policy may not be terminated by the **Parent Organization** after the effective date of any acquisition of the **Parent Organization** as described in the Changes in Exposure subsection of the applicable coverage section of this policy;

    (d) upon expiration of the **Policy Period** as set forth in Item 2 of the Declarations of these General Terms and Conditions; or

    (e) at such other time as may be agreed upon by the Company and the **Parent Organization**.

    The Company shall refund the unearned premium computed at customary short rates if this policy or any coverage section is terminated by the **Parent Organization**. Under any other

CHUBB'

***Executive Protection Portfolio*** <sup>SM</sup>
*General Terms and Conditions Section*

circumstances the refund shall be computed pro rata.  Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of a notice of termination, but such payment shall be made as soon as practicable thereafter.

### Termination of Prior Bonds or Policies

12.  Any bonds or policies issued by the Company or its affiliates and specified in Item 4 of the Declarations of these General Terms and Conditions shall terminate, if not already terminated, as of the inception of this policy.

### Bankruptcy

13.  Bankruptcy or insolvency of any **Insured** shall not relieve the Company of its obligations nor deprive the Company of its rights or defenses under this policy.

### Headings

14.  The descriptions in the headings and sub-headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

# Schedule of Forms

To be attached to and form part of          Company:   Federal Insurance Company
Policy No.   8153-1429

Issued to:   AKORN INC

Executive Protection Portfolio General Terms and Conditions Section (Federal & Vigilant)

14-02-22814 (12/17 ed.)

14-02-7461 (11/02 ed.)

14-02-9228 (2/10 ed.)

Executive Protection Portfolio Fiduciary Liability Coverage Section (Federal & Vigilant)

14-02-12019 (5/06 ed.)

14-02-12174 (1/14 ed.)

14-02-14100 (4/08 ed.)

14-02-19855XIL (11/14 ed.)

14-02-7465 (1/07 ed.)

14-02-8780 (10/05 ed.)

14-02-9392 (5/04 ed.)

Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

14-02-10647 (12/04 ed.)

14-02-10894 (5/05 ed.)

14-02-12030 (5/06 ed.)

14-02-13300 (7/07 ed.)

14-02-16840 (4/10 ed.)

14-02-19671 (8/14 ed.)

14-02-19844 (3/13 ed.)

14-02-21135 (6/16 ed.)

14-02-7466 (11/02 ed.)

14-02-8754 (8/03 ed.)

14-02-8820 (9/03 ed.)

14-02-8891 (10/03 ed.)

14-02-8907 (10/04 ed.)

# Schedule of Forms

To be attached to and form part of
Policy No.   8153-1429

Company:   Federal Insurance Company

Issued to:   AKORN INC

14-02-8923A (4/07 ed.)

14-02-8925 (11/03 ed.)

14-02-8926 (11/03 ed.)

14-02-8927 (11/03 ed.)

14-02-8928 (11/03 ed.)

14-02-8931 (4/08 ed.)

14-02-8932 (11/03 ed.)

14-02-8933 (11/03 ed.)

14-02-9088 (12/03 ed.)

14-02-9146 (2/04 ed.)

14-02-9178 (3/04 ed.)

14-02-9261 (4/04 ed.)

FL-261182 (7/18 ed.)

PF-262504 (1/19 ed.)

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio General Terms and Conditions Section (Federal & Vigilant)

Effective date of
this endorsement/rider: September 1, 2019          Federal Insurance Company

Endorsement/Rider No. 1

To be attached to and
form a part of Policy No. 8153-1429

Issued to:  AKORN INC

---

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

In consideration of the premium charged, it is agreed that:

A.  If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act.  The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

B.  The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any "loss" that is otherwise excluded under this Policy.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio General Terms and Conditions Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019

Company:  Federal Insurance Company

Endorsement No. 2

To be attached to and
form a part of Policy No. 8153-1429

Issued to:  AKORN INC

---

### ILLINOIS AMENDATORY ENDORSEMENT
### TO THE GENERAL TERMS AND CONDITIONS SECTION

In consideration of the premium charged, it is agreed that:

1.    Subsection 11. Termination of Policy or Coverage Section (a) of the General Terms and Conditions Section is amended by adding the following at the end of such paragraph (a):

"provided that, if any Executive Liability and Entity Securities Liability Coverage Section, Outside Directorship Liability Coverage Section,  Fiduciary Liability Coverage Section or Employment Practices Liability Coverage Section is issued as part of this policy and is in effect for more than sixty (60) days, the Company may cancel any such coverage section, other than for non-payment of premium, only for one or more of the following reasons:

(1)    such coverage section was obtained through a material misrepresentation;

(2)    any Insured violated any of the terms and conditions of such coverage section;

(3)    the risk originally accepted has measurably increased;

(4)    the Company certifies to the Director of Insurance the loss of reinsurance by the Company which provided coverage to the Company for all or a substantial part of the underlying risk insured; or

(5)    the Director of Insurance determines that the continuation of such coverage section could place the Company in violation of the insurance laws of the state of Illinois;"

2.    With respect to each coverage section of this policy, other than the Crime Coverage Section and the Kidnap/Ransom and Extortion Coverage Section, Section 11. Termination of Policy or Coverage Section (d) of the General Terms and Conditions Section is amended to add the following to such paragraph (d):

"provided that non-renewal by the Company is effective only if the Company mails sixty (60) days advance written notice of non-renewal to the Parent Organization at its last known address, stating the reason(s) for such non-renewal.  A copy of such notice will be sent to the agent or broker of record, if any, and any mortgagee or lienholder, if known; or"

3.      Subsection 11. Termination of Policy or Coverage Section of the General Terms and Conditions Section is amended further by adding the following paragraphs at the end of such Subsection:

"Any notice of cancellation by the Company will state the specific reason for cancellation.

The Company may condition renewal of the Executive Liability and Entity Securities Liability Coverage Section, the Outside Directorship Liability Coverage Section, the Fiduciary Liability Coverage Section or the Employment Practices Liability Coverage Section upon an increase in premium of 30% or more, or a change in deductible or coverage, by mailing to the Parent Organization at the last mailing address known to the Company, with a copy to the agent or broker of record, if any, at least sixty (60) days advance written notice of such renewal change(s). If the Company provides such notice between thirty-one and sixty (60) days before the expiration of the Policy Period, the Company will offer the Parent Organization a sixty (60)-day extension of the applicable coverage section at a pro-rated premium based upon the expiring policy premium.  If the Company provides less than thirty-one (31) days' notice of non-renewal, the Company will offer the Parent Organization a one (1)-year extension of the applicable coverage section at a premium not to exceed 29.9% of the premium for the expiring policy."

4.      Nothing in this Amendatory Endorsement amends the provisions of Section 11. Termination of Policy or Coverage Section of the General Terms and Conditions Section as such Section applies to the Crime Coverage Section or the Kidnap/Ransom and Extortion Coverage Section.

5.      References in this Amendatory Endorsement to a particular coverage section are applicable only to the extent that such coverage section has been issued to the Parent Organization.  The coverage sections issued to the Parent Organization are those set forth in the applicable Declarations and nothing herein is intended to, nor does it, establish coverage under any coverage section that has not been issued to the Parent Organization as part of the policy.

The policy is amended to the extent necessary to effect the purposes of this Amendatory Endorsement.

The regulatory requirements set forth in this Amendatory Endorsement shall supersede and take precedence over any provisions of the policy or any endorsement to the policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such policy or endorsement provisions comply with the applicable insurance laws of the state of Illinois.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio General Terms and Conditions Section (Federal & Vigilant)

Effective date of
this endorsement/rider: September 1, 2019          Federal Insurance Company

                                                  Endorsement/Rider No. 3

                                                  To be attached to and
                                                  form a part of Policy No. 8153-1429

Issued to:  AKORN INC

---

## COMPLIANCE WITH APPLICABLE TRADE SANCTION LAWS

It is agreed that this insurance does not apply to the extent that trade or economic sanctions or other similar laws or regulations prohibit the coverage provided by this insurance.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**CHUBB** Chubb Group of Insurance
Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*Executive Protection Portfolio* SM
*Fiduciary Liability Coverage Section*

**DECLARATIONS**

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated
under the laws of Indiana, herein called the
Company

**THIS COVERAGE SECTION PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY EXTENDED REPORTING PERIOD. THE LIMIT OF LIABILITY TO PAY "LOSS" WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", UNLESS OTHERWISE SPECIFIED HEREIN, AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION. READ THE ENTIRE POLICY CAREFULLY.**

Item 1. **Parent Organization:**

AKORN INC
1925 W FIELD CT SUITE 300
LAKE FOREST, IL 60045

Item 2. Optional Defense Outside the Limits of Liability Coverage purchased ☐ Yes ☒ No

Item 3. Limits of Liability:

(A) Each **Claim**: $5,000,000.00

(B) Each **Policy Period**: $5,000,000.00

Note: Unless Defense Outside the Limits of Liability Coverage is purchased pursuant to Item 2 above, the Limits of Liability will be reduced and may be exhausted by **Defense Costs**.

Item 4. Retention:

(A) Insuring Clause 1 - Fiduciary Liability Coverage: $10,000.00

(B) Insuring Clause 2 - Voluntary Settlement Program Coverage: $0.00

Item 5. **Organization:**

Akorn, Inc. and its Subsidiaries

Item 6. Extended Reporting Period:

(A) Additional Period: 365 day

**CHUBB**  Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*Executive Protection Portfolio* SM
*Fiduciary Liability Coverage Section*

(B)   Additional Premium:        150 % of Annualized Premium for the Expiring **Policy Period**

Item 7.   Pending or Prior Date:

(A)   Insuring Clause 1:              1/29/1998

(B)   Insuring Clause 2:              1/29/1998



*Executive Protection Portfolio*<sup>SM</sup>
*Fiduciary Liability Coverage Section*

**In consideration of payment of the premium and subject to the Declarations, the General Terms and Conditions, and the limitations, conditions, provisions and other terms of this coverage section, the Company and the Insureds agree as follows:**

## *Insuring Clauses*

*Fiduciary Liability Coverage Insuring Clause 1*

1.   The Company shall pay, on behalf of the **Insureds**, **Loss** on account of any **Fiduciary Claim** first made against the **Insureds** during the **Policy Period**, or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted or allegedly committed or attempted before or during the **Policy Period** by such **Insureds**, or by any person for whose **Wrongful Acts** the **Insureds** are legally responsible, but only if such **Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 11 of this coverage section.

*Voluntary Settlement Program Coverage Insuring Clause 2*

2.   The Company shall pay, on behalf of the **Insureds**, **Settlement Fees** and **Defense Costs** with respect to a **Settlement Program Notice** first given to the Company during the **Policy Period**, or, if exercised, during the Extended Reporting Period, provided (i) the **Settlement Fees** and **Defense Costs** are incurred after such **Settlement Program Notice** is first given to the Company, and (ii) the Company's maximum liability for all **Settlement Fees** and **Defense Costs** with respect to all **Settlement Program Notices** first given to the Company during the **Policy Period** (including the Extended Reporting Period, if applicable) shall be $100,000. Such amount shall be part of, and not in addition to, the Limit of Liability otherwise applicable to this coverage section.

## *Definitions*

3.   When used in this coverage section:

**Administration** means:

(1)   advising, counseling or giving notice to **Employees**, participants or beneficiaries with respect to any **Plan**;

(2)   providing interpretations with respect to any **Plan**; or

(3)   handling of records or effecting enrollment, termination or cancellation of **Employees**, participants or beneficiaries under any **Plan**.

**Application** means all signed applications, including attachments and other materials submitted therewith or incorporated therein, submitted by the **Insureds** to the Company for this coverage section or for any coverage section or policy of which this coverage section is a direct or indirect renewal or replacement.  All such applications, attachments and materials are deemed attached to, incorporated into and made a part of this coverage section.



**Claim** means for the purposes of coverage under:

(1)     Insuring Clause 1: any **Fiduciary Claim**; or

(2)     Insuring Clause 2: any **Settlement Program Notice**.

**Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees or benefits of the directors, officers or **Employees** of the **Organization**) incurred in defending any **Claim** and the premium for appeal, attachment or similar bonds.

**Domestic Partner** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the **Organization**.

**Employee** means any natural person whose labor or service is engaged by and directed by the **Organization** or any **Plan**, including part-time, seasonal, leased and temporary employees as well as volunteers. **Employee** shall not include any independent contractor.

**ERISA** means the Employee Retirement Income Security Act of 1974, the English Pension Scheme Act 1993, the English Pensions Act 1995, all as amended, any similar common or statutory law anywhere in the world, and any rules or regulations promulgated under any such Acts or law.

**Executive** means any natural person who was, now is or shall become:

(a)     a duly elected or appointed director, officer, **Manager**, or in-house general counsel of any **Plan** or any **Organization** incorporated in the United States of America; or

(b)     a holder of a position equivalent to any position described in (a) above in an **Organization** that is chartered in any jurisdiction other than the United States of America.

**Fiduciary Claim** means:

(a)     a written demand for monetary damages or non-monetary relief;

(b)     a civil proceeding commenced by the service of a complaint or similar pleading;

(c)     a criminal proceeding commenced by a return of an indictment or information;

(d)     a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document or by the entry of a formal investigative order or similar document; or

(e)     a written notice of commencement of a fact-finding investigation by the U.S. Department of Labor, the U.S. Pension Benefit Guaranty Corporation, or any similar governmental authority located outside the United States, including but not limited to, the Pensions Ombudsman appointed by the United Kingdom Secretary of State for Social Services, the United Kingdom Occupational Pensions Regulatory Authority,

against any **Insured** for a **Wrongful Act**, including any appeal therefrom.



**Executive Protection Portfolio**<sup>SM</sup>
*Fiduciary Liability Coverage Section*

Except as may otherwise be provided in Subsection 9, Subsection 10(e), or Subsection 11(b) of this coverage section, a **Fiduciary Claim** will be deemed to have first been made when such **Fiduciary Claim** is commenced as set forth in this definition (or, in the case of a written demand or notice, when such demand or notice is first received by an **Insured**).

**Financial Impairment** means the status of an **Organization** resulting from:

(a)     the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate such **Organization**; or

(b)     such **Organization** becoming a debtor in possession under the United States bankruptcy law or the equivalent of a debtor in possession under the law of any other country.

**Insured** means the **Organization**, any **Plan** and any **Insured Person**.

**Insured Person** means:

(a)     any past, present or future **Executive**, **Employee** or natural person trustee of the **Organization** or of the **Sponsored Plan**; and

(b)     any past, present or future natural person trustee or fiduciary of a multi-employer plan, if such person in such capacity is added as an **Insured Person** by specific written endorsement to this coverage section.

**Loss** means the amount that any **Insured** becomes legally obligated to pay on account of any covered **Claim**, including but not limited to damages (including punitive or exemplary damages, or the multiple portion of any multiplied damage award, if and to the extent such damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages provided such jurisdiction has a substantial relationship to the relevant **Insureds**, to the Company, or to the **Claim** giving rise to the damages), judgments, settlements, pre-judgment and post-judgment interest, **Defense Costs** and, solely with respect to Insuring Clause 2, **Settlement Fees**.

**Loss** does not include:

(a)     any amount not indemnified by the **Organization** for which the **Insured** is absolved from payment by reason of any covenant, agreement or court order;

(b)     any costs incurred by an **Organization** or **Plan** to comply with any order for injunctive or other non-monetary relief, or to comply with an agreement to provide such relief;

(c)     any amount incurred by an **Insured** in the defense or investigation of any action, proceeding, investigation or demand that is not then a **Claim** even if (i) such amount also benefits the defense of a covered **Claim**, or (ii) such action, proceeding, investigation or demand subsequently gives rise to a **Claim**;

(d)     taxes, fines or penalties, except as provided above with respect to punitive or exemplary damages or the multiple portion of any multiplied damages, and except:



    (i)    the five percent (5%) or less, or the twenty percent (20%) or less, civil penalties imposed upon an **Insured** as a fiduciary under Section 502(i) or (l), respectively, of the Employee Retirement Income Security Act of 1974, as amended;

    (ii)   any civil penalties imposed by the Pension Ombudsman appointed by the United Kingdom Secretary of State for Social Services or by the United Kingdom Occupational Pensions Regulatory Authority, pursuant to the English Pension Scheme Act 1993, the English Pensions Act 1995, or rules or regulations thereunder; provided any coverage for such civil penalties applies only if the funds or assets of the subject **Plan** are not used to fund, pay or reimburse the premium for this coverage section; or

    (iii)  solely with respect to Insuring Clause (2), **Settlement Fees**;

(e)    any amount allocated to non-covered loss pursuant to Subsection 13 of this coverage section; or

(f)    any amount not insurable under the law pursuant to which this coverage section is construed, except as provided above with respect to punitive or exemplary damages or the multiple portion of any multiplied damages.

**Manager** means any natural person who was, now is or shall become a manager, member of the Board of Managers or equivalent executive of an **Organization** that is a limited liability company.

**Organization** means, collectively, those organizations designated in Item 5 of the Declarations for this coverage section, including any such organization in its capacity as a debtor in possession under the United States bankruptcy law or in an equivalent status under the law of any other country.

**Plan** means:

(a)    any **Sponsored Plan**; and

(b)    any government-mandated insurance program for workers' compensation, unemployment, social security or disability benefits for **Employees**.

**Pollutants** means (a) any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by, the United States Environmental Protection Agency or any state, county, municipality or locality counterpart thereof, including, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials, or (b) any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products or any noise.

**Related Claims** means all **Claims** for **Wrongful Acts** based upon, arising from or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events.

**Settlement Fees** means any fees, fines, penalties or sanctions paid by an **Insured** to a governmental authority pursuant to a **Settlement Program** for the actual or alleged inadvertent non-compliance by a **Plan** with any statute, rule or regulation; provided **Settlement Fees** shall not include (a) any costs to correct the non-compliance, or any other


charges, expenses, taxes or damages; or (b) any fees, fines, penalties or sanctions relating to a **Plan** which, as of the earlier of the inception of this coverage section or the inception of the first policy in an uninterrupted series of policies issued by the Company of which this coverage section is a direct or indirect renewal or replacement, any **Insured Person** knew to be actually or allegedly non-compliant.

**Settlement Program** means any voluntary compliance resolution program or similar voluntary settlement program administered by the U.S. Internal Revenue Service or the U.S. Department of Labor, including but not limited to, the Employee Plans Compliance Resolution System, the Audit Closing Agreement Program, the Voluntary Compliance Resolution Program, the Walk-in Closing Agreement Program, the Administrative Policy Regarding Self-Correction, the Tax Sheltered Annuity Voluntary Correction Program, the Delinquent Filer Voluntary Compliance Program, and the Voluntary Fiduciary Correction Program, or any similar program administered by a governmental authority located outside the United States.

**Settlement Program Notice** means prior written notice to the Company by the **Insured** of the **Insured's** intent to enter into a **Settlement Program**.

**Sponsored Plan** means:

(a)     any Employee Benefit Plan, Pension Benefit Plan or Welfare Benefit Plan, as each are defined in **ERISA**, which is operated solely by the **Organization** or jointly by the **Organization** and a labor organization solely for the benefit of the **Employees** or **Executives** of the **Organization** located anywhere in the world and which existed on or before the inception date set forth in Item 2 of the Declarations of the General Terms and Conditions or which is created or acquired after such inception date; provided (i) any coverage with respect to any such Plan created or acquired during the **Policy Period** shall apply only for **Wrongful Acts** committed, attempted, or allegedly committed or attempted after the effective date of such creation or acquisition and shall be subject to Subsection 15 of this coverage section, and (ii) any coverage with respect to an employee stock ownership plan created or acquired during the **Policy Period** shall be further subject to Subsection 19 of this coverage section;

(b)     any other employee benefit plan or program not subject to **ERISA** which is sponsored solely by the **Organization** for the benefit of the **Employees** or **Executives**, including any fringe benefit or excess benefit plan;

(c)     any other plan or program otherwise described in paragraphs (a) or (b) above while such plan or program is being actively developed, formed or proposed by the **Organization** prior to the formal creation of such plan or program; provided, however, no coverage is afforded under this coverage section for any **Claim** against an **Insured** in a settlor or similar uninsured capacity with respect to any plan or program; and

(d)     any other plan, fund, or program specifically included as a **Sponsored Plan** by endorsement to this coverage section.

**Sponsored Plan** shall not include any employee stock ownership plan created or acquired by the **Organization** during the **Policy Period** (except as otherwise provided in Subsection 19 of this coverage section), or any multi-employer plan created before or during the **Policy Period.**



*Executive Protection Portfolio*<sup>SM</sup>
*Fiduciary Liability Coverage Section*

**Subsidiary**, either in the singular or plural, means any organization while more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for election of or to appoint directors or **Managers** of such organization are owned or controlled, directly or indirectly, in any combination, by one or more **Organizations**.

**Wrongful Act** means with respect to any **Plan**:

(a)   any breach of the responsibilities, obligations or duties imposed by **ERISA** upon fiduciaries of the **Sponsored Plan** in their capacity as such fiduciaries;

(b)   any negligent act, error or omission in the **Administration** of any **Plan** committed, attempted, or allegedly committed or attempted by an **Insured** in the **Insured's** capacity as such; or

(c)   any other matter claimed against an **Insured** solely by reason of the **Insured's** service as a fiduciary of any **Sponsored Plan**.

### Exclusions

4.   The Company shall not be liable for **Loss** on account of any **Claim** against an **Insured**:

(a)   based upon, arising from or in consequence of any fact, circumstance, situation, transaction, event or **Wrongful Act** that, before the inception date set forth in Item 2 of the Declarations of the General Terms and Conditions, was the subject of any notice given under any policy or coverage section of which this coverage section is a direct or indirect renewal or replacement;

(b)   based upon, arising from or in consequence of any demand, suit, or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the applicable Pending or Prior Date set forth in Item 7 of the Declarations for this coverage section, or the same or substantially the same fact, circumstance or situation underlying or alleged therein;

(c)   based upon, arising from or in consequence of:

(i)   any actual, alleged, or threatened exposure to, or generation, storage, transportation, discharge, emission, release, dispersal, escape, treatment, removal or disposal of any **Pollutants**; or

(ii)   any regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutants**, or any action taken in contemplation or anticipation of any such regulation, order, direction or request,

including but not limited to any **Claim** for financial loss to any **Organization** or **Plan** or creditors based upon, arising from or in consequence of any matter described in clause (i) or clause (ii) of this Exclusion 4(c); provided that this Exclusion 4(c) shall not apply to (A) any **Claim** by or on behalf of a beneficiary of or participant in any **Sponsored Plan** based upon, arising from or in consequence of the diminution in value of any securities owned by the **Sponsored Plan** in any organization other than the **Organization**, if such diminution in value is allegedly as a result of the matters



**Executive Protection Portfolio**<sup>SM</sup>
*Fiduciary Liability Coverage Section*

described above in this Exclusion 4(c), or (B) **Loss** (other than fees and expenses incurred in testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing **Pollutants**) incurred by an **Insured Person** for which the **Organization** is not permitted by common or statutory law to indemnify or for which the **Organization** is not able to indemnify by reason of **Financial Impairment**;

(d)     for bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed;

(e)     based upon, arising from or in consequence of the liability of others assumed by any **Insured** under any written or oral contract or agreement; provided that this Exclusion 4(e) shall not apply to the extent that:

   (i)     an **Insured** would have been liable in the absence of the contract or agreement; or

   (ii)    the liability was assumed in accordance with or under the agreement or declaration of trust pursuant to which the **Plan** was established;

(f)     for the failure of the **Insured** to comply with any workers' compensation, unemployment insurance, social security or disability benefits law or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world, except (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (ii) the Health Insurance Portability and Accountability Act of 1996, or (iii) any amendments to or any rules or regulations promulgated under such Acts;

(g)     made against a **Subsidiary** or an **Insured Person** of such **Subsidiary** for any **Wrongful Act** committed, attempted, or allegedly committed or attempted during any time when such entity was not a **Subsidiary**; or

(h)     based upon, arising from or in consequence of:

   (i)     the committing in fact of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by such **Insured**; or

   (ii)    such **Insured** having gained in fact any profit, remuneration or advantage to which such **Insured** was not legally entitled,

   as evidenced by (A) any written statement or written document by any **Insured** or (B) any judgment or ruling in any judicial, administrative or alternative dispute resolution proceeding.

5.     The Company shall not be liable for **Loss**, other than **Defense Costs**:

(a)     which constitutes the return or reversion to an employer of any contribution or asset of a **Plan**;

(b)     which constitutes (i) benefits due or to become due under any **Plan**, or (ii) benefits which would be due under any **Plan** if such **Plan** complied with all applicable law, except to the extent that:



*Executive Protection Portfolio*<sup>SM</sup>
*Fiduciary Liability Coverage Section*

 

(A)   an **Insured** is a natural person and the benefits are payable by such **Insured** as a personal obligation; and

(B)   recovery for the benefits is based upon a covered **Wrongful Act**; or

(c)   which is based upon, arising from or in consequence of the failure to collect an employer's contributions owed to a **Plan** unless the failure is because of the negligence of any **Insured**.

**Severability of Exclusions**

6.   (a)   No fact pertaining to or knowledge possessed by any **Insured Person** shall be imputed to any other **Insured Person** for the purpose of applying Exclusion 4(h) of this coverage section.

     (b)   Only facts pertaining to and knowledge possessed by any **Executive** of an **Organization** or **Plan** shall be imputed to such **Organization** or **Plan** for the purpose of applying Exclusion 4(h) of this coverage section.

***Spouses, Estates and Legal Representatives***

7.   Subject otherwise to the General Terms and Conditions and the limitations, conditions, provisions and other terms of this coverage section, coverage shall extend to **Claims** for the **Wrongful Acts** of an **Insured Person** made against:

     (a)   the estate, heirs, legal representatives or assigns of such **Insured Person** if such **Insured Person** is deceased or the legal representatives or assigns of such **Insured Persons** if such **Insured Person** is incompetent, insolvent or bankrupt; or

     (b)   the lawful spouse or **Domestic Partner** of such **Insured Person** solely by reason of such spouse or **Domestic Partner's** status as a spouse or **Domestic Partner**, or such spouse or **Domestic Partner's** ownership interest in property which the claimant seeks as recovery for an alleged **Wrongful Act** of such **Insured Person**.

All terms and conditions of this coverage section, including without limitation the Retention, applicable to **Loss** incurred by the **Insured Persons**, shall also apply to loss incurred by the estates, heirs, legal representatives, assigns, spouses and **Domestic Partners** of such **Insured Persons**. The coverage provided by this Subsection 7 shall not apply with respect to any loss arising from an act or omission by an **Insured Person's** estate, heirs, legal representatives, assigns, spouse or **Domestic Partner**.

***Coordination with Employment Practices Liability Coverage Section***

8.   Any **Loss** otherwise covered by both (i) this coverage section and (ii) any employment practices liability coverage section or policy issued by the Company or by any affiliate of the Company (an "Employment Practices Liability Coverage"), first shall be covered as provided in, and shall be subject to the limit of liability, retention and coinsurance percentage applicable to the Employment Practices Liability Coverage. Any remaining **Loss** otherwise covered by this coverage section which is not paid under the Employment Practices Liability



*Executive Protection Portfolio*<sup>SM</sup>
*Fiduciary Liability Coverage Section*

Coverage shall be covered as provided in, and shall be subject to the Limit of Liability and Retention applicable to this coverage section; provided the Retention applicable to such **Loss** under this coverage section shall be reduced by the amount of **Loss** otherwise covered by this coverage section which is paid by the **Insureds** as the retention under such Employment Practices Liability Coverage.

### Extended Reporting Period

9.    If the Company or the **Parent Organization** terminates or does not renew this coverage section, other than termination by the Company for nonpayment of premium, the **Parent Organization** and the **Insureds** shall have the right, upon payment of the additional premium set forth in Item 6(B) of the Declarations for this coverage section, to an extension of the coverage granted by this coverage section for **Claims** that are (i) first made during the period set forth in Item 6(A) of the Declarations for this coverage section (the "Extended Reporting Period") following the effective date of termination or nonrenewal, and (ii) reported to the Company in writing within the time provided in Subsection 11(a) of this coverage section, but only to the extent such **Claims** are for **Wrongful Acts** committed, attempted, or allegedly committed or attempted before the earlier of the effective date of termination or nonrenewal or the date of the first merger, consolidation or acquisition event described in Subsection 16 below.  The offer of renewal terms and conditions or premiums different from those in effect prior to renewal shall not constitute refusal to renew.  The right to purchase an extension of coverage as described in this subsection shall lapse unless written notice of election to purchase the extension, together with payment of the additional premium due, is received by the Company within thirty (30) days after the effective date of termination or nonrenewal.  Any **Claim** made during the Extended Reporting Period shall be deemed to have been made during the immediately preceding **Policy Period**.  The entire additional premium for the Extended Reporting Period shall be deemed fully earned at the inception of such Extended Reporting Period.

### Limit of Liability and Retention

10.    (a)    The Company's maximum liability for all **Loss** on account of each **Claim** covered under Insuring Clause 1 shall be the Limit of Liability set forth in Item 3(A) of the Declarations for this coverage section.  The Company's maximum aggregate liability for all **Loss** on account of all **Claims** first made during the **Policy Period**, whether covered under one or both Insuring Clauses, shall be the Limit of Liability set forth in Item 3(B) of the Declarations for this coverage section.  The Company's maximum liability for all **Defense Costs** and **Settlement Fees** with respect to each **Settlement Program Notice** for which coverage is provided under Insuring Clause 2, and the Company's maximum aggregate liability for all **Defense Costs** and **Settlement Fees** with respect to all such **Settlement Program Notices** first given to the Company during the **Policy Period**, shall be $100,000, which amount is part of and not in addition to the Limit of Liability for each **Policy Period** set forth in Item 3(B) of the Declarations for this coverage section.

(b)    Solely in the event that Defense Outside the Limits of Liability Coverage is purchased, as set forth in Item 2 of the Declarations for this coverage section, **Defense Costs** shall be in addition to, and not part of, the applicable Limit of Liability; provided that, when such Limit of Liability is exhausted by payment of **Loss**, other than **Defense Costs**, any obligation of the Company to pay **Defense Costs** or to defend or continue to defend any **Claim** shall cease.  If Defense Outside the Limits of Liability Coverage is not purchased, **Defense Costs** shall be part of, and not in



**Executive Protection Portfolio**<sup>SM</sup>
*Fiduciary Liability Coverage Section*

addition to, the Limits of Liability set forth in Item 3 of the Declarations for this coverage section, and the payment by the Company of **Defense Costs** shall reduce and may exhaust such applicable Limits of Liability.

(c)     No Retention shall apply to any **Loss** under this coverage section incurred by an **Insured Person** if such **Loss** can not be indemnified by an **Organization** or **Plan** because such **Organization** or **Plan** is either not legally permitted or required to indemnify, or is unable to indemnify, such **Insured Person** by reason of **Financial Impairment**.  The Company's liability for all other covered **Loss** (as determined by Subsection 13 of this coverage section, if applicable) shall apply only to that part of **Loss** on account of each **Claim** which is excess of the applicable Retention set forth in Item 4 of the Declarations for this coverage section.  Such Retention shall be reduced only by **Loss** otherwise covered under this coverage section and shall be borne by the **Insureds** uninsured and at their own risk.

(d)     If different parts of a single **Claim** are subject to different Retentions, the applicable Retentions will be applied separately to each part of such **Claim**, but the sum of such Retentions shall not exceed the largest applicable Retention.

(e)     All **Related Claims** shall be treated as a single **Claim** first made on the date the earliest of such **Related Claims** was first made, or on the date earliest of such **Related Claims** is treated as having been made in accordance with Subsection 11(b) of this coverage section, regardless of whether such date is before or during the **Policy Period**.

(f)     The limit of liability available during the Extended Reporting Period (if exercised) shall be part of, and not in addition to, the Company's maximum aggregate limit of liability for all **Loss** on account of all **Claims** first made during the immediately preceding **Policy Period**.

### Reporting and Notice

11.    (a)     The **Insureds** shall, as a condition precedent to exercising any right to coverage under this coverage section, give to the Company written notice of any **Fiduciary Claim** as soon as practicable, but in no event  more than the earliest of the following dates:

(i)     sixty (60) days after the date on which any **Organization**'s chief financial officer, in-house general counsel, risk manager, president, chief executive officer or chairperson first becomes aware that the **Fiduciary Claim** has been made;

(ii)     if this coverage section expires (or is otherwise terminated) without being renewed and if no Extended Reporting Period is purchased, sixty (60) days after the effective date of such expiration or termination; or

(iii)     the expiration date of the Extended Reporting Period, if purchased;

provided that if the Company sends written notice to the **Parent Organization**, at any time before the date set forth in (i) above with respect to any **Claim,** stating that this coverage section is being terminated for non-payment of premium, the **Insureds** shall give to the Company written notice of such **Claim** prior to the effective date of such termination.



*Executive Protection Portfolio*<sup>SM</sup>
*Fiduciary Liability Coverage Section*

(b)    If during the **Policy Period** an **Insured**:

    (i)    becomes aware of circumstances which could give rise to a **Fiduciary Claim** and gives written notice of such circumstances to the Company;

    (ii)    receives a written request to toll or waive a statute of limitations applicable to **Wrongful Acts** committed, attempted, or allegedly committed or attempted before or during the **Policy Period** and gives written notice of such request and of such alleged **Wrongful Acts** to the Company; or

    (iii)    gives written notice to the Company of a **Settlement Program Notice**,

then any **Claim** subsequently arising from the circumstances referred to in (i) above, from the **Wrongful Acts** referred to in (ii) above, or from the **Settlement Program Notice** referred to in (iii) above, shall be deemed to have been first made during the **Policy Period** in which the written notice described in (i), (ii) or (iii) above was first given by an **Insured** to the Company, provided any such subsequent **Claim** is reported to the **Company** as set forth in Subsection 11(a) above.  With respect to any such subsequent **Claim**, no coverage under this coverage section shall apply to loss incurred prior to the date such subsequent **Claim** is actually made.

(c)    The **Insureds** shall, as a condition precedent to exercising any right to coverage under this coverage section, give to the Company such information and cooperation as the Company may reasonably require, and shall include in any notice under Subsection 11(a) or (b) a description of the **Claim** or circumstances, the nature of any alleged **Wrongful Acts**, the nature of the alleged or potential damage, the names of all actual or potential claimants, the names of all actual or potential defendants, and the manner in which such **Insured** first became aware of the **Claim** or circumstances.

## Defense and Settlement

12.    (a)    The Company shall have the right and duty to defend any **Claim** covered by this coverage section, even if any of the allegations in such **Claim** are groundless, false or fraudulent.  The Company's duty to defend any **Claim** shall cease upon exhaustion of the applicable Limit of Liability.

    (b)    The Company may make any investigation it deems necessary and may, with the consent of the **Insured**, make any settlement of any **Claim** it deems expedient.  If any **Insured** withholds consent to any settlement acceptable to the claimant in accordance with the Company's recommendation (a "Proposed Settlement"), the Company's liability for all **Loss**, including **Defense Costs**, from such **Claim** shall not exceed:

        (i)    the amount of the Proposed Settlement plus **Defense Costs** incurred up to the date of the **Insured's** refusal to consent to the Proposed Settlement of such **Claim**; plus

        (ii)    seventy percent (70%) of any **Loss**, including **Defense Costs**, in excess of the amount referenced in paragraph (i) above, incurred in connection with such **Claim**; subject in all events to the applicable Retention and the available Limit



**Executive Protection Portfolio**<sup>SM</sup>
*Fiduciary Liability Coverage Section*

of Liability for such **Claim**.  The remaining thirty percent (30%) of any **Loss**, including **Defense Costs**, in excess of the amount referenced in paragraph (i) above will be borne by the **Insured** uninsured and at its own risk.

(c)   The **Insureds** agree not to settle or offer to settle any **Claim**, incur any **Defense Costs** or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the Company's prior written consent, which shall not be unreasonably withheld.  The Company shall not be liable for any **Defense Costs**, for any other element of **Loss** incurred, for any obligation assumed, or for any admission made, by any **Insured** without the Company's prior written consent.

(d)   The **Insureds** agree to provide the Company with all information, assistance and cooperation which the Company reasonably require and agree that in the event of a **Claim** the **Insureds** will do nothing that could prejudice the Company's position or its potential or actual rights of recovery.

### *Allocation*

13.   (a)   If in any **Claim** the **Insureds** incur both **Loss** that is covered under this coverage section and loss that is not covered under this coverage section, either because such **Claim** includes both covered and non-covered matters or because such **Claim** is made against both **Insureds** and others, the **Insureds** and the Company shall allocate such amount between covered **Loss** and non-covered loss based on the relative legal and financial exposures of the parties to covered and non-covered matters and, in the event of a settlement in such **Claim**, based also on the relative benefits to the parties from such settlement.  The Company shall not be liable under this coverage section for the portion of such amount allocated to non-covered loss.

(b)   If the **Insureds** and the Company cannot agree on an allocation of **Loss**:

(i)   no presumption as to allocation shall exist in any arbitration, suit or other proceeding; and

(ii)   the Company, if requested by the **Insureds**, shall submit the dispute to binding arbitration.  The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel, which shall consist of one arbitrator selected by the **Insureds**, one arbitrator selected by the Company, and a third independent arbitrator selected by the first two arbitrators.

### *Other Insurance*

14.   If any **Loss** under this coverage section is insured under any other valid insurance policy(ies), then this coverage section shall cover such **Loss**, subject to its limitations, conditions, provisions and other terms, only to the extent that the amount of such **Loss** is in excess of the applicable retention (or deductible) and limit of liability under such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided in this coverage section.  Any payment by **Insureds** of a retention or deductible under such other insurance shall deplete, by the amount of such payment which would otherwise be covered under this coverage section, the applicable Retention under this coverage section.



*Executive Protection Portfolio*<sup>SM</sup>
*Fiduciary Liability Coverage Section*

---

### Changes in Exposure

*Acquisition/Creation of Another Organization*

15.   If before or during the **Policy Period** any **Organization:**

(a)   acquires securities or voting rights in another organization or creates another organization, which as a result of such acquisition or creation becomes a **Subsidiary**; or

(b)   acquires another organization by merger into or consolidation with an **Organization**, such that the **Organization** is the surviving entity,

such other organization and its **Insureds** shall be **Insureds** under this coverage section, but only with respect to **Wrongful Acts** committed, attempted, or allegedly committed or attempted after such acquisition or creation unless the Company agrees, after presentation of a complete application and all other appropriate information, to provide coverage by endorsement for **Wrongful Acts** committed, attempted, or allegedly committed or attempted before such acquisition or creation.

If the total assets of any such acquired organization or new **Subsidiary** exceed fifteen percent (15%) of the total assets of the **Parent Organization** (as reflected in the most recent audited consolidated financial statements of such organization and the **Parent Organization**, respectively, as of the date of such acquisition or creation), the **Parent Organization** shall give written notice of such acquisition or creation to the Company as soon as practicable, but in no event later than sixty (60) days after the date of such acquisition or creation, together with such other information as the Company may require and shall pay any reasonable additional premium required by the Company.  If the **Parent Organization** fails to give such notice within the time specified in the preceding sentence, or fails to pay the additional premium required by the Company, coverage for such acquired or created organization and its **Insureds** shall terminate with respect to **Claims** first made more than sixty (60) days after such acquisition or creation.  Coverage for any acquired or created organization described in this paragraph, and for the **Insureds** of such organization, shall be subject to such additional or different terms, conditions and limitations of coverage as the Company in its sole discretion may require.

*Acquisition by Another Organization*

16.   If:

(a)   the **Parent Organization** merges into or consolidates with another organization and the **Parent Organization** is not the surviving entity; or

(b)   another organization or person or group of organizations and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by the other organization(s) or person(s) of more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for the election of or to appoint directors or **Managers** of the **Parent Organization**,



**Executive Protection Portfolio**<sup>SM</sup>
*Fiduciary Liability Coverage Section*

coverage under this coverage section shall continue until termination of this coverage section, but only with respect to **Claims** for **Wrongful Acts** committed, attempted, or allegedly committed or attempted before such merger, consolidation or acquisition. Upon the occurrence of any event described in (a) or (b) of this Subsection 16, the entire premium for this coverage section shall be deemed fully earned.

The **Parent Organization** shall give written notice of such merger, consolidation or acquisition to the Company as soon as practicable, but in no event later than sixty (60) days after the date of such merger, consolidation, or acquisition, together with such other information as the Company may require.  Upon receipt of such notice and information and at the request of the **Parent Organization**, the Company shall provide to the **Parent Organization** a quotation for an extension of coverage (for such period as may be negotiated between the Company and the **Parent Organization**) with respect to **Claims** for **Wrongful Acts** committed, attempted, or allegedly committed or attempted by **Insureds** before such merger, consolidation or acquisition.  Any coverage extension pursuant to such quotation shall be subject to such additional or different terms, conditions and limitations of coverage and payment of such additional premium, as the Company in its sole discretion may require.

## Cessation of Subsidiary

17.   In the event an organization ceases to be a **Subsidiary** before or during the **Policy Period**, coverage with respect to such **Subsidiary** and its **Insureds** shall continue until termination of this coverage section, but only with respect to **Claims** for **Wrongful Acts** committed, attempted, or allegedly committed or attempted while such organization was a **Subsidiary**.

## Termination of Plan

18.   If an **Organization** terminates a **Plan** before or after the inception date set forth in Item 2 of the Declarations of the General Terms and Conditions, coverage under this coverage section with respect to such terminated **Plan** and its **Insureds** shall continue until termination of this coverage section for those who were **Insureds** prior to or at the time of such **Plan** termination or who would have been **Insureds** at the time of such termination if this coverage section had then been in effect.  Such continuation of coverage shall apply with respect to **Claims** for **Wrongful Acts** committed, attempted, or allegedly committed or attempted prior to or after the date the **Plan** was terminated.

## Creation or Acquisition of an ESOP

19.   Notwithstanding anything in this coverage section to the contrary, if during the **Policy Period** the **Organization** creates or directly or indirectly acquires an employee stock ownership plan ("ESOP"), the **Organization** shall promptly give to the Company written notice thereof together with such other information requested by the Company. The Company shall, at the request of the **Organization**, provide to the **Organization** a quotation for coverage for **Claims** based upon, arising from, or in consequence of such ESOP, subject to such terms, conditions, limitations of coverage and such additional premium as the Company, in its sole discretion, may require.  Unless the **Insureds** accept such quotation and pay such additional premium within thirty (30) days after receipt of the



**Executive Protection Portfolio**<sup>SM</sup>
*Fiduciary Liability Coverage Section*

quotation, no coverage will be available under this coverage section for **Claims** based upon, arising from or in consequence of such ESOP.

*Representations and Severability*

20.     In issuing this coverage section the Company has relied upon the statements, representations and information in the **Application**.  All of the **Insureds** acknowledge and agree that all such statements, representations and information (i) are true and accurate, (ii) were made or provided in order to induce the Company to issue this coverage section, and (iii) are material to the Company's acceptance of the risk to which this coverage section applies.

In the event that any of the statements, representations or information in the **Application** are not true and accurate, this coverage section shall be void with respect to (i) any **Insured** who knew as of the effective date of the **Application** the facts that were not truthfully and accurately disclosed (whether or not the **Insured** knew of such untruthful disclosure in the **Application**) or to whom knowledge of such facts is imputed, and (ii) the **Organization** to the extent it indemnifies an **Insured Person** who had such actual or imputed knowledge.  For purposes of the preceding sentence:

(a)     the knowledge of any **Insured Person** who is a past, present or future chief financial officer, in-house general counsel, chief executive officer, president or chairperson of any **Organization** shall be imputed to such **Organization** and its **Subsidiaries** and their respective **Plans**;

(b)     the knowledge of the person(s) who signed the **Application** for this coverage section shall be imputed to all of the **Insureds**; and

(c)     except as provided in (a) above, the knowledge of an **Insured Person** who did not sign the **Application** shall not be imputed to any other **Insured**.

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio Fiduciary Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: September 1, 2019          Federal Insurance Company

Endorsement/Rider No. 1

To be attached to and
form a part of Policy No. 8153-1429

Issued to:  AKORN INC

---

PRIORITY OF PAYMENTS

In consideration of the premium charged, it is agreed that with respect to any **Fiduciary Claim** first made against the **Insureds** during the **Policy Period**, regardless of whether such **Fiduciary Claim** is first made before or after the effective date of this endorsement:

1.      If a liquidation or reorganization proceeding is commenced by or against the **Organization** pursuant to the United States Bankruptcy Code or any similar state or local law and in the event payment of **Loss** is due under this coverage section but, in the sole discretion of the Company, the amount of such **Loss** in the aggregate potentially exceeds the remaining available Limit of Liability for this coverage section, the Company shall:

(a)      first pay such covered **Loss** incurred by the **Insured Persons** and the **Plans**; then

(b)      to the extent of any remaining amount of the Limit of Liability available after payment under (a) above, pay such covered **Loss** incurred by the **Organization**.

Except as otherwise provided in this endorsement, the Company may pay covered **Loss** as it becomes due under this coverage section without regard to the potential for other future payment obligations under this coverage section.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio Fiduciary Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: September 1, 2019          Federal Insurance Company

                                                  Endorsement/Rider No. 2

                                                  To be attached to and
                                                  form a part of Policy No. 8153-1429

Issued to:  AKORN INC

---

AMEND SUBSECTION 20 REPRESENTATIONS AND SEVERABILITY ENDORSEMENT

In consideration of the premium charged, it is agreed that the second paragraph of Subsection 20. Representations and Severability of this coverage section is amended to read in its entirety as follows:

> In the event that any of the statements, representations or information in the **Application** are not true and accurate, this coverage section shall be void with respect to (i) any **Insured Person** who knew as of the effective date of the **Application** the facts that were not truthfully and accurately disclosed (whether or not the **Insured Person** knew of such untruthful disclosure in the **Application**), (ii) any **Organization** or **Plan** to which knowledge of such facts is imputed, and (iii) any **Organization** to the extent it indemnifies an **Insured Person** who had knowledge of such facts, whether or not knowledge of such facts is also imputed to that **Organization**.  For purposes of the preceding sentence:

> (a)   the knowledge of any **Insured Person** who is a past, present or future chief financial officer or chief executive officer of **Parent Organization** shall be imputed to all **Organizations**, **Subsidiaries** and **Plans**;

> (b)   the knowledge of the person(s) who signed the **Application** for this coverage section shall be imputed to all **Organizations**, **Subsidiaries**, and **Plans**; and

> (c)   except as provided in (a) and (b) above, the knowledge of an **Insured Person** shall not be imputed to any other **Insured**.

> Notwithstanding the foregoing, solely with respect to **Non-Indemnifiable Loss** (as defined below), this coverage section shall not be rescinded with respect to any **Insured Person** who, as of the inception date of this coverage section, did not know the facts that were not truthfully and accurately disclosed in the **Application**, provided that the coverage afforded pursuant to this paragraph shall be subject to all terms, conditions, exclusions and limitations of this policy.

For purposes of this endorsement, the term "**Non-Indemnifiable Loss**" means **Loss** for which an **Organization**, **Subsidiary** or **Plan** has neither indemnified nor is permitted or required to indemnify an **Insured Person** pursuant to statutory or common law, contract or the charter, bylaws, operating agreement or similar documents of an **Organization, Subsidiary** or **Plan**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

14-02-12174 (01/2014)                    Page 1

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio Fiduciary Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: September 1, 2019          Federal Insurance Company

                                                   Endorsement/Rider No. 3

                                                   To be attached to and
                                                   form a part of Policy No. 8153-1429

Issued to:  AKORN INC

---

AMEND CONDUCT EXCLUSIONS ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     Subsection 4., Exclusions, of this coverage section is amended by deleting Exclusion (h) and
        replacing it with the following:

        (h)      based upon, arising from or in consequence of:

                 (i)   any deliberately fraudulent act or omission or any willful violation of any statute or
                       regulation by such **Insured**, if a final judgment or final adjudication in any
                       proceeding establishes such a deliberately fraudulent act or omission or willful
                       violation; or

                 (ii)  such **Insured** having gained any profit, remuneration or other advantage to which
                       such **Insured** was not legally entitled, if a final judgment or final adjudication in
                       any proceeding establishes the gaining of such a profit, remuneration or
                       advantage.

(2)     Subsection 6. Severability of Exclusions is deleted and replaced with the following:

        6. (a)   No fact pertaining to or knowledge possessed by any **Insured Person** shall be imputed to
                 another **Insured Person** or to the **Plan** for the purpose of applying Exclusion 4(h), as
                 amended by this endorsement.

           (b)   Only deliberately fraudulent acts or omissions, knowing and purposeful violations of any
                 statute or regulation or gaining of any unlawful profit, remuneration or advantage by any chief
                 executive officer, chief financial officer, in-house general counsel, president, chairperson, or
                 head of benefits of the Human Resources Department, or any equivalent position thereof, of
                 an **Organization** shall be imputed to such **Organization** for the purpose of applying
                 Exclusion 4(h), as amended by this endorsement.

(3)     With respect to Exclusion 4(h), as amended above, the term "proceeding," as used therein, shall not
        include any declaratory proceeding brought by or against the Company.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio Fiduciary Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: September 1, 2019          Federal Insurance Company

Endorsement/Rider No. 4

To be attached to and
form a part of Policy No. 8153-1429

Issued to:  AKORN INC

---

FIDUCIARY LIABILITY COVERAGE ENHANCEMENTS ENDORSEMENT
(EP PORTFOLIO)

In consideration of the premium charged, it is agreed that solely with respect to this Fiduciary Liability Coverage Section, the following shall apply:

(1)   **AMEND DECLARATIONS**

Item 3. Limits of Liability, of the Declarations for this coverage section, is amended to add the following:

(C)   Sublimits of Liability:

HIPAA Penalties:          $1,500,000

PPACA Penalties:          $250,000

Section 4975 Tax Penalty:  $250,000

Section 502(c) Penalties:  $250,000

PPA Penalties:            $250,000

(D)   Voluntary Settlement Program Coverage Insuring Clause 2:   $250,000

NOTE: The Sublimits of Liability shown in (C) and (D) above,  are part of, and not in addition to, the Limits of Liability shown in Item 3(B) of the Declarations for this coverage section.

(2)   **AMEND INSURING CLAUSES**

Insuring Clause 1. Fiduciary Liability Coverage and Insuring Clause 2. Voluntary Settlement Program Coverage, of this coverage section are deleted and replaced with the following:

*Fiduciary Liability Coverage Insuring Clause 1*

1.   The Company shall pay, on behalf of the **Insureds**, **Loss** on account of any **Fiduciary Claim** first made against the **Insureds**:

(i)     during the **Policy Period**, or, if exercised, during the Extended Reporting Period for a **Wrongful Act** committed, attempted or allegedly committed or attempted before or during the **Policy Period** by such **Insureds**, or by any person for whose **Wrongful Acts** the **Insureds** are legally responsible, but only if such **Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 11 of this coverage section; or

(ii)    that is a **Pre-Claim Investigation** or **Benefit Claim Denial**, if, at the **Insured's** option, it is reported to the Company in writing during the **Policy Period**.

*Voluntary Settlement Program Coverage Insuring Clause 2*

2.      The Company shall pay, on behalf of the **Insureds**, **Settlement Fees** and **Defense Costs** with respect to a **Settlement Program Notice** first given to the Company during the **Policy Period**, or, if exercised, during the Extended Reporting Period, provided (i) the **Settlement Fees** and **Defense Costs** are incurred after such **Settlement Program Notice** is first given to the Company, and (ii) the Company's maximum liability for all **Settlement Fees** and **Defense Costs** with respect to all **Settlement Program Notices** first given to the Company during the **Policy Period** (including the Extended Reporting Period, if applicable) shall be the amount set forth in Item 3.(D) of the Declarations for this coverage section, as amended in paragraph (1) of this endorsement. Such amount shall be part of, and not in addition to, the Limit of Liability otherwise applicable to this coverage section.

(3)   **INTERVIEW COVERAGE**

Interview Coverage

(A)    The Company shall pay, on behalf of an **Insured Person**, **Defense Costs** incurred solely by such **Insured Person** on account of an **Interview** first made during the **Policy Period**, except to the extent that such **Defense Costs** have been paid or indemnified.

(B)    The Company shall pay, on behalf of an **Organization** or a **Plan**, **Defense Costs** incurred solely by an **Insured Person** on account of an **Interview** first made during the **Policy Period**, to the extent the **Organization** or a **Plan** pays or indemnifies such **Defense Costs**; provided that the coverage afforded pursuant to this paragraph (3)(B) shall be subject to the Retention set forth in Item 4(A) of the Declarations for this coverage section.

(4)   **AMEND DEFINITIONS**

Subsection 3. Definitions, of this coverage section, is amended as follows:

(A)    Amend Definition of Administration

The definition of **Administration** is deleted and replaced with the following:

**Administration** means:

(1)     advising, counseling, or failing to provide proper or timely notice to **Employees**, **Executives**, participants or beneficiaries with respect to any **Plan**;

(2)     providing interpretations with respect to any **Plan**; or

(3)     handling of records or effecting enrollment, termination or cancellation of **Employees**, **Executives**, participants or beneficiaries under any **Plan**.

(B)    Amend Definition of Defense Costs

The definition of **Defense Costs** is deleted and replaced with the following:

**Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including attorneys' fees, experts' fees, and the cost of **E-Discovery Specialist Services**) and expenses (other than regular or overtime wages, salaries, fees or benefits of the **Insured Persons** or remuneration, salaries, wages, fees, expenses, overhead, or benefit expenses or other fees or charges of the Company) incurred with the Company's prior written consent: (1) in investigating, defending, opposing or appealing any **Fiduciary Claim** or any **Voluntary Program Notice**, and the premium for appeal, attachment or similar bonds; or (2) as a result of an **Interview**.

(C)   <u>Amend Definition of Employee</u>

The definition of **Employee** is deleted and replaced with the following:

**Employee** means any natural person whose labor or service was, is or will be engaged by and directed by the **Organization** or any **Plan**, including part-time, seasonal, leased and temporary employees as well as volunteers. **Employee** shall not include any independent contractor.

(D)   <u>Amend Definition of ERISA</u>

The definition of **ERISA** is deleted and replaced with the following:

**ERISA** means:

(a)   the Employee Retirement Income Security Act of 1974, as amended and any rules or regulations promulgated thereunder (including, amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985, and the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"));

(b)   the English Pension Scheme Act 1993, and the English Pensions Act 1995, as such Acts are amended and any rules or regulations promulgated under such Acts, and

any similar statutory or common law anywhere in the world, and any rules or regulations promulgated thereunder; and

(c)   the privacy provisions under HIPAA.

(E)   <u>Amend Definition of Fiduciary Claim</u>

The definition of **Fiduciary Claim** is deleted and replaced with the following:

**Fiduciary Claim** means any:

(a)   written demand for:

(i)   monetary or non-monetary (including injunctive) relief; or

(ii)   arbitration or mediation,

against an **Insured** for a **Wrongful Act**, commenced by the first receipt of such demand by an **Insured**;

(b)   proceeding, including any appeal therefrom, against an **Insured** for a **Wrongful Act**, commenced by:

(i)   the service of a civil complaint or similar pleading;

(ii)   the filing of a notice of charges or the entry of a formal order of investigation in connection with a formal civil administrative or formal civil regulatory proceeding;

(iii)  solely with respect to a criminal proceeding: (1) an arrest; (2) the return of an indictment, information or similar document; or (3) the receipt of an official request for **Extradition**;

(c)  written notice of commencement of a fact-finding investigation by the U.S. Department of Labor, the U.S. Pension Benefit Guaranty Corporation, or any similar governmental authority located outside the United States, including, the Pensions Ombudsman appointed by the United Kingdom Secretary of State for Work and Pensions or by the United Kingdom Occupational Pensions Regulatory Authority or any successor thereto, against any **Insured** for a **Wrongful Act**;

(d)  investigation of an **Insured Person**, solely in his or her fiduciary capacity with respect to any **Sponsored Plan**, for a **Wrongful Act**, commenced by the **Insured Person's** receipt of a written document from an **Enforcement Unit** identifying such **Insured Person** as the target of an investigation, including a Wells Notice, target letter or search warrant;

(e)  written request upon an **Insured Person** for witness testimony or document production, commenced by the service of a subpoena or other similar document compelling such testimony or production of documents in connection with any matter described in Subsections (a) through (d) above; provided that in such event the Company shall pay, on behalf of such **Insured Person**, **Defense Costs** incurred solely by such **Insured Person** in responding to such request; or

(f)  written notice of commencement of a **Pre-Claim Investigation** or **Benefit Claim Denial**, if, at the **Insured's** option, it is reported to the Company in writing during the **Policy Period**.

Notwithstanding the foregoing, **Fiduciary Claim** shall not include an **Interview**.

(F)  <u>Amend Definition of Insured</u>

The definition of **Insured** is amended to include any **Committee**.

(G)  <u>Amend Definition of Insured Person</u>

The definition of **Insured Person** is amended to add the following:

**Insured Person** shall also include any past **Employees** or **Executives** retained as a fiduciary or plan consultant to the **Sponsored Plan**; provided that for the purposes of determining an **Organization's** indemnification obligation to any such consultants, each consultant shall be deemed a director or officer of the **Organization**. Accordingly, the **Organization** shall be deemed to have granted indemnification to each consultant to the fullest extent permitted by statutory or common law to the same extent as any director or officer of the **Organization**.

**Insured Person** shall not include any individual in his or her capacity as an employee of any third party, including a service provider.

(H)  <u>Amend Definition of Loss</u>

The definition of **Loss** is deleted and replaced with the following:

**Loss** means:

(1)  solely for purposes of Insuring Clause 1., Fiduciary Liability Coverage, the amount which any **Insured** becomes legally obligated to pay as a result of any **Fiduciary Claim**, including:

(a)  compensatory damages,

(b)  claimant's attorney's fees awarded by a court pursuant to Section 502(g) of the Employee Retirement Income Security Act of 1974, as amended, against an **Insured**;

(c)   punitive, exemplary or multiplied damages, if and to the extent such damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages, provided such jurisdiction has a substantial relationship to the **Insured**, the Company, or the **Fiduciary Claim** giving rise to such damages;

(d)   judgments;

(e)   settlements;

(f)   reasonable fees and expenses of an independent fiduciary retained to review a proposed settlement of a covered **Fiduciary Claim** (including reasonable and necessary fees and expenses of any law firm hired by such independent fiduciary to facilitate that review of such proposed settlement of a covered **Fiduciary Claim**); and

(g)   **Defense Costs**; and

(2)   solely for purposes of Insuring Clause 2., Voluntary Settlement Program Coverage, **Settlement Fees** and **Defense Costs**; and

(3)   for purposes of the Interview Coverage, **Defense Costs**,

provided that, **Loss** does not include any portion of such amount that constitutes any:

(a)   cost incurred by the **Organization** or the **Plan** to comply with any order for non-monetary relief, including injunctive relief, or to comply with an agreement to provide such relief;

(b)   amount uninsurable under the law pursuant to which this coverage section is construed;

(c)   tax;

(d)   fine or penalty, except:

(i)   as provided in subparagraph (1)(c) above with respect to punitive, exemplary or multiplied damages;

(ii)   solely with respect to Insuring Clause 2., Voluntary Settlement Program Coverage, **Settlement Fees**;

(iii)   **Civil Penalties**;

(e)   amounts incurred by an **Insured** in the defense or investigation of any action, proceeding, investigation or demand that was not then a **Claim**, even if (a) such amount also benefits the defense of a covered **Claim**, or (b) such action, proceeding, investigation or demand subsequently gives rise to a **Claim**;

(f)   (1) benefits due, or to become due, or that portion of any settlement or award in an amount equal to such benefits, under any **Plan**, or (2) benefits which would be due, or that portion of any settlement or award in an amount equal to such benefits, under any **Plan** if such **Plan** complied with all applicable law, including loss resulting from the payment of plaintiff attorneys' fees based upon a percentage of such benefits or payable from a common fund established to pay such benefits, except to the extent that:

(i)   an **Insured** is a natural person and the benefits are payable by such **Insured** as a personal obligation, and recovery for the benefits is based upon a covered **Wrongful Act**; or

(ii)   a **Claim** made against an **Insured**:

    (a)  alleges a loss to the **Plan** and/or to the accounts of such **Plan's** participants by reason of a change in the value of the investments held by such **Plan**, regardless of whether the amounts sought or recovered by the plaintiffs in such **Claim** are characterized by plaintiffs as "benefits" or held by a court as "benefits"; or

    (b)  seeks amounts that would have been due, but for the failure to enroll in the **Plan**, as set forth in subparagraph (3) of the definition of **Administration**, unless and to the extent the **Plan** is self-funded; or

(g)  costs incurred in cleaning-up, removing, containing, treating, detoxifying, neutralizing, assessing the effects of, testing for, or monitoring **Pollutants**; or

(h)  amount constituting any contribution or that portion of any settlement or award in an amount equal to such amount constituting any contribution that is owed to or to fund any **Plan**, except to the extent that an **Insured** is a natural person and the contribution is payable by such **Insured** as a personal obligation, and recovery for the contribution is based upon a covered **Wrongful Act**.

(I)  Amend Definition of Sponsored Plan

Paragraph (c) of the definition of **Sponsored Plan** is deleted and replaced with the following:

(c)  any other plan or program otherwise described in paragraphs (a) or (b) above while such plan or program is being actively developed, formed or proposed by the **Organization** prior to the formal creation of such plan or program; and

(J)  Amend Definition of Wrongful Act

The definition of **Wrongful Act** is deleted and replaced with the following:

**Wrongful Act** means any actual or alleged:

(a)  breach of the responsibilities, obligations or duties imposed by **ERISA** upon fiduciaries of the **Sponsored Plan** committed, attempted or allegedly committed or attempted by an **Insured** while acting in the **Insured's** capacity as a fiduciary;

(b)  negligent act, error or omission in the **Administration** of any **Plan** committed, attempted or allegedly committed or attempted by an **Insured**;

(c)  matter, other than as set forth in (a) or (b) above, claimed against an **Insured** solely by reason of the **Insured's** service as a fiduciary of any **Sponsored Plan**; or

(d)  act, error or omission committed, attempted or allegedly committed or attempted by an **Insured**, solely in such **Insured's** settlor capacity with respect to establishing, amending, terminating or funding a **Sponsored Plan**.

(K)  Add Definitions

The following definitions are added:

**Benefit Claim Denial** means an appeal of an adverse benefits determination by an **Insured** pursuant to the U.S. Department of Labor's claim procedure regulation 29 C.F.R. Section 2560.503-1(h) or any similar claim procedures pursuant to applicable law.

**Civil Penalties** means:

(1)  the five percent (5%) or less, or the twenty percent (20%) or less, civil penalties imposed upon an **Insured** as a fiduciary under Section 502(i) or (l), respectively, of the Employee Retirement Income Security Act of 1974, as amended;

(2)    civil penalties imposed by:

    (i)    the Pension Ombudsman appointed by the United Kingdom Secretary of State for Work and Pensions or any successor thereto, by the United Kingdom Occupational Pensions Regulatory Authority, or the Pensions Regulator or any successor thereto, pursuant to the Pension Scheme Act 1993, the Pensions Act 1995, the Pensions Act 2004, or rules or regulations thereunder; or

    (ii)    Ireland's Pensions Board or Pensions Ombudsman;

provided any coverage for such civil penalties applies only if the funds or assets of the pension scheme are not used to fund, pay or reimburse the premium for this coverage section;

(3)    civil money penalties imposed upon an **Insured** for such **Insured's** violation of the privacy provisions of the Health Insurance Portability and Accountability Act of 1996, as amended ("HIPAA Penalties"); provided the Company's maximum limit of liability for all such HIPAA Penalties on account of all **Claims** shall be the HIPAA Penalties amount set forth in Item 3(C) of the Declarations for this coverage section, as amended in paragraph (1) of this endorsement, which amount is part of, and not in addition to, the Limit of Liability set forth in Item 3(B) of the Declarations for this coverage section;

(4)    civil money penalties imposed upon an **Insured** for inadvertent violation of the Patient Protection and Affordable Care Act, as amended, and  any rules or regulations promulgated thereunder ("PPACA Penalties"); provided the Company's maximum limit of liability for all such PPACA Penalties on account of all **Claims** shall be the PPACA Penalties amount set forth in Item 3(C) of the Declarations for this coverage section, as amended in paragraph (1) of this endorsement, which amount is part of, and not in addition to, the Limit of Liability set forth in Item 3(B) of the Declarations for this coverage section;

(5)    with respect to covered judgments, the fifteen percent (15%) or less tax penalty imposed upon an **Insured** under Section 4975 of the Internal Revenue Code of 1986 ("Section 4975 Tax Penalty"); provided the Company's maximum limit of liability for such Section 4975 Tax Penalty on account of all **Claims** shall be the Section 4975 Tax Penalty amount set forth in Item 3(C) of the Declarations for this coverage section, as amended in paragraph (1) of this endorsement, which amount is part of, and not in addition to, the Limit of Liability set forth in Item 3(B) of the Declarations for this coverage section;

(6)    civil money penalties imposed upon an **Insured** for violation of the Pension Protection Act of 2006 ("PPA Penalties"); provided the Company's maximum aggregate liability for all such civil money penalties on account of all **Claims** shall be the PPA Penalties amount set forth in Item 3(C) of the Declarations for this coverage section, as amended in paragraph (1) of this endorsement, which amount is part of, and not in addition to, the Limit of Liability set forth in Item 3(B) of the Declarations for this coverage section; or

(7)    civil penalties, other than penalties imposed upon an **Insured** for violation of the Pension Protection Act of 2006, imposed upon an **Insured** as a fiduciary under Section 502(c) of the Employee Retirement Income Security Act of 1974, as amended ("Section 502(c) Penalties"); provided the Company's maximum limit of liability for all such Section 502(c) Penalties on account of all **Claims** shall be the Section 502(c) Penalties amount set forth in Item 3(C) of the Declarations for this coverage section, as amended in paragraph (1) of this endorsement, which amount is part of, and not in addition to, the Limit of Liability set forth in Item 3(B) of the Declarations for this coverage section.

**Committee** means any committee established by an **Organization** with respect to a **Sponsored Plan**, which consists only of natural person members who are **Executives** or **Employees**.

**E-Discovery** means the review, development, collection, storage, organization, cataloging, preservation and/or production of electronically stored information.

**E-Discovery Specialist Services** means solely the following services performed by an **E-Specialist Firm**:

(1) assisting the **Insured** with managing and minimizing the internal and external costs associated with **E-Discovery**;

(2) assisting the **Insured** in developing or formulating an **E-Discovery** strategy which shall include interviewing qualified and cost effective **E-Discovery** vendors;

(3) serving as project manager, advisor and/or consultant to the **Insured**, defense counsel and the Company in executing and monitoring the **E-Discovery** strategy; and

(4) such other services provided by the **E-Specialist Firm** that the **Insured**, Company, and **E-Specialist Firm** agree are reasonable and necessary given the circumstances of the **Claim**.

**E-Specialist Firm** means the e-discovery consultant firms approved by the Company.

**Enforcement Unit** means any federal, state, local or foreign law enforcement or governmental authority (including, the U.S. Department of Justice, the U.S. Securities and Exchange Commission and any attorney general) or the enforcement unit of any securities exchange or similar self-regulatory body; however, **Enforcement Unit** shall not include the U.S. Department of Labor, the U.S. Pension Benefit Guaranty Corporation, or any similar governmental authority located outside the United States, including, the Pensions Ombudsman appointed by the United Kingdom Secretary of State for Work and Pensions or by the United Kingdom Occupational Pensions Regulatory Authority or any successor thereto.

**Extradition** means any formal process by which an **Insured Person** located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation, including the execution of an arrest warrant where such execution is an element of such process.

**Interview** means a request for an interview or meeting with, or a sworn statement from, an **Insured Person** by:

(1) an **Enforcement Unit** in connection with:

    (a) such **Insured Person** acting solely in his or her capacity as a fiduciary of a **Sponsored Plan**; or
    (b) a **Sponsored Plan's** business activities; or

(2) an **Organization** in connection with an inquiry or investigation of the **Sponsored Plan** by an **Enforcement Unit**,

provided that **Interview** does not include: (i) any request for document production or discovery; (ii) any request by an **Enforcement Unit** that is part of any routine or regularly scheduled **Enforcement Unit** oversight, compliance, audit, inspection or examination; or (iii) any request that is part of an employment-related investigation or claim.

**Pre-Claim Investigation** means a fact-finding investigation which does not contain any allegation of a **Wrongful Act** in writing, commenced by the U.S. Department of Labor, the U.S. Pension Benefit Guaranty Corporation, or any similar governmental authority located outside the United States, including, the Pensions Ombudsman appointed by the United Kingdom Secretary of State for Work and Pensions or by the United Kingdom Occupational Pensions Regulatory Authority or any successor thereto.

(5) **AMEND EXCLUSIONS**

Subsections 4. and 5. Exclusions, of this coverage section are amended as follows:

(A) <u>Amend Prior Notice Exclusion and Pending or Prior Exclusion</u>

Exclusions 4(a) and 4(b) are deleted and replaced with the following.

(a)     based upon, arising from or in consequence of any fact, circumstance, situation, transaction, event or **Wrongful Act** that, before the inception date set forth in Item 2 of the Declarations of the General Terms and Conditions, was the subject of any notice accepted under any fiduciary liability or employee benefit liability policy or coverage section of which this coverage section is a direct or indirect renewal or replacement;

(b)     based upon, arising from or in consequence of any written demand, suit, or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the applicable Pending or Prior Date set forth in Item 7 of the Declarations for this coverage section, or the same or substantially the same fact, circumstance or situation underlying or alleged therein;

(B)     <u>Delete Exclusions</u>

Exclusions 4(c), 5(a), 5(b) (including Endorsement 14-02-8459 "Amend Benefits Due Endorsement" 14-02-8459)and 5(c) are deleted.

(C)     <u>Add Exclusions</u>

With respect to the Interview Coverage, as set forth in paragraph (3) of this endorsement, the following exclusions shall apply:

The Company shall not be liable for **Defense Costs** on account of any **Interview**:

(1)     based upon, arising from or in consequence of any fact, circumstance, situation, transaction, event or **Wrongful Act** that, before the inception date set forth in Item 2 of the Declarations of the General Terms and Conditions, was the subject of any notice accepted under any fiduciary liability or employee benefit liability policy or coverage section of which this coverage section is a direct or indirect renewal or replacement; or

(2)     based upon, arising from or in consequence of any written demand, suit, or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the applicable Pending or Prior Date set forth in Item 7 of the Declarations for this coverage section, or the same or substantially the same fact, circumstance or situation underlying or alleged therein;

(D)     <u>Other</u>

Endorsement 14-02-8906 "HIPAA Civil Money Penalties Endorsement" is hereby deleted.

(6)     **AMEND LIMIT OF LIABILITY RETENTION**

Subsection 10. Limit of Liability and Retention, of this coverage section, is amended as follows:

(A)     Paragraph (a) is deleted and replaced with the following:

(a)     The Company's maximum liability for all **Loss** on account of each **Claim** covered under Insuring Clause 1 shall be the Limit of Liability set forth in Item 3(A) of the Declarations for this coverage section.  The Company's maximum aggregate liability for all **Loss** on account of (i) all **Claims** first made during the **Policy Period**, whether covered under one or both Insuring Clauses, and (ii) all **Interviews**, shall be the Limit of Liability set forth in Item 3(B) of the Declarations for this coverage section.  The Company's maximum liability for all **Defense Costs** and **Settlement Fees** with respect to each **Settlement Program Notice** for which coverage is provided under Insuring Clause 2, and the Company's maximum aggregate liability for all **Defense Costs** and **Settlement Fees** with respect to all such **Settlement Program Notices** first given to the Company during the **Policy Period**, shall be the amount set forth in Item 3.(D) of the Declarations for this coverage section, as

amended in paragraph (1) of this endorsement. Such amount shall be part of, and not in addition to, the Limit of Liability set forth in Item 3(B) of the Declarations for this coverage section.

(B)   Paragraph (f) is deleted and replaced with the following:

(f)   The limit of liability available during the Extended Reporting Period (if exercised) shall be part of, and not in addition to, the Company's maximum aggregate limit of liability for all **Loss** set forth in Item 3(B) of the Declarations for this coverage section.

(C)   The following paragraphs are added:

No Retention shall apply to:

(i)   any **Loss** constituting **Civil Penalties** imposed by law pursuant to subparagraphs (3), (4), (5), (6) and (7) of the definition of **Civil Penalties**, as defined in paragraph (4)(K) of this endorsement; or

(ii)   the first $50,000 in **Defense Costs** incurred for **E-Discovery Specialist Services** on account of a **Claim**.

Any payment by an **Organization** of a Retention on account of an **Interview** shall reduce any Retention due from the **Organization** on account of a **Fiduciary Claim** subsequently afforded coverage under Insuring Clause 1., that is based upon, arising from or in consequence of any fact or circumstances that was the subject of such **Interview**.

(7)   **AMEND REPORTING AND NOTICE**

Subsection 11, Reporting and Notice, of this coverage section is amended as follows:

(A)   Paragraph (a) is deleted and replaced with the following:

(a)   The **Insureds** shall, as a condition precedent to exercising any right to coverage under this coverage section, give to the Company written notice of any **Fiduciary Claim**, other than a **Pre-Claim Investigation** or **Benefit Claim Denial**, no later than:

(i)   if this coverage section expires and is renewed with the Company, one hundred and eighty (180) days after such expiration; provided that, if the **Parent Organization** can prove to the Company's satisfaction that it was not reasonably possible for the **Insureds** to give such notice within the one hundred and eighty (180) day time period and that subsequent notice was given as soon as reasonably possible thereafter, the Company shall waive the foregoing time period;

(ii)   if this coverage section expires (or is otherwise terminated) without being renewed with the Company and if no Extended Reporting Period is purchased, sixty (60) days after the effective date of such expiration or termination; or

(iii)   the expiration date of the Extended Reporting Period, if purchased;

provided that, if the Company sends written notice to the **Parent Organization** stating that this coverage section is being terminated for nonpayment of premium, the **Insureds** shall give to the Company written notice of such **Claim** prior to the effective date of the termination.

(B)   Paragraph (b) is deleted and replaced with the following:

(b)   If during the **Policy Period** an **Insured**:

(i)   becomes aware of circumstances which could give rise to a **Fiduciary Claim** and gives written notice of such circumstances to the Company;

(ii)    receives a written request to toll or waive a statute of limitations applicable to **Wrongful Acts** committed, attempted, or allegedly committed or attempted before or during the **Policy Period** and gives written notice of such request and of such alleged **Wrongful Acts** to the Company;

(iii)    gives written notice to the Company of a **Settlement Program Notice**; or

(iv)    gives written notice to the Company of an **Interview**,

then any **Claim** subsequently arising from the circumstances referred to in (i) above, from the **Wrongful Acts** referred to in (ii) above, from the **Settlement Program Notice** referred to in (iii) above, or from an **Interview** referred to in (iv) above, shall be deemed to have been first made during the **Policy Period** in which the written notice described in (i), (ii), (iii) or (iv) above was first given by an **Insured** to the Company, provided any such subsequent **Claim** is reported to the Company as soon as practicable, but in no event later than ninety (90) days after the chief executive officer, chief financial officer, in-house general counsel, or head of benefits (or any equivalent position to any of the foregoing) of an **Organization** becomes aware of such **Claim**. With respect to any such subsequent **Claim**, no coverage under this coverage section shall apply to loss incurred prior to the date such subsequent **Claim** is actually made.

(8)    **AMEND DEFENSE AND SETTLEMENT**

Subsection 12, Defense and Settlement, of this coverage section is amended as follows:

(A)    Paragraph (b) is deleted and replaced with the following:

(b)    The Company may make any investigation it deems necessary and may, with the consent of the **Insured,** make any settlement of any **Claim** it deems expedient.

(B)    Paragraph (c) is amended to include the following:

However, the Company may, in its sole discretion, waive the foregoing requirement with respect to **Defense Costs** incurred within ninety (90) days prior to the reporting of a **Claim** pursuant to Subsection 11, Reporting and Notice, of this coverage section.

(C)    Paragraph (d) is amended to include the following:

The failure of any **Insured Person** to give the Company the information, assistance or cooperation as it may reasonably require shall not impair the rights of any other **Insured Person** under this coverage section.

(D)    The following paragraphs are added:

Any advancement of **Defense Costs** shall be repaid to the Company by the **Insureds**, severally according to their respective interests, if and to the extent it is determined that such **Defense Costs** are not insured under this coverage section. However, the Company will not seek repayment from an **Insured Person** of advanced **Defense Costs** that are uninsured pursuant to Exclusion 4(h) of this coverage section unless the applicable determination standard set forth in such Exclusion (i.e., in-fact, final adjudication, alternative dispute resolution or other) or any applicable endorsement thereto has been met with respect to such **Insured Person.**

If an **Organization** refuses in writing, or fails within sixty (60) days of an **Insured Person's** written request for indemnification, to advance, pay or indemnify an **Insured Person** for **Loss** on account of a **Claim**, then, upon the **Insured Person** reporting the **Claim** pursuant to Subsection 11, Reporting and Notice, of this coverage section, the Company shall advance **Defense Costs** until such time that the **Organization** accepts the **Insured Person's** request for indemnification or the applicable Retention has been satisfied.

Any advancement of **Defense Costs** by the Company shall reduce the Limit of Liability set forth in Item 3 of the Declarations for this coverage section. If the Company recovers any such **Defense Costs** paid, the amount of such **Defense Costs** less all costs incurred by the Company to obtain such recovery shall be reinstated to the applicable Limit of Liability set forth in Item 3 of the Declarations for this coverage section.

Notwithstanding paragraph (c) above, with respect to any **Claim** reported pursuant to Subsection 11, Reporting and Notice, of this coverage section, the **Insureds** may settle a **Claim** (inclusive of **Defense Costs**) without the Company's prior consent if the amount of such settlement does not exceed the amount of the applicable Retention. However, the Company shall not be liable for any settlement or **Defense Costs** in excess of the amount of the applicable Retention to which it has not consented to in writing. The **Insureds** shall submit to the Company all requested information with respect to any **Claim** settled pursuant to this paragraph upon either the underwriting of a renewal of this coverage section or upon expiration of this coverage section, whichever first occurs.

(9)   **AMEND OTHER INSURANCE**

Subsection 14. Other Insurance, of this coverage section is amended as follows:

(A)   The reference to "valid insurance" in the first sentence of this Subsection 14 is replaced with "valid and collectible insurance".

(B)   The following sentence is added at the end of this Subsection 14 as a separate paragraph:

In addition to, and not in limitation of, the above paragraph, if any **Loss** under this coverage section is insured under any other valid and collectible pollution liability or environmental liability, including any general liability, insurance policy(ies) subject to the same terms, conditions and provisions as the insurance provided by this coverage section, then this coverage section shall cover its share of such **Loss**, subject to its limitations, conditions, provisions and other terms, in an amount equal to the proportions that the then-available limit of liability under this coverage section bears to the aggregate of all limits of liability of all insurance covering such **Loss**, whether such other policy(ies) is stated to be primary, contributory, excess, contingent or otherwise, unless such other policy(ies) is written only as specific excess insurance over the Limits of Liability provided in this coverage section.

(10)   **INDEMNIFICATION AND SUBROGATION**

Solely with respect to this coverage section, Subsection 7. Subrogation, of the General Terms and Conditions Section of this policy is deemed deleted and replaced with the following:

Indemnification And Subrogation

This policy has been issued to the **Parent Organization** with the understanding and agreement that each **Organization** agrees to fulfill its indemnification obligations to the fullest extent permitted by: (i) any statutory or common law, or (ii) any contract or agreement providing an indemnification obligation exceeding any such statutory or common law, to any **Insured Person**. If the Company pays as **Loss** any indemnification owed to any **Insured Person** by any **Organization**, the Company does not waive or compromise any of its rights to recover such **Loss** from such **Organization**.

In the event of any payment of **Loss** under this policy, the Company shall be subrogated to the extent of such payment of **Loss** to all of the **Insureds'** rights of recovery, including any such right to indemnification from any **Organization**, other insurance carrier or other source. As a condition precedent to the Company's payment of any **Loss** under this policy, the **Insureds'** agree to execute all papers reasonably required and take all reasonable actions to secure and preserve the Company's rights, including the execution of such documents necessary to enable the Company effectively to bring suit or otherwise pursue subrogation rights in the name of the **Insureds**, including any action against any **Organization** for indemnification.

(11)  **CANCELLATION/EXTENDED REPORTING TIME PERIOD LIBERALIZATION**

In the event that any time period relating to notice of cancellation or extended reporting period election provided under this coverage section is less than any such time period required by applicable state law, the Company shall apply the applicable state law.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio Fiduciary Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019                  Company:  Federal Insurance Company

Endorsement No. 5

To be attached to and
form a part of Policy No. 8153-1429

Issued to:  AKORN INC

---

### ILLINOIS AMENDATORY ENDORSEMENT
### TO THE FIDUCIARY LIABILITY COVERAGE SECTION

In consideration of the premium charged, it is agreed that:

1.      The definition of "Defense Costs" set forth in Subsection 3. Definitions of the Fiduciary Liability
        Coverage Section is amended to add the following at the end of such definition:

        "Defense Costs do not include remuneration, salaries, wages, fees, expenses, overhead, or benefit
        expenses or other fees or charges of the Company".

2.      The definition of "Loss" set forth in Subsection 3. Definitions of the Fiduciary Liability Coverage
        Section is amended so that the parenthetical phrase in the first paragraph of such definition reads as
        follows:

        "(including punitive or exemplary damages, or the multiple portion of any multiplied damage award, if
        and to the extent such damages are insurable under the law of the jurisdiction most favorable to the
        insurability of such damages provided such jurisdiction has a substantial relationship to the relevant
        **Insureds**, to the Company, or to the **Claim** giving rise to the damages; provided further, however,
        that under Illinois law punitive damages are insurable only if such damages are based on vicarious
        liability for another's acts or omissions)".

3.      The definition of "Loss" in Subsection 3. Definitions of the Fiduciary Liability Coverage Section is
        further amended by deleting the reference to pre-judgment or post-judgment interest.

4.      Subsection 9. Extended Reporting Period of the Fiduciary Liability Coverage Section is amended by
        deleting the first sentence thereof and replacing it with the following:

        "If the Company or the Parent Organization terminate or do not renew this coverage section, the
        Parent Organization and the Insureds shall have the right, upon payment of the additional premium
        set forth in Item 6(B) of the Declarations for this coverage section, to an extension of the coverage
        granted by this coverage section for Claims that are (i) first made during the period set forth in Item
        6(A) of the Declarations for this coverage section (the "Extended Reporting Period") following the
        effective date of termination or non-renewal, and (ii) reported to the Company in writing within the
        time provided in Subsection 11(a) of this coverage section, but only to the extent such Claims are for
        Wrongful Acts committed, attempted, or allegedly committed or attempted before the earlier of the
        effective date of termination or non-renewal or the date of the first merger, consolidation or acquisition
        event described in Subsection 16 below.  Such Extended Reporting Period shall be for a period of

one (1) year or such other time period as agreed upon by the Company and the Parent Organization and the Insureds."

5.      Subsection 9. Extended Reporting Period of the Fiduciary Liability Coverage Section is further amended by adding the following at the end of such Subsection:

"An Extended Reporting Period will not take effect until the premium for the Extended Reporting Period coverage is paid promptly when due.  For the purposes of this Subsection 9, the policy shall not be deemed issued until the initial premium for the policy is paid.  In the event that such premium is not paid, the Parent Organization and the Insured shall have no right to purchase such extension of coverage."

6.      Subsection 14. Other Insurance of the Fiduciary Liability Coverage Section is amended to read as follows:

"If any Loss under this coverage section is insured under any other valid insurance policy (ies) subject to the same terms, conditions and provisions as the insurance provided by this coverage section, prior or current, then this coverage section shall cover its share of such Loss, subject to its limitations, conditions, provisions and other terms, in an amount equal to the proportion that the then-available Limit(s) of Liability provided in this coverage section bears to the aggregate of all limits of liability of all insurance covering such Loss, whether such other policy(ies) is stated to be primary, contributory, excess, contingent or otherwise, unless such other policy(ies) is written only as specific excess insurance over the Limit(s) of Liability provided in this coverage section.  If any Loss under this coverage section is insured under any valid insurance policy(ies) other than as described above, then this coverage section shall cover such Loss, subject to its limitations, conditions, provisions and other terms, only to the extent that the amount of such Loss is in excess of the amount of such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limit(s) of Liability provided in this coverage section."

The policy is deemed to be amended to the extent necessary to effect the purposes of this Amendatory Endorsement.

The regulatory requirements set forth in this Amendatory Endorsement shall supersede and take precedence over any provisions of the policy or any endorsement to the policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such policy or endorsement provisions comply with the applicable insurance laws of the state of Illinois.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio Fiduciary Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019               Company: Federal Insurance Company

                                                  Endorsement No. 6

                                                  To be attached to and
                                                  form a part of Policy No. 8153-1429

Issued to: AKORN INC

---

AMEND SUBSECTION 20 ENDORSEMENT

In consideration of the premium charged, it is agreed that the second paragraph of Subsection 20.
Representations and Severability of this coverage section is amended to read in its entirety as follows:

In the event that any of the statements, representations or information in the **Application** are not true and
accurate, this coverage section shall be void with respect to (i) any **Insured Person** who knew as of the
effective date of the **Application** the facts that were not truthfully and accurately disclosed (whether or
not the **Insured Person** knew of such untruthful disclosure in the **Application**), (ii) any **Organization** or
**Plan** to which knowledge of such facts is imputed, and (iii) any **Organization** to the extent it indemnifies
an **Insured Person** who had knowledge of such facts, whether or not knowledge of such facts is also
imputed to that **Organization**.  For purposes of the preceding sentence:

(a)       the knowledge of any **Insured Person** who is a past, present or future chief financial officer, in-
          house general counsel, chief executive officer, president or chairperson of any **Organization**
          shall be imputed to such **Organization** and its **Subsidiaries** and their respective **Plans**;

(b)       the knowledge of the person(s) who signed the **Application** for this coverage section shall be
          imputed to all **Organizations**, **Subsidiaries**, and **Plans**; and

(c)       except as provided in (a) above, the knowledge of an **Insured Person** shall not be imputed to
          any other **Insured**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of
coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio Fiduciary Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019          Company:  Federal Insurance Company

Endorsement No. 7

To be attached to and
form a part of Policy No. 8153-1429

Issued to:  AKORN INC

---

AMEND CHANGES IN EXPOSURE ACQUISITION/CREATION OF ANOTHER ORGANIZATION ENDORSEMENT

In consideration of the premium charged, it is agreed that the second full paragraph of Subsection 15 Changes in Exposure, Acquisition/Creation of Another Organization, of this coverage section is amended to read in its entirety as follows:

> If the total assets of any such acquired organization or new **Subsidiary** exceed twenty percent (20%) of the total assets of the **Parent Organization** (as reflected in the most recent audited consolidated financial statements of such organization and the **Parent Organization**, respectively, as of the date of such acquisition or creation), the **Parent Organization** shall give written notice of such acquisition or creation to the Company as soon as practicable, but in no event later than sixty (60) days after the date of such acquisition or creation, together with such other information as the Company may require and shall pay any reasonable additional premium required by the Company.  If the **Parent Organization** fails to give such notice within the time specified in the preceding sentence, or fails to pay the additional premium required by the Company, coverage for such acquired or created organization and its **Insureds** shall terminate with respect to **Claims** first made more than sixty (60) days after such acquisition or creation.  Coverage for any acquired or created organization described in this paragraph, and for the **Insureds** of such organization, shall be subject to such additional or different terms, conditions and limitations of coverage as the Company in its sole discretion may require.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

# CHUBB®

**Chubb Group of Insurance Companies**
202B Hall's Mill Road
Whitehouse Station, NJ
08889

*Executive Protection Portfolio* <sup>SM</sup>
*Crime Coverage Section*

**DECLARATIONS**

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated under the laws of Indiana, herein called the Company

**READ THE ENTIRE POLICY CAREFULLY.**

Item 1. **Parent Organization**:
   AKORN INC
   1925 W FIELD CT SUITE 300
   LAKE FOREST, IL 60045

Item 2. Insuring Clauses:                                          Limits of Liability:

| | | | |
|---|---|---|---|
| (A) | Insuring Clause  1 - Employee Theft Coverage: | | $5,000,000.00 |
| (B) | Insuring Clause  2 - Premises Coverage: | | $5,000,000.00 |
| (C) | Insuring Clause  3 - In Transit Coverage: | | $5,000,000.00 |
| (D) | Insuring Clause  4 - Forgery Coverage: | | $5,000,000.00 |
| (E) | Insuring Clause  5 - Computer Fraud Coverage: | | $5,000,000.00 |
| (F) | Insuring Clause  6 - Funds Transfer Fraud Coverage: | | $5,000,000.00 |
| (G) | Insuring Clause 7 - Money Orders And Counterfeit Fraud Coverage: | | $5,000,000.00 |
| (H) | Insuring Clause  8 - Credit Card Fraud Coverage: | | $5,000,000.00 |
| (I) | Insuring Clause  9 - Client Coverage: | | $5,000,000.00 |
| (J) | Insuring Clause 10 - Expense Coverage: | | $50,000.00 |

Item 3.  Retention:                                          $500,000.00

Item 4.  **Organization**

   Akorn, Inc. and its Subsidiaries

CHUBB®

*Executive Protection Portfolio*<sup>SM</sup>
*Crime Coverage Section*

**In consideration of payment of the premium and subject to the Declarations, the General Terms and Conditions, and the limitations, conditions, provisions and other terms of this coverage section, the Company and the Insureds agree as follows:**

### *Insuring Clauses*

*Employee Theft Coverage Insuring Clause 1*

1. The Company shall pay the **Parent Organization** for direct loss of **Money**, **Securities** or **Property** sustained by an **Insured** resulting from **Theft** or **Forgery** committed by an **Employee** acting alone or in collusion with others.

*Premises Coverage Insuring Clause 2*

2. The Company shall pay the **Parent Organization** for direct loss sustained by an **Organization** resulting from:

   (a) the unlawful taking of **Money** or **Securities** committed by a **Third Party**; or

   (b) the actual destruction or disappearance of **Money** or **Securities**,

   within or from the **Premises** or **Banking Premises**.

   Coverage under this Insuring Clause shall also include:

   (i) direct loss of or damage to **Property** which results from **Robbery** or attempted **Robbery** within the **Premises**;

   (ii) direct loss of or damage to **Property** contained within any locked vault or safe which results from **Safe Burglary** or attempted **Safe Burglary** within the **Premises**;

   (iii) damage to a locked safe, cash drawer, cash box or cash register within the **Premises** by felonious entry or attempted felonious entry or loss by felonious abstraction of such container from within the **Premises**; and

   (iv) damage to the **Premises** which results from **Robbery** or **Safe Burglary**,

   committed by a **Third Party**.

*In Transit Coverage Insuring Clause 3*

3. The Company shall pay the **Parent Organization** for direct loss sustained by an **Organization** resulting from:

   (a) the unlawful taking of **Money** or **Securities** committed by a **Third Party**; or

   (b) the actual destruction or disappearance of **Money** or **Securities**,



*Executive Protection Portfolio*[SM]
*Crime Coverage Section*

while **In Transit** or while temporarily within the home of an **Employee** or an **Organization**.

Coverage under this Insuring Clause shall also include:

(i) direct loss of or damage to **Property** which results from **Robbery** while **In Transit**; and

(ii) direct loss which results from the unlawful taking of **Property** temporarily within the home of an **Employee** or an **Organization**,

committed by a **Third Party**.

---

*Forgery Coverage Insuring Clause 4*

4. The Company shall pay the **Parent Organization** for direct loss sustained by an **Organization** resulting from **Forgery** or alteration of a **Financial Instrument** committed by a **Third Party**, including:

(a) any check or draft made or drawn in the name of such **Organization** payable to a fictitious payee and endorsed in the name of such fictitious payee;

(b) any check or draft procured in a face to face transaction with such **Organization** or with one acting as the agent of such **Organization** by a **Third Party** impersonating another and made or drawn payable to the one impersonated and endorsed by a **Third Party** other than such one impersonated; and

(c) any payroll check, payroll draft or payroll order made or drawn by such **Organization** payable to bearer as well as to a named payee and endorsed by a **Third Party** other than such named payee without the authority of such named payee.

---

*Computer Fraud Coverage Insuring Clause 5*

5. The Company shall pay the **Parent Organization** for direct loss of **Money, Securities** or **Property** sustained by an **Organization** resulting from **Computer Fraud** committed by a **Third Party**.

---

*Funds Transfer Fraud Coverage Insuring Clause 6*

6. The Company shall pay the **Parent Organization** for direct loss of **Money** or **Securities** sustained by an **Organization** resulting from **Funds Transfer Fraud** committed by a **Third Party**.



**Executive Protection Portfolio**<sup>SM</sup>
*Crime Coverage Section*

---

*Money Orders And Counterfeit Currency Fraud Coverage Insuring Clause 7*

7.   The Company shall pay the **Parent Organization** for direct loss sustained by an **Organization** resulting from **Money Orders And Counterfeit Currency Fraud** committed by a **Third Party.**

---

*Credit Card Fraud Coverage Insuring Clause 8*

8.   The Company shall pay the **Parent Organization** for direct loss sustained by an **Organization** resulting from **Credit Card Fraud** committed by a **Third Party**.

---

*Client Coverage Insuring Clause 9*

9.   The Company shall pay the **Parent Organization** for direct loss of **Money**, **Securities** or **Property** sustained by a **Client** resulting from **Theft** or **Forgery** committed by an **Employee** not in collusion with such **Client's** employees.

---

*Expense Coverage Insuring Clause 10*

10.  The Company shall pay the **Parent Organization** for:

(a)   **Investigative Expenses** resulting from any loss covered under Insuring Clauses 1 through 9 incurred by an **Organization**, but only if such covered loss under Insuring Clauses 1 through 9 is in excess of the Retention applicable to such covered loss;

(b)   **Computer Violation Expenses** resulting from any loss covered under Insuring Clause 1, 5 or 9 incurred by an **Organization**, but only if such covered loss under Insuring Clause 1, 5 or 9 is in excess of the Retention applicable to such covered loss.

No Retention shall apply to **Investigative Expenses** or **Computer Violation Expenses** covered under Insuring Clause 10.

---

**Definitions**

11.  When used in this coverage section:

**Banking Premises** means the interior portion of a building occupied by, or the night depository chute or safe maintained by, any bank, trust company or similar financial institution.

**Client** means a customer of an **Organization** to whom such **Organization** provides goods or services under written contract or for a fee.

**Computer Fraud** means the unlawful taking or the fraudulently induced transfer of **Money**, **Securities** or **Property** resulting from a **Computer Violation**.



**Computer System** means a computer and all input, output, processing, storage, off-line media library and communication facilities which are connected to such computer, provided that such computer and facilities are owned and operated or leased and operated by an **Organization**.

**Computer Violation** means the fraudulent:

(a)   entry of **Data** into or deletion of **Data** from a **Computer System**;

(b)   change to **Data** elements or program logic of a **Computer System**, which is kept in machine readable format; or

(c)   introduction of instructions, programmatic or otherwise, which propagate themselves through a **Computer System**,

directed against an **Organization**.

**Computer Violation Expenses** means reasonable expenses, other than an **Organization's** internal corporate costs (such as **Salary**), incurred by an **Organization**, with the Company's prior written consent, to reproduce or duplicate damaged or destroyed **Data** or computer programs.  If such **Data** or computer programs cannot be duplicated from other **Data** or computer programs, then **Computer Violation Expenses** shall also include reasonable costs incurred for computer time, computer programmers, technical experts or consultants to restore such **Data** or computer programs to substantially the same level or operational capability existing immediately before the covered loss.  **Computer Violation Expenses** shall not include expenses incurred by any **Client**.

**Credit Card Fraud** means the **Forgery** or alteration of, on or in any written instrument required in connection with any credit card issued to an **Organization** or, at the request of an **Organization**, to an **Employee**.

**Data** means a representation of information, knowledge, facts, concepts or instructions which are processed and stored in a **Computer System**.

**Discovery** or **Discovered** means an **Executive** or **Insurance Representative** has become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this coverage section has occurred or acts have taken place that may subsequently result in a loss of a type covered by this coverage section.  This includes loss:

(a)   sustained prior to the inception date of any coverage under this coverage section;

(b)   which is within the applicable Retention as set forth in Item 3 of the Declarations for this coverage section; or

(c)   for which the exact amount or details are unknown.

**Discovery** or **Discovered** shall not include knowledge acquired by an **Executive** or **Insurance Representative** acting alone in a **Theft** or **Forgery,** or acting in collusion with any **Employee** in a **Theft** or **Forgery**.

**Employee** means any:



**Executive Protection Portfolio**<sup>SM</sup>

*Crime Coverage Section*

(a)   natural person while in the regular service of an **Organization** in the ordinary course of such **Organization's** business, whom such **Organization** compensates by **Salary** and has the right to govern and direct in the performance of such service, including any part-time, seasonal, leased or temporary employee;

(b)   natural person volunteer while in the regular service of an **Organization** in the ordinary course of such **Organization's** business, whom such **Organization** has the right to govern and direct in the performance of such service;

(c)   **Executive** while performing acts within the scope of the usual duties of an **Employee**; or

(d)   natural person fiduciary, trustee, administrator or other plan official, while in the regular service of an **ERISA Plan**, who is required to be bonded by an **Organization** in connection with such **ERISA Plan** by Title 1 of the Employee Retirement Income Security Act of 1974, as amended.

**ERISA Plan** means any Employee Benefit Plan, Pension Benefit Plan, or Welfare Benefit Plan, defined and required to be bonded under Title 1 of the Employee Retirement Income Security Act of 1974, as amended, which is operated solely by an **Organization** or jointly by an **Organization** and a labor organization for the benefit of **Employees** and which existed on or before the inception of this coverage section or which is created or acquired after the inception of this coverage section.

**Executive** means any natural person specified below:

(a)   duly elected or appointed director, officer, member of the Board of Managers or management committee member of an **Organization** chartered in the United States of America;

(b)   in–house general counsel of an **Organization** chartered in the United States of America;

(c)   equivalent positions of (a) or (b) above in an **Organization** chartered in any other jurisdiction anywhere in the world; or

(d)   a partner of an **Organization** while engaged in the regular service of such **Organization.**

**Financial Instrument** means a check, draft or similar written promise, order or direction to pay a sum certain in **Money** that is made, drawn by or drawn upon an **Organization** or made or drawn by anyone acting as an **Organization's** agent, or that is purported to have been so made or drawn.

**Forgery** means the signing of the name of another natural person or organization, with the intent to deceive, but does not mean a signature that includes, in whole or in part, one's own name, with or without authority, in any capacity for any purpose. Mechanically or electronically produced or reproduced signatures shall be treated the same as hand-written signatures.

**Funds Transfer Fraud** means fraudulent electronic, telegraphic, cable, teletype, facsimile, telephone or written instructions (other than **Forgery**), purportedly issued by an



*Executive Protection Portfolio*<sup>SM</sup>
*Crime Coverage Section*

**Organization**, and issued to a financial institution directing such institution to transfer, pay or deliver **Money** or **Securities** from any account maintained by such **Organization** at such institution, without such **Organization's** knowledge or consent.

**Insurance Representative** means any **Employee**, including a risk manager, designated to represent an **Insured** for the purpose of effecting and maintaining insurance.

**Insured** means any **Organization** and, for the purposes of Insuring Clause 1, any **ERISA Plan** or **Non-ERISA Plan**.

**In Transit** means being conveyed outside the **Premises**, from one person or place to another, by an **Organization** within the custody of:

(a)     an **Employee**; or

(b)     a person duly authorized by such **Organization** to have custody of such **Money**, **Securities** or **Property**.

Such conveyance begins immediately upon receipt of **Money**, **Securities** or **Property** by the person(s) described in (a) or (b) above from such **Organization**, and ceases immediately upon delivery to the designated recipient or its agent.

**Investigative Expenses** means reasonable expenses, other than an **Organization's** internal corporate costs (such as **Salary**), incurred by an **Organization**, with the Company's prior written consent, to establish the existence and amount of a covered loss. **Investigative Expenses** shall not include expenses incurred by any **Client**.

**Money** means currency, coin, bank notes and bullion.

**Money Orders And Counterfeit Currency Fraud** means the good faith acceptance by an **Organization**:

(a)     in exchange for merchandise, **Money** or services, of any post office or express money order, issued or purporting to have been issued by any post office or express company, if such money order is not paid upon presentation; or

(b)     in the regular course of business, of counterfeit United States of America or Canadian paper currency.

**Non-ERISA Plan** means any employee benefit plan not subject to Title 1 of the Employee Retirement Income Security Act of 1974, as amended, which is operated solely by an **Organization** or jointly by an **Organization** and a labor organization for the benefit of **Employees** and which existed on or before the inception of this coverage section or which is created or acquired after the inception of this coverage section.

**Organization** means any organization designated in Item 4 of the Declarations for this coverage section.

**Premises** means the interior portion of a building occupied by an **Organization** in conducting its business.

**Property** means tangible property other than **Money** or **Securities**.



**Executive Protection Portfolio**<sup>SM</sup>
*Crime Coverage Section*

**Robbery** means the unlawful taking of **Money**, **Securities** or **Property** from the custody of an **Employee**, or other person (except a person acting as a watchman, porter or janitor) duly authorized by an **Organization** to have custody of such **Money**, **Securites** or **Property**, by violence or threat of violence, committed in the presence and cognizance of such **Employee** or other person.

**Safe Burglary** means the unlawful taking of **Money**, **Securities** or **Property**, by forcible or violent entry evidenced by visible marks, from a locked vault or safe located within the **Premises**.

**Salary** means compensation an **Organization** pays an **Employee**, including bonus, commission, incentive payments, and the cost of health, welfare and pension benefits.

**Securities** means negotiable and non-negotiable instruments or contracts representing either **Money** or **Property**.

**Subsidiary**, either in the singular or plural, means any organization while more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for election of or to appoint directors, members of the Board of Managers, or management committee members of such organization are owned or controlled, directly or indirectly, in any combination, by one or more **Organizations**.

**Theft** means the unlawful taking of **Money**, **Securities** or **Property** to the deprivation of:

(a)     an **Insured**, solely for the purposes of Insuring Clause 1; or

(b)     a **Client**, solely for the purposes of Insuring Clause 9.

**Third Party** means a natural person other than:

(a)     an **Employee**; or

(b)     a natural person acting in collusion with an **Employee**.

---

### Exclusions

12.     No coverage will be available under this coverage section for:

(a)     loss resulting directly or indirectly from any authorized or unauthorized trading of **Money**, **Securities** or **Property**, whether or not in the name of an **Insured** and whether or not in a genuine or fictitious account; provided that this Exclusion 12(a) shall not apply to otherwise covered loss under Insuring Clause 1 which results in improper financial gain to an **Employee** (such loss shall mean only the amount of improper financial gain to such **Employee**, and shall not include **Salary**, commissions, fees or other compensation, including but not limited to promotions and raises associated with employment, paid by the **Insured** to such **Employee**);

(b)     loss of any trade secret, confidential processing method or other confidential information of any kind;

(c)     loss due to **Theft** or **Forgery** committed by a partner of an **Organization**, whether acting alone or in collusion with others; provided that, if such **Theft** or **Forgery** would

CHUBB®

*Executive Protection Portfolio*<sup>SM</sup>
*Crime Coverage Section*

otherwise be covered under Insuring Clause 1 or 9, this Exclusion 12(c) shall not apply to the extent coverage under this coverage section is excess of the amount of such partner's percentage ownership of such **Organization**, on the day immediately preceding the date of **Discovery**, multiplied by such **Organization's** total assets as reflected in such **Organization's** most recent audited financial statements;

(d)     loss or damage due to declared or undeclared war, civil war, insurrection, rebellion, revolution, military, naval or usurped power, governmental intervention, expropriation or nationalization, or any act or condition incident to any of the foregoing;

(e)     loss or damage due to nuclear reaction, nuclear radiation or radioactive contamination, or any act or condition incident to any of the foregoing;

(f)     loss of income not realized as the result of a covered loss;

(g)     indirect or consequential loss or damage of any kind; provided that this Exclusion 12(g) shall not apply to otherwise covered **Investigative Expenses** and **Computer Violation Expenses** under Insuring Clause 10;

(h)     fees, costs or expenses incurred or paid:

    (i)     as a result of the reconstitution of **Data** if an **Organization** knowingly used illegal copies of programs;

    (ii)     to render the **Data** usable by replacement processing equipment;

    (iii)     to design, update or improve software or programs or to perfect their operation or performance; or

    (iv)     as a result of an alteration in **Data** held on magnetic media due to the effect of magnetic fields, their incorrect use or the obsolescence of the computer or its facilities;

(i)     fees, costs or expenses incurred or paid in defending or prosecuting any legal proceeding or claim; provided that this Exclusion 12(i) shall not apply to the coverage provided under Subsection 22 Legal Expenses Extension;

(j)     loss or damage due to fire; provided that this Exclusion 12(j) shall not apply to:

    (i)     loss of **Money** or **Securities**; or

    (ii)     damage to any safe or vault caused by the application of fire thereto for the purposes of **Safe Burglary**;

(k)     loss due to an **Insured** knowingly having given or surrendered **Money**, **Securities** or **Property** in any exchange or purchase with a **Third Party**; provided that this Exclusion 12(k) shall not apply to otherwise covered loss under Insuring Clause 7 or otherwise covered loss of **Property** under Insuring Clause 5;

(l)     loss sustained by one **Insured** to the advantage of any other **Insured**;

CHUBB®

*Executive Protection Portfolio*<sup>SM</sup>
*Crime Coverage Section*

(m)   loss of or damage to **Money**, **Securities** or **Property** while in the custody of any bank, trust company, similar recognized place of safe deposit, armored motor vehicle company or any person who is duly authorized by an **Organization** to have custody of such **Money**, **Securities** or **Property**; provided that this Exclusion 12(m) shall not apply to the extent that coverage under this coverage section is excess of the amount recovered or received by such **Organization** under:

(i)   such **Organization's** contract, if any, with, or insurance carried by, any of the foregoing; or

(ii)   any other insurance or indemnity in force which would cover the loss in whole or in part; or

(n)   loss or damage due to **Theft**, **Forgery**, **Computer Fraud**, **Funds Transfer Fraud**, **Money Orders And Counterfeit Currency Fraud**, **Credit Card Fraud** or other fraudulent, dishonest or criminal act (other than **Robbery** or **Safe Burglary**) committed by any authorized representative of an **Insured**, whether acting alone or in collusion with others; provided that this Exclusion 12(n) shall not apply to otherwise covered loss under Insuring Clause 1 or 9 resulting from **Theft** or **Forgery** committed by an **Employee** acting in collusion with such authorized representative.

13.   No coverage will be available under Insuring Clause 1 or 9 for:

(a)   loss caused by any agent, broker, factor, commission merchant, consignee, contractor, independent contractor, subcontractor or other similar representative; or

(b)   loss caused by an **Employee** which is sustained by an **Insured**:

(i)   after an **Executive** or **Insurance Representative** becomes aware of a **Theft**, **Forgery** or other fraudulent, dishonest or criminal act committed by such **Employee** while employed with or in the service of an **Insured**;

(ii)   after an **Executive** or **Insurance Representative** becomes aware of a **Theft**, **Forgery** or other fraudulent, dishonest or criminal act, involving **Money**, **Securities** or other property valued at twenty-five thousand dollars ($25,000) or more, committed by such **Employee** prior to employment or service with an **Insured**; or

(iii)   more than sixty (60) days following the termination of such **Employee**.

14.   No coverage will be available under Insuring Clause 2 or 3 for:

(a)   loss or damage due to **Forgery**, **Computer Fraud**, **Funds Transfer Fraud**, **Money Orders And Counterfeit Currency Fraud** or **Credit Card Fraud**; or

(b)   loss of or damage to **Money**, **Securities** or **Property** while in the mail or in the custody of a carrier for hire other than an armored motor vehicle company.

15.   No coverage will be available under Insuring Clause 2, 3, 5, or 6 for loss or damage as a result of a kidnap, ransom or other extortion payment (as distinct from **Robbery**)

**CHUBB**®

*Executive Protection Portfolio*<sup>SM</sup>
*Crime Coverage Section*

surrendered to any person as a result of a threat to do bodily harm to any person or a threat to do damage to any property.

16.   No coverage will be available under Insuring Clause 4 for loss due to **Forgery** or alteration of any registered or coupon obligation issued or purported to have been issued by an **Insured**, or any coupon whether attached or detached.

17    No coverage will be available under Insuring Clause 5 for loss caused by a **Third Party** which is sustained by an **Organization** sixty (60) days or more after an **Organization** becomes aware of a **Computer Fraud** or other fraudulent, dishonest or criminal act committed by such **Third Party**.

18.   No coverage will be available under Insuring Clause 8 for loss caused by any forgery or alteration of, on or in any written instrument; provided that this Exclusion 18 shall not apply if:

    (a)   the provisions, conditions and other terms under which the involved credit card was issued were fully complied with; and

    (b)   an **Organization** is legally liable to the issuer of such credit card for such loss.

19.   No coverage will be available under this coverage section for:

    (a)   loss unless sustained by an **Insured** prior to the termination of this coverage section as to such **Insured**, and **Discovered** and written notice thereof is given to the Company within sixty (60) days following such termination;

    (b)   loss unless sustained prior to the termination of any Insuring Clause or any particular coverage offered under any Insuring Clause, and **Discovered** and written notice thereof is given to the Company within sixty (60) days following such termination; or

    (c)   loss unless sustained prior to the termination of this coverage section in its entirety, and **Discovered** and written notice thereof is given to the Company within sixty (60) days following such termination;

provided that in no event will coverage be available under this coverage section for such loss if such loss is covered under any renewal or replacement of this coverage section or any Insuring Clause or any particular coverage offered under any Insuring Clause.

*Ownership*

20.   Solely for the purposes of Insuring Clauses 1 through 8, the Company's liability under this coverage section will apply only to **Money**, **Securities** or **Property** owned by the **Organization** or for which the **Organization** is legally liable, or held by the **Organization** in any capacity whether or not the **Organization** is liable; provided that:

    (a)   the Company's liability will not apply to damage to the **Premises** unless the **Organization** is the owner of such **Premises** or is legally liable for such damage; or



*Executive Protection Portfolio<sup>SM</sup>*
*Crime Coverage Section*

(b)   with respect to Insuring Clause 1, the Company's liability will not apply to **Money**, **Securities** or **Property** of a **Client**.

Solely for the purposes of Insuring Clause 9, the Company's liability under this coverage section will apply only to **Money**, **Securities** or **Property** owned by a **Client**, which is held by the **Organization** in any capacity or for which the **Organization** is legally liable.

## ERISA Plan

21.   Solely with respect to loss sustained by an **ERISA Plan**, payment by the Company for covered loss to the **Parent Organization** shall be held by such **Parent Organization** for the use and benefit of the **ERISA Plan** sustaining such loss.

Solely with respect to loss sustained by an **ERISA Plan**:

(a)   Insuring Clause 1 is amended to read in its entirety as follows:

The Company shall pay the **Parent Organization** for direct loss of **Money**, **Securities** or **Property** sustained by an **ERISA Plan** resulting from a fraudulent or dishonest act committed by an **Employee** acting alone or in collusion with others.

(b)   The words "sixty (60) days" are deleted from Exclusion 19 of this coverage section, wherever they appear in such Exclusion, and the words "one (1) year" are substituted in place thereof.

No Retention shall apply to loss sustained by an **ERISA Plan** covered under this coverage section.

## Legal Expenses Extension

22.   In addition to the Limits of Liability set forth in the Declarations for this coverage section, the Company shall pay the **Parent Organization** for:

(a)   As a result of loss covered under Insuring Clause 4, reasonable court costs and attorneys' fees incurred and paid, with the Company's prior written consent, in defending an **Organization** or an **Organization's** bank in any legal proceeding brought against it to enforce payment of a **Financial Instrument**;

(b)   As a result of loss covered under Insuring Clause 8, reasonable court costs and attorneys' fees incurred and paid, with the Company's prior written consent, in defending an **Organization** in any legal proceeding brought against it to enforce payment of a written instrument, required in connection with any credit card.

## Changes in Exposure

23.   If before or during the **Policy Period** any **Organization**:

(a)   acquires securities or voting rights in another organization or creates another organization, which as a result of such acquisition or creation becomes a **Subsidiary**; or

**Executive Protection Portfolio***SM*
*Crime Coverage Section*

force at the time such prior loss was sustained, or the applicable Limit of Liability as set forth in the Declarations for this coverage section.

*Limits of Liability and Retention*

25.  Subject to Subsection 24 Liability for Prior Losses, the Company shall only be liable for loss sustained by an **Insured** during the **Policy Period**.

The Company's maximum liability for each loss shall not exceed the Limit of Liability applicable to such loss, as set forth in Item 2 of the Declarations for this coverage section, regardless of the number of **Insureds** sustaining such loss.

The Company's maximum liability shall not exceed the Limit of Liability:

(a)  Applicable to Insuring Clause 1 as set forth in Item 2(A) of the Declarations for this coverage section: for all loss resulting from any act or any series of acts committed by the same **Employee** or in which the same **Employee** is concerned or implicated, regardless of whether such act or series of acts was committed before or during the **Policy Period**;

(b)  Applicable to Insuring Clause 2 as set forth in Item 2(B) of the Declarations for this coverage section: for all loss resulting from any act, casualty or event, any series of related acts, casualties or events, or any act or series of acts committed by the same **Third Party** or in which the same **Third Party** is concerned or implicated, regardless of whether such act, casualty or event or series of acts, casualties or events was committed or occurred before or during the **Policy Period**;

(c)  Applicable to Insuring Clause 3 as set forth in Item 2(C) of the Declarations for this coverage section: for all loss resulting from any act, casualty or event, any series of related acts, casualties or events, or any act or series of acts committed by the same **Third Party** or in which the same **Third Party** is concerned or implicated, regardless of whether such act, casualty or event or series of acts, casualties or events was committed or occurred before or during the **Policy Period**;

(d)  Applicable to Insuring Clause 4 as set forth in Item 2(D) of the Declarations for this coverage section: for all loss resulting from any act or series of acts committed by the same **Third Party** or in which the same **Third Party** is concerned or implicated, regardless of whether such act or series of acts was committed before or during the **Policy Period**;

(e)  Applicable to Insuring Clause 5 as set forth in Item 2(E) of the Declarations for this coverage section: for all loss resulting from any act, casualty or event, any series of related acts, casualties or events, or any act or series of acts committed by the same **Third Party** or in which the same **Third Party** is concerned or implicated, regardless of whether such act, casualty or event or series of acts, casualties or events was committed or occurred before or during the **Policy Period**;

(f)  Applicable to Insuring Clause 6 as set forth in Item 2(F) of the Declarations for this coverage section: for all loss resulting from any act, casualty or event, any series of related acts, casualties or events, or any act or series of acts committed by the same **Third Party** or in which the same **Third Party** is concerned or implicated, regardless

 **CHUBB®**

*Executive Protection Portfolio*<sup>SM</sup>
*Crime Coverage Section*

of whether such act, casualty or event or series of acts, casualties or events was committed or occurred before or during the **Policy Period**;

(g)     Applicable to Insuring Clause 7 as set forth in Item 2(G) of the Declarations for this coverage section: for all loss resulting from any act, casualty or event, any series of related acts, casualties or events, or any act or series of acts committed by the same **Third Party** or in which the same **Third Party** is concerned or implicated, regardless of whether such act, casualty or event or series of acts, casualties or events was committed or occurred before or during the **Policy Period**;

(h)     Applicable to Insuring Clause 8 as set forth in Item 2(H) of the Declarations for this coverage section: for all loss resulting from any act, casualty or event, any series of related acts, casualties or events, or any act or series of acts committed by the same **Third Party** or in which the same **Third Party** is concerned or implicated, regardless of whether such act, casualty or event or series of acts, casualties or events was committed or occurred before or during the **Policy Period**;

(i)     Applicable to Insuring Clause 9 as set forth in Item 2(I) of the Declarations for this coverage section: for all loss resulting from any act or any series of acts committed by the same **Employee** or in which the same **Employee** is concerned or implicated, regardless of whether such act or series of acts was committed before or during the **Policy Period**; or

(j)     Applicable to Insuring Clause 10 as set forth in Item 2(J) of the Declarations for this coverage section: for all **Investigative Expenses** or **Computer Violation Expenses** resulting from any applicable covered loss.

If a loss is covered under more than one Insuring Clause, the maximum amount payable under this coverage section shall not exceed the largest applicable Limit of Liability of any such Insuring Clause.

The Company's liability under this coverage section shall apply only to that part of each loss which is in excess of the applicable Retention set forth in Item 3 of the Declarations for this coverage section.

### Non-Accumulation of Liability

26.     When there is more than one **Insured**, the maximum liability of the Company for loss sustained by any or all **Insureds** shall not exceed the amount for which the Company would be liable if all loss was sustained by any one **Insured**.

Regardless of the number of years this coverage remains in effect and the total premium amounts due or paid, whether under this coverage section, any prior bond or policy, or any renewal or replacement of this coverage section, the liability of the Company with respect to any loss shall not be cumulative from year to year or from policy period to policy period.

### Proof of Loss and Legal Proceedings

27.     Knowledge possessed by any **Insured** or **Discovery** shall be deemed knowledge possessed by or discovery by all **Insureds**.

**CHUBB®**

*Executive Protection Portfolio<sup>SM</sup>*
*Crime Coverage Section*

It is a condition precedent to coverage hereunder that, upon **Discovery**, the **Parent Organization** will:

(a)   give written notice to the Company at the earliest practicable moment, and in no event later than ninety (90) days after such **Discovery**;

(b)   furnish affirmative proof of loss with full particulars to the Company at the earliest practicable moment**,** and in no event later than six (6) months after such **Discovery**;

(c)   submit to examination under oath at the Company's request;

(d)   produce all pertinent records at such reasonable times and places as the Company shall designate; and

(e)   provide full cooperation with the Company in all matters pertaining to a loss or claim.

The **Parent Organization** may not offer, as a part of any proof of loss, any computation or comparison which involves in any manner a profit and loss computation or comparison. The **Parent Organization** may offer a comparison between an **Organization's** or **Client's** inventory records and actual physical count of its inventory to prove the amount of loss, only where an **Organization** or **Client** establishes wholly apart from such comparison that it has sustained a covered loss caused by an identified **Employee**.

No **Insured** shall institute legal proceedings against the Company:

(a)   after two (2) years immediately following any **Discovery**; or

(b)   to recover a judgment or settlement against it or its bank resulting from **Forgery**, **Credit Card Fraud** or related legal expenses as set forth in Subsection 22 Legal Expenses Extension, after two (2) years immediately following the date upon which such judgment shall become final or settlement was entered.

### Valuation and Foreign Currency

28.   The Company shall pay:

(a)   the least of:

   (i)   the actual market value of lost, damaged or destroyed **Securities** at the closing price of such **Securities** on the business day immediately preceding the day on which a loss is **Discovered**;

   (ii)   the cost of replacing **Securities**; or

   (iii)   the cost to post a Lost Instrument Bond;

(b)   the cost of blank books, pages or tapes or other blank materials to replace lost or damaged books of account or other records;

(c)   the least of:

**CHUBB®**

*Executive Protection Portfolio*[SM]
*Crime Coverage Section*

    (i)    the actual cash value of **Property**; or

    (ii)    the cost to repair or replace **Property**, other than precious metals, with that of similar quality and value,

at the time the **Parent Organization** complies with Subsection 27 Proof of Loss and Legal Proceedings, regarding the furnishing of proof of loss;

(d)    the United States of America dollar value of foreign currency based on the rate of exchange published in *The Wall Street Journal* on the day loss involving foreign currency is **Discovered**; or

(e)    the United States of America dollar value of any precious metal based on the amount published in *The Wall Street Journal* Cash Prices, Precious Metals, on the day loss involving such precious metal is **Discovered**.

---

### Recoveries

29.    Recoveries for any loss covered under this coverage section, whether effected by the Company or by an **Insured**, less the cost of recovery, shall be distributed as follows:

(a)    first, to an **Insured** for the amount of such loss, otherwise covered, in excess of the applicable Limits of Liability;

(b)    second, to the Company for the amount of such loss paid to an **Insured** as covered loss;

(c)    third, to an **Insured** for the Retention applicable to such loss;

(d)    fourth, to an **Insured** for the amount of such loss not covered under this coverage section.

Recovery from reinsurance or indemnity of the Company shall not be deemed a recovery hereunder.

---

### Other Insurance

30.    If any **Insured** or any other party in interest in any loss covered by this coverage section has any bond, indemnity or insurance which would cover such loss in whole or in part in the absence of this coverage section, then this coverage section shall be null and void to the extent of the amount recoverable or received under such bond, indemnity, or insurance; provided that this coverage section shall cover such loss, subject to its limitations, conditions, provisions and other terms, to the extent of the amount of such loss in excess of the amount recoverable or received under such bond, indemnity or insurance.

**ENDORSEMENT**

Coverage Section: Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019                    Company:  Federal Insurance Company

                                                       Endorsement No. 1

                                                       To be attached to and
                                                       form a part of Policy No. 8153-1429

Issued to:  AKORN INC

---

TELEPHONE FRAUD COVERAGE ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     This coverage section is amended to include the following insuring clause:

        (11) Telephone Fraud Coverage

        The Company shall pay the **Parent Organization** for **Telephone Fraud Financial Loss** sustained by an **Insured** resulting from **Remote Access Fraud**.

(2)     Item 2 of the Declarations for this coverage section is amended to include the following:

        Item 2.  Insuring Clauses:                                    Limits of Liability:

            (K)      Insuring Clause 11 - Telephone Fraud Coverage:      $1,000,000.00

(3)     Section 11, Definitions, of this coverage section is amended to include the following terms:

        (a)     **Calling Card** means a calling card access number or telephone credit card access number issued by a telecommunications company which gives the **Calling Card** customer access to and use of telecommunications services.

        (b)     **Remote Access Fraud** means the fraudulent infiltration and manipulation of the **Insured's Telephone System** from a remote location to gain access to outbound long distance telephone service.

        (c)     **Telephone Fraud Financial Loss** means toll and line charges the **Insured** is responsible for solely as a result of **Remote Access Fraud**.

        (d)     **Telephone System(s)** means PBX, CBX, Merlin, remote access (including DISA), and all related peripheral equipment or similar systems owned or leased by the **Insured** for purposes of voice based telecommunications.

(4)     No coverage will be available under Insuring Clause (11), Telephone Fraud Coverage, for:

    (a)     loss or damage of **Money**, **Securities** or **Property** as a result of an extortion payment surrendered to any person as a result of a threat to do damage to the **Premises** or **Telephone System**; or

    (b)     loss caused by any use of a **Calling Card**.

(5)     Subsection 27, Proof of Loss and Legal Proceedings, of this coverage section is amended to include the following:

With respect to Insuring Clause (11), it is a condition precedent to coverage hereunder that upon **Discovery**, the **Parent Organization** will give written notice to the Company at the earliest practicable moment, and in no event later than sixty (60) days after the billing cut-off date shown in the first telephone service charge bill from the telephone carrier in which **Remote Access Fraud** is documented. However, coverage shall not apply to that portion of loss sustained beginning thirty (30) days from the billing cut-off date shown in the first telephone service charge bill from the telephone carrier in which **Remote Access Fraud** is documented. Upon actual knowledge of **Remote Access Fraud** the **Insured** shall take all reasonable steps to curtail the unauthorized use of the **Telephone System(s)** and otherwise mitigate the loss by notifying the installer(s) of the **Telephone System(s)** and the affected telephone carriers.

Within four (4) months after such **Discovery** the **Parent Organization** shall furnish to the Company affirmative proof of loss with full particulars. Legal proceedings for recovery of any loss hereunder shall not be brought after the expiration of two years from the discovery of such loss.

At the Company's request, the **Insured** shall submit to examination by the Company, subscribe the same under oath if required, and produce for the Company's examination all pertinent records at such reasonable times and places as the Company shall designate, and shall cooperate with the Company in all matters pertaining to any loss or claim.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019                    Company:  Federal Insurance Company

Endorsement No. 2

To be attached to and
form a part of Policy No. 8153-1429

Issued to:  AKORN INC

---

AMEND DEFINITION OF EXECUTIVE ENDORSEMENT

In consideration of the premium charged, it is agreed that subparagraph (a) of the term **Executive** as defined in Subsection 11 Definitions of this coverage section is amended to read in its entirety as follows:

      (a)      duly elected or appointed director, officer, trustee, member of the Board of Managers or management committee member of an **Organization** chartered in the United States of America;

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: September 1, 2019

Federal Insurance Company

Endorsement/Rider No. 3

To be attached to and
form a part of Policy No. 8153-1429

Issued to:  AKORN INC

_____

AMEND DEFINITION OF EMPLOYEE TO INCLUDE NON-COMPENSATED OFFICERS ENDORSEMENT

In consideration of the premium charged, it is agreed that the definition of "**Employee**" as defined in Subsection 11 Definitions of this coverage section is amended to include  "Non-Compensated Officers" (as defined below).

For purposes of this endorsement, the term "Non-Compensated Officers" means non-compensated dues collectors, shop stewards, shop chairpersons, and other directors or trustees acting as members of any committee duly elected or appointed by resolution of the board of directors or trustees to perform specific, as distinguished from general, directorial acts while in the service of an **Organization**.


The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.




_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: September 1, 2019          Federal Insurance Company

Endorsement/Rider No. 4

To be attached to and
form a part of Policy No. 8153-1429

Issued to:  AKORN INC

---

AMEND EMPLOYEE THEFT COVERAGE INSURING CLAUSE ENDORSEMENT

In consideration of the premium charged, it is agreed that Insuring Clause (1), Employee Theft Coverage, of this coverage section is deleted and replaced with the following:

1.     Employee Theft Coverage Insuring Clause 1

The Company shall pay the **Parent Organization** for direct loss of **Money**, **Securities** or **Property** sustained by an **Insured** resulting from **Theft** or **Forgery** committed by an **Employee**, whether identified or not, acting alone or in collusion with others.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: September 1, 2019          Federal Insurance Company

Endorsement/Rider No. 5

To be attached to and
form a part of Policy No. 8153-1429

Issued to:  AKORN INC

_____

AMEND EXCLUSION 12(m) ENDORSEMENT

In consideration of the premium charged, it is agreed that subparagraph (ii) of Exclusion (m), as set forth in Subsection 12, Exclusions, of this coverage section, is deleted and replaced with the following:

      (ii)      any other valid and collectible insurance or indemnity in force which would cover the loss in whole or in part; or

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: September 1, 2019

Federal Insurance Company

Endorsement/Rider No. 6

To be attached to and
form a part of Policy No. 8153-1429

Issued to:  AKORN INC

---

PRIVACY AND DATA BREACH EXCLUSIONS ENDORSEMENT

In consideration of the premium charged, it is agreed that:

1.      Exclusion 12(b) of this coverage section is deleted.

2.      No coverage will be available under this coverage section for:

(i)      loss involving the disclosure of an **Insured's** or another entity or person's confidential or personal information while in the care, custody or control of an **Insured** including, but not limited to, patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any similar type of nonpublic information;

(ii)     loss involving the use of another entity or person's confidential or personal information while in the care, custody or control of an **Insured** including, but not limited to, patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any similar type of nonpublic information; or

(iii)    fees, costs, fines, penalties or any other expenses incurred by an **Insured** which result, directly or indirectly, from the access to or disclosure of another entity or person's confidential or personal information, including but not limited to, patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any similar type of nonpublic information,

provided, however, that the above exclusions 2(i) and 2(ii) shall not apply to loss that is otherwise covered under any Insuring Clause other than Insuring Clause 10, Expense Coverage.

3.      The definition of **Property** in Section 11, Definitions, of this coverage section shall not include any **Insured's** or another entity or person's confidential or personal information

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: September 1, 2019           Federal Insurance Company

                                                    Endorsement/Rider No. 7

                                                    To be attached to and
                                                    form a part of Policy No. 8153-1429

Issued to:  AKORN INC

---

ILLINOIS AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is agreed that:

All references in the policy to the term "spouse" or "domestic partnership" are deemed to include a party to a civil union or domestic partnership.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

14-02-19844 (03/2013)              Page 1

ENDORSEMENT/RIDER

Coverage Section: Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: September 1, 2019

Federal Insurance Company

Endorsement/Rider No. 8

To be attached to and
form a part of Policy No. 8153-1429

Issued to: AKORN INC

SOCIAL ENGINEERING FRAUD COVERAGE ENDORSEMENT

In consideration of the premium charged, it is agreed that solely with respect to the coverage afforded by this endorsement, the following shall apply:

(1) Item 2. and Item 3. of the Declarations of this coverage section are amended to include the following:

Item 2.

| Insuring Clause: | Limit of Liability: |
|---|---|
| Social Engineering Fraud Coverage: | $250,000 |

Item 3.

Retention: $500,000

(2) The following Insuring Clause is added:

Social Engineering Fraud Coverage Insuring Clause

The Company shall pay the **Parent Organization** for loss resulting from an **Organization** having transferred, paid or delivered any **Money** or **Securities** as the direct result of **Social Engineering Fraud** committed by a person purporting to be a **Vendor**, **Client**, or an **Employee** who was authorized by the **Organization** to instruct other **Employees** to transfer **Money** or **Securities**.

(3) Subsection 11, Definitions, is amended to include the following terms:

**Vendor** means any entity or natural person that has provided goods or services to an **Organization** under a legitimate pre-existing arrangement or written agreement. However, **Vendor** does not include any financial institution, asset manager, broker-dealer, armored motor vehicle company, or any similar entity.

**Social Engineering Fraud** means the intentional misleading of an **Employee**, through misrepresentation of a material fact which is relied upon by an **Employee,** believing it be genuine.

(4)    Exclusion 12(k) is deleted.

(5)    Exclusion 12(n) is deleted and replaced with the following:

(n)    loss or damage due to **Theft, Forgery, Computer Fraud, Funds Transfer Fraud, Money Orders And Counterfeit Currency Fraud, Credit Card Fraud, Social Engineering Fraud**, or other fraudulent, dishonest or criminal act (other than **Robbery** or **Safe Burglary**) committed by any authorized representative of an **Insured**, whether acting alone or in collusion with others, provided that this Exclusion 12(n) shall not apply to otherwise covered loss under Insuring Clauses (1), Employee Theft Coverage, or (9), Client Coverage, resulting from **Theft** or **Forgery** committed by an **Employee** acting alone or in collusion with such authorized representative.

(6)    Exclusion 15 is deleted and replaced with the following:

15.    No coverage will be available under Insuring Clause 2, 3, 5, 6 or Social Engineering Fraud Coverage Insuring Clausefor loss or damage as a result of a kidnap, ransom or other extortion payment (as distinct from **Robbery**) surrendered to any person as a result of a threat to do bodily harm to any person or a threat to do damage to any property;

(7)    No coverage will be available under Social Engineering Fraud Coverage Insuring Clause for:

(a)    loss or damage due to **Theft** by an **Employee**, **Forgery**, **Computer Fraud**, **Funds Transfer Fraud**, **Money Orders and Counterfeit Currency Fraud** or **Credit Card Fraud;**

(b)    loss of or damage to **Money** or **Securities** while in the mail or in the custody of any carrier for hire, including but not limited to any armored motor vehicle company;

(c)    loss due to any investment in **Securities**, or ownership in any corporation, partnership, real property, or similar instrument, whether or not such investment is genuine;

(d)    loss due to the failure, malfunction, inadequacy or illegitimacy of any product or service;

(e)    loss due to the failure of any party to perform in whole or in part under any contract;

(f)    loss due to the extension of any loan, credit or similar promise to pay;

(g)    loss due to any gambling, game of chance, lottery or similar game;

(h)    loss of or damage to any **Property;**

(i)    loss due to any party's use of or acceptance of any credit card, debit card or similar instrument, whether or not genuine.

(8)    No coverage will be available under Insuring Clauses 4, 5 and 6 for loss or damage to **Money**, **Securities** or **Property** as a result of **Social Engineering Fraud**.

(9)    For the purposes of this endorsement, Subsection 25. Limits of Liability and Retention is amended by adding the following to the end of the paragraph that begins "The Company's maximum liability shall not exceed the Limit of Liability:":

Applicable to the Social Engineering Fraud Insuring Clause: for all loss or losses resulting from any act, casualty or event, and series of related acts, casualties or events, or any act or series of acts committed by one natural person or entity, or in which the same group of natural persons or entities acting together are implicated, regardless of whether such act, casualty or event or series of acts, casualties or events was committed or occurred before or during the **Policy Period**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement:   September 1, 2019                  Company:   Federal Insurance Company

                                                       Endorsement No. 9

                                                       To be attached to and
                                                       form a part of Policy No. 8153-1429

Issued to:   AKORN INC

---

## ILLINOIS AMENDATORY ENDORSEMENT
## TO THE CRIME COVERAGE SECTION

In consideration of the premium charged, it is agreed that:

1.      Subsection 30. Other Insurance of the Crime Coverage Section is amended to read as follows:

> "If any Insured or any other party in interest in any loss covered by this coverage section has any bond, indemnity or insurance which would cover such loss in whole or part and such bond, indemnity or insurance is subject to the same terms and conditions as this coverage section, then this coverage section shall cover its share of such loss subject to its limitations, conditions, provisions and other terms, in an amount equal to the proportion that the then-available applicable Limit of Liability under this coverage section bears to the aggregate of all limits of liability of all bonds, indemnity, and insurance covering such loss, whether such other bond, indemnity or insurance is stated to be primary, contributory, excess, contingent or otherwise.   If any Insured or any other party in interest in any loss under this coverage section has any bond, indemnity or insurance other than as described above which would cover such loss in whole or in part then this coverage section shall cover such loss, subject to its limitations, conditions, provisions and other terms, only to the extent that the amount of such loss is in excess of the amount of such other insurance whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise.

2.      The policy is deemed amended to the extent necessary to effect the purposes of this Amendatory Endorsement.

The regulatory requirements set forth in this Amendatory Endorsement shall supersede and take precedence over any provisions of the policy or any endorsement to the policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such policy or endorsement provisions comply with the applicable insurance laws of the state of Illinois.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019                    Company:   Federal Insurance Company

                                                      Endorsement No. 10

                                                      To be attached to and
                                                      form a part of Policy No. 8153-1429

Issued to:   AKORN INC

---

DELETE EXCLUSION 17 ENDORSEMENT

In consideration of the premium charged, it is agreed that Exclusion 17 of this coverage section is deleted.


The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.


Authorized Representative

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019          Company:   Federal Insurance Company

                                            Endorsement No. 11

                                            To be attached to and
                                            form a part of Policy No. 8153-1429


Issued to:   AKORN INC

---

AMEND DEFINITION OF DISCOVERY AND EXCLUSION 13(b) ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)      The term **Discovery** or **Discovered** as defined in Subsection 11 Definitions of this coverage section is amended
         to read in its entirety as follows:

         **Discovery** or **Discovered** means Risk Manager, Chief Financial Officer, General Counsel of an
         **Organization** has become aware of facts which would cause a reasonable person to assume that a
         loss of a type covered by this coverage section has occurred or acts have taken place that may
         subsequently result in a loss of a type covered by this coverage section.   This includes loss:

         (a)      sustained prior to the inception date of any coverage under this coverage section;

         (b)      which is within the applicable Retention as set forth in Item 3 of the Declarations for this
                  coverage section; or

         (c)      for which the exact amount or details are unknown.

         **Discovery** or **Discovered** shall not include knowledge acquired by Risk Manager, Chief Financial Officer,
         General Counsel of an **Organization** acting alone in a **Theft** or **Forgery,** or acting in collusion with any
         **Employee** in a **Theft** or **Forgery**.

(2)      Subparagraphs (i) and (ii) of Exclusion 13(b) of this coverage section are amended to read in their entirety as
         follows:

         (i)      after Risk Manager, Chief Financial Officer, General Counsel of an **Organization**
                  becomes aware of a **Theft**, **Forgery** or other fraudulent, dishonest or criminal act
                  committed by such **Employee** while employed with or in the service of an **Insured**;

         (ii)     after Risk Manager, Chief Financial Officer, General Counsel of an **Organization**
                  becomes aware of a **Theft**, **Forgery** or other fraudulent, dishonest or criminal act,
                  involving **Money**, **Securities** or other property valued at twenty-five thousand dollars

($25,000) or more, committed by such **Employee** prior to employment or service with an **Insured**; or

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019

Company:   Federal Insurance Company

Endorsement No. 12

To be attached to and
form a part of Policy No. 8153-1429

Issued to:   AKORN INC

---

AMEND DEFINITION OF EMPLOYEE ENDORSEMENT

In consideration of the premium charged, it is agreed that the term **Employee**, as defined in Subsection 11 Definitions of this coverage section, is amended to include any **Employee** while on leave for military service.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019                Company:  Federal Insurance Company

Endorsement No. 13

To be attached to and
form a part of Policy No. 8153-1429

Issued to:  AKORN INC

---

AMEND EXCLUSION 19 ENDORSEMENT

In consideration of the premium charged, it is agreed that Exclusion 19 of this coverage section is amended to read in its entirety as follows:

19.     No coverage will be available under this coverage section for:

(a)     loss unless sustained by an **Insured** prior to the termination of this coverage section as to such **Insured**, and **Discovered** and written notice thereof is given to the Company within ninety (90) days following such termination;

(b)     loss unless sustained prior to the termination of any Insuring Clause or any particular coverage offered under any Insuring Clause, and **Discovered** and written notice thereof is given to the Company within ninety (90) days following such termination; or

(c)     loss unless sustained prior to the termination of this coverage section in its entirety, and **Discovered** and written notice thereof is given to the Company within ninety (90) days following such termination;

provided that in no event will coverage be available under this coverage section for such loss if such loss is covered under any renewal or replacement of this coverage section or any Insuring Clause or any particular coverage offered under any Insuring Clause issued by the Company or by any affiliate of the Company.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT**

Coverage Section: Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019

Company: Federal Insurance Company

Endorsement No. 14

To be attached to and
form a part of Policy No. 8153-1429

Issued to: AKORN INC

---

AMEND SUBSECTION 23 CHANGES IN EXPOSURE ENDORSEMENT

In consideration of the premium charged, it is agreed that the first sentence of the final paragraph of Subsection 23 Changes in Exposure of this coverage section is amended to read in its entirety as follows:

> If the total revenues of any such acquired organization or new **Subsidiary** exceed twenty percent (20%) of the total revenues of the **Parent Organization** (as reflected in the most recent audited consolidated financial statements of such organization and the **Parent Organization**, respectively, as of the date of such acquisition or creation), the **Parent Organization** shall give written notice of such acquisition or creation to the Company as soon as practicable, but in no event later than ninety (90) days after the date of such acquisition or creation, together with such information as the Company in its sole discretion may require and shall pay any reasonable additional premium required by the Company.

The remaining sentences of the final paragraph of Subsection 23 shall remain unchanged.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

Authorized Representative

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019          Company:   Federal Insurance Company

                                             Endorsement No. 15

                                             To be attached to and
                                             form a part of Policy No. 8153-1429

Issued to:   AKORN INC

---

AMEND VALUATION OF SECURITIES ENDORSEMENT

In consideration of the premium charged, it is agreed that subparagraph (a) of Subsection 28 Valuation and Foreign
Currency of this coverage section is amended to read in its entirety as follows:

(a)     the actual market value of lost, damaged or destroyed **Securities** at the closing price of such **Securities**
        on the business day immediately preceding the day on which a loss is **Discovered**, or the cost of
        replacing such **Securities**, whichever is less, plus the cost to post a Lost Instrument Bond;

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of
coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019          Company:   Federal Insurance Company

Endorsement No. 16

To be attached to and
form a part of Policy No. 8153-1429

Issued to:   AKORN INC

---

AMEND EXCLUSIONS ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)      Exclusion 12(j) of this coverage section is deleted.

(2)      No coverage will be available under Insuring Clause 2 or 3 for loss or damage due to fire;
         provided that this Exclusion shall not apply to:

         (i)      loss of **Money** or **Securities**; or

         (ii)     damage to any safe or vault caused by the application of fire thereto for the purposes of **Safe Burglary**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019          Company:   Federal Insurance Company

                                             Endorsement No. 17

                                             To be attached to and
                                             form a part of Policy No. 8153-1429

Issued to:   AKORN INC

---

AMEND EXCLUSIONS ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     Exclusion 12(a) of this coverage section is deleted.

(2)     No coverage will be available under Insuring Clause 1 or 9 of this coverage section for loss resulting directly or indirectly from any authorized or unauthorized trading of **Money**, **Securities** or **Property**, whether or not in the name of an **Insured** and whether or not in a genuine or fictitious account; provided that this Exclusion shall not apply to otherwise covered loss under Insuring Clause 1 or 9 which results in improper financial gain to an **Employee** (such loss shall mean only the amount of improper financial gain to such **Employee**, and shall not include **Salary**, commissions, fees or other compensation, including but not limited to promotions and raises associated with employment, paid by the **Insured** to such **Employee**).


The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.


_____
Authorized Representative

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019          Company:   Federal Insurance Company

Endorsement No. 18

To be attached to and
form a part of Policy No. 8153-1429

Issued to:   AKORN INC

---

AMEND EXCLUSIONS ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)      Exclusion 12(k) of this coverage section is deleted.

(2)      No coverage will be available under Insuring Clause 2, 3, 4, 5, 6, or 8 for loss due to an **Insured** knowingly having given or surrendered **Money**, **Securities** or **Property** in any exchange or purchase with a **Third Party**; provided that this Exclusion shall not apply to otherwise covered loss of **Property** under Insuring Clause 5.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT**

Coverage Section: Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019          Company: Federal Insurance Company

Endorsement No. 19

To be attached to and
form a part of Policy No. 8153-1429

Issued to: AKORN INC

---

AMEND DEFINITION OF EMPLOYEE ENDORSEMENT

In consideration of the premium charged, it is agreed that the term **Employee**, as defined in Subsection 11., Definitions, of this coverage section is amended to delete paragraph (a) and replace it with the following:

(a) (i)    natural person while in the regular service of an **Organization** in the ordinary course of such **Organization's** business, whom such **Organization** compensates by **Salary** and has the right to govern and direct in the performance of such service, including any part-time or seasonal employee;

(ii)   natural person while in the regular service of an **Organization** in the ordinary course of such **Organization's** business, whom such **Organization** has the right to govern and direct in the performance of such service and is assigned to perform such service by any agency furnishing leased personnel or temporary personnel on a contingent or part-time basis; provided that **Employee** shall not include such a natural person, and no coverage will be available under this coverage section for loss caused by such a natural person, if such loss is covered under any bond, indemnity or insurance held by the agency furnishing such personnel;

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

Authorized Representative

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019          Company:   Federal Insurance Company

Endorsement No. 20

To be attached to and
form a part of Policy No. 8153-1429

Issued to:   AKORN INC

---

AMEND DEFINITION OF SECURITIES ENDORSEMENT

In consideration of the premium charged, it is agreed that the term **Securities**, as defined in Subsection 11 Definitions of this coverage section is amended to include revenue and other stamps in current use, tokens and tickets.   **Securities** does not include **Money**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019          Company:   Federal Insurance Company

                                            Endorsement No. 21

                                            To be attached to and
                                            form a part of Policy No. 8153-1429

Issued to:   AKORN INC

---

AMEND MONEY ORDERS AND COUNTERFEIT CURRENCY FRAUD ENDORSEMENT

In consideration of the premium charged, it is agreed that the term **Money Orders And Counterfeit Currency Fraud**, as defined in Subsection 11 Definitions of this coverage section, is amended to read in its entirety as follows:

**Money Orders And Counterfeit Currency Fraud** means the good faith acceptance by an **Organization**:

(a)     in exchange for merchandise, **Money** or services, of any post office or express money order, issued or purporting to have been issued by any post office or express company, if such money order is not paid upon presentation; or

(b)     in the regular course of business, of counterfeit paper currency.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.


_____
Authorized Representative

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019          Company:   Federal Insurance Company

                                            Endorsement No. 22

                                            To be attached to and
                                            form a part of Policy No. 8153-1429

Issued to:   AKORN INC

---

### AMEND SUBSECTION 27 PROOF OF LOSS AND LEGAL PROCEEDINGS ENDORSEMENT

In consideration of the premium charged, it is agreed that the first sentence of Subsection 27 Proof of Loss and Legal Proceedings of this coverage section is amended to read in its entirety as follows:

> Knowledge possessed by Risk Manager, Chief Financial Officer, General Counsel of an **Organization** or **Discovery** shall be deemed knowledge possessed by or discovery by all **Insureds**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019          Company:   Federal Insurance Company

Endorsement No. 23

To be attached to and
form a part of Policy No. 8153-1429

Issued to:   AKORN INC

_____

AMEND EXCLUSION 12(h)(ii) ENDORSEMENT

In consideration of the premium charged, it is agreed that subparagraph (h)(ii) of Exclusion 12 of this coverage section is amended to read in its entirety as follows:

(ii)        to render **Data** usable by replacement processing equipment;

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019          Company:   Federal Insurance Company

Endorsement No. 24

To be attached to and
form a part of Policy No. 8153-1429

Issued to:   AKORN INC

---

AMEND DEFINITION OF EMPLOYEE ENDORSEMENT

In consideration of the premium charged, it is agreed that the term **Employee** as defined in Subsection 11 Definitions of this coverage section is amended to include any director of an **Organization** while in the regular service of such **Organization** in the ordinary course of such **Organization's** business as an audit committee member of such **Organization**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019

Company:   Federal Insurance Company

Endorsement No. 25

To be attached to and
form a part of Policy No. 8153-1429

Issued to:   AKORN INC

---

AMEND DEFINITION OF COMPUTER SYSTEM ENDORSEMENT

In consideration of the premium charged, it is agreed that the term **Computer System**, as defined in Subsection 11 Definitions of this coverage section, is amended to read in its entirety as follows:

**Computer System** means a computer and all input, output, processing, storage, off-line media library and communication facilities which are connected to such computer, provided that such computer and facilities are:

(a)     owned and operated by an **Organization**;

(b)     leased and operated by an **Organization**; or

(c)     utilized by an **Organization**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: September 1, 2019          Federal Insurance Company

                                                  Endorsement/Rider No. 26

                                                  To be attached to and
                                                  form a part of Policy No. 8153-1429

Issued to:  AKORN INC

---

FRAUDULENT INSTRUCTIONS EXCLUSION

In consideration of the premium charged, it is agreed that:

No coverage will be available under Insuring Clauses 2, 3, 4, 5, and 6 for loss resulting from any transfer, payment or delivery of **Money**, **Securities**, or **Property** approved by an **Employee** or arising out of any misrepresentation received by an **Employee**, agent, independent contractor or other representative of the **Insured**, whether such transfer, payment or delivery was made in good faith or as a result of trick, artifice, fraud or false pretenses.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: September 1, 2019          Federal Insurance Company

                                                   Endorsement/Rider No. 27

                                                   To be attached to and
                                                   form a part of Policy No. 8153-1429

Issued to:  AKORN INC

---

ERISA AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is agreed that solely with respect to loss sustained by any **ERISA Plan** included as **Insured**, this coverage section is amended as follows:

(1)     Subsection 21., ERISA Plan, is deleted.

(2)     Insuring Clause 1. is deleted and replaced with the following:

        *Fiduciary Dishonesty Coverage Insuring Clause 1*

        The Company shall pay the **Insured** for loss of **Money**, **Securities**, or **Property** resulting directly from **Fraud or Dishonesty** committed by an **Employee** acting alone or in collusion with others.

(3)     Subsection 11., Definitions, is amended as follows:

        A.      The definition of **Employee(s)** is deleted and replaced with the following:

                **Employee(s)** means any natural person while in the service of any **Insured** who is required to be bonded by Title 1 of **ERISA**, including:

                (a)     a fiduciary;

                (b)     a trustee;

                (c)     an administrator;

                (d)     an officer;

                (e)     any other natural person who handles **ERISA Plan** assets; or

                (f)     any natural person described paragraphs (a) through (e) above during a period not exceeding sixty (60) days following the termination of such natural person's service.

                Provided, however, **Employee** shall not include any independent contractor or any agent, broker, factor, commission merchant, consignee, or representative of the same general character or employee thereof.

        B.      The definition of **ERISA Plan** is deleted and replaced with the following:

                **ERISA Plan** means any Employee Benefit Plan, Pension Benefit Plan, or Welfare Benefit Plan, as defined under **ERISA**, which is operated solely by an **Organization** or jointly by

an **Organization** and a labor organization for the benefit of **Employees** and which existed on or before the inception of this coverage section or which is created or acquired after the inception of this coverage section.

C.    The following definitions are added:

**ERISA** means the Employee Retirement Income Security Act of 1974, as amended.

**Fraud or Dishonesty** means any intentional act of larceny, theft, embezzlement, forgery, misappropriation, wrongful abstraction, wrongful conversion or willful misapplication, or any other intentional fraudulent or dishonest act. **Fraud or Dishonesty** shall also include any intentional act prohibited by Title 18, Section 1954 of the U.S. Code.

(4)    Subsection 12., Exclusions, is deleted and replaced with the following:

*Limitations*

The Company shall not be liable for loss involving:

(a)    the disclosure of confidential or personal information while in the care, custody or control of an **Insured**, including but not limited to patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information, retirement or health savings account information or any similar type of non-public information, provided that this limitation shall not apply to loss that is otherwise covered under this coverage section caused by an **Employee's** acts of **Fraud or Dishonesty** through the use of, disclosure of or access to such confidential or personal information; or

(b)    fees, costs, fines, penalties or any other expenses incurred by an **Insured** which result, directly or indirectly, from the access to or disclosure of an **Insured's** or another entity's or person's confidential or personal information, including but not limited to patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information, retirement or health savings account information or any similar type of non-public information.

(5)    Subsection 20,, Ownership, is amended to the extent that wherever the term **Organization** appears, it is deleted and replaced with **Organization** or **ERISA Plan**.

(6)    Subsection 25., Limits of Liability and Retention, is deleted and replaced with the following:

The Company's maximum liability for each loss shall not exceed the Limit of Liability applicable to such loss, as set forth in Item 2 of the Declarations regardless of the number of **Insureds** sustaining the loss.

The payment of any loss under this coverage section shall not reduce the liability of the Company for other losses whenever sustained; provided, however, that the total liability of the Company for all loss resulting from any act or any series of acts committed by the same **Employee** or in which the same **Employee** is concerned or implicated, regardless of whether such act or series of acts was committed before or during the **Policy Period**, will be treated as a single loss and the applicable Limit of Liability of this coverage section will apply.

With respect to each **ERISA Plan**:

(a)    if covered loss is sustained by any **ERISA Plan** which does not have any employer securities, the Limit of Liability applicable to such covered loss shall be the greater of:

(1)    $1,000; or

(2)    ten percent (10%) of the funds handled by such **ERISA Plan** as of the effective date of this coverage section,

up to a maximum limit of liability of $500,000; or

(b)    if covered loss is sustained by any **ERISA Plan** which does have any employer securities, the Limit of Liability applicable to such covered loss shall be the greater of:

(1)    $1,000; or

(2)    ten percent (10%) of the funds handled by such **ERISA Plan** as of the effective date of this coverage section,

up to a maximum limit of liability of $1,000,000,

provided that, in all events (i) if the Limit of Liability as set forth in Item 2 of the Declarations is less than the amounts set forth in paragraphs (a) or (b) above, then the applicable Limit of Liability shall be equal to the minimum limit of insurance as required by **ERISA**; or (ii) if the Limit of Liability as set forth in Item 2 of the Declarations equals or exceeds the amounts set forth in paragraphs (a) or (b) above, then the Limit of Liability shall be the Limit of Liability as set forth in Item 2 of the Declarations.

No retention shall apply to loss sustained by an **ERISA Plan** covered under this coverage section.

(7)    The following subsections are added:

*Payover*

In compliance with Title 1 of **ERISA**, payment by the Company shall be held to the benefit of any **Insured(s)** sustaining a loss. If such payment is in excess of the amount of coverage required by **ERISA** for such **Insured(s)**, such excess shall be held for the use and benefit of any other named **Insured(s)** should such **Insured(s)** also **Discover** loss recoverable hereunder. If **Money**, **Securities**, and other **Property** of two or more **Insureds** is commingled, recovery hereunder for loss of such **Money**, **Securities**, and other **Property** shall be shared by such **Insureds** on a pro rata basis in accordance with the amount of coverage each such **Insured** is required to carry pursuant to **ERISA**.

*Extended Discovery Period*

This coverage section covers loss sustained prior to the termination or cancellation of this coverage section and **Discovered**:

(a)    within twelve (12) calendar months following the termination or cancellation of this coverage section in its entirety; or

(b)    within twelve (12) calendar months following the termination or cancellation of this coverage section as to any **Insured**,

in accordance with Subsection 11., Termination of Policy or Coverage Section, of the General Terms and Conditions Section.

Provided that this Extended Discovery Period terminates immediately upon the effective date of any other insurance obtained which replaces the coverage afforded by this coverage section in an amount no less than the minimum amount required under **ERISA** and provides coverage for loss sustained prior its effective date.

*Termination*

This coverage section shall terminate as to any **Employee** and no coverage will be available for loss caused by such **Employee**:

(a)     immediately upon **Discovery** by any **Executive** or **Insurance Representative** (not in collusion with such **Employee**) of any fraudulent or dishonest act on the part of such **Employee** while in the service of any **Insured**;

(b)     after an **Executive** or **Insurance Representative** becomes aware of any fraudulent or dishonest act by such **Employee** involving **Money**, **Securities** or **Property** valued at twenty-five thousand dollars ($25,000) or more, committed prior to such **Employee's** service with any **Insured**; or

(c)     more than sixty (60) days following the termination of service to any **Insured** of such **Employee**.


The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.


_____

Authorized Representative