

## ALLIED WORLD NATIONAL ASSURANCE COMPANY

## EXCESS DIRECTORS & OFFICERS LIABILITY INSURANCE FOLLOWING FORM POLICY

**POLICY NUMBER: 0307-5817**
**RENEWAL OF: 0307-5817**

**NOTICE: EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS GENERALLY LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.**

**NOTICE: THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR DEFENSE COSTS. AMOUNTS INCURRED FOR DEFENSE COSTS SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.**

**NOTICE: THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND.**

## DECLARATIONS

**ITEM 1:** NAMED INSURED: Akorn, Inc.

ADDRESS: 1925 W. Field Court, Suite 300
Lake Forest, IL 60045

**ITEM 2:** POLICY PERIOD: From: June 1, 2017 To: June 1, 2018
(12:01 a.m. Standard Time at the address stated in Item 1)

**ITEM 3:** LIMIT OF LIABILITY: $10,000,000
aggregate for all coverages combined (including Defense Costs)

EXCESS OF TOTAL
UNDERLYING LIMITS OF: $10,000,000

**ITEM 4:** UNDERLYING POLICIES AND INSURERS:

**Primary Policy:**

| Insurer | Policy Number | Limits | Policy Period |
|---|---|---|---|
| XL Specialty Insurance Company | US00075683DO17A | $10,000,000 | June 1, 2017 to June 1, 2018 |

**DECLARATIONS** (continued)                                    **POLICY NO.: 0307-5817**

                **Excess Policy(ies):**

| Insurer | Policy Number | Limits | Policy Period |
|---|---|---|---|

**ITEM 5:**    PENDING OR PRIOR DATE:     April 24, 2011

**ITEM 6:**    PREMIUM:             $239,000.00

**ITEM 7:**    A.   DISCOVERY PERIOD/EXTENDED
              REPORTING PERIOD PREMIUM:      100% of premium set forth in Item 6 above

             B.   DISCOVERY PERIOD/EXTENDED
              REPORTING PERIOD:          12 months

**ITEM 8:**    ADDRESS OF INSURER FOR ALL NOTICES UNDER THIS POLICY:

             A.   <u>Claim-Related Notices</u>:  noticeofloss@awac.com

             B.   <u>All Other Notices</u>:

                 1690 New Britain Ave.
                 Farmington, CT 06032

In Witness Whereof, the Insurer has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the Insurer.

              President                                  Asst. Secretary

                                               **AUTHORIZED REPRESENTATIVE**

Endorsement No.: 1
This endorsement, effective: June 1, 2017
(at 12:01 A.M. Standard Time at the address of the Named Insured as shown in Item 1 of the Declarations)
Forms a part of Policy No.: 0307-5817
Issued to: Akorn, Inc.
By: Allied World National Assurance Company

### ILLINOIS AMENDATORY ENDORSEMENT

This endorsement modifies insurance coverage provided under the EXCESS DIRECTORS & OFFICERS LIABILITY INSURANCE FOLLOWING FORM POLICY.

A.  It is understood and agreed that Paragraph B. PUNITIVE DAMAGES COVERAGE of Clause II. TERMS AND CONDITIONS is deleted in its entirety.

B.  It is understood and agreed that Paragraph E. REPRESENTATIONS AND WARRANTY STATEMENTS of Clause II. TERMS AND CONDITIONS is deleted in its entirety and replaced by the following:

E.  REPRESENTATIONS AND WARRANTY STATEMENTS

It is a condition precedent to the Insurer's obligations under this Policy, and the Insured agrees, that the Application, warranty statements, together with attachments and any other materials submitted for this Policy and any Underlying Policy, which are attached to this Policy, will be made a part of this Policy. The Insurer has relied on all such materials, representations and information as being accurate and complete in issuing this Policy.

C.  It is understood and agreed that Paragraph H. CANCELLATION CLAUSE of Clause II. TERMS AND CONDITIONS is deleted in its entirety and replaced by the following:

H.  CANCELLATION CLAUSE

The Insured may cancel this Policy by mailing to the Insurer advance written notice of cancellation, stating when the cancellation will become effective.

The Insurer may cancel this Policy by mailing to the Insured and the agent of record at the last known addresses known by the Insurer, written notice, stating the reason for cancellation at least ten (10) days prior to the effective of cancellation date if the Insurer cancels for nonpayment of premium and at least thirty (30) days prior to the effective date of cancellation if the Insurer cancels for any other reason.

If this Policy has been in effect for sixty-one (61) days or more, the Insurer may cancel this Policy by mailing to the Insured at the address shown in the Declarations and the agent of record at the last known address written notice, stating the reason for cancellation at least ten (10) days prior to the effective date if the Insurer cancels for nonpayment of premium and sixty (60) days prior to the effective date of cancellation if the Insurer cancels only for the following other reasons:

1.  The Policy was obtained through a material misrepresentation;

2.  Any Insured has violated any of the terms and conditions of the Policy;

3. The risk originally accepted has measurably increased;

4. The Insurer certifies to the Director of Insurance of the loss of reinsurance for all or a substantial part of the underlying risk; or

5. The Director of Insurance determines that the continuation of the Policy could place the Insurer in violation of Illinois Insurance Laws.

A U. S. Post Office proof of mailing will be sufficient proof of notice. This proof of mailing will be maintained by the Insurer.  The effective date of cancellation stated in the notice will become the end of the Policy Period. If this Policy is cancelled, the Insurer will send the Insured any premium refund due.  If the Insurer cancels, the refund will be pro rata.  If the Insured cancels, the refund may be less than pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

D.  It is understood and agreed that the following are added to Clause II. TERMS AND CONDITIONS:

NONRENEWAL

If the Insurer decides not to renew this Policy, the Insurer will mail written notice of nonrenewal, to the Insured and the agent of record at the last known mailing addresses known by the Insurer, stating the reason for nonrenewal at least sixty (60) days before the expiration date of the Policy. A U. S. Post Office proof of mailing will be sufficient proof of notice. This proof of mailing will be maintained by the Insurer.

BANKRUPTCY

The bankruptcy or insolvency of the Insured will not relieve the Insurer from liability under this Policy.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

Endorsement No.: 2
This endorsement, effective: June 1, 2017
(at 12:01 a.m. Standard Time at the address of the Named Insured as shown in Item 1 of the Declarations)
Forms a part of Policy No.: 0307-5817
Issued to: Akorn, Inc.
By: Allied World National Assurance Company

## STATE AMENDATORY INCONSISTENCY

It is understood and agreed that in the event that there is an inconsistency between a state amendatory attached to this Policy and any term or condition of this Policy, then where permitted by law, the Insurer shall apply those terms and conditions of either the amendatory or the Policy which are more favorable to the Insured.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

Endorsement No.: 3
This endorsement, effective: June 1, 2017
 (at 12:01 a.m. Standard Time at the address of the Named Insured as shown in Item 1 of the Declarations)
Forms a part of Policy No.: 0307-5817
Issued to: Akorn, Inc.
By: Allied World National Assurance Company

## DELETE REPRESENTATIONS CLAUSE AND
## FOLLOW PRIMARY POLICY

It is understood and agreed that Clause II, TERMS AND CONDITIONS, is amended by deleting paragraph E., REPRESENTATIONS AND WARRANTY STATEMENTS, in its entirety.

It is further understood and agreed that this Policy shall follow any representations and warranty terms of the Primary Policy.

All other terms and conditions of this Policy remain unchanged.

**AUTHORIZED REPRESENTATIVE**

Endorsement No.: 4
This endorsement, effective: June 1, 2017
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.: 0307-5817
Issued to: Akorn, Inc.
By: Allied World National Assurance Company

## DELETE ALTERNATIVE DISPUTE RESOLUTION PROCESS CLAUSE

It is understood and agreed that Clause II., TERMS AND CONDITIONS, is amended by deleting paragraph I., ALTERNATIVE DISPUTE RESOLUTION PROCESS, in its entirety.

All other terms and conditions of this Policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

DO 00253 00 (01/10)

Endorsement No.: 5
This endorsement, effective: June 1, 2017
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.: 0307-5817
Issued to: Akorn, Inc.
By: Allied World National Assurance Company

**AMEND DECLARATIONS PAGE:**
**DELETE DISCOVERY PERIOD/EXTENDED REPORTING PERIOD –**
**FOLLOW THE PRIMARY POLICY**

It is understood and agreed that Item 7 of the Declarations, DISCOVERY PERIOD, is deleted in its entirety.

It is further understood and agreed that this Policy shall follow the discovery period or extended reporting period provisions of the Primary Policy.

All other terms and conditions of this Policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

DO 00261 00 (01/10)

Endorsement No.: 6
This endorsement, effective: June 1, 2017
(at 12:01 a.m. Standard Time at the address of the Named Insured as shown in Item 1 of the Declarations)
Forms a part of Policy No.: 0307-5817
Issued to: Akorn, Inc.
By: Allied World National Assurance Company

## DELETE CANCELLATION CLAUSE AND
## FOLLOW PRIMARY POLICY

It is understood and agreed that Clause II, TERMS AND CONDITIONS, is amended by deleting paragraph H., CANCELLATION CLAUSE, in its entirety.

It is further understood and agreed that this Policy shall follow the cancellation provisions of the Primary Policy.

All other terms and conditions of this Policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

DO 00295 00 (06/11)

Endorsement No.: 7
This endorsement, effective: June 1, 2017
 (at 12:01 a.m. Standard Time at the address of the Named Insured as shown in Item 1 of the Declarations)
Forms a part of Policy No.: 0307-5817
Issued to: Akorn, Inc.
By: Allied World National Assurance Company


### AMEND LOSS PROVISIONS CLAUSE –
### FAILURE TO COOPERATE IS NOT IMPUTED TO OTHER INSURED PERSONS

It is understood and agreed that Clause II, TERMS AND CONDITIONS, is amended by deleting paragraph D. 3., LOSS PROVISIONS, in its entirety and replacing it with the following:

3.  The Insured shall provide the Insurer with such information, assistance and cooperation as the  Insurer may reasonably request and as shall be in the Insured's power to provide and shall do nothing that may prejudice the Insurer's position or potential rights of recovery.  The failure of any insured person under this Policy to comply with this paragraph shall not impair the rights of any other insured person under this Policy.


All other terms and conditions of this Policy remain unchanged.


_____
**AUTHORIZED REPRESENTATIVE**

DO 00299 00 (06/11)

Endorsement No.: 8
This endorsement, effective: June 1, 2017
 (at 12:01 a.m. Standard Time at the address of the Named Insured as shown in Item 1 of the Declarations)
Forms a part of Policy No.: 0307-5817
Issued to: Akorn, Inc.
By: Allied World National Assurance Company

**AMEND POLICY TO RECOGNIZE LOSS PAYMENT BY
EXCESS DIC INSURER OR ANY OTHER PARTY -
DELETE 'NO BROADER THAN UNDERLYING'**

It is understood and agreed that Clause I, INSURING CLAUSE, is deleted and replaced with the following:

**I.   INSURING CLAUSE**

The Insurer shall pay the individuals and entities insured under the Primary Policy (also referred to herein as the "Insured") for Loss after exhaustion by payments of all applicable underlying limits by either the Underlying Insurers as specified in Item 4 of the Declarations, the Insureds, any insurer under a difference-in-conditions policy written as specifically excess over the Limit of Liability provided by this Policy and/or any other party, subject to:

A.  the terms and conditions of the Primary Policy as in effect the first day of the Policy Period;

B.  the Limit of Liability as stated in Item 3 of the Declarations; and

C.  the terms and conditions of, and the endorsements attached to, this Policy.

It is further understood and agreed that paragraphs F. 2. and F. 3., FOLLOWING FORM, of Clause II, TERMS AND CONDITIONS, are deleted and replaced with the following:

2.  In the event of the depletion of the limits of liability of the Underlying Policy(ies) solely as a result of payment of losses covered thereunder, by the Underlying Insurers, the Insureds, any insurer under a difference-in-conditions policy written as specifically excess over the Limit of Liability provided by this Policy and/or any other party, this Policy shall, subject to the Limit of Liability set forth in Item 3 of the Declarations and to the other terms of this Policy, continue to apply for subsequent Losses as excess insurance over the amount of insurance remaining under such Underlying Policies. In the event of the exhaustion of all of the limits of liability of such Underlying Policy(ies) solely as a result of payment of losses as described in this paragraph, the remaining limits available under this Policy shall, subject to the Limit of Liability as set forth in Item 3 of the Declarations and to the other terms of this Policy, continue for subsequent Losses as primary insurance and any retention specified in the Underlying Policy shall be imposed under this Policy.

3.  The Insurer's obligations under this Policy shall not be increased, expanded or otherwise changed, nor shall the Insurer drop down for any reason, including but not limited to the receivership, insolvency, or inability or refusal to pay of any Underlying Insurer, the cancellation of any Underlying Policy or the existence of a sub-limit of liability in any Underlying Policy. In the event of the receivership, insolvency, or inability or refusal to pay of

DO 00303 00 (06/11)

any Underlying Insurer, or the cancellation of any Underlying Policy, the Insured, any insurer under a difference-in-conditions policy written as specifically excess over the Limit of Liability provided by this Policy and/or any other party, may pay any losses otherwise payable under such Underlying Policy and such payments shall be deemed to apply toward exhaustion of the limits of liability of the Underlying Policy for purposes of coverage under this Policy. In the event a sub-limit of liability exists in the Underlying Policy, any payments of Loss that are subject to such a sub-limit shall be deemed to apply toward exhaustion of the limits of liability of the Underlying Policy for purposes of coverage under this Policy.

All other terms and conditions of this Policy remain unchanged.

**AUTHORIZED REPRESENTATIVE**

Endorsement No.: 9
This endorsement, effective: June 1, 2017
(at 12:01 A.M. Standard Time at the address of the Named Insured as shown in Item 1 of the Declarations)
Forms a part of Policy No.: 0307-5817
Issued to: Akorn, Inc.
By: Allied World National Assurance Company

## AMEND PENDING OR PRIOR DATE

It is understood and agreed that Item 5 of the Declarations, PENDING OR PRIOR DATE, is deleted in its entirety and replaced with the following:

**ITEM 5:**   PENDING OR PRIOR DATE:

(a)   **April 24, 2011** as respects the $5,000,000 Limit of Liability Excess of Total Underlying Limits of $10,000,000.

(b)   **April 24, 2011** as respects the $5,000,000 Limit of Liability Excess of Total Underlying Limits of $15,000,000, but solely as respects any claim under Insuring Agreement A of the Primary Policy.

(c)   **June 1, 2014** as respects the $5,000,000 Limit of Liability Excess of Total Underlying Limits of $15,000,000, but solely as respects any claim under Insuring Agreements B and C of the Primary Policy.

All other terms and conditions of this Policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

AI Manu A

## POLICYHOLDER DISCLOSURE STATEMENT
## UNDER THE
## TERRORISM RISK INSURANCE ACT

The Insured is hereby notified that under the federal Terrorism Risk Insurance Act, as amended, (the "Act"), the Insured has a right to purchase insurance coverage for losses arising out of an Act of Terrorism, as defined in Section 102(1) of the Act:  The term "act of terrorism" means any act that is certified by the Secretary of the Treasury in consultation with the Secretary of Homeland Security and the Attorney General of the United States to be an act of terrorism; to be a violent act or an act that is dangerous to  human life, property, or infrastructure; to have resulted in damage within the United States, or outside of the United States in case of certain air carriers or vessels or the premises of a United States. mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. The Insured should read the Act for a complete description of its coverage. The decision to certify or not to certify an event as an Act of Terrorism covered by this law is final and not subject to review.

The Insured should know that where coverage is provided by this policy for losses caused by a Certified Act of Terrorism may be partially reimbursed by the United States Government under a formula established by federal law.  However, the insured's policy may contain other exclusions that might affect coverage, such as an exclusion for nuclear events.  Under the formula, the United States generally reimburses 85%  through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019; and 80% beginning on January 1, 2020 of covered terrorism losses exceeding the statutorily established deductible that must be met by the Insurer, and which deductible is based on a percentage of the Insurer's direct earned premiums for the year preceding the Act of Terrorism

Be advised that the Terrorism Risk Insurance Act, as amended, contains a $100 billion cap on all losses resulting from Certified Acts of Terrorism.  If aggregate insured losses attributable to Certified Acts of Terrorism exceed $100 billion in a calendar year the United States Government shall not make any payment for any portion of the amount of such loss that exceeds $100 billion.  If aggregate insured losses attributable to Acts of Terrorism exceed $100 billion in a Program Year and the Insurer has met its deductible under the Act, the Insurer shall not be liable for payment of any portion of the losses that exceeds $100 billion, and in such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Coverage for "insured losses" as defined in the Act is subject to the coverage terms, conditions, amounts and limits in this policy applicable to losses arising from events other than Acts of Terrorism.

Please indicate the selection of the Insured below.

_____	The Insured hereby elects to purchase coverage in accordance with the Act for a premium of $0.00.

_____	The Insured hereby rejects coverage and accepts reinstatement of the exclusion in accordance with the Act.

_____	Akorn, Inc.
Signature of Insured

_____	0307-5817
Print/Title

_____
Date

DO 00014 00 (01/15)



## ALLIED WORLD NATIONAL ASSURANCE COMPANY

## EXCESS DIRECTORS & OFFICERS LIABILITY INSURANCE
## FOLLOWING FORM POLICY

In consideration of premium paid and subject to the Declarations and Endorsements made a part hereof and the terms, conditions and limitations set forth herein and therein, ALLIED WORLD NATIONAL ASSURANCE COMPANY (herein referred to as the "Insurer"), agrees as follows:

## I.  INSURING CLAUSE

The Insurer shall pay the individuals and entities insured under the Primary Policy (also referred to herein as the "Insured") for Loss after exhaustion by payments of all applicable underlying limits by either the Underlying Insurers as specified in Item 4 of the Declarations or the Insureds, subject to:

A.  the terms and conditions of the Primary Policy as in effect the first day of the Policy Period;

B.  the Limit of Liability as stated in Item 3 of the Declarations; and

C.  the terms and conditions of, and the endorsements attached to, this Policy.

Notwithstanding the above, this Policy shall not provide coverage broader than that provided by any Underlying Policy listed in Item 4 of the Declarations, or any policy issued by any participating quota share insurer, unless such broader coverage is specifically agreed to by the Insurer herein or in a written endorsement attached hereto.

## II.  TERMS AND CONDITIONS

A.  DEFINITIONS

Terms defined in the Primary Policy are used in this Policy with the meaning assigned to them in the Primary Policy unless otherwise indicated.

"Defense Costs" shall have the same meaning as the following defined term in the Primary Policy: Defense Costs; Defense Expenses; or Claims Expenses.

B.  PUNITIVE DAMAGES COVERAGE

This Policy shall cover punitive damages to the same extent punitive damages are covered under the Primary Policy.

C.   PENDING OR PRIOR EXCLUSION

This Policy shall follow any exclusion in the Primary Policy regarding pending or prior litigation, administrative, regulatory or other proceedings, investigations, demands, suits, orders, decrees or judgments. The applicable date for determining whether any such matter is "pending or prior" for the purpose of such exclusion in this Policy shall be the Pending or Prior Date set forth in Item 5 of the Declarations.

D.  LOSS PROVISIONS

1.  This Policy shall follow the notice of claim provisions of the Primary Policy, except as stated otherwise herein.

2.  Notice hereunder shall be given to the Insurer at the address indicated in Item 8 of the Declarations.

3.  The Insured shall provide the Insurer with such information, assistance and cooperation as the Insurer may reasonably request and as shall be in the Insured's power to provide and shall do nothing that may prejudice the Insurer's position or potential rights of recovery.

4.  The Insurer shall maintain full and complete claims control as respects its portion of any claims or Losses arising under this Policy. Only those settlements, stipulated judgments and Defense Costs which have been consented to by the Insurer, which consent shall not be unreasonably withheld, shall be recoverable as Loss under the terms of this Policy. The Insurer shall be entitled to effectively associate in the defense and the negotiation of any settlement of any claim.

E.  REPRESENTATIONS AND WARRANTY STATEMENTS

It is a condition precedent to the Insurer's obligations under this Policy, and the Insured agrees, that all Applications, warranty statements, together with attachments and any other materials submitted for this Policy and any Underlying Policy, shall be deemed attached to and made a part of this Policy.  The Insurer has relied on all such materials, representations and information as being accurate and complete in issuing this Policy.

F.  FOLLOWING FORM

1.  This Policy, except as herein stated, is subject to all terms, conditions, agreements and limitations of the Primary Policy in all respects as in effect on the date hereof. The Insured shall furnish to the Insurer copies of all proposed rewrites or changes by endorsement or otherwise to the Primary Policy. The Insured agrees that should any change to the Primary Policy be made by rewrite, endorsement or otherwise, this Policy shall not be changed without the prior written consent of the Insurer, which consent shall be at the sole discretion of the Insurer. It is further agreed that  should any change of this Policy be consented to by the Insurer, then the premium hereon may be adjusted accordingly.

2.  In the event of the depletion of the limits of liability of the Underlying Policy(ies) solely as a result of payment of losses covered thereunder, by the Underlying Insurers and/or the Insureds, this Policy shall, subject to the Limit of Liability set forth in Item 3 of the Declarations and to the other terms of this Policy, continue to apply for subsequent Losses as excess insurance over the amount of insurance remaining under such Underlying Policy. In the event of the exhaustion of all of the limits of liability of such Underlying Policy(ies) solely as a result of payment of losses covered thereunder, by the Underlying Insurers and/or the Insureds, the remaining limits available under this Policy shall, subject to the Limit of Liability as set forth in Item 3 of the Declarations and to the other terms of this Policy, continue for subsequent Losses as primary insurance and any retention specified in the Underlying Policy shall be imposed under this Policy.

3. The Insurer's obligations under this Policy shall not be increased, expanded or otherwise changed, nor shall the Insurer drop down for any reason, including but not limited to the receivership, insolvency, or inability or refusal to pay of any Underlying Insurer, the cancellation of any Underlying Policy or the existence of a sub-limit of liability in any Underlying Policy. In the event of the receivership, insolvency, or inability or refusal to pay of any Underlying Insurer, or the cancellation of any Underlying Policy, the Insured may pay any losses otherwise payable under such Underlying Policy and such payments by the Insured shall be deemed to apply toward exhaustion of the limits of liability of the Underlying Policy for purposes of coverage under this Policy. In the event a sub-limit of liability exists in the Underlying Policy, any payments of Loss that are subject to such a sub-limit shall be deemed to apply toward exhaustion of the limits of liability of the Underlying Policy for purposes of coverage under this Policy.

## G. CANCELLATION OF UNDERLYING POLICY

The Insured shall give notice to the Insurer as soon as practicable of the cancellation of any Underlying Policy.

In the event any Underlying Policy shall be cancelled by the insurer thereon (other than for non-payment of premium), this Policy shall continue in full force and effect for the remainder of the Policy Period and the Insurer shall be liable to the same extent that it would have been liable if such Underlying Policy had remained in effect.

## H. CANCELLATION CLAUSE

This Policy shall follow the cancellation terms of the Primary Policy except that in the event the Insurer cancels this Policy for non-payment of premium, this Policy shall be void as of the inception date of the Policy Period.

## I. ALTERNATIVE DISPUTE RESOLUTION PROCESS

Any and all disputes or differences which may arise under this Policy, whether arising before or after termination of this Policy, including any determination of the amount of Loss or the formation and validity of this Policy, shall be subject to the alternative dispute resolution process ("ADR") set forth in this clause.

Either the Insurer or the Insureds may elect the type of ADR discussed below; provided, however, that the Insureds shall have the right to reject the Insurer's choice of ADR at any time prior to its commencement, in which case the Insureds' choice of ADR shall control.

The Insurer and Insureds agree that there shall be two choices of ADR: (1) non-binding mediation administered by the American Arbitration Association, in which the Insurer and Insureds shall try in good faith to settle the dispute by mediation under or in accordance with its then-prevailing Commercial Mediation Rules; or (2) arbitration submitted to the American Arbitration Association under or in accordance with its then-prevailing Commercial Arbitration Rules, in which the arbitration panel shall be composed of three disinterested individuals. In either mediation or arbitration, the mediator(s) or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute.

The mediator(s) or arbitrators shall also give due consideration to the general principles of the

law of the state where the Named Insured is incorporated in the construction or interpretation of the provisions of this Policy; provided, however, that the terms, conditions, provisions and exclusions of this Policy are to be construed in an even-handed fashion in the manner most consistent with the relevant terms, conditions, provisions or exclusions of the Policy.  In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the arbitrators' award shall not include attorneys' fees or other costs.  In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least one-hundred-twenty (120) days shall have elapsed from the date of the termination of the mediation.  In all events, each party shall share equally the expenses of the ADR.

Either choice of ADR may be commenced in New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state indicated in Item 1 of the Declarations as the address for the Named Insured.  The first Named Insured shall act on behalf of all Insureds in selection of the ADR in accordance with this clause.

Endorsement No.: 10
This endorsement, effective: June 1, 2018
(at 12:01 a.m. Standard Time at the address of the Named Insured as shown in Item 1 of the Declarations)
Forms a part of Policy No.: 0307-5817
Issued to: Akorn, Inc.
By: Allied World National Assurance Company

### AMEND POLICY PERIOD

It is understood and agreed that Item 2 of the Declarations, POLICY PERIOD, is deleted in its entirety and replaced with the following:


**ITEM 2.**        POLICY PERIOD:        From: June 1, 2017  To: September 1, 2019
                                          (12:01 a.m. standard time at the address stated in Item 1)

It is further understood and agreed that any claim(s) made during the Policy Period or the amended or extended Policy Period shall be subject to the one aggregate Limit of Liability stated in Item 3 of the Declarations.


Additional Premium: $746,875.00


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.


_____
**AUTHORIZED REPRESENTATIVE**

Endorsement No.: 11
This endorsement, effective: June 1, 2018
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.: 0307-5817
Issued to: Akorn, Inc.
By: **Allied World National Assurance Company**

## FOLLOW FORM OF SPECIFIED TERMS OF PRIMARY POLICY

It is understood and agreed that this Policy shall follow the following terms, conditions or endorsements of the Primary Policy:

Endorsement #44 – Convert Policy To Run-Off Upon Happening Of Specific Event – Form # DO 80 493 08 08

All other terms and conditions of this Policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

DO 00281 00 (01/10)

Endorsement No.: 12
This endorsement, effective: June 1, 2018
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.: 0307-5817
Issued to: Akorn, Inc.
By: Allied World National Assurance Company

### PREMIUM IS "FULLY EARNED" AND
### POLICY IS NON-CANCELLABLE

It is understood and agreed that the premium set forth in Item 6 of the Declarations shall be fully earned as of June 1, 2018.

It is further understood and agreed that this Policy may not be canceled by the Insured or the Insurer; however, the Insurer may cancel solely in the event of non-payment of the premium.

All other terms and conditions of this Policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

DO 00284 00  (01/10)