

**Endurance American Insurance Company**
**Wilmington, DE**

## FOLLOW FORM EXCESS MANAGEMENT LIABILITY INSURANCE DECLARATIONS

NOTICE:  PLEASE READ CAREFULLY.  This Policy shall follow all the terms and conditions of the **Followed Form** except as stated herein. Terms defined in the **Followed Form** are used herein with the meaning assigned to them in the **Followed Form** unless otherwise indicated.

**POLICY NUMBER:**  DOX10007587102

Item 1.  **Named Insured**:  Akorn, Inc.
Address:  1925 West Field Court
Suite 300
Lake Forest, IL 60045

Item 2.  **Policy Period**:  From:  June 01, 2017      To:  June 01, 2018
(12:01 AM Standard Time on both dates at the address of the **Named Insured** noted above.)

Item 3.  **Limit of Liability**:
(including defense costs)  $ 10,000,000 excess of $ 20,000,000

Item 4.  Pending & Prior       $5M Excess of $20M - 06/01/2014
Litigation Date:       $5M excess of $25M - 08/04/2015
This policy follows the pending & prior litigation exclusion in the **Followed Form**, except that the applicable date in such exclusion shall be the date indicated in this Item 4.

Item 5.  Premium:  $ 143,220

Item 6.  Producer:  Arthur J. Gallagher Risk Management Services, Inc.
Address:  300  South Riverside Plaza, Suite 1900
Chicago, IL 60606

Item 7.  A.  **Underlying Policy(ies)**:

| Insurer | Policy Number | Limit of Liability | Attachment |
|---|---|---|---|
| XL Specialty Insurance Company | US00075683DO17A | $ 10,000,000 | Primary |
| Allied World National Assurance Company | 0307-5817 | $ 10,000,000 | $10,000,000 |

B.  **Followed Form**:

| Insurer | Policy Number | Limit of Liability | Attachment |
|---|---|---|---|
| XL Specialty Insurance Company | US00075683DO17A | $ 10,000,000 | Primary |

Item 8.  Forms and Endorsements Effective at Inception:
See attached Forms and Endorsements Schedule, IL 0101.

Policy Issuance Date:  June 14, 2017                    Endurance American Insurance Company
Policy Issuance Office:  Chicago, IL                     EML 0001 0712

## FOLLOW FORM EXCESS MANAGEMENT LIABILITY INSURANCE DECLARATIONS

Item 9.    Notice:

A. Claims or Potential Claims:    Endurance U.S. Insurance – Claims
Attn:  Claims Department
750 Third Avenue
18th Floor
New York, NY 10017
Insuranceclaims@sompo-intl.com
1-877-676-7575

B. All Other:    Endurance Professional Solutions
Attn:  Professional Lines Underwriting Department
750 Third Avenue
18th Floor
New York, NY  10017
USCMLFI@sompo-intl.com

This Policy shall constitute the contract between the **Insureds** and the Insurer.

The Insurer hereby causes this Policy to be signed on the Declarations page by a duly authorized representative of the Insurer.

_Joe Kelly III_
_____          June 14, 2017
Authorized Representative                                 Date

## FOLLOW FORM EXCESS MANAGEMENT LIABILITY INSURANCE POLICY

**THIS POLICY CONTAINS CLAIMS MADE COVERAGES. READ THE ENTIRE POLICY CAREFULLY TO DETERMINE YOUR RIGHTS, DUTIES AND WHAT IS AND WHAT IS NOT COVERED.**

In consideration of premium paid or payable and in reliance on all statements made and information furnished by the **Insureds** in the Application or the underwriting of this Policy, and subject to the terms, conditions and limitations of this Policy, Endurance American Insurance Company (herein referred to as the "Insurer") agrees as follows:

**I.   INSURING CLAUSE**

Subject to the terms and conditions of this Policy, the Insurer shall provide to the **Insureds** insurance coverage for Claims first made during the **Policy Period**, including the Discovery Period if exercised. Liability for any covered Loss resulting from covered Claims shall attach to the Insurer only after (i) the insurers of the **Underlying Policy(ies),** the **Insureds**, and/or any other party shall have paid in legal currency the full amount of the **Underlying Limit** pursuant to Section II.B.1 below, and (ii) the **Insureds** shall have paid the retention or deductible, if any, applicable under the **Primary Policy**. The Insurer shall then be liable to pay only covered Loss in excess of such **Underlying Limit** up to its **Limit of Liability** as set forth in Item 3 of the Declarations, which shall be the maximum aggregate liability of the Insurer under this Policy with respect to all Claims first made in each **Policy Period**, including the Discovery Period if exercised, against all **Insureds** irrespective of the time of payment by the Insurer.

**II.   TERMS AND CONDITIONS**

A.   FOLLOWING FORM

This Policy, except as stated herein, is subject to all terms, conditions, representations and limitations as contained in the **Followed Form** as of inception of this Policy, and to the extent coverage is further limited or restricted thereby, in any other **Underlying Policy(ies)**.   In no event shall this Policy grant broader coverage than would be provided by any of the **Underlying Policy(ies)**. In the event of any conflict between the terms, conditions, and limitations of this Policy and any **Underlying Policy,** the terms, conditions and limitations of this Policy shall control.

B.   UNDERLYING POLICIES

1.   In the event and only in the event of the erosion or exhaustion of the **Underlying Limit** by reason of:

a.   the insurer(s) of the **Underlying Policy(ies),** the **Insureds**, and/or any other party paying in legal currency Loss covered under the respective **Underlying Policy(ies)**; and/or

b.   the insurer(s) of the **Underlying Policy(ies)** paying loss under another policy(ies) issued by such underlying insurer to the **Named Insured** or any of its affiliates;  but only to the extent such **Underlying Policy(ies)**  explicitly requires that such loss payment erodes the limit of liability of such **Underlying Policy(ies)***.*

this Policy shall:  (i) in the event of erosion, pay excess of the eroded **Underlying Limit,** and (ii) in the event of exhaustion, continue in force as primary insurance; provided always that in the latter event this Policy shall only pay excess of the retention or deductible, if any, applicable under the **Primary Policy**, which retention or deductible shall be applied to any subsequent Loss in the same manner as specified in the **Primary Policy**.

2. Notwithstanding any of the terms of this Policy which might be construed otherwise, this Policy shall drop down only in the event of erosion or exhaustion of the **Underlying Limit** as described above, and shall not drop down for any other reason including, but not limited to, uncollectability (in whole or in part) of any **Underlying Policy(ies)**. The risk of uncollectability of the **Underlying Policy(ies)** (in whole or in part) whether because of financial impairment or insolvency of an underlying insurer or for any other reason, is expressly retained by the **Insureds** and is not in any way or under any circumstances insured or assumed by the Insurer.

3. If any **Underlying Policy(ies)** contains a specific grant of coverage that is subject to a sublimit of liability, then coverage under this Policy shall not apply to any Claim which is otherwise subject to such grant of coverage. However, any Loss paid under the **Underlying Policies** on account of such Claim shall erode or exhaust the **Underlying Limit**, as provided in Section II.B.1 above, for purposes of this Policy.

4. If any **Underlying Policy(ies)**  is canceled or terminated during the **Policy Period** including the Discovery Period if exercised, the Insurer shall not be liable under this Policy to a greater extent than it would have been had such **Underlying Policy(ies)** been so maintained. To the extent the terms, conditions or limitations of any of the **Underlying Policy(ies)** are changed to limit or restrict coverage, this Policy shall become subject to such changes upon the effective date of the change in the **Underlying Policy(ies)**. To the extent the terms, conditions or limitations of any of the **Underlying Policy(ies)** are changed to expand or broaden coverage, this Policy shall become subject to such changes only if and to the extent the Insurer agrees to such changes  in writing and the **Insureds** pay any additional premium reasonably required by the Insurer for such changes.

C. NOTICE

All notices under this Policy shall be in writing and properly addressed to the appropriate party. Notice to the **Insureds** may be given to the **Named Insured** at the address as shown in Item 1. of the Declarations. Notice to the Insurer of any Claim or potential Claim under this Policy shall be given to the Insurer at the address as shown in Item 9.A. of the Declarations.  All other notices to the Insurer under this Policy shall be given to the Insurer at the address as shown in Item 9.B. of the Declarations.

Any notice to the insurer of an **Underlying Policy(ies)** shall not constitute notice to the Insurer unless also given to the Insurer as provided in this Section II.C.

D. CLAIMS PROVISIONS

1. The Insurer may, at its sole discretion, participate in the investigation, defense or settlement of any Claim or potential Claim reported to the Insurer under this Policy even if the **Underlying Limit** has not been exhausted.

2. No action by any other insurer shall bind the Insurer under this Policy.  The Insurer shall not be liable under this Policy for any settlements, stipulated judgments or defense costs to which the Insurer has not consented, which consent shall not be unreasonably withheld.

**E.** DISCOVERY PERIOD

The **Insureds** shall have the right to elect a Discovery Period under this Policy as described in, and subject to the terms of, the **Followed Form**. The additional premium for the Discovery Period shall be the same percentage of this Policy's annual premium as the percentage stated in the **Followed Form** for calculating the Discovery Period premium thereunder.  The Discovery

Period shall not be available unless the **Insured** has elected the Discovery Period in all unexhausted **Underlying Policies** and has provided proof thereof to the Insurer.

F.  DEFINITIONS

1.  Terms defined in the **Followed Form** are used herein with the meaning assigned to them in the **Followed Form** unless otherwise stated herein. Other words and phrases that appear in bold have special meaning and can be found below or in any endorsement or the specific Policy provision where they appear.

2.  **Followed Form**, **Underlying Policy(ies)** and **Limit of Liability** have the meanings attributed to them in the Declarations.

3.  **Insured(s)** means all natural persons and entities insured by the **Followed Form**.

4.  **Named Insured** means the entity named in Item 1 of the Declarations.

5.  **Primary Policy** means the first listed policy in Item 7.A of the Declarations.

6.  **Policy Period** means the period of time specified in Item 2. of the Declarations, subject to prior termination in accordance with the **Followed Form**.

7.  **Underlying Limit** means an amount equal to the aggregate of all limits of liability, as set forth in Item 7. of the Declarations, for all **Underlying Policies**, plus the retention or deductible, if any, applicable under the **Primary Policy**.



**Endurance American Insurance Company**

**750 3rd Avenue**
**New York, NY  10017**

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its President and Senior Vice President and countersigned where required by law on the Declarations page by its duly authorized representative.

**Senior Vice President**                    **President**

## FORMS AND ENDORSEMENT SCHEDULE

### FOLLOW FORM EXCESS MANAGEMENT LIABILITY INSURANCE POLICY

| End. No. | Title | Number |
|---|---|---|
| | Follow Form Excess Management Liability Insurance Declarations | EML 0001 0712 |
| | Follow Form Excess Management Liability Insurance Policy | EML 0201 0712 |
| | Signature Page | IL 1007 0114 |
| | Forms and Endorsement Schedule | IL 0101 0712 |
| 1. | Specific Events Exclusion | IL 1002 0712 |
| 2. | Deletion of Most Restrictive Underlying Terms (ABC Coverage) | EML 0902 0712 |
| 3. | DIC Erosion of Underlying Limit | EML 0903 0712 |
| 4. | Amendatory Inconsistency | EML 1324 0513 |
| 5. | Illinois Changes - Cancellation and Nonrenewal | EML 1000 1112 IL |
| 6. | Illinois Changes | EML 1113 1112 IL |
| 7. | Disclosure Pursuant to the Terrorism Risk Insurance Act | IL 1214 0115 |
| 8. | Cap on Losses from Certified Acts of Terrorism | IL 1204 0115 |
| | U.S. Treasury Department's Office of Foreign Assets Control (OFAC) | PN 0001 0712 |

*The titles of the endorsements listed above are solely for convenience and form no part of the terms and conditions of coverage.*

# ENDORSEMENT

| | | | |
|---|---|---|---|
| **Named Insured**: | Akorn, Inc. | Policy Number: | DOX10007587102 |

| | | | |
|---|---|---|---|
| Endorsement Effective Date: | June 01, 2017 | Endorsement Number: | 1 |
| | 12:01 AM Standard Time at the address of the **Named Insured** as shown in the Declarations. | | |

## GENERAL CHANGE
## (SPECIFIC EVENTS EXCLUSION)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

It is agreed that:


In consideration of the premium charged, it is hereby understood and agreed that, without limiting the effectiveness of any other EXLCUSIONS within this policy, the Insurer shall not be liable to make any payment for **Loss** in connection with: (i) any of the **Claim(s)**, notices, events, investigations or actions listed under EVENTS below (hereinafter "**Events**"); (ii) the prosecution, adjudication, settlement, disposition, resolution or defense of: (a) any **Event(s)**; or (b) any **Claim(s)** arising from any **Event(s)**; or (iii) any **Wrongful Act**, underlying facts, circumstances, acts or omissions in any way relating to any **Event(s)**.

<u>EVENTS</u>

1. *Solomon Yeung, etc. v. Akorn, Inc. et al.,* docket no. 1:15-cv-01944 filed in the Norther District of Illinois on or about March 4, 2015;

2. *Mikolaj Sarzynski, Individually and on Behalf of All Others Similarly Situated, v. Akorn, Inc., Rajat Rai, and Timothy A. Dick,* docket no. 1:15-cv-03921 filed in the Northern District of Illinois on or about May 4, 2015;

3. the Company's intent to restate its consolidated financial statements for the fiscal year ended December 31, 2014, and the fiscal quarters ended June 30, 2014, and September 30, 2014 (collectively, the "Restated Financial Statements").

For the purposes of this endorsement an "**Interrelated Wrongful Act**" means: (i) any fact, circumstance,
act or omission alleged in any **Event(s)** and/or (ii) any **Wrongful Act** which is the same as, similar or related to or a repetition of any **Wrongful Act** alleged in any **Event(s)**.

# ENDORSEMENT

_____
Authorized Representative

This endorsement does not change any other provision of the Policy.  The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

# ENDORSEMENT

**Named Insured**:  Akorn, Inc.                     Policy Number:   DOX10007587102

Endorsement                                          Endorsement
Effective Date:   June 01, 2017                      Number:       2
                  12:01 AM Standard Time at the address of the **Named Insured** as shown in the Declarations.

## DELETION OF MOST RESTRICTIVE UNDERLYING TERMS
## (ABC COVERAGE)

It is agreed that:

1.  Section II.A. is deleted in its entirety and is replaced with the following:

    This Policy, except as stated herein, is subject to all terms, conditions, representations and limitations as contained in the **Followed Form**. In no event shall this Policy grant broader coverage than would be provided by the **Followed Form**. In the event of any conflict between the terms, conditions, and limitations of this Policy and the **Followed Form,** the terms, conditions and limitations of this Policy shall control.

    If Loss covered under the **Followed Form** is not covered under another **Underlying Policy** because coverage under such **Underlying Policy** is narrower than the coverage under the **Followed Form**, then for purposes of liability attaching to this Policy the **Underlying Limit** for such **Underlying Policy** shall be eroded or exhausted with respect to such Loss paid by the **Insureds**, an insurer of any DIC policy excess of this Policy and/or any other party paying such Loss.

2.  Section II.B.4. is deleted in its entirety and is replaced with the following:

    If any **Underlying Policy(ies)** is canceled or terminated during the **Policy Period** including the Discovery Period if exercised, the Insurer shall not be liable under this Policy to a greater extent than it would have been had such **Underlying Policy(ies)** been so maintained. To the extent the terms, conditions or limitations of the **Followed Form** are changed to limit or restrict coverage, this Policy shall become subject to such changes upon the effective date of the change in the **Followed Form**. To the extent the terms, conditions or limitations of the **Followed Form** are changed to expand or broaden coverage, this Policy shall become subject to such changes only if and to the extent the Insurer agrees to such changes in writing and the **Insureds** pay any additional premium reasonably required by the Insurer for such changes.

_____
    Authorized Representative

This endorsement does not change any other provision of the Policy.  The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

# E N D O R S E M E N T

**Named Insured**:   Akorn, Inc.                              Policy Number:   DOX10007587102

Endorsement                                              Endorsement
Effective Date:   June 01, 2017                           Number:   3
                  (12:01 AM Standard Time at the address of the
                  **Named Insured** as shown in the Declarations)

## DIC EROSION OF UNDERLYING LIMIT

It is agreed that:

Section I, Insuring Clause, is deleted in its entirety and is replaced with the following:

Subject to the terms and conditions of this Policy, the Insurer shall provide to the **Insureds** insurance coverage for Claims first made during the **Policy Period**, including the Discovery Period if exercised. Liability for any covered Loss resulting from covered Claims shall attach to the Insurer only after the insurers of the **Underlying Policy(ies)**, the **Insureds**, the insurer of any DIC policy, and/or any other party shall have paid in legal currency the full amount of the **Underlying Limit** (including the applicable retention or deductible under the **Primary Policy**) pursuant to Section II.B.1 below. The Insurer shall then be liable to pay only covered Loss in excess of such **Underlying Limit** up to its **Limit of Liability** as set forth in Item 3 of the Declarations, which shall be the maximum aggregate liability of the Insurer under this Policy with respect to all Claims first made in each **Policy Period**, including the Discovery Period if exercised, against all **Insureds** irrespective of the time of payment by the Insurer.

_Joe Kelly III_

——————————————————————
              Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

# E N D O R S E M E N T

**Named Insured**: Akorn, Inc.                                    Policy Number:   DOX10007587102

Endorsement                                                      Endorsement
Effective Date:   June 01, 2017                                  Number:          4
<small>12:01 AM Standard Time at the address of the **Named Insured** as shown in the Declarations.</small>

## ILLINOIS CHANGES – CANCELLATION AND NONRENEWAL

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

It is agreed that:

A.  A Cancellation Condition is added as follows:

CANCELLATION

1.  The **Named Insured** shown in the Declarations may cancel this Policy by mailing advance written notice of cancellation to the Insurer.

2.  The Insurer may cancel this Policy by mailing to the **Named Insured** written notice stating the reason for cancellation. If the Insurer cancels for nonpayment of premium, the Insurer will mail the notice at least 10 days prior to the effective date of cancellation.

3.  If this Policy has been in effect for more than 60 days or is a renewal or continuation Policy, the Insurer may cancel only for one or more of the following reasons:

    a.  Nonpayment of premium;

    b.  Certification of the Director of Insurance of the loss of reinsurance by the Insurer that provided coverage to the Insurer for all or a substantial part of the underlying risk insured; or

    c.  A determination by the Director of Insurance that the continuation of the Policy could place the Insurer in violation of the insurance laws of this State.

4.  Notice of cancellation will state the effective date of cancellation. The **Policy Period** will end on that date.

5.  If this Policy is cancelled, the Insurer will send the **Named Insured** any premium refund due. If the Insurer cancels, the refund will be pro rata. If the **Named Insured** cancels, then the return premium will be computed at .90 of the pro rata unearned premium. The cancellation will be effective even if the Insurer has not offered a refund.

B.  When The Insurer Does Not Renew Condition is added as follows:

If the Insurer decides not to renew or continue this Policy, the Insurer will mail the **Named Insured** and the **Named Insured's** agent or broker written notice, stating the reason for nonrenewal, at least 60 days before the end of the **Policy Period**. If the Insurer offers to renew or continue and the **Named Insured** does not accept, this Policy will terminate at the end of the current **Policy Period**. Failure to pay the required renewal or continuation premium when due shall mean that the **Named Insured** has not accepted the Insurer's offer.

If the Insurer fails to mail proper written notice of nonrenewal and the **Named Insured** obtains other insurance, this Policy will end on the effective date of that insurance.

# ENDORSEMENT

C.   Mailing Of Notices is added as follows:

The Insurer will mail cancellation and nonrenewal notices to the **Named Insured**, and the agent or broker, at the last addresses known to the Insurer. The Insurer shall maintain proof of mailing of a cancellation or nonrenewal notice on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service.

_____
Authorized Representative

This endorsement does not change any other provision of the Policy.  The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# E N D O R S E M E N T

| | | | |
|---|---|---|---|
| **Named Insured**: | Akorn, Inc. | Policy Number: | DOX10007587102 |

| | | | |
|---|---|---|---|
| Endorsement Effective Date: | June 01, 2017 | Endorsement Number: | 5 |
| | (12:01 AM Standard Time at the address of the **Named Insured** as shown in the Declarations) | | |

## ILLINOIS CHANGES

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

It is agreed that:

A.  Paragraph 4. of Item B., Underlying Policies, of Section II, Terms and Conditions, is replaced by the following:

    4.  If any **Underlying Policy(ies)** is canceled or terminated during the **Policy Period** including the Discovery Period if exercised, the Insurer shall not be liable under this Policy to a greater extent than it would have been had such **Underlying Policy(ies)** been so maintained. To the extent the terms, conditions or limitations of any of the **Underlying Policy(ies)** are changed, this Policy shall become subject to such changes only if and to the extent the Insurer agrees to such changes  in writing and the **Insureds** pay any additional premium reasonably required by the Insurer for such changes.

_Joe Kelly III_

_____
       Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

# E N D O R S E M E N T

**Named Insured**:   Akorn, Inc.                          Policy Number:   DOX10007587102

Endorsement                                              Endorsement
Effective Date:   June 01, 2017                          Number:   6
                  (12:01 AM Standard Time at the address of the
                  **Named Insured** as shown in the Declarations)

## AMENDATORY INCONSISTENCY

It is agreed that:

To the extent there is an inconsistency between an endorsement to this Policy which is labeled as a state amendatory endorsement and any other term or condition of this Policy, then to the extent permitted by law, regulation or State Insurance Department Bulletin or Directive, the Insurer shall apply such terms and conditions of either the state amendatory endorsement or the Policy which are more favorable to the Insured.

Joe Kelly III
_____
Authorized Representative

This endorsement does not change any other provision of the Policy.  The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

# E N D O R S E M E N T

**Named Insured**:   Akorn, Inc.                Policy Number:    DOX10007587102

Endorsement                                          Endorsement
Effective Date:    June 01, 2017                Number:        7
                                 12:01 AM Standard Time at the address of the
                                 **Named Insured** as shown in the Declarations.

## DISCLOSURE PURSUANT TO THE TERRORISM RISK INSURANCE ACT

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

It is agreed that:

**SCHEDULE:   Terrorism Premium (Certified Acts): $0**

    **A.**   **Disclosure of Premium**
       In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium (shown in the Schedule above), if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act as amended and reauthorized. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement.

    **B.**   **Disclosure of Federal Participation in Payment of Terrorism Losses**
       The United States government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% in 2015 and decreases its share 1% each calendar year to a total of 80% in 2020 of that portion of the amount of such insured losses that exceeds the applicable insurer retention.  However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

    **C.**   **Cap On Insurer Participation In Payment Of Terrorism Losses**
       If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

# E N D O R S E M E N T

_____

Authorized Representative

This endorsement does not change any other provision of the Policy.  The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

Notice includes copyrighted material of Insurance Services Office, Inc. with its permission.

# E N D O R S E M E N T

**Named Insured**: Akorn, Inc.

Policy Number: DOX10007587102

Endorsement
Effective Date: June 01, 2017
12:01 AM Local Time at the address of
the **Named Insured** as shown in the
Declarations.

Endorsement
Number: 8

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

It is agreed that:

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and the Insurer has met its deductible under the Terrorism Risk Insurance Act, the Insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

# E N D O R S E M E N T

_____

Authorized Representative

This endorsement does not change any other provision of the Policy.  The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

# POLICYHOLDER NOTICE

## U. S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL (OFAC)

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy.  You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC.  **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency".  OFAC has identified and listed numerous:

- Foreign agents;

- Front organizations;

- Terrorists;

- Terrorist organizations; and

- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons".  This list can be located on the United States Treasury's website – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC.  When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC.  Other limitations on the premiums and payments also apply.

# Management Liability

303 West Madison, Suite 1800
Chicago, IL  60606

**Named Insured**:     Akorn, Inc.                                                    Policy Number:     DOX10007587102

Endorsement                                                                          Endorsement
Effective Date:        June 01, 2018                                                 Number:          9
                       (12:01 AM Standard Time at the address of the
                       **Named Insured** as shown in the Declarations)

## POLICY PERIOD EXTENSION

It is agreed that:

1.  ITEM 2. of the Declarations, "**Policy Period**", is deleted in its entirety and replaced with the following:

    ITEM 2.     **Policy Period**:  From: June 01, 2017          To: September 01, 2019
                                     (12:01 AM Standard Time at the address stated in Item 1.)

2.  The **Limit of Liability** stated in Item 3. of the Declarations shall be the maximum aggregate liability of the Insurer under this Policy with respect to all Claims first made during the extended **Policy Period** set forth in paragraph 1. above.

3.  Item 5. of the Declarations, Premium, is deleted and replaced with the following:

    ITEM 5.     **Premium**:  $ 204,088

_Joe Kelly III_
_____
Authorized Representative

This endorsement does not change any other provision of the **Policy**. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

**Management Liability**
303 West Madison, Suite 1800
Chicago, IL  60606

# E N D O R S E M E N T

| | |
|---|---|
| **Named Insured**: Akorn, Inc. | Policy Number:  DOX10007587102 |

Endorsement
Effective Date:    June 1, 2018

(12:01 AM Standard Time at the address of the **Named Insured** as shown in the Declarations.)

Endorsement
Number:        10

## GRANTING DISCOVERY PERIOD/RUN-OFF ENDORSEMENT

It is agreed that:

In consideration of an additional premium of $243,474 which is fully earned as of the Effective Date of this endorsement, it is hereby understood and agreed that this Policy is hereby amended as follows:

1.  ITEM 2 of the Declarations is deleted in its entirety and replaced with the following:

    ITEM 2 **Policy Period**:       From:   Six Years                              To: TBD
    (12:01 AM Standard Time at the address stated in Item 1.)

2.  The **Limit of Liability** stated in Item 3 of the Declarations shall be the maximum aggregate liability of the Insurer under this Policy with respect to all Claims first made during the extended Policy Period set forth in paragraph 1 above. This extended **Policy Period** does not reinstate or increase the **Limit of Liability** stated in Item 3 of the Declarations.

3.  The Insurer shall not be liable for Loss on account of any Claim for Wrongful Acts committed, attempted or allegedly committed or attempted after the Effective Date of this endorsement.

This Policy may not be canceled by the **Named Insured**, any other **Insured** or the Insurer, except that the Insurer may cancel this Policy for failure to pay a premium when due by giving written notice of such cancellation to the **Named Insured**.  Such cancellation shall be effective as of the date set forth in such notice, which shall be not less than fifteen (15) days after such notice, unless the premium is paid before such effective date.

_____
                  Authorized Representative

This endorsement does not change any other provision of the Policy.  The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

# E N D O R S E M E N T

**Named Insured**:  Akorn, Inc.                         Policy Number:  DOX10007587102

Endorsement                                              Endorsement
Effective Date:  June 1, 2018                            Number:        11
                 (12:01 AM Standard Time at the address of the
                 **Named Insured** as shown in the Declarations)

## GENERAL CHANGE MANUSCRIPT
## (FULLY EARNED PREMIUM ENDORSEMENT)

It is agreed that:

The premium for this Policy shall be fully earned as of June 1, 2018.

_____
                 Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.