**POLICYHOLDER NOTICE**

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aig.com/producer-compensation or by calling 1-800-706-3102.

91222 (9/16)



# Illinois National Insurance Company

*A capital stock company*

POLICY NUMBER: 01-498-04-39      REPLACEMENT OF POLICY NUMBER: 01-425-46-58

## SIDE-A EDGE<sup>SM</sup>

**NOTICES:** DEPENDING ON THE TERMS, CONDITIONS AND LIMITATIONS OF THE **FOLLOWED POLICY**, THIS POLICY MAY: (1) ONLY PROVIDE COVERAGE FOR LIABILITY FROM **CLAIMS** FIRST MADE OR FIRST MADE AND REPORTED, OR PRE-CLAIM INQUIRIES FIRST RECEIVED OR FIRST RECEIVED AND REPORTED, DURING ITS **POLICY PERIOD** OR **DISCOVERY PERIOD** (IF APPLICABLE); (2) HAVE ITS **LIMIT OF LIABILITY** REDUCED BY THE PAYMENT OF DEFENSE COSTS; AND (3) NOT IMPOSE A DUTY TO DEFEND ON THE **INSURER**.

PLEASE READ THE **FOLLOWED POLICY** AND THIS POLICY CAREFULLY AND DISCUSS THE COVERAGE AND TERMS WITH YOUR INSURANCE AGENT OR BROKER

## DECLARATIONS

| | | | | |
|---|---|---|---|---|
| **Named Entity:** | AKORN, INC. | | | |
| **Named Entity Address:** | 1925 W FIELD CT STE 300 | **Limit of Liability:** | $ | 10,000,000 |
| | LAKE FOREST, IL 60045-4824 | **Total Underlying Limits:** | $ | 30,000,000 |
| **Named Entity Domicile:** | IL | **Policy Period:** From: | | June 1, 2017 |
| **Insurer Address:** | 175 WATER STREET | To: | | June 1, 2018 |
| | NEW YORK, NY, 10038 | **Premium:** | $ | 84,436 |
| **Claims Address:** | | **TRIA Premium** | $ | 836 |
| e-mail: | c-claim@aig.com | | | |
| Mail: | AIG, Financial Lines Claims<br>P.O. Box 25947<br>Shawnee Mission, KS 66225 | | | |
| **Passport** | This policy does not serve as a master Passport policy. | | | |
| **Reinstatement Feature** | This policy does not include a Reinstatement Feature. If it does, see the Reinstatement Addendum for details. | | | |

© All rights reserved.

## SCHEDULE OF UNDERLYING COVERAGE

| | Underlying Insurer | Underlying Policy | Underlying Limit | Underlying Policy Period |
|---|---|---|---|---|
| * | XL Specialty Insurance Company | US00075683DO17A | $10,000,000 Primary | 06/01/2017 - 06/01/2018 |
| | Allied World National Assurance Company | 0307-5817 | $10,000,000 xs $10,000,000 | 06/01/2017 - 06/01/2018 |
| | Endurance American Insurance Company | DOX10007587102 | $10,000,000 xs $20,000,000 | 06/01/2017 - 06/01/2018 |

The **Policy Period** incepts and expires as of 12:01 A.M. at the **Named Entity Address**. Subject to the *CHANGES* Clause, **"Followed Policy"** means the policy in the Schedule with an "*" at the beginning of its row. If that policy is comprised of multiple coverage sections, **" Followed Policy"** only means the directors and officers liability insurance coverage section of that policy. **"TRIA Premium"** means the premium for Certified Acts of Terrorism Coverage under Terrorism Risk Insurance Act 2002.   Amount indicated above is included in **Premium**. A copy of the TRIA disclosure sent with the original quote is attached hereto.

© All rights reserved.

**IN WITNESS WHEREOF,** the **Insurer** has caused this Policy to be signed by its President, Secretary and Authorized Representative. This Policy shall not be valid unless signed below at the time of issuance by an authorized representative of the insurer.

**PRESIDENT**
Illinois National Insurance
Company

**SECRETARY**
Illinois National Insurance
Company

**AUTHORIZED REPRESENTATIVE**

**COUNTERSIGNED AT**  |  **DATE**  |  **COUNTERSIGNATURE**

*ARTHUR J GALLAGHER RISK MNGT SERV INC*
*300 S. RIVERSIDE PLAZA*
*STE. 1900*
*CHICAGO, IL 60606*

*1317910*

117121 (12/13)                    3

© All rights reserved.

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE
### (RIGHT TO PURCHASE COVERAGE)

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism.  As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury-in consultation with the Secretary of Homeland Security, and the Attorney General of the United States-to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING JANUARY 1, 2018; 81% BEGINNING JANUARY 1, 2019 and 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

### COPY OF DISCLOSURE SENT WITH ORIGINAL QUOTE

Insured Name: *AKORN, INC.*

Policy Number: *01-498-04-39*
Policy Period Effective Date From: *June 1, 2017*          To: *June 1, 2018*

Ⓡ 2015 National Association of Insurance Commissioner



**SIDE-A EDGE**[SM]

Guide

1. **INSURING AGREEMENTS** ……………………………………………**2**

- *Excess and Difference in Conditions ("DIC") Insured Person Side-A Coverage*
- *DIC Events*
- *Follow Form*
- *Followed Sublimits*
- *Underlying Match Assurance*

2. **EXTENSIONS AND ADDITIONAL PROTECTION** ………………………**4**

- *Blanket, For Profit Outside Director Liability*
- *Civil Fines & Penalties*
- *Enhanced Discovery*
- *Executive Protection Suite*
- *Non-rescindable*

*Recognition Of Erosion*

3. **WORLDWIDE AND CROSS-BORDER**………………………………**6**

- *Global Liberalization*
- *Passport Master Policy Program*

4. **EXCLUSION**………………………………………………………**6**

- *Exclusions Not Followed*
- *Conduct Exclusion*

5. **GENERAL TERMS AND CONDITIONS** …………………………**6**

- *Limits Of Liability*
- *Claims Made & Pre-Claim Inquiries Received*
- *Other Insurance & Indemnification*
- *Notices & Authority*
- *Rights*
- *Changes*
- *Conformance To Law*

6. **DEFINITIONS** …………………………………………………**9**

ADDENDUM:  REINSTATEMENT FEATURE, if included.

© All rights reserved.

**SIDE-A EDGE**

In consideration of the payment of the premium, the **Insurer** and the **Insured Persons** agree as follows:

## 1. INSURING AGREEMENTS

This policy provides coverage to **Insured Persons** solely for **Loss** that arises from **Claims** first made against **Insured Persons**, and **Pre-Claim Inquiry Costs** that arise from any **Pre-Claim Inquiry** first reported, during the **Policy Period** or the applicable **Discovery Period**. This policy is an excess follow form and difference in conditions insurance policy. It only protects and benefits **Insured Persons**.  No entity is covered in any respect under this policy.

A term in bold typeface not defined in this policy or stated in the Declarations shall have the same meaning as the same term defined in the **Followed Policy**.

| | |
|---|---|
| *Excess and Difference in Conditions ("DIC") Insured Person Side-A Coverage* | This policy shall pay: |

(i) the **Loss** of any **Insured Person**, where such **Loss** arises from any **Claim** for any **Wrongful Act** of such **Insured Person**; and

(ii) the **Pre-Claim Inquiry Costs** of any **Insured Person**;

in either case: (a) excess of amounts paid under any **Underlying Policy** and of amounts indemnified or advanced from an **Organization** or **Outside Entity**; or (b) on a drop-down basis solely as provided in the *Difference in Conditions ("DIC") Event Coverage* below.

| | |
|---|---|
| *DIC Events* | The policy will drop down and pay the **Loss** or **Pre-Claim Inquiry Costs** insured under the *Excess and DIC Insured Person Side-A Coverage* upon the occurrence of any one or more of the following events: |

(i) this policy affords broader coverage than the **Underlying Policy**;

(ii) the **Organization** fails or refuses for any reason to advance, pay or indemnify **Loss** or **Pre-Claim Inquiry Costs** of an **Insured Person** within any applicable retention of an **Underlying Policy**;

(iii) an **Outside Entity** and the **Organization** fails or refuses for any reason to advance, pay or indemnify **Loss** or **Pre-Claim Inquiry Costs** of an **Insured Person** serving as an **Outside Entity Executive** within any applicable retention of any **Underlying Policy** or management liability policy issued to the **Outside Entity**;

(iv) the refusal in writing of an **Underlying Insurer** for any reason to pay any **Loss** or **Pre-Claim Inquiry Costs** of any **Insured Person** pursuant to the terms and conditions of its **Underlying Policy**;

## 1. INSURING AGREEMENTS (Continued)

                    © All rights reserved.

**SIDE-A EDGE**

(v) the failure of an **Underlying Insurer** for any reason to pay or advance any **Loss** or **Pre-Claim Inquiry Costs** of any **Insured Person** within sixty (60) days of a written request from the **Named Entity** or an **Insured Person**;

(vi) the actual or intended avoidance, rescission or cancellation of an **Underlying Policy** by an **Underlying Insurer**;

(vii) the **Organization** fails or refuses to advance, pay or indemnify **Loss** or **Pre-Claim Inquiry Costs** of an **Insured Person** by reason of bankruptcy, receivership or any similar proceeding;

(viii) an **Outside Entity** and the **Organization** fails or refuses to advance, pay or indemnify **Loss** or **Pre-Claim Inquiry Costs** of an **Insured Person** serving as an **Outside Entity Executive** by reason of bankruptcy, receivership or any similar proceeding; or

(ix) the financial inability by reason of bankruptcy, receivership, liquidation or any similar proceeding of an **Underlying Insurer** to provide coverage to any **Insured Person**.

Advancement, payment or indemnification of an **Insured Person** by an **Organization**, **Outside Entity** or **Underlying Insurer** is deemed:

(a) "failed" if it has been requested by or on behalf of an **Insured Person** in writing and has not been provided by, agreed to be provided by or acknowledged as an obligation by, or is not collectible from, an **Organization**, **Outside Entity** or **Underlying Insurer**, respectively, within sixty (60) days of such request.

(b) "refused" if an **Organization**, **Outside Entity** or **Underlying Insurer** gives a written notice of the refusal to the **Insured Person**.

*Follow Form*

This policy shall provide coverage for **Insured Persons** in accordance with the terms, conditions and limitations of the coverage for non-indemnified **Loss** and **Pre-Claim Inquiry Costs** of **Insured Persons** within the **Followed Policy** as they were in existence at the inception of the **Policy Period**, as modified by and subject to the terms, conditions and limitations of this policy.

*Followed Sublimits*

If any **Loss** or **Pre-Claim Inquiry Costs** are subject to a sublimit of liability under the **Followed Policy**, this policy shall pay such **Loss** or **Pre-Claim Inquiry Costs** of any **Insured Person** excess of amounts actually paid under any **Underlying Policy**, regardless of whether the full limit of liability of any **Underlying Policy** has been exhausted. This policy shall provide coverage for such **Loss** subject to a sublimit of liability equal to that set forth in the **Followed Policy**, which shall be part of and not in addition to this policy's **Limit of Liability**.

1. INSURING AGREEMENTS (Continued)

117121 (12/13)                    Page 3 of 12                    © All rights reserved.

**SIDE-A EDGE**

| | |
|---|---|
| *Underlying Match Assurance* | For any **Claim** against or **Pre-Claim Inquiry** received by any **Insured Person**, this policy shall be extended to include coverage for **Loss** of **Insured Persons** provided by any **Underlying Policy** (including but not limited to the **Followed Policy**) that is not already encompassed in this policy, excess of amounts actually paid under any **Underlying Policy** and amounts actually indemnified or advanced from an **Organization** or **Outside Entity**. In no event shall this provision increase any limit of liability of this policy. |

## 2. EXTENSIONS AND ADDITIONAL PROTECTION

| | |
|---|---|
| *Blanket, For Profit Outside Director Liability* | In addition to the definition of "**Outside Entity Executive**" set forth in the **Followed Policy**, **Outside Entity Executive** under this policy shall also mean any **Executive** of an **Organization** who is or was acting at the specific and verifiable request or direction of an **Organization** as an **Executive** of any for-profit entity, but only when such specific and verifiable request or direction occurs prior to the **Wrongful Act** giving rise to a **Claim**. |
| | In addition to the definition of "**Outside Entity**" set forth in the **Followed Policy**, **Outside Entity** under this policy shall also mean any for-profit entity. |
| *Civil Fines & Penalties* | In addition to the definition of "**Loss**" set forth in the **Followed Policy**, **Loss** shall also include civil fines and civil penalties assessed by any **Enforcement Body** against any **Insured Person** in connection with a **Claim** if such assessment does not relate to any determination of a grossly negligent or deliberate violation of law by such **Insured Person** and is not otherwise prohibited by the assessment itself. |
| *Enhanced Discovery* | This policy shall follow the terms, conditions and limitations of the Discovery Section or Clause of the **Followed Policy**. |
| | Additionally, in the event the **Named Entity** first becomes the subject of a bankruptcy case (or the equivalent in a **Foreign Jurisdiction**) during the **Policy Period**, the **Insured Persons** shall have the right to a discovery period of unlimited duration commencing on the date of entry of a final order of dissolution in such bankruptcy case, in which to give the **Insurer** written notice of: |

(a) **Claims** first made against an **Insured Person**;
(b) **Pre-Claim Inquiries** first received by an **Insured Person**; and
(c) circumstances of which an **Insured Person** shall become aware;

after the date of entry of a final order of dissolution in such bankruptcy case and solely with respect to a **Wrongful Act** that occurs prior to such date. Such discovery period shall be provided upon payment of an additional premium equal to 100% of the premium level in effect for this policy.

## 2. EXTENSIONS AND ADDITIONAL PROTECTION (Continued)

© All rights reserved.

# SIDE-A EDGE

Any **Executive** that ceases to serve as an **Executive** during the **Policy Period** shall be provided, for no additional premium, with a discovery period of unlimited duration in which to give the **Insurer** written notice of: (i) **Claims** first made against such former **Executive**; and (ii) **Pre-Claim Inquiries** first received by such former **Executive**; after the effective date of such former **Executive's** ceasing to serve in their capacity as **Executive** and solely with respect to a **Wrongful Act** that occurs prior to such date.   This discovery period for former **Executives** shall be specifically excess of any valid and collectible insurance otherwise in place for such former **Executives**. The **Limit of Liability** for any discovery period provided under this policy shall be part of, and not in addition to, the corresponding **Limit of Liability** for the **Policy Period**.   This discovery period of unlimited duration, however, shall not apply to any **Executive** who ceases to serve as an **Executive** as a result of a **Transaction**.

*Executive Protection Suite*

**Loss** shall also mean the following items, provided that they arise out of a **Claim** or **Pre-Claim Inquiry**:

**(1) Clawback Costs**;

**(2) Extradition Costs**;

**(3) UK Corporate Manslaughter Act Defense Costs**;

**(4) Executive ReputationGuard Expenses**, subject to a $100,000 per **Executive** and a $500,000 aggregate sublimit of liability; and

**(5) Asset Protection Costs**, subject to a $50,000 per **Executive** and a $250,000 aggregate sublimit of liability.

*Non-rescindable*

The **Insurer** shall not be entitled, under any circumstances, to rescind or void this policy in whole or in part.

*Recognition Of Erosion*

This policy shall recognize erosion of an **Underlying Limit** of an **Underlying Policy** through payments by others of **Loss** insured under that **Underlying Policy**.

© All rights reserved.

**SIDE-A EDGE**

### 3. WORLDWIDE AND CROSS-BORDER

*Global Liberalization*

The coverage afforded by this policy shall apply anywhere in the world.

For **Loss** from that portion of any **Claim**, or **Pre-Claim Inquiry Costs** from that portion of any **Pre-Claim Inquiry**, maintained in a **Foreign Jurisdiction**, the **Insurer** shall apply the terms and conditions of this policy as amended to include those of any **Foreign Policy** in the **Foreign Jurisdiction** that are more favorable to **Insured Persons** in the **Foreign Jurisdiction**. This *Global Liberalization* Clause shall not apply to any provision of any **Foreign Policy** that has worldwide effect, including but not limited to any provision addressing limits of liability (primary, excess or sublimits), retentions, other insurance, non-renewal, duty to defend, defense within or without limits, taxes, conformance to law or excess liability coverage, any claims made provisions, and any endorsement to this policy that excludes or limits coverage for specific events or litigation or that specifically states that it will have worldwide effect.

*Passport Master Policy Program*

If the Passport option box has been checked on the Declarations, then this policy shall act as a master policy and the coverage afforded by this policy shall be provided in conjunction with the Passport foreign underlyer policy issued in each jurisdiction selected by the **Named Entity**. The specific structure of the coverage provided by this master policy in conjunction with each Passport foreign underlyer policy is set forth in the Passport Structure Appendix attached to this policy.

### 4. EXCLUSION

*Exclusions Not Followed*

This policy shall not follow the Exclusions Section or Clause of the **Followed Policy**.

*Conduct Exclusion*

The **Insurer** shall not be liable to make any payment for that portion of **Loss** in connection with any **Claim** made against any **Insured Person** that arises out of, is based upon or is attributable to: (a) any remuneration, profit or other advantage to which a final, non-appealable adjudication in the underlying action establishes that the **Insured Person** was not legally entitled; or (b) any deliberate criminal or deliberate fraudulent act by the **Insured Person**, if a final, non-appealable adjudication in the underlying action establishes that such deliberate criminal or deliberate fraudulent act was committed; provided, however: (i) this exclusion shall not apply to **Defense Costs**; and (ii) part (a) of this exclusion shall not apply in a **Claim** alleging violations of Section 11, 12 or 15 of the Securities Act of 1933, as amended, to the portion of any **Loss** attributable to such violations.

### 5. GENERAL TERMS AND CONDITIONS

© All rights reserved.

**SIDE-A EDGE**

| | |
|---|---|
| *Limits Of Liability* | The **Limit of Liability** is the aggregate limit of the **Insurer's** liability for all **Loss** and **Pre-Claim Inquiry Costs** arising from all **Claims** first made, and all **Pre-Claim Inquiries** first received, during the **Policy Period** or **Discovery Period** (if applicable). |
| *Claims Made & Pre-Claim Inquiries Received* | This policy provides coverage for **Claims** first made against an **Insured Person**, and **Pre-Claim Inquiries** first received by an **Insured Person**, during the **Policy Period** or the **Discovery Period** (if applicable) and reported in the manner as may be required by the **Followed Policy**. |

**Claims** first made against an **Insured Person** and **Pre-Claim Inquiries** first received by an **Insured Person** prior to the inception date of this policy, and **Claims** deemed as first made against an **Insured Person** and **Pre-Claim Inquiries** deemed as first received by an **Insured Person** under any directors and officers liability insurance policy in force prior to the inception date of this policy, are not covered under this policy.

All **Claims** made against an **Insured Person**, and all **Pre-Claim Inquiries** received by an **Insured Person**, alleging, arising out of, based upon or attributable to the same or related facts, **Wrongful Acts**, circumstances or situations, or the same or related series of facts, **Wrongful Acts**, circumstances or situations, shall be deemed to be a single **Claim** or **Pre-Claim Inquiry** made or received at the time the earliest such **Claim** was first made against, or **Pre-Claim Inquiry** was first received by, an **Insured Person**.

| | |
|---|---|
| *Other Insurance & Indemnification* | This policy shall follow the terms, conditions and limitations of the **Followed Policy's** Other Insurance Section or Clause. The coverage provided by this policy: |

(a) for **Outside Entity Executives** is specifically excess over any directors and officers liability policy issued to an **Outside Entity**;

(b) for **Loss** in connection with any **Claim** made against an **Insured Person** that is for bodily injury, sickness, disease, or death of any person, or damage to or destruction of any tangible property, shall apply specifically as excess over any property, casualty or commercial general liability insurance issued to or available to an **Organization** or **Outside Entity**, either directly or as an additional insured, and any personal liability insurance issued to such **Insured Person**; and

(c) for **Loss** in connection with any **Claim** made against an **Insured Person** as a fiduciary of any employee benefit plan sponsored by an **Organization** or any matter claimed against such **Insured Person** by reason of his or her status as such, shall apply specifically as excess over any fiduciary liability insurance policy that names any **Organization** as a sponsor of a covered plan.

5.  GENERAL TERMS AND CONDITIONS  (Continued)

© All rights reserved.

**SIDE-A EDGE**

*Notices & Authority*   Where the **Followed Policy** requires or permits notice to its insurer, the **Named Entity** and the **Insured Persons** have the same obligations and rights to notify the **Insurer** under this policy, except that with respect to this policy, any notice to the **Insurer** must be directed as follows:  (a) for claims-related matters, by mail or e-mail to the **Claims Address**; and (b) for all other notices, by mail to the **Insurer Address**.  The **Named Entity** shall act on behalf of each and every **Insured Person** with respect to the giving and receiving of notice of cancellation or nonrenewal, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy and in the exercising of any right to a **Discovery Period**.

*Rights*   The **Insurer** shall have the same rights, privileges and protections afforded to the **Underlying Insurer** of the **Followed Policy** in accordance with the terms, conditions and limitations of the **Followed Policy**.  The **Insurer** shall also have the right, in its sole discretion, but not the obligation, to effectively associate with the **Insured Persons** in the defense and settlement of any **Claim** or **Pre-Claim Inquiry** that appears to be reasonably likely to involve the **Insurer**. The **Named Entity**, each **Organization** and the **Insured Persons** shall provide the **Insurer** with such information, assistance and cooperation as the **Insurer** may reasonably request and shall not do anything that prejudices the **Insurer's** position or potential rights of recovery of payments made in connection with this Policy.

Notwithstanding the foregoing paragraph, the failure of the **Named Entity**, each **Organization** or any **Insured Person** to give the **Insurer** such information, assistance or cooperation shall not impair the rights of any other **Insured Person** under this policy.

The **Organizations** agree to indemnify the **Insured Persons** and/or advance **Defense Costs** to the fullest extent permitted by law. If the **Insurer** pays under this policy any indemnification or advancement owed to any **Insured Person** by any **Organization**, then that **Organization** shall reimburse the **Insurer** for such amounts and such amounts shall become immediately due and payable as a direct obligation of the **Organization** to the **Insurer**. The failure of an **Organization** to perform any of its obligations to indemnify the **Insured Persons** and/or advance **Defense Costs** under this policy shall not impair the rights of any **Insured Person** under this policy.  In no event shall any such advancement by the **Insurer** relieve any **Organization**, **Outside Entity** or **Underlying Insurer** of any duty it may have to provide advancement, make any payment or provide indemnification to any **Insured Person**.

5.  GENERAL TERMS AND CONDITIONS  (Continued)

117121 (12/13)                    Page 8 of 12                    © All rights reserved.

**SIDE-A EDGE**

| | |
|---|---|
| Changes | *If, subsequent to the issuance of the Followed Policy, the terms, conditions or limitations of an Underlying Policy are modified, the Named Entity and the Insured Persons must notify the Insurer in writing, as soon as practicable, of such modification. If any changes to the Followed Policy: (a) expand coverage, (b) change the Named Entity's name or address, or (c) modify premium, this policy shall not follow those changes unless the Named Entity or the Insured Persons have secured the Insurer's written consent to do so.* |
| Conformance To Law | *Coverage under this policy shall not be provided to the extent prohibited by any law.* |

6. DEFINITIONS

| | |
|---|---|
| **"Asset Protection Cost"** | means reasonable and necessary fees, costs and expenses consented to by the **Insurer** and incurred by an **Executive** of an **Organization** to oppose any efforts by an **Enforcement Body** to seize or otherwise enjoin the personal assets or real property of such **Executive** or to obtain the discharge or revocation of a court order entered during the **Policy Period** in any way impairing the use thereof. |
| **"Clawback Costs"** | means the reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including the premium or origination fee for a loan or bond) and incurred by an **Executive** to facilitate the return of amounts required to be repaid by such **Executive** pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002 ("SOX 304") or Section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank 954"). "**Clawback Costs**" do not include the payment, return, reimbursement, disgorgement or restitution of any such amounts requested or required to be repaid by such **Executive** pursuant to either SOX 304 or Dodd-Frank 954. |
| **"Derivative Demand"** | means a written demand by any shareholder of an **Organization** upon the board of directors (or equivalent management body) of such **Organization** to commence a civil action on behalf of the **Organization** against any **Executive** of the **Organization** for any actual or alleged wrongdoing on the part of such **Executive.** |
| **"Derivative Investigation"** | means, after receipt by any **Insured** of a **Claim** that is either a **Derivative Suit** or a **Derivative Demand**, any investigation conducted by the **Organization**, or on behalf of the **Organization** by its board of directors (or the equivalent management body) or any committee of the board of directors (or equivalent management body), as to how the **Organization** should respond. |
| **"Enforcement Body"** | means: (a) any federal, state, local or foreign law enforcement authority or other governmental investigative authority (including, but not limited to, the U.S. Department of Justice, the U.S. |

**SIDE-A EDGE**

6.  DEFINITIONS (Continued)

|  | Securities and Exchange Commission and any attorney general); or (b) the enforcement unit of any securities or commodities exchange or other self-regulatory organization. |
|---|---|
| **"Executive ReputationGuard Expenses"** | means reasonable and necessary fees, costs and expenses of a **Panel PR Firm** retained within 30 days of a **Personal Reputation Crisis** solely and exclusively by an **Executive** to mitigate the damage to the **Executive's** reputation from a **Personal Reputation Crisis**. "**Executive ReputationGuard Expenses**" shall not include any fees, costs or expenses of any **Panel PR Firm** incurred by an **Executive** if such **Panel PR Firm** is also retained by or on behalf of an **Organization**. |
| **"Extradition"** | means any formal process by which an **Insured Person** located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation. |
| **"Extradition Costs"** | means **Defense Costs** incurred by an **Insured** in lawfully opposing any effort to obtain the **Extradition** of an **Insured Person**. |
| **"Foreign Jurisdiction"** | means any jurisdiction, other than the United States of America or any of its territories or possessions. |
| **"Foreign Policy"** | means the standard policy form, including all mandatory endorsements, if any, typically offered for sale in a **Foreign Jurisdiction** for comparable risks by the **Insurer** or any of its affiliates that provides excess "Side-A" (non-indemnifiable loss) executive management liability coverage substantially similar to the coverage provided by this form. If no such policy exists, then "**Foreign Policy**" means the portions of the standard directors and officers liability policy form addressing coverage for "Side-A" (non-indemnifiable loss) for **Insured Persons**. |
|  | The term "**Foreign Policy**" shall not include any partnership managerial, pension trust or professional liability coverage. |
| **"Liberty Protection Costs"** | means: <br> (a) reasonable and necessary fees, costs and expenses consented to by the **Insurer** and incurred by an **Insured Person** in order for an **Insured Person** to lawfully seek the release of the **Insured Person** from any pre-**Claim** arrest or confinement to a: (i) specified residence; or (ii) secure custodial premises operated by or on behalf of any law enforcement authority; or <br><br> (b) reasonable and necessary premiums (but not collateral) consented to by the **Insurer** and incurred by an **Insured Person** for a bond or other financial instrument to guarantee the contingent obligation of the **Insured Person** for a specified |

© All rights reserved.

**SIDE-A EDGE**

6. DEFINITIONS (Continued)

amount required by a court during the **Policy Period**, if such premiums: (i) arise out of an actual or alleged **Wrongful Act**; or (ii) are incurred solely by reason of such **Insured Person's** status as an **Executive** or **Employee** of an **Organization**.

**"Panel PR Firm"**

means any public relations, crisis management or brand management firm specifically retained by an **Executive** in connection with a **Personal Reputation Crisis** but only if such firm is listed under the "ReputationGuard®" link at http://www.aig.com/us/panelcounseldirectory as an approved ReputationGuard® **Panel PR Firm** at the time the firm is retained.

**"Personal Reputation Crisis"**

means any negative statement that is included in any press release or published by any print or electronic media outlet regarding an **Executive** of an **Organization** made during the **Policy Period** regarding any **Wrongful Acts** that form the basis of any **Claim** or **Pre-Claim Inquiry** covered under this policy.

**"Pre-Claim Inquiry"**

means any pre-**Claim**:

(a) verifiable request for an **Insured Person** of any **Organization**: (i) to appear at a meeting or interview; or (ii) produce documents that, in either case, concerns the business of that **Organization** or that **Insured Person's** insured capacities, but only if the request came from any:

(1) **Enforcement Body**; or

(2) **Organization**, or, on behalf of an **Organization**, by its board of directors (or the equivalent management body) or any committee of the board of directors (or the equivalent management body):

(A) arising out of an inquiry or investigation by an **Enforcement Body** concerning the business of that **Organization** or that **Insured Person's** insured capacities; or

(B) as part of its **Derivative Investigation**; and

(b) arrest or confinement of an **Executive** of an **Organization** to a: (i) specified residence; or (ii) secure custodial premises operated by or on behalf of an **Enforcement Body**, in connection with the business of any **Organization** or an **Insured Person's** capacity as an **Executive** or **Employee** of an **Organization.**

**"Pre-Claim Inquiry"** shall not include any routine or regularly scheduled regulatory or internal supervision, inspection, compliance, review, examination, production or audit, including any request for mandatory information from a regulated entity, conducted in an **Organization's** and/or **Enforcement Body's** normal review or compliance process.

**SIDE-A EDGE**

6.  DEFINITIONS (Continued)

**"Pre-Claim Inquiry Costs"**          means:

(a) as respects a **Pre-Claim Inquiry** under subparagraph (a) of the definition of such term, the reasonable and necessary pre-**Claim** fees, costs and expenses consented to by the **Insurer** and incurred by an **Insured Person** solely in connection with his/her preparation for and response to a **Pre-Claim Inquiry** directed to such **Insured Person**, including attendance at an interview or meeting requested by an **Enforcement Body**, but excluding: (i) any compensation of any **Insured Person**; and (ii) the costs of complying with any formal or informal discovery or other request seeking documents, records or electronic information in the possession or control of an **Organization**, the requestor or any other third party; and

(b) as respects a **Pre-Claim Inquiry** under subparagraph (b) of the definition of such term, **Liberty Protection Costs**.

**"Transaction"**          unless defined in the **Followed Form**, means:

(1) owning interests representing more than 50% of the voting, appointment or designation power for the selection of a majority of: the Board of Directors of a corporation; the management committee members of a joint venture; or the members of the management board of a limited liability company; or

(2) having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of an **Organization**, to elect, appoint or designate a majority of: the Board of Directors of a corporation; the management committee of a joint venture; or the management board of a limited liability company.

**"UK Corporate Manslaughter Act Defense Costs"**          means **Defense Costs** incurred by an **Insured Person** that result solely from the investigation, adjustment, defense and/or appeal of a **Claim** against an **Organization** for violation of the United Kingdom Corporate Manslaughter and Corporate Homicide Act of 2007 or any similar statute in any jurisdiction.

**"Wrongful Act"**          in addition to the definition provided in the **Followed Policy**, also means any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by any **Insured Person** as a fiduciary of any employee benefit plan sponsored solely by any **Organization** or any matter claimed against such **Insured Person** solely by reason of his or her status as such.

**ENDORSEMENT#** *1*

This endorsement, effective *12:01 am*      *June 1, 2017*          forms a part of
policy number   *01-498-04-39*
issued to *AKORN, INC.*

by    *Illinois National Insurance Company*

**NOTICE OF CLAIM**
**(REPORTING BY E-MAIL)**

In consideration of the premium charged, it is hereby understood and agreed as follows:

1.  *Email Reporting of Claims*: In addition to the postal address set forth for any Notice of Claim Reporting under this policy, such notice may also be given in writing pursuant to the policy's other terms and conditions to the Insurer by email at the following email address:

    c-claim@AIG.com

    Your email must reference the policy number for this policy. The date of the Insurer's receipt of the emailed notice shall constitute the date of notice.

    In addition to Notice of Claim Reporting via email, notice may also be given to the Insurer by mailing such notice to: AIG, Financial Lines Claims, P.O. Box 25947, Shawnee Mission, KS 66225 or faxing such notice to (866) 227-1750.

2.  *Definitions*: For this endorsement only, the following definitions shall apply:

    (a)  "Insurer" means the "Insurer," "Underwriter" or "Company" or other name specifically ascribed in this policy as the insurance company or underwriter for this policy.

    (b)  "Notice of Claim Reporting" means "notice of claim/circumstance," "notice of loss" or other reference in the policy designated for reporting of claims, loss or occurrences or situations that may give rise or result in loss under this policy.

    (c)  "Policy" means the policy, bond or other insurance product to which this endorsement is attached.

3.  This endorsement does not apply to any Kidnap & Ransom/Extortion Coverage Section, if any, provided by this policy.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 001*

99758 (8/08)                        Page 1 of 1

ENDORSEMENT# *2*

This endorsement, effective *12:01 am   June 1, 2017*          forms  part of
policy no.: *01-498-04-39*
issued to  *AKORN, INC.*

by:  *Illinois National Insurance Company*

**ILLINOIS AMENDATORY ENDORSEMENT**

Wherever used in this endorsement: 1) "we", "us", "our", and "Insurer" mean the insurance company which issued this policy;  and 2) "you", "your", "Named Insured", and "Insured" mean the Named Corporation, Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

**CANCELLATION AND NONRENEWAL**

A.  The cancellation provision of this policy is replaced by the following:

CANCELLATION

1.  The Named Insured may cancel this policy by mailing to the Insurer advance written notice of cancellation.

2.  If this policy has been in effect for sixty (60) days or less, the Insurer may cancel this policy by mailing to the Named Insured written notice of cancellation at least:

    a.  Ten (10) days before the effective date of cancellation if the Insurer cancels for nonpayment of premium; or

    b.  Thirty (30) days before the effective date of cancellation if the Insurer cancels for any other reason.

    A copy of the notice will also be sent to the mortgagee or lien holder at the last mailing address known to the Insurer.

3.  If this policy has been in effect for more than sixty (60) days the Insurer may cancel this policy only for one or more of the following reasons:

    a.  Nonpayment of premium;

    b.  The policy was obtained through a material misrepresentation;

    c.  The Named Insured or Other Insured(s) have violated any of the terms and conditions of the policy;

    d.  The risk originally accepted has measurably increased;

    e.  Certification to the Director of Insurance of the loss of reinsurance by the Insurer which provided coverage to the Insurer for all or a substantial part of the underlying risk insured; or

    f.  A determination by the Director that the continuation of the policy could place the Insurer in violation of the insurance laws of this State.

© All rights reserved.

*END 002*

**ENDORSEMENT#** *2*   (continued)

If the Insurer cancels this policy based on one or more of the above reasons except for nonpayment of premium, the Insurer will mail written notice to the Named Insured at least sixty (60) days before the effective date of cancellation.  When cancellation is for nonpayment of premium, the Insurer will mail notice at least ten (10) days before the effective date of cancellation.

4.  The Insurer will mail the notice to the Named Insured and the agent or broker at the last addresses known to the Insurer.

5.  Notice of cancellation will state the effective date of cancellation and a specific explanation of the reason or reasons for cancellation. The policy period will end on that date.

6.  If this policy is cancelled, the Insurer will send the Named Insured any premium refund due.  If the Insurer cancels, the refund will be pro rata.  If the Named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even if the Insurer has not made or offered a refund.

7.  Proof of mailing on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service will be maintained by the Insurer and will be sufficient proof of notice.

B.  The nonrenewal provision of this policy is replaced by the following:

**NONRENEWAL**

1.  If the Insurer decides not to renew this policy, the Insurer will mail written notice stating the reason for nonrenewal to the Named Insured's last mailing address known to the Insurer at least sixty (60) days before the expiration date of the policy.  A copy of the notice will also be sent to:

    a.  The broker, if known to the Insurer, or the agent of record; and

    b.  The last known mortgagee or lienholder named in the policy at the last mailing address known to the Insurer.

    Proof of mailing on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service will be maintained by the Insurer and will be sufficient proof of notice.
    This paragraph does not apply if the Insurer has manifested a willingness to renew directly to the Named Insured.

All other terms, conditions and exclusions shall remain unchanged.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

*END 002*

Page 2 of 2

52142(7/13)

ENDORSEMENT# 3

This endorsement, effective  *12:01 am*      *June 1, 2017*                forms a part of
policy number   *01-498-04-39*
issued to    *AKORN, INC.*

by      *Illinois National Insurance Company*

### ECONOMIC SANCTIONS ENDORSEMENT

Product Name: SIDE - A EDGE POLICY


### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

*This endorsement modifies insurance provided under the following:*

Coverage shall only be provided  and payment of loss  under this policy shall only  be made
in full compliance with  enforceable United Nations economic  and trade sanctions  and the
trade and  economic sanction  laws or  regulations of  the European  Union and  the United
States of  America, including,  but not  limited to,  sanctions, laws  and regulations
administered and  enforced by  the U.S. Treasury Department's  Office  of Foreign  Assets
Control ("OFAC").


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© All rights reserved.

119679 (09/15)          *END 3*

**ENDORSEMENT# 4**

This endorsement, effective *12:01 am    June 1, 2017*           forms a part of
policy number  *01-498-04-39*
issued to  *AKORN, INC.*

by    *Illinois National Insurance Company*

## AMENDED SIDE A EDGE AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the policy
is amended as follows:

### I.

The Declarations are amended to add the following at the end thereof:

| | |
|---|---|
| *SAME* | *The **Followed Policy** does not include a Side-A Match Edge endorsement providing Side-A coverage that follows the terms and conditions of this policy.* |

### II.

Clause 1. INSURING AGREEMENTS is deleted in its entirety and replaced with the
following:

### 1. INSURING AGREEMENTS

This policy provides coverage to **Insured Persons** solely for **Loss** that arises from **Claims**
first made against **Insured Persons**, and **Pre-Claim Inquiry Costs** that arise from any
**Pre-Claim Inquiry** first reported to the **Insurer**, during the **Policy Period** or the applicable
**Discovery Period**. This policy is an excess follow form and difference in conditions
insurance policy. It only protects and benefits **Insured Persons**. No entity is covered in any
respect under this policy.

A term in bold typeface not defined in this policy or stated in the Declarations shall have
the same meaning as the same term defined in the **Followed Policy**.

*Excess and Difference in Conditions ("DIC") Insured Person Side-A Coverage*

This policy shall pay:

(i) the **Loss** of any **Insured Person**, where such **Loss** arises from any
**Claim** for any **Wrongful Act** of such **Insured Person**; and

(ii) the **Pre-Claim Inquiry Costs** of any **Insured Person**;

M122379 (09/16)                    *END 4*

**ENDORSEMENT# *4*** **(Continued)**

This endorsement, effective *12:01 am    June 1, 2017*          forms a part of
policy number  *01-498-04-39*
issued to   *AKORN, INC.*

by    *Illinois National Insurance Company*

|  |  |
|---|---|
| | in either case: (a) excess of amounts paid under any **Underlying Policy** (including payments by any **Insured Person** or others of **Loss** or **Pre-Claim Inquiry Costs** insured under that **Underlying Policy** and payments under any other policy with a limit of liability tied in with the limit of liability of that **Underlying Policy**) and of amounts indemnified or advanced from an **Organization** or **Outside Entity**; or (b) on a drop-down basis solely as provided in the Difference in Conditions ("DIC") Event Coverage below. |
| *DIC Events* | The policy will drop down and pay the **Loss** or **Pre-Claim Inquiry Costs** of an **Insured Person** if, for any reason, an **Organization** or **Outside Entity** fails or refuses to advance, pay or indemnify **Loss** or **Pre-Claim Inquiry Costs** within an applicable retention; or an **Underlying Insurer** fails or refuses to advance, pay or indemnify **Loss** or **Pre-Claim Inquiry Costs** under an **Underlying Policy**; including but not limited to the occurrence of any one or more of the following events: |

(i)  this policy affords broader coverage than the **Underlying Policy**;

(ii)  the **Organization** fails or refuses for any reason to advance, pay or indemnify **Loss** or **Pre-Claim Inquiry Costs** of an **Insured Person** within any applicable retention of an **Underlying Policy**;

(iii) an **Outside Entity** and the **Organization** fails or refuses for any reason to advance, pay or indemnify **Loss** or **Pre-Claim Inquiry Costs** of an **Insured Person** serving as an **Outside Entity Executive** within any applicable retention of any **Underlying Policy** or management liability policy issued to the **Outside Entity**;

(iv) the refusal in writing of an **Underlying Insurer** for any reason to pay any **Loss** or **Pre-Claim Inquiry Costs** of any **Insured Person** pursuant to the terms and conditions of its **Underlying Policy**;

(v)  the failure of an **Underlying Insurer** for any reason to pay or advance any **Loss** or **Pre-Claim Inquiry Costs** of any **Insured Person** within sixty (60) days of a written request from the **Named Entity** or an **Insured Person**;

(vi) the actual or intended avoidance, rescission or cancellation of an **Underlying Policy** by an **Underlying Insurer**;

(vii)the **Organization** fails or refuses to advance, pay or indemnify **Loss** or **Pre-Claim Inquiry Costs** of an **Insured Person** by reason of bankruptcy, receivership or any similar proceeding in any jurisdiction worldwide;

**ENDORSEMENT# *4*** (Continued)

This endorsement, effective *12:01 am* *June 1, 2017* forms a part of
policy number *01-498-04-39*
issued to *AKORN, INC.*

by *Illinois National Insurance Company*

(viii) an **Outside Entity** and the **Organization** fails or refuses to advance, pay or indemnify **Loss** or **Pre-Claim Inquiry Costs** of an **Insured Person** serving as an **Outside Entity Executive** by reason of bankruptcy, receivership or any similar proceeding in any jurisdiction worldwide;

(ix) the financial inability by reason of bankruptcy, receivership, liquidation or any similar proceeding in any jurisdiction worldwide of an **Underlying Insurer** to provide coverage to any **Insured Person**; or

(x) an **Underlying Insurer** is unable to or precluded from paying **Loss** or **Pre-Claim Inquiry Costs** of an **Insured Person** by reason of bankruptcy, receivership or any similar proceeding in any jurisdiction worldwide by or against an **Organization**.

Advancement, payment or indemnification of an **Insured Person** by an **Organization**, **Outside Entity** or **Underlying Insurer** is deemed:

(a) "failed" if it has been requested by or on behalf of an **Insured Person** and has not been provided by, agreed to be provided by or acknowledged as an obligation by, or is not collectible from, an **Organization**, **Outside Entity** or **Underlying Insurer**, respectively, within sixty (60) days of such request.

(b) "refused" if an **Organization**, **Outside Entity** or **Underlying Insurer** gives notice of the refusal to the **Insured Person**.

*Follow Form*     This policy shall provide coverage for **Insured Persons** in accordance with the terms, conditions and limitations of the **Followed Policy**, as modified by and subject to the terms, conditions and limitations of this policy, including but not limited to the *Changes* Clause of this policy regarding midterm modifications to an **Underlying Policy** (including but not limited to the **Followed Policy**).

*Followed Sublimits*     If any **Loss** or **Pre-Claim Inquiry Costs** are subject to a sublimit of liability under the **Followed Policy**, this policy shall pay such **Loss** or **Pre-Claim Inquiry Costs** of any **Insured Person** excess of amounts actually paid under any **Underlying Policy**, regardless of whether the full limit of liability of any **Underlying Policy** has been exhausted. This policy shall provide coverage for such **Loss** or **Pre-Claim Inquiry Costs** subject to a sublimit of liability equal to that set forth in the **Followed Policy**, which shall be part of and not in addition to this policy's **Limit of Liability**.

M122379 (09/16)     *END 4*

**ENDORSEMENT# 4** (Continued)

This endorsement, effective *12:01 am     June 1, 2017*             forms a part of
policy number  *01-498-04-39*
issued to   *AKORN, INC.*

by    *Illinois National Insurance Company*


*Underlying*        For any **Claim** against or **Pre-Claim Inquiry** received by any **Insured**
*Match*             **Person**, this policy shall be extended to include coverage for **Loss** or
*Assurance*         **Pre-Claim Inquiry Costs** of **Insured Persons** provided by any **Underlying**
                    **Policy** (including but not limited to the **Followed Policy**) that is not
                    already encompassed in this policy, excess of amounts actually paid
                    under any **Underlying Policy** and amounts actually indemnified or
                    advanced from an **Organization** or **Outside Entity**. In no event shall this
                    provision increase any limit of liability of this policy.


**III.**

In Clause 2. EXTENSIONS AND ADDITIONAL PROTECTION, the section entitled " *Civil*
*Fines & Penalties*" is deleted in its entirety and replaced with the following:

*Civil Fines &*      **Loss,** as defined in Clause 6, Definitions, of this policy (as amended),
*Penalties*          includes civil fines and civil penalties assessed by any **Enforcement**
                     **Body** against any **Insured Person** in connection with a **Claim** if such
                     assessment does not relate to any willful or deliberate violation of law
                     by such **Insured Person** and is not otherwise prohibited by the
                     assessment itself. Such fines and penalties include but are not limited
                     to Section 2(g)(2)(B) of the U.S. Foreign Corrupt Practices Act, 15
                     U.S.C. § 78dd-2(g)(2)(B) and § 78ff(c)(2)(B), or Section 11(1)(a) of the
                     United Kingdom Bribery Act of 2010, Chapter 23, or the equivalent
                     subsection of any comparable anti-corruption or anti-bribery statute.


**IV.**

In Clause 2. EXTENSIONS AND ADDITIONAL PROTECTION, the section entitled "
*Enhanced Discovery*" is amended by deleting the second paragraph in its entirety and
replacing it with the following:

                    Additionally, in the event the **Named Entity** first becomes the subject of
                    a bankruptcy proceeding (or the equivalent in a **Foreign Jurisdiction**)
                    during the **Policy Period**, if the **Insurer** or **Insured Persons** subsequently
                    elect not to renew this policy, then the **Insured Persons** shall have the
                    right to a discovery period of unlimited duration commencing at the end
                    of the **Policy Period**, in which to give the **Insurer** written notice of:
                    (a) **Claims** first made against an **Insured Person** after the end of the
                        **Policy Period** and solely with respect to **Wrongful Acts** that occur
                        prior to the end of the **Policy Period**;

**ENDORSEMENT# *4*** **(Continued)**

This endorsement, effective *12:01 am*      *June 1, 2017*          forms a part of
policy number   *01-498-04-39*
issued to   *AKORN, INC.*

by      *Illinois National Insurance Company*

      (b) **Pre-Claim Inquiries** first reported by an **Insured Person** after the end of the **Policy Period** and solely with respect to acts or omissions that occur prior to the end of the **Policy Period**; and

      (c) circumstances that occur prior to the end of the **Policy Period** of which an **Insured Person** shall become aware after the end of the **Policy Period**;

Such discovery period shall be provided for no additional premium.

**V.**

In Clause 2. EXTENSIONS AND ADDITIONAL PROTECTION, the section entitled "*Enhanced Discovery*" is further amended by deleting the third paragraph in its entirety and replacing it with the following:

Any **Executive** that ceases to serve as an **Executive** of an **Organization** during the **Policy Period** shall be provided, for no additional premium, with a discovery period of unlimited duration in which to give the **Insurer** written notice of:

(i)    **Claims** first made against such former **Executive** after the effective date of such former **Executive's** ceasing to serve in their capacity as **Executive** of an **Organization** and solely with respect to **Wrongful Acts** that occur prior to such date; and

(ii)    **Pre-Claim Inquiries** first reported by such former **Executive** after the effective date of such former **Executive's** ceasing to serve in their capacity as **Executive** of an **Organization** and solely with respect to acts or omissions that occur prior to such date.

This discovery period for former **Executives** shall be specifically excess of any valid and collectible insurance otherwise in place for such former **Executives**. The **Limit of Liability** for any discovery period provided under this policy shall be part of, and not in addition to, the corresponding **Limit of Liability** for the **Policy Period**.

**ENDORSEMENT# *4*** (Continued)

This endorsement, effective *12:01 am     June 1, 2017*                forms a part of
policy number  *01-498-04-39*
issued to    *AKORN, INC.*

by     *Illinois National Insurance Company*

## VI.

In Clause 2. EXTENSIONS  AND  ADDITIONAL PROTECTION,  the section entitled  "
*Non-rescindable*" is deleted in its entirety and replaced with the following:

*Non-rescindable*

>The **Insurer** shall not  be entitled, under any  circumstances, to rescind  or
>void any coverage under this policy in whole or in part.

## VII.

In Clause 2. EXTENSIONS  AND  ADDITIONAL PROTECTION,  the section entitled  "
*Recognition of Erosion*" is deleted in its entirety and replaced with the following:

*Recognition Of Erosion*

>This policy shall recognize erosion of an  **Underlying Limit** or any followed
>sublimit of liability of an **Underlying Policy** through payments by  others of
>**Loss** and **Pre-Claim Inquiry Costs** insured under that **Underlying Policy.**

## VIII.

In Clause 2. EXTENSIONS AND ADDITIONAL  PROTECTION, the section entitled " *Blanket,
For Profit Outside Director*" is deleted in its entirety and replaced with the following:

*Blanket, For
Profit Outside
Director Liability*

In addition to the definition of " **Outside Entity Executive**" set forth in the
**Followed Policy**, **Outside  Entity Executive** under this policy shall  also
mean any **Executive** of  an  **Organization** who  is  or was  acting  at the
specific request or  direction of an  **Organization** as an  **Executive** of any
for-profit entity, but only when such specific request or  direction occurs
prior to the **Wrongful Act** giving rise to a **Claim.**

In addition to the definition of " **Outside Entity**" set forth in the **Followed
Policy**, **Outside  Entity** under  this policy shall  also mean any for-profit
entity.

## IX.

Clause 2. EXTENSIONS  AND  ADDITIONAL PROTECTION  of  the  policy is  amended  by
adding the following paragraphs at the end thereof:

*END 4*

**ENDORSEMENT# *4*** **(Continued)**

This endorsement, effective *12:01 am     June 1, 2017*     forms a part of
policy number   *01-498-04-39*
issued to     *AKORN, INC.*

by     *Illinois National Insurance Company*

| | |
|---|---|
| *Spousal and Legal Representative Extension* | If a **Claim** against an **Insured Person** includes a **Claim** against: (i) the lawful spouse or **Domestic Partner** of such **Insured Person**; or (ii) a property interest of such spouse or **Domestic Partner**, and such **Claim** arises from any actual or alleged **Wrongful Act** of such **Insured Person**, this policy shall cover **Loss** arising from the **Claim** made against that spouse or **Domestic Partner** or the property of that spouse or **Domestic Partner** to the extent that such **Loss** does not arise from a **Claim** for any actual or alleged act, error or omission of such spouse or **Domestic Partner**. This policy shall cover **Loss** arising from a **Claim** made against the estates, heirs, or legal representatives of any deceased **Insured Person**, and the legal representatives of any **Insured Person**, in the event of incompetency, insolvency or bankruptcy, who was an **Insured Person** at the time the **Wrongful Acts** upon which such **Claim** is based were committed. |
| | "**Domestic Partner**" means any individual person legally recognized as a domestic or civil union partner under: (1) the provisions of any applicable federal, state, or local law; or (2) the provisions of any formal program established by the **Named Entity** or any **Subsidiary**. |
| *Policy Access Fund* | The **Insurer** shall pay the reasonable fees, costs and expenses incurred by an **Insured Person** to: |

    (a) gain access to the limit of liability provided by an **Underlying Policy**; or

    (b) defend against efforts by third parties to seize or attach this policy or any **Underlying Policy**;

provided the **Organization**, **Outside Entity** and/or **Underlying Insurer** fails, refuses or is financially unable to indemnify, advance or pay such fees, costs and expenses. The **Policy Access Fund** coverage shall be subject to a maximum amount per **Policy Period** of $100,000, which limit shall be in addition to the **Limit of Liability** provided by this policy.

***END 4***

**ENDORSEMENT#** *4*   **(Continued)**

This endorsement, effective   *12:01 am*      *June 1, 2017*         forms a part of
policy number   *01-498-04-39*
issued to   *AKORN, INC.*

by   *Illinois National Insurance Company*

*Bankruptcy Clause*

Bankruptcy or insolvency of any **Organization** or any **Insured Person** shall not relieve the **Insurer** of any of its obligations hereunder.

It is further understood and agreed that the coverage provided under this policy is intended to protect and benefit the **Insured Persons**. Further, if a liquidation or reorganization proceeding is commenced by the **Named Entity** and/or any other **Organization** (whether voluntarily or involuntarily) under Title 11 of the United States Code (as amended), or any similar state, local or foreign law (collectively "Bankruptcy Law") then, in regard to a covered **Claim** under this policy, the **Insureds** hereby:

(a) waive and release any automatic stay or injunction to the extent it may apply in such proceeding to the proceeds of this policy under such Bankruptcy Law; and

(b) agree not to oppose or object to any efforts by the **Insurer** or any **Insured** to obtain relief from any stay or injunction applicable to the proceeds of this policy as a result of the commencement of such liquidation or reorganization proceeding.

**X.**

In Clause 4. EXCLUSION, the section entitled " *Conduct Exclusion*" is deleted in its entirety and replaced with the following:

*Conduct Exclusion*   The **Insurer** shall not be liable to make any payment for that portion of **Loss** or **Pre-Claim Inquiry Costs** in connection with any **Claim** made against any **Insured Person** for: (a) any remuneration, personal profit or other financial advantage to which a final, non-appealable adjudication against such **Insured Person** in the underlying action establishes that the **Insured Person** was not legally entitled; or (b) any deliberate criminal or deliberate fraudulent act by the **Insured Person**, if a final, non-appealable adjudication against such **Insured Person** in the underlying action establishes that such deliberate criminal or deliberate fraudulent act was committed;

M122379 (09/16)      *END 4*

**ENDORSEMENT# 4** **(Continued)**

This endorsement, effective *12:01 am*      *June 1, 2017*      forms a part of
policy number  *01-498-04-39*
issued to    *AKORN, INC.*

by     *Illinois National Insurance Company*

provided, however:

(i)    this exclusion shall not apply to **Defense Costs**;

(ii)    part (a) of this exclusion shall not apply in an **Employment Practices Claim** or in a **Claim** alleging violations of Section 11, 12 or 15 of the Securities Act of 1933, as amended, to the portion of any **Loss** attributable to such violations;

(iii)    with respect to part (b) of this exclusion, for acts or omissions which are treated as a criminal violation in a **Foreign Jurisdiction** that are not treated as a criminal violation in the United States of America, the imposition of a criminal fine or other criminal sanction in such **Foreign Jurisdiction** will not, by itself, be conclusive proof that a deliberate criminal or deliberate fraudulent act occurred; and

(iv)    with respect to part (b) of this exclusion, this exclusion shall not apply to **Independent Directors;**

Solely for purposes of this exclusion, " **Independent Director"** means with respect to the **Organization**, a "Non-Employee Director" as that term is defined in Rule 16b-3 promulgated under the Securities Exchange Act of 1934 provided that the term "issuer" as used in that Rule shall be deemed to refer to such **Organization.**

**XI.**

In Clause 5. GENERAL TERMS AND CONDITIONS, the section entitled " *Claims Made & Pre-Claim Inquiries Received* " is amended by deleting the second and third paragraphs in their entirety and replacing them with the following:

**Claims** first made against an **Insured Person** and **Pre-Claim Inquiries** first reported by an **Insured Person** prior to the inception date of this policy, and **Claims** deemed as first made against an **Insured Person** and **Pre-Claim Inquiries** deemed as first reported by an **Insured Person** under any directors and officers liability insurance policy in force prior to the inception date of this policy, are not covered under this policy.

M122379 (09/16)                    *END 4*

**ENDORSEMENT# 4** (Continued)

This endorsement, effective *12:01 am    June 1, 2017*    forms a part of
policy number  *01-498-04-39*
issued to   *AKORN, INC.*

by    *Illinois National Insurance Company*

>All **Claims** made against  an **Insured Person**,  and all **Pre-Claim  Inquiries**
>reported by an  **Insured Person**, alleging,  arising out of,  based upon  or
>attributable to  the same  or related **Wrongful Acts**, circumstances or
>situations,  or  the  same  or  related  series  of  **Wrongful Acts**,
>circumstances or situations,  shall  be  deemed to  be a  single **Claim**  or
>**Pre-Claim Inquiry** made or  reported at the time  the earliest such **Claim**
>was first made  against, or **Pre-Claim Inquiry** was first  reported by, an
>**Insured Person**.

**XII.**

In Clause 5. GENERAL TERMS AND CONDITIONS, the section entitled  " *Other Insurance &
Indemnification*" is amended by adding the following at the end thereof:

>Such insurance as is provided by  this policy shall apply only  as excess
>over  any  other  valid  and   collectible  insurance, unless  such   other
>insurance is specifically  written as excess  insurance over the  **Limit of
>Liability** provided by this policy.  Such insurance as is  provided by this
>policy shall apply  as primary  to any  personal umbrella  excess liability
>insurance purchased by any **Insured Persons**.

>Notwithstanding  the  foregoing  or  the  terms  and  conditions  of  the
>**Followed Policy**, if for any reason any **Underlying Insurer** fails or refuses
>to pay  **Loss** or  **Pre-Claim Inquiry  Costs** covered  under the  terms and
>conditions of this  policy, this  policy shall  pay such  **Loss** or  **Pre-Claim
>Inquiry Costs**.

**XIII.**

In Clause 5. GENERAL TERMS  AND CONDITIONS, the section entitled  " *Notices &
Authority*" is deleted in its entirety and replaced with the following:

***END 4***

**ENDORSEMENT#** *4*   **(Continued)**

This endorsement, effective *12:01 am*     *June 1, 2017*        forms a part of
policy number   *01-498-04-39*
issued to    *AKORN, INC.*

by     *Illinois National Insurance Company*

| | |
|---|---|
| Notices & Authority | Where the **Followed Policy** requires or permits notice to its insurer, the **Named Entity** and the **Insured Persons** have the same obligations and rights to notify the **Insurer** under this policy, except that with respect to this policy, any notice to the **Insurer** must be directed as follows: (a) for **Claim**-related and **Pre-Claim Inquiry**-related matters, by mail or e-mail to the **Claims Address**; and (b) for all other notices, by mail to the **Insurer Address**. The **Named Entity** shall act on behalf of each and every **Insured Person** with respect to the giving and receiving of notice of cancellation or nonrenewal, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy and in the exercising of any right to a **Discovery Period**.

Notwithstanding the foregoing, a failure to provide notice as soon as practicable shall not preclude coverage under the policy unless the **Insurer** has been prejudiced by such failure. |

**XIV.**

In Clause 5. GENERAL TERMS AND CONDITIONS, the section entitled " *Rights*" is amended by adding the following at the end thereof:

> In the event the **Insurer** recovers amounts it paid under this policy, the **Insurer** will reinstate the **Limits of Liability** of this policy to the extent of such recovery, less its costs incurred in administering and obtaining such recovery. The **Insurer** assumes no duty to seek a recovery of any amounts paid under this policy. The **Insurer**, in its sole and absolute discretion, shall determine the amounts to be credited, if any, toward a reinstatement of the **Limits of Liability**.

**XV.**

In Clause 6. DEFINITIONS, the definitions of " **Asset Protection Cost**," " **Clawback Costs**," " **Executive ReputationGuard Expenses**" " **Extradition**," " **Liberty Protection Costs**," " **Pre-Claim Inquiry**," and " **Wrongful Act**" are deleted in their entirety and replaced with the following:

**ENDORSEMENT# *4*** **(Continued)**

This endorsement, effective *12:01 am*      *June 1, 2017*          forms a part of
policy number  *01-498-04-39*
issued to    *AKORN, INC.*

by     *Illinois National Insurance Company*

| | |
|---|---|
| **"Asset Protection Cost"** | means reasonable fees, costs and expenses consented to by the **Insurer**, such consent not to be unreasonably withheld, and incurred by an **Executive** of an **Organization** to oppose any efforts by an **Enforcement Body** to seize or otherwise enjoin the personal assets or real property of such **Executive** or to obtain the discharge or revocation of a court order entered during the **Policy Period** in any way impairing the use thereof. |
| **"Clawback Costs"** | means the reasonable fees, costs and expenses consented to by the **Insurer** (including the premium or origination fee for a loan or bond), such consent not to be unreasonably withheld, and incurred by an **Executive** to facilitate the return of amounts required to be repaid by such **Executive** pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002 ("SOX 304") or Section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank 954"), or any similar local, state or foreign statute under the securities laws providing for the recovery, return or reimbursement of incentive-based compensation from an **Executive** due to an accounting restatement by an **Organization**. " Clawback Costs" do not include the payment, return, reimbursement, disgorgement or restitution of any such amounts requested or required to be repaid by such **Executive** pursuant to SOX 304, Dodd-Frank 954 or any similar local, state or foreign statute. |
| **"Executive ReputationGuard Expenses"** | means reasonable fees, costs and expenses of a **Panel PR Firm** retained within 30 days of a **Personal Reputation Crisis** solely and exclusively by an **Executive** to mitigate the damage to the **Executive's** reputation from a **Personal Reputation Crisis**. |
| **"Extradition"** | means any formal process by which an **Insured Person** located in any country is surrendered or sought to be surrendered to any other country for trial or otherwise to answer any criminal accusation. |
| **"Liberty Protection Costs"** | means: |

(a) reasonable fees, costs and expenses consented to by the **Insurer**, such consent not to be unreasonably withheld, and incurred by an **Insured Person** in order for an **Insured Person** to lawfully seek the release of the **Insured Person** from any pre-**Claim** arrest or confinement to a: (i) specified residence; or (ii) secure custodial premises operated by or on behalf of any law enforcement authority; or

(b) reasonable and necessary premiums (but not collateral) consented to by the **Insurer**, such consent not be unreasonably withheld, and incurred by an **Insured Person** for a bond or other financial instrument to guarantee the contingent obligation of the **Insured Person** for a specified amount required by a court during the **Policy Period**, if such premiums: (i) arise out of an actual or alleged **Wrongful Act**; or (ii) are incurred solely by reason of such **Insured Person's** status as an **Executive** or **Employee** of an **Organization**.

**ENDORSEMENT# *4*** **(Continued)**

This endorsement, effective *12:01 am*     *June 1, 2017*     forms a part of
policy number  *01-498-04-39*
issued to   *AKORN, INC.*

by   *Illinois National Insurance Company*

| | |
|---|---|
| **"Pre-Claim Inquiry"** | means any pre- **Claim**: |
| | (a) request  for an **Insured Person**  of any **Organization**: (i)  to  appear at a meeting or interview; (ii) to provide testimony or  a sworn statement; or (iii)  produce  documents,  that, in  any such case,  concerns the business of that **Organization**  or that **Insured Person's**  insured capacities, but only if the request came from any: |
| | (1) **Enforcement Body**; or |
| | (2) **Organization**, or, on behalf of an **Organization**, by its board of directors (or the equivalent management  body) or any committee of the  board of  directors (or  the equivalent  management body); and |
| | (b)  arrest or  confinement of an **Executive** of  an **Organization** to a: (i) specified residence; or (ii)  secure custodial premises  operated by or on behalf of an **Enforcement Body**, in  connection with the  business of any **Organization** or an **Insured  Person's** capacity as an **Executive** or **Employee** of an **Organization.** |
| | " **Pre-Claim Inquiry**" shall  not include  any routine  or regularly  scheduled regulatory or  internal  supervision, inspection,  compliance,  review, examination, production  or audit, including any  request for  mandatory information from a  regulated entity, conducted in  an **Organization's** and/or **Enforcement Body's** normal review or compliance process. |
| **"Wrongful Act"** | in  addition to the  definition provided in  the **Followed Policy**,  also means any actual or alleged breach of duty,  neglect, error, misstatement, misleading  statement,  omission  or act  by any   **Insured Person** as a fiduciary of  any  employee  benefit  plan  sponsored solely by  any **Organization** or any  matter claimed  against such **Insured Person** by reason of his or her status as such. |

### XVI.

In Clause 6. DEFINITIONS, the following definitions are added to the end thereof:

**"Insured Person"** in addition to the  definition provided in the **Followed Policy**, **Insured Person** also means any **Shadow Director** or de facto director.

***END 4***

**ENDORSEMENT# *4*** **(Continued)**

This endorsement, effective *12:01 am*     *June 1, 2017*          forms a part of
policy number  *01-498-04-39*
issued to    *AKORN, INC.*


by     *Illinois National Insurance Company*


"Loss"    **Loss** means the amounts that the **Insured Persons** are legally obligated to pay as a result of a **Claim**, including but not limited to:

**(a) Defense Costs**;

(b) damages, judgments (including pre/post-judgment interest on a covered judgment), and settlements;

(c) the listed items set out in Clause 2, Extensions, Executive Protection Suite of this policy;

(d) punitive or exemplary damages or the multiple portion of a multiplied damages award;

(e) the premium (but not collateral) for any bail or similar bond incurred by an **Insured Person** in connection with a **Claim**;

(f) taxes imposed upon the **Organization** for which an **Insured Person** is legally liable by reason of the **Organization's** bankruptcy or insolvency; and

(g) taxes imposed upon an **Insured Person** due to any payment of **Loss** by the **Insurer** under this policy.

**Loss** (other than **Defense Costs**) shall not include:

(i) matters that may be deemed uninsurable under the law pursuant to which this policy shall be construed;

(ii) taxes, except as covered under Clauses (f) and (g) above;

(iii) fines or penalties, except to the extent covered under Clause 2, EXTENSIONS AND ADDITIONAL PROTECTION, *Civil Fines & Penalties* of this policy; and

(iv) any statutory liability imposed upon an **Insured Person** as a result of the failure of the **Organization** to have paid any taxes owed to a federal or state government.

**Loss** shall specifically include plaintiff attorneys' fees awarded or approved by a court in connection with a **Non-Monetary Settlement**.

The insurability of fines, penalties, taxes, and punitive, exemplary and multiplied damages shall be governed by such applicable law that most favors coverage for such fines, penalties, taxes, and punitive, exemplary and multiple damages.

**ENDORSEMENT# *4*** **(Continued)**

This endorsement, effective *12:01 am*     *June 1, 2017*               forms a part of
policy number  *01-498-04-39*
issued to   *AKORN, INC.*

by    *Illinois National Insurance Company*

Notwithstanding the above, the  **Insurer** shall not  assert that, in  a **Claim** alleging violations of Section 11,  12 or 15 of  the U.S. Securities Act of 1933, as amended, or similar statutory provisions of any state  or foreign securities law, the  portion of  any amounts incurred  by **Insured  Persons** which is attributable  to such violations  constitutes uninsurable loss  and shall treat that  portion of  all such settlements,  judgments and  **Defense Costs** as constituting **Loss** under this policy.

**"Non-Monetary Settlement"**     means a settlement of  a **Claim** brought  by one or  more shareholders of an **Organization**, either  directly  or  derivatively  on  behalf  of  an **Organization**, wherein no  monetary consideration  would be  received by such shareholder(s) or **Organization**, including but not limited to any such **Claim** alleging that the price or consideration paid or proposed  to be paid for the acquisition or completion  of the acquisition of  all or substantially all the ownership interest in or assets of an entity is inadequate.

**"Shadow Director"**     means any natural person who, as  a consequence of being an **Executive** or **Employee** of any **Organization** is deemed a  shadow director, as defined in Section  251 of  the U.K. Companies  Act 2006,  of any other **Organization** or any **Outside Entity**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.

M122379 (09/16)           *END 4*

**ENDORSEMENT# 5**

This endorsement, effective *12:01 am     June 1, 2017*                forms a part of
policy number   *01-498-04-39*
issued to   *AKORN, INC.*

by   *Illinois National Insurance Company*

**RENEWAL TRANSITION ENDORSEMENT**

In consideration of the premium charged, it is hereby understood and agreed that the policy
is amended as follows:

1.    *Liberalization Right*:  If, in  relation to a **Claim** first  made during the **Policy  Period** or
      **Discovery Period** of this policy, the **Named  Entity** believes the terms and conditions
      of the **Prior  Policy** provide coverage  for **Loss** that  is not  provided under the  terms
      and conditions of this policy, the **Named Entity**  may elect to have all or part of  that
      **Claim** adjusted according to the terms  and conditions of the **Prior  Policy**, except as
      provided in Clause 3. below.  To do so, the   **Named Entity** must notify the **Insurer** in
      writing of that election  and the language of  the **Prior Policy**  that the **Named Entity**
      believes provides the coverage that is not provided under this policy for such **Claim**.

2.    *Prior Policy*:  " **Prior Policy**" means the following  policy issued by the  **Insurer** (or an
      insurance company affiliate thereof)**:**  Executive Shield policy number 01-425-46-58
      issued to AKORN, INC.  for the policy  period from June 1,  2016 to June  1, 2017.
      **Prior Policy**  shall  not  mean  any predecessor thereto  or  renewal  or  replacement
      thereof.

3.    *Liberalization Exceptions*:

      (a)    No coverage shall be provided  for any **Claim** or  other matter which was the
             subject of any notice given under the **Prior Policy** or any preceding policy;
      (b)    the liberalization features  of this endorsement  shall not apply  to any of  the
             following items:
             (1)    the **Policy Period**, **Limit of Liability,** Retention  amounts and **Continuity
                    Dates** of this policy;
             (2)    the definition of " **Loss**" of this policy.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

M120257 (08/15)              *END 5*

**ENDORSEMENT# *6***

This endorsement, effective *12:01 am*      *June 1, 2017*              forms a part of
policy number  *01-498-04-39*
issued to    *AKORN, INC.*

by     *Illinois National Insurance Company*

**PENDING AND PRIOR LITIGATION EXCLUSION FOR ADDITIONAL EXCESS LIMITS**

In consideration of the premium charged, it is hereby understood and agreed that with respect to the **Limit of Liability** of this policy $5,000,000 excess of the first $15,000,000 **Limit of Liability** of this policy, the **Insurer** shall not be liable for any **Loss** in connection with any **Claim** made against or any **Pre-Claim Inquiry** received by any **Insured Person** alleging, arising out of, based upon or attributable to, as of April 24, 2011, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation of which an **Insured Person** had notice, or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.

117133 (12/13)          *END 6*

ENDORSEMENT# 7

This endorsement, effective *12:01 am*      *June 1, 2017*          forms a part of
policy number   *01-498-04-39*
issued to    *AKORN, INC.*

by    *Illinois National Insurance Company*

### DECLARATIONS AMENDED
### (REVISED ATTACHMENT POINT FOR CLAIMS FIRST MADE ON OR
### AFTER AUGUST 4, 2015)

In consideration of the premium charged, it is hereby understood and agreed that solely with respect to any **Claim** first made against an **Insured Person** on or after August 4, 2015, the Declarations are amended by deleting the **Limit of Liability**, **Total Underlying Limits** and SCHEDULE OF UNDERLYING COVERAGE in their entirety and replacing them with the following:

| | | |
|---|---|---|
| **Limit of Liability:** | $10,000,000 | |
| **Total Underlying Limits:** | $30,000,000 | |
| RETENTIONS OF UNDERLYING POLICIES: | | |
| XL SPECIALTY INSURANCE COMPANY (Primary) | $2,500,000 | |

| SCHEDULE OF UNDERLYING COVERAGE | | | | |
|---|---|---|---|---|
| Notes | Underlying Insurer | Underlying Policy Number | Limits | Policy Period |
| Followed Policy | XL Specialty Insurance Company | US00075683DO17A | $10,000,000 Primary | 06/01/2017 to 06/01/2018 |
| | Allied World National Assurance Company | 0307-5817 | $10,000,000 xs $10,000,000 | 06/01/2017 to 06/01/2018 |
| | Endurance American Insurance Company | DOX10007587102 | $10,000,000 xs $20,000,000 | 06/01/2017 to 06/01/2018 |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.

MNSCPT                        *END 7*

## ENDORSEMENT# *8*

This endorsement, effective *12:01 am*   *June 1, 2017*                    forms a part of
policy number   *01-498-04-39*
issued to *AKORN, INC.*

by     *Illinois National Insurance Company*

### FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 117121 | 12/13 | SIDE - A EDGE POLICY DECLARATIONS |
| 96555 | 01/15 | TRIA DEC DISCLOSURE FORM |
| 117121 | 12/13 | SIDE - A EDGE POLICY |
| 99758 | 08/08 | NOTICE OF CLAIM (REPORTING BY E-MAIL) |
| 52142 | 07/13 | ILLINOIS AMENDATORY- CANCELLATION/NONRENEWAL |
| 119679 | 09/15 | ECONOMIC SANCTIONS ENDORSEMENT |
| M122379 | 09/16 | AMENDED SIDE A EDGE AMENDATORY ENDORSEMENT |
| M120257 | 08/15 | RENEWAL TRANSITION ENDORSEMENT |
| 117133 | 12/13 | PENDING AND PRIOR LITIGATION EXCLUSION FOR ADDITIONAL EXCESS LIMITS |
| MNSCPT | | DECLARATIONS AMENDED |
| 78859 | 10/01 | FORMS INDEX ENDORSEMENT |
| 96453 | 08/16 | ILLINOIS CONSUMER COMPLAINT NOTIFICATION |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.

*END 008*

**ILLINOIS CONSUMER COMPLAINT NOTIFICATION**

This notice is to advise you that should any complaints arise regarding this insurance, you may contact the following:

AIG
Consumer Complaints Division
12 Metrotech Center, 27th Floor
Brooklyn, NY 11201
Phone: 1-877-541-9748
Fax: 718-250-1779
consumer@aig.com


Illinois Department of Insurance (2 locations)

Consumer Division
320 W. Washington Street
Springfield, IL 62767

Consumer Division
122 S. Michigan Ave., 19th Floor
Chicago, IL 60603

(866) 445-5364 (toll free)
(217) 558-2083 (fax) (Springfield)
(217) 782-4515 (Tel.) (Springfield)
(312) 814-2420 (Tel.) (Chicago)
http:// insurance.illinois.gov/consumer_complaints@ins.state.il.us

96453 (08/16)

**AIG**

# CLAIM REPORTING FORM

Issuing Company: *Illinois National Insurance Company*

Reported under Policy/Bond Number:  _01-498-04-39_          Date: _____

Type of Coverage: D&O _____   E&O _____   Fidelity _____   (complete the Fidelity Supplemental on the next page)

Insured's Name, as given on Policy Declarations (Face Page):

_AKORN, INC._____

_____

_____

Contact Person: _____

Title: _____

Phone: _(_____)_____-_____Ext _____

eMail: _____ @ _____

Case or Claimant Name: _____

_____

If the party involved is different from "Insured" Name (as given on Policy Declarations) state relationship:

_____

Insurance Broker/Agent: _ARTHUR J GALLAGHER RISK MNGT SERV INC_

Address: _300 S. RIVERSIDE PLAZA, STE. 1900_

Address: _CHICAGO, IL 60606_

Contact: _DEREK VAN DER VOORT_          Phone:_____

eMail: _Derek_Vandervoort@AJG.com_

Send Notice of Claims to:     AIG                          Phone: (888) 602-5246
                              Financial Lines Claims      Fax:    (866) 227-1750
                              P.O. Box 25947              Email:  c-Claim@AIG.com
                              Shawnee Mission, KS 66225

**AIG**

## CLAIM REPORTING FORM
## FIDELITY SUPPLEMENTAL

**(Only complete this supplemental if the Claim is being reported under Fidelity Coverage)**

Issuing Company: *Illinois National Insurance Company*

Reported under Policy/Bond Number:  *01-498-04-39*

Date of Discovery: _____   Estimated Amount of loss: _____

Cause of Loss:   Employee Dishonesty  _____      Computer Fraud  _____

Funds Transfer  _____      Robbery/Burglary  _____

ID Theft  _____      Forgery  _____

Client Property  _____      In Transit  _____

ERISA  _____      Credit Card Forgery  _____

Other  _____      if Other, describe: _____

Send Notice Of Claims To:   AIG              Phone:  (888) 602- 5246
Financial Lines Claims      Fax:    (866) 227- 1750
P.O. Box 25947            Email:  c- Claim@AIG.com
Shawnee Mission, KS 66225