## Hypothetical Liquidation Analysis

This liquidation analysis (the "Liquidation Analysis") has been prepared by the Debtors' management, together with AlixPartners LLP, the Debtors' restructuring advisors, to illustrate what the Debtors' stakeholders may receive or retain if the Debtors' assets were liquidated under chapter 7 of the Bankruptcy Code. This liquidation analysis: (1) estimates the cash proceeds that a chapter 7 trustee would generate if the Debtors' chapter 11 cases were converted to a chapter 7 case on the Closing Date and the assets of the Debtors' estate were liquidated in a forced sale scenario and (2) estimates the distribution that each impaired class of claims or interests would receive from the liquidation proceeds under the priority scheme dictated by the Bankruptcy Code.

**The Liquidation Analysis is premised upon a number of estimates and assumptions that are inherently subject to significant business, economic and competitive uncertainties beyond the control of the Debtors, and, as discussed below, may be subject to change. Thus, there can be no assurance that the values reflected in the Liquidation Analysis would be realized if the Debtors were, in fact, to undergo a liquidation. In addition, any liquidation ultimately undertaken would take place under future circumstances that cannot be predicted with certainty. Accordingly, although the Liquidation Analysis that follows is necessarily presented with numerical specificity, if the Debtors' estates were in fact liquidated as described herein, the actual proceeds from such a liquidation could vary significantly from the amounts set forth in the Liquidation Analysis. The actual liquidation proceeds could be materially higher or lower than the amounts set forth in the Liquidation Analysis, and no representation or warranty can be or is being made with respect to the actual proceeds that would be generated from the liquidation of the Debtors under chapter 7 of the Bankruptcy Code. The Liquidation Analysis has been prepared solely for the purposes of estimating the proceeds that would be available if the Debtors liquidated under chapter 7 of the Bankruptcy Code and does not represent values that may be appropriate for any other purpose, including the values applicable in the context of the Sale Transaction. Nothing contained in the Liquidation Analysis is intended as or constitutes a concession or admission for any purpose other than the presentation of a hypothetical liquidation analysis to illustrate the substantial loss in value the Debtors' stakeholders will suffer if the Sale Transaction is not consummated, and the Debtors are forced to convert their chapter 11 cases to cases under chapter 7 of the Bankruptcy Code.**

## Presentation

The Liquidation Analysis has been prepared on a consolidated basis, assuming the proceeds realized from the Debtors' assets are aggregated for distribution to holders of claims. The Liquidation Analysis aggregates the proceeds of all Debtor entity assets as well as the non-debtor subsidiaries. Creditor claims are the aggregate amount of claims across all Debtor entities. For purposes of distribution under the Liquidation Analysis, allowed claims against each Debtor are entitled to a distribution from the aggregated proceeds of the Debtors' assets to the extent such proceeds are sufficient to make any such distributions in order of priority as specified in the Bankruptcy Code. Any allowed claim against a Debtor, and any guarantee thereof executed by any

other Debtor, and any joint or several liability of any of the Debtors, are deemed to have a single right to a distribution from the aggregated proceeds.

The Liquidation Analysis presents estimated chapter 7 liquidation proceeds based on assumptions and estimates relating to the proceeds to be received from the liquidation of the assets, less the costs incurred during the liquidation. The assumed date of the conversion to a hypothetical chapter 7 liquidation is September 15th, 2020 (the "Conversion Date"), which the Debtors estimate to be a reasonable proxy for the Closing Date. Except as otherwise noted herein, the amounts referenced as "Book Value" in the Liquidation Analysis are based on the Debtors' balance sheet as of July 2020 (with certain adjustments) and those values are assumed to be representative of the Debtors' assets at the Conversion Date.

The Liquidation Analysis presents both "High" case and "Low" case estimates of liquidation proceeds and recoveries for holders of allowed claims, representing a range of assumptions and estimates relating to the proceeds to be received from the hypothetical chapter 7 liquidation of the Debtors' assets, less the costs incurred during the liquidation. In many instances, a general assumption for both high and low recovery was assumed as a detailed analysis of the liquidation value of the assets was not performed. This analysis does not include recoveries from the pursuit of any Causes of Action, the proceeds of which are assumed to be the same under both a Chapter 7 and a Chapter 11 scenario.

In preparing the Liquidation Analysis, the Debtors estimated allowed claims based upon a review of their books and records through the date of this Liquidation Analysis. The Liquidation Analysis also includes estimates for claims which could be asserted and allowed in a chapter 7 liquidation, including administrative claims, wind-down costs (as detailed herein), and the fees and expenses of the chapter 7 trustee (the "Trustee"). To date, the Bankruptcy Court has not estimated or otherwise fixed the total amount of allowed claims.

The Debtors' estimates of allowed claims set forth in the Liquidation Analysis should not be relied upon for any purpose other than considering the estimated distributions under a hypothetical chapter 7 liquidation. Nothing contained in the Liquidation Analysis is intended to be or constitutes a concession or admission by the Debtors or their estates. The actual amount of allowed claims in the Chapter 11 cases could materially differ from the estimated amounts set forth in the Liquidation Analysis, and the ultimate allocation of distributions may vary depending on, among other things, the priority or secured status of creditors.

**Timeline**

The Liquidation Analysis assumes that the Trustee, with assistance of the Debtor's management, will wind down all the Debtors' operations over a six month period beginning on the Conversion Date, and thereafter, undertake an expedited liquidation of the Debtors' remaining assets on a non-operating basis. It is assumed that the Trustee would retain other professionals, including liquidators, legal counsel and a financial advisor, and may also employ or retain certain of the Debtors' current employees for a limited time period after the Conversion Date to liquidate the Debtors' assets.

The Debtors' cost of liquidation under Chapter 7 would include fees payable to the Trustee, liquidators fees, fees payable to attorneys and other professionals that such a trustee may engage, and costs related to retention of Debtor personnel needed to execute the estate wind-down. It is possible that in a Chapter 7 case, the wind-down expenses may be greater or less than the amount estimated in the Liquidation Analysis. Such expenses are in part dependent on the length of time of the liquidation. No representations are being made in this analysis as to how the Trustee would administer the wind down. As a result, the cost estimates may be significantly different in a true Chapter 7 scenario.

Under Chapter 7 of the Bankruptcy Code, the Trustee must distribute the proceeds of validly encumbered assets to the holders of liens in such assets before distributing any excess proceeds to a debtor's estate. Using those proceeds, if any, and any proceeds of unencumbered assets, the estate must pay professional fees, trustee fees, administrative priority claims, priority claims, and other such claims that may arise in a liquidation scenario in full prior to proceeds being made available to the holders of general unsecured claims against the Debtors' estates. Under the absolute priority rule, no unsecured creditor would receive any distributions from encumbered assets until all creditors with valid liens in such assets are paid in full, and no equity holder would receive any distribution until all creditors are paid in full. The assumed distributions to creditors reflected in the Liquidation Analysis are estimated in accordance with the absolute priority rule and in acknowledgement of the split of asset value attributable to those assets that are encumbered versus unencumbered. This analysis also reflects that to the extent any unencumbered assets existed as of the Petition Date, such assets became encumbered by the DIP Term Loan Facility.

**The Debtors' estimate of allowed claims contained in the Liquidation Analysis may differ from what is reflected herein. Therefore, the Debtors' estimate of allowed claims set forth in the Liquidation Analysis should not be relied on for any other purpose, including determining the value of any distribution to be made on account of allowed claims and equity interests under the Chapter 11 cases. NOTHING CONTAINED IN THE LIQUIDATION ANALYSIS IS INTENDED TO BE OR CONSTITUTES A CONCESSION OR ADMISSION OF THE DEBTORS. THE ACTUAL AMOUNT OF ALLOWED CLAIMS IN THE CHAPTER 11 CASES COULD MATERIALLY DIFFER FROM THE ESTIMATED AMOUNTS SET FORTH IN THIS LIQUIDATION ANALYSIS.**

## Assets Available for Distribution to Creditors and Recovery Waterfall

| Assets Available for Distribution to Creditors | | Net Book Value | Recovery (%) | | Recovery ($) | |
|---|---|---|---|---|---|---|
| ($ in millions) | | | Low | High | Low | High |
| **Assets of US Debtor Entities:** | | | | | | |
| Cash | [1] | $20 | 100% | 100% | $20 | $20 |
| Accounts Receivable, Net | [2] | 139 | 57% | 80% | 79 | 111 |
| Inventory, Net | [3] | 179 | 41% | 81% | 72 | 145 |
| Prepaid Expenses | [4] | 81 | 44% | 66% | 36 | 54 |
| PP&E, Net | [5] | 217 | 19% | 38% | 41 | 82 |
| Product Portfolio | [6] | n/a | n/a | n/a | 76 | 153 |
| Right-Of-Use Assets, Net | [7] | 21 | 0% | 0% | 0 | 0 |
| Other Assets | [8] | 10 | 9% | 19% | 1 | 2 |
| **Total Assets of the US Debtors** | | **$666** | **49%** | **85%** | **$325** | **$565** |
| **Investments in Foreign Subsidiaries:** | | | | | | |
| Akorn AG (Hettlingen, Switzerland) | [9] | $65 | 25% | 50% | $16 | $32 |
| Akorn Canada, Inc. | [10] | 0 | 25% | 50% | 0 | 0 |
| **Total Investments in Foreign Subs.** | | **$65** | **25%** | **50%** | **$16** | **$32** |
| **Total Liquidation Proceeds** | | **$730** | **47%** | **82%** | **$341** | **$598** |
| **Ch. 7 Administrative Costs** | | | | | | |
| Ch. 7 Trustee Fees and Commissions | [11] | | | | $10 | $18 |
| Commissions for Liquidators | [12] | | | | 7 | 13 |
| Liquidating Professional Fees | [13] | | | | 6 | 6 |
| Corporate Wind Down Expenses | [14] | | | | 19 | 19 |
| **Total Ch. 7 Administrative Costs** | | | | | **$42** | **$56** |
| **Net Proceeds Available for Distribution** | | | | | **$299** | **$542** |

| Recovery Waterfall | | Claim Face Value | Recovery (%) | | Recovery ($) | |
|---|---|---|---|---|---|---|
| ($ in millions) | | | Low | High | Low | High |
| **Superpriority Claims** | | | | | | |
| DIP Loan | [15] | $30 | 100% | 100% | $30 | $30 |
| Accrued / Unpaid Ch. 11 Professional Fees | [16] | 11 | 100% | 100% | 11 | 11 |
| UST Fees | [17] | 1 | 100% | 100% | 1 | 1 |
| **Total Superpriority Claims** | | **$41** | **100%** | **100%** | **$41** | **$41** |
| **Secured Claims** | | | | | | |
| Prepetition Term Loan | [18] | $892 | 29% | 56% | $258 | $500 |
| **Total Secured Claims** | | **$892** | **29%** | **56%** | **$258** | **$500** |
| **Administrative Claims** | | | | | | |
| Administrative Claims | [19] | $104 | 0% | 0% | $0 | $0 |
| **Total Administrative Claims** | | **$104** | **0%** | **0%** | **$0** | **$0** |
| **Priority Claims** | | | | | | |
| Priority Claims | [20] | $4 | 0% | 0% | $0 | $0 |
| **Total Priority Claims** | | **$4** | **0%** | **0%** | **$0** | **$0** |
| **Unsecured Claims** | | | | | | |
| Prepetition Term Loan Deficiency Claim | [21] | $392 - $635 | 0% | 0% | $0 | $0 |
| Trade Claims | [22] | $11 | 0% | 0% | $0 | $0 |
| Litigation Claims | [23] | $243 | 0% | 0% | $0 | $0 |
| Customer Claims | [24] | $15 | 0% | 0% | $0 | $0 |
| **Total Unsecured Claims** | | **$661 - $904** | **0%** | **0%** | **$0** | **$0** |
| **510b Claims** | | | | | | |
| 510b Claims | [25] | $30 | 0% | 0% | $0 | $0 |
| **Total 510b Claims** | | **$30** | **0%** | **0%** | **$0** | **$0** |
| **Equity Claims** | | | | | | |
| Equity Claims | [26] | $1 | 0% | 0% | $0 | $0 |
| **Total Equity Claims** | | **$1** | **0%** | **0%** | **$0** | **$0** |

## Assets Available for Distribution to Creditors

Figures are based on the July 2020 balance sheet unless otherwise noted.

1. *Cash* – The estimated cash balance, as of the Conversion Date, is the US Cash per the latest cash flow forecast.
2. *Accounts Receivable, Net* – The Debtors assume a recovery of 57%-80% on net accounts receivable. A 57% recovery on net accounts receivable is in line with an implied estimate of eligible net accounts receivables in the proposed exit ABL borrowing base calculation. A recovery of 80% is assumed in the high case
3. *Inventory, Net* – The Debtors assume a recovery of 81% on net inventory. This is consistent with a recently completed inventory valuation and appraisal report. 50% of this value is assumed in the low case.
4. *Prepaid Expenses* – Consists of a variety of prepayments, including Deposits, Spare Parts, Federal Income Taxes, Inventory and Other. The Debtors assume a recovery range of 44%-66%.
   a. *Prepaid Deposits and Spare Parts* – The Debtors assume a general recovery range of 25%-50% of Net Book Value as a detailed analysis was not performed.
   b. *Prepaid Federal Income Taxes* – The Debtors assume 68-100% of the value recovered based on the value of a tax refund due in early October in the low case, and the full Net Book Value of Prepaid Federal Income Taxes in the high.
   c. *Prepaid Inventory* – The Debtors assume the same percentage recoveries as Inventory.
   d. *All Other Prepaid Expenses* – The Debtors assume a 0% recovery as balance consists of Prepaid Insurance, ordinary course Prepaid Expenses, as well as a Note Receivable from Akorn AG.
5. *Property Plant & Equipment, Net* – Consists of Land & Building, Leasehold Improvements, and Machinery & Equipment. The Debtors assume a recovery range of 41%-71%.
   a. *Land & Building* – The Debtors assume appraised fair market value of the property for the high recovery. Value on un-appraised property is assumed to be de minimis. Lower recovery percentage 50% of appraised value.
   b. *Leasehold Improvements* – The Debtors assume a 0% recovery.
   c. *Machinery & Equipment* – The Debtors assume a general recovery range of 25%-50% of Net Book Value as a detailed analysis was not performed.
6. *Product Portfolio* – The Debtors made several assumptions to calculate the recovery value of the liquidation of the marketed product portfolio:
   a. Only the top 10 products were assumed to generate enough revenue (equal to or greater than approximately $15 million per year) for a potential purchaser to invest in certifying a non-Akorn facility for production of the product. Transfer from an Akorn facility to a new third-party facility would require qualification of that facility to comply with FDA regulations.
      i. Each purchaser would incur approximately $2 million per product in tech transfer costs to move to a non-Akorn facility
   b. Four of the top 10 products are assumed to be unattractive to potential purchasers due to product specific reasons.

      c.   The Debtors assume a range of recovery values for the top 10 products sold from 0.5-1.0x annual product net revenue.

7. *Right of Use Assets, Net* – IFRS 16 Accounting treatment of leases. The Debtors assume a recovery of 0%.

8. *Other Assets* – The Debtors assume a general recovery range of 25%-50% of Net Book Value for Long-Term Deposits, Security Deposits and Taxes Receivables as a detailed analysis was not performed. Remaining Other Assets assumed to have a 0% recovery.

9. *Akorn AG* – The Debtors assume a general recovery range of 25%-50% of Net Book Value as a detailed analysis was not performed.

10. *Akorn Canada* – The Debtors assume a general recovery of 25%-50% of Net Book Value as a detailed analysis was not performed.

## Chapter 7 Administrative Costs/Deductions from Total Liquidation Proceeds

11. *Chapter 7 Trustee Fees* – The Trustee's fees in a chapter 7 liquidation have been estimated in accordance with section 326(a) of the Bankruptcy Code and equal to 3% of gross proceeds.

12. *Commissions for Liquidators* – Assumed to be 4% of gross proceeds based on the commission ascribed to the hypothetical inventory liquidation in the inventory appraisal report, applied to the non-financial assets of the business.

13. *Liquidating Professional Fees* – It is assumed that the Trustee will require the services of professionals post the Conversion Date. These professionals include legal counsel, a liquidating director, and tax and accounting professionals. Assumed to cost $1 million per month for six months.

14. *Corporate Wind Down Expenses* – Estimate of costs to wind down the estate and liquidate the assets, encompassing preparation of the facilities and other assets for sale, as well as supporting the liquidation process. Costs include the retention of Debtor personnel and wind-down operating expenses needed to execute the liquidation.

## Recovery Waterfall

15. *Debtor-In-Possession Loan* – Consists of the principal and accrued interest of the DIP Loan.

16. *Accrued Unpaid Chapter 11 Professional Fees* – Consists of accrued unpaid chapter 11 professional fees at the Conversion Date.

17. *Chapter 11 US Trustee fees* – Accrued unpaid Chapter 11 US Trustee Fees at the Conversion Date.

18. *Pre-petition Term Loan* – Consists of the pre-petition secured term loan principal, accrued interest, exit fee and call premium.

19. *Administrative Claims* – Consists of liabilities accrued post-petition in the ordinary course of business.

20. *Priority Unsecured Claims* – Consists of priority tax claims.

21. *Prepetition Term Loan Deficiency Claim* – Consists of the unrecovered value of the prepetition secured term loan.

22. *Trade Vendor Claims* – Total value of unsecured trade and lease rejection claims excluding estimated future reductions to claim face value from cure cost payments assumed in the Sale Transaction and resolution of disputed claims. No value assumed for unliquidated claims.

23. *Litigation Claims* – Total value of filed unsecured litigation claims assuming no resolution or liquidation at a lower value. No value assumed for unliquidated claims.

24. *Customer Claims* – Value of remaining disputed customer claims that have not been paid in the ordinary course under the Customer Program Motion following the petition date. Amounts would be assumed in the Sale Transaction. No value assumed for unliquidated claims.

25. *510(b) Claims* – Value of Contingent Value Rights claim filed by Gabelli Funds, LLC as representative of a certified settlement class of Akorn, Inc. investors Case No. 1.18-cv-01713 N.D. Ill. This claims was filed as an unsecured claim and is assumed reclassified to 510(b).

26. *Equity Claims* – Value of filed Equity Claims. No value assumed for unliquidated claims.